George F. Ogilvie III (NSBN #3552)
Amanda C. Yen (NSBN #9726)
McDONALD CARANO LLP
2300 W. Sahara Ave, Suite 1200
Las Vegas, NV 89102
Telephone:  702.873.4100
Fax:  702.873.9966
gogilvie@mcdonaldcarano.com
ayen@mcdonaldcarano.com

Steven L. Procaccini (*Pro Hac Vice To Be Submitted*)
Chris Ellis Jr. (*Pro Hac Vice To Be Submitted*)
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, Suite 301
Union, NJ 07083
Telephone: 908-686-8000
Fax: 908-686-8550
sp@gdnlaw.com
ce@gdnlaw.com

*Attorneys for plaintiff Todd VanDeHey*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TODD VANDEHEY, an individual, | CASE NO.: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual, | |
| Defendants. | |

Plaintiff Todd VanDeHey ("Plaintiff"), by and through counsel, complaining of defendants Real Social Dynamics, Inc. ("RSD"), Nicholas Kho and Owen Cook (collectively, RSD, Kho and Cook are hereinafter referred to as the "Defendants") hereby states and alleges as follows:

. . .

. . .

## JURISDICTION

1. This Court has jurisdiction of this action under 28 U.S.C. §1332. There is a complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy is more than $75,000.00.

## VENUE

2. Venue is proper based upon the parties' stipulation pursuant to Section 11.9 of an operating agreement dated October 5, 2015 ("Operating Agreement") between Plaintiff and RSD.

## PARTIES

3. Todd VanDeHey is a citizen of the State of New York with an address of 10 Hanover Square, Apartment 18N, New York, New York 10005.

4. Upon information and belief, Real Social Dynamics, Inc. is a Nevada corporation with an address of 1930 Village Center Circle, #3-965, Las Vegas, Nevada 89134.

5. Plaintiff and defendant RSD are each fifty percent (50%) shareholders of Valentine Life, Inc., a Nevada corporation ("Valentine Life").

6. Upon information and belief, defendant Nicholas Kho is a citizen of the State of Nevada with an address of 8121 Gothic Avenue, Las Vegas, Nevada 89117 and co-owner of defendant RSD.

7. Upon information and belief, defendant Owen Cook, is a citizen of Canada residing in the State of California with an address of 1865 Fuller Avenue, Los Angeles, California 90046 and co-owner and/or principal of Defendant RSD.

## GENERAL ALLEGATIONS

8. Plaintiff is the incorporator, sole director and a fifty-percent (50%) shareholder of Valentine Life. A true and accurate copy of Valentine Life's Articles of Incorporation are attached hereto as **Exhibit A**.

9. Valentine Life is jointly owned by Plaintiff and defendant RSD.

10. Valentine Life provides online and in-person classes and other instructional material to men on how to attract and date women.

11. Plaintiff is the public face and main instructor of Valentine Life under the aliases "Todd Valentine" and "RSDTodd".

12. Valentine Life primarily operates, advertises and provides services through various internet websites and social media accounts.

13. The websites operated by Valentine Life include without limitation: 3GirlsADay.com; WomenbyTodd.com; TextAndDatesmachine.com; DayGameByTodd.com; ValentineUniversity.com; ValentineLife.com; AttractionUnlocked.com; RSDImmersion.com and OpeningMastery.com (collectively, the "Websites").

14. The social media accounts operated by Valentine Life include without limitation: youtube.com/user/RSDTodd; youtube.com/user/toddfreetour; youtube.com/1minuteattraction; plus.google.com/u/0/10544201590615030298; plus.google.com/110840022199142432968; twitter.com/rsdtodd; instagram.com/toddvalentineofficial/; facebook.com/rsdtodd; and facebook.com/toddrsd (collectively, the "Social Media Accounts").

15. Valentine Life also communicates with its customers via the online email marketing automation and reporting platform provided through third-party vendor Ontraport, which contains Valentine Life's customer list.

16. In addition, Valentine Life processes and receives payments through the online merchant services systems provided by the third-party vendor InChek.

17. As part of the ongoing business of Valentine Life, RSD contributed certain infrastructure and resources to the entity and Plaintiff was responsible for running the day-to-day business of the company.

18. For example, Valentine Life and its employees/contractors conducted business utilizing RSD email domains and the individual accounts thereunder, Valentine Life email domains and the individual accounts thereunder, Valentine Life ZenDesk and Clickbank accounts to facilitate customer service (collectively, Ontraport, InChek, the RSD email domains and the individual accounts thereunder, the Valentine Life email domains and the individual accounts thereunder, ZenDesk, Clickbank, and all underlying databases, customer lists, contact information and other data are hereinafter referred to as the "Business Accounts").

**Valentine Life Operating Agreement.**

19. Valentine Life is governed by the Operating Agreement. A true and accurate copy of the Operating Agreement is attached hereto as **Exhibit B**.

20. The Operating Agreement provides in relevant part:

> Section 5.1 <u>Cash Flow</u>. Cash Flow, if any, shall be distributed at such dates as determined by unanimous written consent of the Shareholders to the Shareholders in proportion to their respective Percentage Interest. RSD and VanDeHey shall be sole signatories on the Company Bank Account.

> ***

> Section 6.1 <u>Manager</u>. The company shall be managed by RSD and VanDeHey. Meetings of the Manager shall be required annually.

> Section 6.2 <u>Manager of Operational and Day-to-Day Business and Affairs</u>. The operational and day-to-day business and affairs of the Company shall be operated and managed jointly by RSD and Todd VanDeHey. RSD and VanDeHey are authorized to take any actions, to make any determinations and to provide any consents permitted to be taken, made or provided by the Company under this Agreement; provided, however, that RSD and VanDeHey shall not take any action, make any determination or provide any consent expressly reserved by Section 6.4 of this Agreement to the Shareholders. No Shareholder, other than RSD or VanDeHey (subject to the terms of this Agreement), shall, acting individually, have the power to sign or bind the Company unless duly authorized to do so by unanimous written consent of the Shareholders. Notwithstanding the foregoing, RSD and VanDeHey shall have no liability to the Shareholders or the Company for exceeding the authority granted to him in the event a decision made or an action taken by him was made or taken with a reasonable good faith belief that such decision or action was (i) within the scope of the operational and day-to-day business and affairs of the Company and (ii) not prohibited by the terms of this Agreement.

> ***

> Section 6.4 <u>Actions Expressly Reserved to the Shareholders</u>. Notwithstanding the authority granted to RSD in Section 6.2 above, RSD may not do or permit to be done any of the following without the unanimous written consent of the Shareholders:
>
> (a) Any act or thing which the Act or this Agreement requires to be approved, consented to or authorized by all the Shareholders;
>
> (b) Voluntarily cause the dissolution of the Company;
>
> (c) Sell all or a significant part of the Company assets, or engage in any material recapitalization or merger;
>
> (d) Incur any liabilities in excess of $50,000; or
>
> (e) File any lawsuit or proceedings.

\*\*\*

Article 10 <u>WAIVERS</u>: Notwithstanding any provision of the Act, each Shareholder hereby waives any right to seek or assert: (a) judicial dissolution of the Company; (b) dissenters' rights; or (c) derivative actions on behalf of the Company.

\*\*\*

Section 11.9 <u>Mediation/Arbitration – Dispute Resolution</u>. Any controversy or claim arising out of or relating to this Agreement or breach thereof shall first be submitted to mediation with a retired judge. If either party fails engage [sic] in mediation, that party shall lose his right to collect attorneys fees and costs as the prevailing party in any subsequent mediation. In the event that the mediation does not resolve the dispute, the Shareholders are to submit the dispute to binding, non-appealable arbitration administered by the Judicial Arbitration Mediation Services (JAMS) at one of its offices in Clark County. [T]he parties hereby consent to the jurisdiction of the Superior Court for Clark County, Nevada, and of the United States District Court for the Central District of Nevada, for injunctive relief, specific performance or other relief in aid of any proceedings hereunder, but not otherwise….

*See* **Exhibit B**.

**Plaintiff and Defendants' Course of Dealing in the Operation of Valentine Life.**

21. While Valentine Life was incorporated in Nevada, its principal place of business is located in New York.

22. Valentine Life has a total of seven employees/contractors, the majority of whom primarily work in New York.

23. In addition, Valentine Life has a New York office space.

24. It was the parties' agreement and course of dealing for Plaintiff to run the day-to-day operations of Valentine Life from New York, as the only shareholder living in New York.

25. The other shareholder of Valentine Life, defendant RSD, has a principal place of business located in Nevada.

26. The parties agreed that part of Plaintiff's obligations in the day-to-day operation of Valentine life would be to, without limitation, supervise payroll; approve expenses; handle funds and bank accounts; oversee the creation of content for the company; oversee the answering of email inquiries related to the company's products and services; and present workshops, seminars and classes.

27. In essence, Plaintiff ran the company.

28. This included creating content for the Social Media Accounts that would drive consumers to the Websites to purchase products and services.

29. Customers' online purchases of products and services from the Websites are a major source of revenue for Valentine Life.

30. Without content being generated on the Social Media Accounts to drive customers to the Websites, Valentine Life's ability to generate revenue would be hindered.

31. Moreover, without the Websites, Valentine Life would be unable to sell its products and services.

32. Simply put, without Plaintiff running the day-to-day operations of Valentine Life the company would not be profitable and would be greatly and irreparably devalued.

33. In addition, through the parties' course of dealing, Plaintiff had sole signatory authority of Valentine Life's bank accounts and managed the day-to-day operation of the company.

34. Upon the parties' agreement and course of dealing, Defendants solely had view-only access to Valentine Life's bank account.

35. Defendants were not added as a signatory on Valentine Life's bank account.

36. As of August 10, 2017, Defendants did not have authority to withdraw funds from Valentine Life's bank account.

37. Defendants did not otherwise have authority to make changes to Valentine Life's bank account.

38. Likewise, Defendants allowed Plaintiff to manage and operate the day-to-day business of Valentine Life.

39. Indeed, Defendant RSD received its proportion of any profit distributions.

**Defendants have Undertaken Activities That are Inimical to the Continued Existence of Valentine Life.**

40. Defendant RSD employs/engages a number of professionals who, utilizing RSD's and their own websites and social media accounts, provide services similar to Valentine Life (classes, workshops, seminars, products and services teaching men who want to learn

techniques for successfully navigating the dating world).

41. Indeed, defendant Kho and defendant Cook both individually work as RSD coaches in competition with Plaintiff.

42. As part of Defendants' business, defendant Kho uses the alias "Papa" and defendant Cook uses the alias "Tyler".

43. Defendants' products and services are separate from Valentine Life.

44. Prior to August 10, 2017, Plaintiff and Valentine Life worked in conjunction with Defendants to provide a complementary selection of products and services geared toward the same market.

45. Thus, defendant RSD is not only a partial owner of Valentine Life but also a competitor of Valentine Life.

46. Defendants abused defendant RSD's role as a shareholder to access Valentine Life's assets in order to eliminate Plaintiff and Valentine Life as competitors.

47. Defendants' actions demonstrate an intent to wrongfully undermine the viability of their competitor Valentine Life.

48. Moreover, Defendants' actions are in degradation of public policy which promotes a free market and fair play among competitors on an even playing field.

**Defendants Engaged in Unauthorized and *Ultra Vires* Act That Disrupted Valentine Life's Ability to Operate.**

49. On or about August 11, 2017, Defendants unilaterally and without authorization began to restrict Plaintiff's access to the Websites, Social Media Accounts, Business Accounts and Valentine Life's finances.

50. As will be detailed below, between on or about August 11, 2017 and on or about August 16, 2017, Defendants engaged in the systematic disruption and destruction of Valentine Life's business by, *inter alia*, restricting Plaintiff's access to the Websites and Social Media Accounts; removing content and products from the Websites and Social Media Accounts; and preventing the use of the Business Accounts by Plaintiff and Valentine Life.

. . .

51. In doing so, Defendants altered the Websites, Social Media Accounts, Business Accounts and financial accounts to the detriment of Valentine Life.

52. This has materially impaired Valentine Life's operations.

53. In addition, this was in contravention of the parties' agreement and course of dealing that Plaintiff would exclusively undertake the day-to-day operation of Valentine life including, without limitation, supervising payroll; approving expenses; handling funds and bank accounts; overseeing the creation of content for the company; overseeing the response to customer inquiries related to the company's products and services; and presenting workshops, seminars and classes.

**Defendants Restricted Plaintiff's Access to the Websites and Proceeded to Take the Websites Down.**

54. On or about August 11, 2017, Defendants restricted and removed Plaintiff's access to a number of the Websites.

55. Thereafter, Defendants began taking down the Websites.

56. This prevented Valentine Life from selling or promoting its products on the Websites or accepting sales transactions.

57. The Websites that Defendants took down include, without limitation:

    a. Openingmastery.com. A true and accurate copy of a screenshot showing OpeningMastery.com offline is attached hereto as **Exhibit C**.

    b. RSDImmersion.com. A true and accurate copy of a screenshot showing RSDImmersion.com offline is attached hereto as **Exhibit D**.

    c. ValentineLife.com. A true and accurate copy of a screenshot showing ValentineLife.com offline is attached hereto as **Exhibit E**.

58. ValentineLife.com was temporarily reactivated; however, it was improperly restored to a version of the website from April 2016 and did not include the significant updates that had been made to the website since that time.

59. Then, Defendants caused ValentineLife.com to be taken down a second time.

. . .

60. Defendants' unilateral and unauthorized actions have prevented Plaintiff from providing scheduled updates to the Websites in furtherance of Valentine Life's business.

61. This is likely to result in the permanent loss of some potential and current customers, and is causing, and will continue to cause, irreparable harm to the goodwill of Valentine Life and the Plaintiff.

62. Defendants' actions have impaired Plaintiff's ability to have Valentine Life provide: (a) scheduled classes that customers have already purchased; and (b) customer service solutions to customers.

63. For example, Defendants unilaterally announced the cancellation of the Valentine Life program "Immersion" which was imminently scheduled to take place in Amsterdam.

64. Plaintiff was at all times ready, willing and able to proceed with the "Immersion" program and only learned that it was being cancelled by reading an online forum that referenced the fact that Defendants had done so. To say the least, the Defendants had no authority to cancel "Immersion", and by doing so, they further degraded the value of Valentine Life's goodwill and brand.

65. This is yet another example of innocent third-parties being harmed by Defendants' actions.

66. Indeed, a Valentine Life customer posted under the user name "noellohrey" on defendant Cook's Instagram Page (RSDTyler). The user apparently had purchased the Valentine Life Immersion program and inquired whether it would take place because customer service had not answered his inquiries for three days. A true and accurate copy of the Instagram posting is attached hereto as **Exhibit F**.

67. Under the management of Plaintiff, it was Valentine Life's practice to respond to customer service requests within twenty-four hours.

68. Defendants improperly took over the accounts and are not adequately servicing the business.

69. Defendants' actions are tarnishing and damaging the brand, reputation and goodwill of Plaintiff and Valentine Life.

70. In addition, Defendants' actions have fostered uncertainty among consumers as to the continued availability of Valentine Life's business.

71. Without limitation, consumers are questioning whether they will be able to continue to access the Valentine Life content for which they previously paid. *See* **Exhibit F**.

72. This has led consumers to illegally pirate Valentine Life's content, further devaluing and causing damage to Valentine Life's business and assets.

73. This action is evidenced by Internet postings on Reddit and in the private "Women by Todd" Facebook group.

   a. For example, one Reddit user started a thread titled "Heads up, Real Social Dynamics has kicked out RSD Todd [Plantiff]. If you own any RSD Todd product logins, DOWNLOAD all the content as those sites may go down." A true and accurate copy of the Reddit thread is attached hereto as **Exhibit G**.

   b. In addition, users in the private "Women by Todd" Facebook group have discussed and exchanged methods of downloading Valentine Life's content without authorization. A true and accurate copy of relevant postings from the private "Women by Todd" Facebook group is attached hereto as **Exhibit H**.

74. The demand for Valentine Life's goods and services will be substantially and irreparably harmed if the market becomes saturated with unauthorized copies of Valentine Life's products.

**Defendants Restricted Plaintiff's Access to the Social Media Accounts.**

75. On or about August 11, 2017, Defendants restricted and removed Plaintiff's access to a number of the Social Media Accounts.

76. Thereafter, Defendants unilaterally and without authorization removed the content from a number of the Social Media Accounts.

77. This precluded the primary means of promotion or advertisement of Valentine Life's business, services and products.

78. The Social Media Accounts that Defendants took down include, without limitation:

a. YouTube.com/1minuteattraction. A true and accurate copy of a screenshot of YouTube.com/1minuteattraction is attached hereto as **Exhibit I**.

b. YouTube.com/RSDTodd. A true and accurate copy of a screenshot of YouTube.com/RSDTodd is attached hereto as **Exhibit J**.

c. YouTube.com/toddfreetour. A true and accurate copy of a screenshot of YouTube.com/toddfreetour is attached hereto as **Exhibit K**.

d. Todd Valentine Google+ Account. A true and accurate copy of a screenshot of Todd Valentine Google+ Account is attached hereto as **Exhibit L**.

e. Todd Valentine (RSD Todd) Google+ Account. A true and accurate copy of a screenshot of Todd Valentine (RSD Todd) Google+ Account is attached hereto as **Exhibit M**.

79. YouTube is the main Social Media Account Valentine Life uses to advertise and promote its products and services.

80. The Google+ pages are linked to YouTube and are a means of distributing the Valentine Life content through social media.

81. Defendants' actions prevented Plaintiff from providing scheduled updates to the Social Media Accounts in furtherance of Valentine Life's business.

82. Without regular updates to Valentine Life's Social Media Accounts, Valentine Life's Internet metrics will be lowered; therefore, devaluing Valentine Life's primary asset.

83. In essence, when Valentine Life generates content on its Social Media Accounts or Websites, search engine algorithms categorize the Social Media Account or Website as active.

84. The search engine algorithms assume the more updated an Internet Page is, the more valuable the information the contents of that page likely is.

85. Websites that are updated more often generally appear at the top of search engine results.

86. If the Social Media Accounts and Websites are down, then the search engine algorithms de-list them.

87. This will lead to the Social Media Accounts and Websites not having sufficient hierarchy in search engine results.

88. If the Social Media Accounts and Websites do not populate in search engine results, then Valentine Life's ability to attract new viewers diminishes.

89. A decrease in the number of viewers Valentine Life's Social Media Accounts receive means fewer potential new customers are directed to the Websites where they may purchase Valentine Life's products and services.

90. Without generating new customers, Valentine Life's ability to generate revenue and continue to operate as a business is severely hampered.

**Defendants Restricted Plaintiff's Access to the Business Accounts.**

91. Defendants unilaterally and without authorization removed Plaintiff's access to the Business Accounts.

92. Without access to the Business Accounts, Valentine Life is unable to (a) process payments for products or move revenue from the purchase of products into its bank accounts; (b) contact customers about upcoming classes and seminars; (c) promote new content and products; (d) respond to customers' inquiries about products and services already purchased; and (e) process refunds to customers in the guaranteed refund period.

93. Defendants have hindered Valentine Life's ability to collect revenue, market any new content, provide customer service and deliver on products and services for which customers previously paid and had contracted.

94. In essence, Defendants' actions have impaired Valentine Life from operating; hence, harming not only the company but also Plaintiff who is a fifty-percent (50%) shareholder.

95. As will be detailed below, Defendants' have effectively dissolved Valentine Life as a business.

96. Indeed, defendant Kho has admitted to this fact on RSD Internet Forum postings, stating, "Todd's business with Real Social Dynamics was dissolved due to a difference in vision with how Todd wanted to do business with Real Social Dynamics". A true and accurate copy of the Internet positing is attached hereto as **Exhibit N** (emphasis added).

97. Pursuant to the Operating Agreement, Defendants were specifically prohibited from unilaterally dissolving Valentine Life. *See* **Exhibit B** (Operating Agreement, Section 6.4(b)).

**Defendants Removed Funds from Valentine Life's Bank Account Without Authorization.**

98. On or about August 14, 2017, Defendants unilaterally, and without authorization or consent from Plaintiff, absconded with, and converted, the total amount held in Valentine Life's Bank of America bank accounts, which was more than Sixty-Nine Thousand Dollars ($69,000.00).

99. On or about August 15, 2017, Plaintiff contacted Bank of America; filed fraud claim; and was able to have the funds restored to Valentine Life's bank accounts.

100. The same day, Defendants unilaterally, and without authorization or consent from Plaintiff, improperly modified the Bank of America bank account, removing Plaintiff's access from the bank account.

101. On or about August 16, 2017, Plaintiff contacted Bank of America and was able to restore his access.

102. Unfortunately, the same day, Defendants, for a third time, unilaterally, and without authorization or consent from Plaintiff, improperly modified the Bank of America bank account and caused an "account takeover" preventing Plaintiff from accessing Valentine Life's funds.

103. Defendants' actions have hindered Valentine Life's ability to meet its ongoing financial obligations or repay debts in violation of the Operating Agreement.

104. In addition, Defendants' actions are in contravention of the parties' agreement that Plaintiff would exclusively undertake the day-to-day operations of Valentine Life including, without limitation, supervising payroll; approving expenses; handling funds and bank accounts; overseeing the creation of content for the company; overseeing the answering of email inquiries related to the company's products and services; and presenting workshops, seminars and classes. . . .

**Defendants have Threatened to Unilaterally Dissolve Valentine Life.**

105. Defendant Kho indicated that Defendants are effectively dissolving Valentine Life, *to wit*: "Todd's business with Real Social Dynamics <u>was dissolved</u> due to a difference in vision with how Todd wanted to do business with Real Social Dynamics." *See* **Exhibit N** (emphasis added).

106. Such action is in contravention of Section 6.4 of the Operating Agreement which prohibits Defendant RSD from "[v]oluntarily caus[ing] the dissolution of the Company [Valentine Life]" without Plaintiff's consent. *See* **Exhibit B**.

107. Moreover, RSD may not seek judicial action to dissolve Valentine Life as the parties waived that right in Article 10 of the Operating Agreement. *Id.*

108. Therefore, any attempt by Defendants to unilaterally dissolve Valentine Life would be an *ultra vires* act to the detriment of Plaintiff and Valentine Life.

**Defendants' Actions are in Contravention of the Operating Agreement and Therefore Constitute *Ultra Vires* Acts.**

109. Plaintiff and Defendants agreed, and their course of dealing provided, that Plaintiff would manage the day-to-day operation of Valentine Life.

110. Defendants were not authorized to unilaterally disrupt Valentine Life's business operations nor take down its content on the Websites and Social Media Accounts.

111. Under Section 6.4 of the Operating Agreement, defendant RSD was prohibited from unilaterally restricting Plaintiff's access to, taking down and use of the Websites as well as the Social Media Accounts and Business Accounts without Plaintiff's consent. *See* **Exhibit B**.

112. Moreover, Defendants were not authorized to effectively dissolve the company, without the consent of Plaintiff—which they did not have.

113. In spite of that, they improperly and unilaterally removed all the funds from Valentine Life's bank accounts; impaired the viability of the Social Media Accounts and Websites; and denied access to, and use of, the Business Accounts and email accounts.

114. Defendants have engaged in *ultra vires* acts that have disrupted Valentine Life's business and its ability to continue operations.

**COUNT ONE**
**(Provisional Remedy Pursuant to NRS 38.222)**

115. On or about August 17, 2017, the Parties agreed to invoke Section 11.9 of the Operating Agreement that provides "[a]ny controversy or claim arising out of or relating to [the Operating] Agreement" shall be submitted to mediation and if mediation fails, to arbitration.

116. However, Plaintiff also reiterated his demand that Defendants restore the Social Media Accounts, Websites, Business Accounts, email accounts, and Valentine Life's funds, along with Plaintiff's access thereto.

117. To date, Defendants have failed to comply with Plaintiff's demand.

118. Defendants' actions have, and will continue to, irreparably harm Plaintiff and Valentine Life.

119. Pursuant to NRS 38.222, "[b]efore an arbitrator is appointed and is authorized and able to act, the court, upon motion of a party to an arbitral proceeding and for good cause shown, may enter an order for provisional remedies to protect the effectiveness of the arbitral proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action."

120. The assets of Valentine Life are the subject matter of the parties' mediation/arbitration.

121. As such, injunctive relief is proper to ensure the effectiveness of the arbitral proceeding.

122. Based upon the sheer volume and destructive character of the wrongful acts aforesaid, it is incumbent upon this Court to exercise its authority under NRS 38.222 and enter the provisional remedy as outlined below.

**WHEREFORE**, Plaintiff hereby requests a temporary restraining order, preliminary and permanent injunction compelling Defendants to immediately (a) restore to their August 10, 2017 status Plaintiff's and Valentine Life's other employees'/contractors' access to, and use of, the Social Media Accounts, Websites, Business Accounts, email accounts and bank accounts and any of their underlying content, databases, customer lists, contact information and other data of

them; (b) remit any and all Valentine Life funds that are in their possession or control to the account(s) from which they were taken; and (c) provide to Plaintiff any and all support tickets and other written and/or electronic communications, and/or written summaries of oral communications, relating to Valentine Life that they have received from all customers, potential customers, vendors, employees/contractors and/or any other person or entity.

Furthermore, Plaintiff also hereby requests a temporary restraining order, preliminary and permanent injunction enjoining Defendants from: (a) interfering with the business of Valentine Life.  This shall include, without limitation, restricting Plaintiff's and Valentine Life's other employees'/contractors' access to, and/or use of, or otherwise modifying, transferring, terminating, interfering with, the Social Media Accounts, Websites, Business Accounts, email accounts and bank accounts and any of their underlying content, databases, customer lists, contact information and other data of them; or (b) effectively or statutorily dissolving, liquidating or otherwise terminating the business of Valentine Life, including without limitation, filing Certificates of Dissolution with respect to Valentine Life.

Furthermore, Plaintiff hereby requests that he be empowered to continue to run the business in a manner that allows Valentine Life to continue its day-to-day operations and pay financial obligations as they become due.

RESPECTFULLY SUBMITTED this 22nd day of August, 2017

McDONALD CARANO LLP

By:  */s/George F. Ogilvie III*
George F. Ogilvie III (NSBN 3552)
Amanda C. Yen (NSBN 9726)
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102

NISSENBAUM LAW GROUP, LLC
Steven L. Procaccini (*Pro Hac Vice To Be Submitted*)
Chris Ellis Jr. (*Pro Hac Vice To Be Submitted*)
2400 Morris Avenue, Suite 301
Union, NJ 07083

*Attorneys for plaintiff Todd VanDeHey*

NISSENBAUM LAW GROUP, LLC
Steven L. Procaccini (*Pro Hac Vice To Be Submitted*)
Chris Ellis Jr. (*Pro Hac Vice To Be Submitted*)
2400 Morris Avenue, Suite 301
Union, NJ 07083

*Attorneys for plaintiff Todd VanDeHey*

Under penalties of perjury, the undersigned declares that he is the Plaintiff named in the foregoing complaint and knows the contents thereof; that the pleading is true of his or her own knowledge, except as to those matters stated on information and belief, and that as to such matters he or she believes it to be true.

_____
Todd VanDeHey

Dated: August 21, 2017



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on or about the 22nd day of August, 2017, a true and correct copy of the foregoing **VERIFIED COMPLAINT** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

  */s/ Jelena Jovanovic*
  An employee of McDonald Carano LLP

**INDEX OF EXHIBITS**

| Description | Exhibit No. |
| --- | --- |
| Valentine Life, Inc. Articles of Incorporation | A |
| Valentine Life, Inc. Operating Agreement | B |
| OpeningMastery.com Screenshot | C |
| RSDImmersion.com Screenshot | D |
| ValentineLife.com Screenshot | E |
| User "noellohrey" Instagram comment | F |
| Reddit Thread | G |
| Private "Todd Valentine" Facebook Group Screenshots | H |
| YouTube.com/1MinuteAttraction Screenshot | I |
| YouTube.com/RSDTodd Screenshot | J |
| YouTube.com/toddfreetour Screenshot | K |
| Todd Valentine Google+ Account Screenshot | L |
| Todd Valentine (RSD Todd) Google+ Account Screenshot | M |
| Defendant Kho Internet Forum Posting | N |