George F. Ogilvie III (NSBN #3552)
Amanda C. Yen (NSBN #9726)
McDONALD CARANO LLP
2300 W. Sahara Ave, Suite 1200
Las Vegas, NV 89102
Telephone:  702.873.4100
Fax:  702.873.9966
gogilvie@mcdonaldcarano.com
ayen@mcdonaldcarano.com

Steven L. Procaccini (*Pro Hac Vice To Be Submitted*)
Chris Ellis Jr. (*Pro Hac Vice To Be Submitted*)
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, Suite 301
Union, NJ 07083
Telephone: 908-686-8000
Fax: 908-686-8550
sp@gdnlaw.com
ce@gdnlaw.com

*Attorneys for plaintiff Todd VanDeHey*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TODD VANDEHEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual,<br><br>Defendants. | CASE NO.:<br><br>**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Local Rule 7-4, and NRS 38.222, plaintiff Todd VanDeHey ("Plaintiff") brings this Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("Emergency Motion") and respectfully requests the Court enter a temporary restraining order and preliminary injunction:

1.  requiring defendants Real Social Dynamics, Inc. ("RSD"), Nicholas Kho ("Kho"), and Owen Cook ("Cook") (collectively, "Defendants") to immediately (a) restore to

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

their August 10, 2017 status Plaintiff's and Valentine Life Inc.'s ("Valentine Life") other employees'/contractors' access to, and use of, the Social Media Accounts, Websites, Business Accounts (as those terms are defined below), email accounts and bank accounts and any of their underlying content, databases, customer lists, contact information and other data of them; (b) remit any and all Valentine Life funds that are in their possession or control to the account(s) from which they were taken; and (c) provide to Plaintiff any and all support tickets and other written and/or electronic communications, and/or written summaries of oral communications, relating to Valentine Life that Defendants have received from all customers, potential customers, vendors, employees/contractors and/or any other person or entity;

2. enjoining Defendants from: (a) interfering with the business of Valentine Life. This shall include, without limitation, restricting Plaintiff's and Valentine Life's other employees'/contractors' access to, and/or use of, or otherwise modifying, transferring, terminating and/or interfering with, the Social Media Accounts, Websites, Business Accounts, email accounts and bank accounts and any of their underlying content, databases, customer lists, contact information and other data of them; or (b) effectively or statutorily dissolving, liquidating or otherwise terminating the business of Valentine Life, including without limitation, filing Certificates of Dissolution with respect to Valentine Life; and

3. empowering Plaintiff to continue to run the business in a manner that allows Valentine Life to continue its day-to-day operations and pay financial obligations as they become due.

A proposed order granting Plaintiff's Emergency Motion for a Temporary Restraining Order is attached hereto as **Exhibit 1**.

### DECLARATION OF STEVEN L. PROCACCINI, ESQ. IN SUPPORT OF EMERGENCY MOTION AND PURSUANT TO LOCAL RULE 7-4

I, STEVEN L. PROCACCINI, declare as follows:

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1.     I am of counsel to the Nissenbaum Law Group, LLC, co-counsel for Plaintiff in the above-captioned litigation.  My *pro hac vice* application is forthcoming.  Pursuant to Local Rule 7-4, this declaration is submitted in support of Plaintiff's Emergency Motion.

2.     This declaration is made of my own personal knowledge except where stated on information and belief, and as to those matters, I believe them to be true, and, if called as a witness, I would competently testify thereto.

3.     <u>Nature of the Emergency</u>: The Emergency Motion is sought to prevent Defendants from disrupting and destroying the business operations of Valentine Life pending alternative dispute resolution proceedings. Pursuant to Section 11.9 of their operating agreement, Plaintiff and Defendants have agreed to enter into alternative dispute resolution regarding their dispute over Valentine Life. ECF No. 1, ¶ 19, Exhibit B. However, prior to agreeing to enter into alternative dispute resolution—in derogation of their legal obligations— Defendants engaged in the systematic disruption and destruction of Valentine Life as a business, substantially and irreparably impairing Valentine Life's ability to operate. This Emergency Motion is brought to restore the *status quo ante* of Valentine Life prior to Defendants' unauthorized and *ultra vires* actions.

4.     <u>Office Addresses and Telephone Numbers</u>: The office address and telephone numbers of Plaintiff and all affected parties are as follows:

a.     Plaintiff Todd VanDeHey
       c/o Valentine Life, Inc.
       448 West 19th Street, #PHA
       New York, New York 10011
       702-600-3559

b.     Defendant Real Social Dynamics, Inc.
       1930 Village Center Circle, #3-9653
       Las Vegas, Nevada 89134
       888-546-7286

c.     Defendant Nicholas Kho
       c/o Real Social Dynamics, Inc.
       1930 Village Center Circle, #3-9653
       Las Vegas, Nevada 89134
       888-546-7286

d.      Defendant Owen Cook
c/o Real Social Dynamics, Inc.
1930 Village Center Circle, #3-9653
Las Vegas, Nevada 89134
888-546-7286

5.      <u>Statement Certifying Personal Consultation</u>: On August 12, 15, 16, 18 and 20, 2017, our firm contacted counsel for defendant RSD, Steven Knauss, Esq., with the law firm of Maier Gutierrez & Associates, and requested Defendants restore the Social Media Accounts, Websites, Business Accounts and funds as well as Plaintiff's access to those items pending alternative dispute resolution.

6.      Defendants, by and through their counsel, rejected Plaintiff's demands.

7.      On August 22, 2017, my office notified Defendants, through Mr. Knauss, of the Emergency Motion, via email to Mr. Knauss  (sgk@mgalaw.com) and Joseph Gutierrez, Esq. (jag@mgalaw.com) and regular mail, and as to the individual Defendants via email to Nicholas Kho (papa@realsocialdynamics.com) and Owen Cook (tyler@realsocialdynamics.com) and regular mail.

8.      Accordingly, pursuant to Local Rule 7-4, I hereby certify that, after participating in attempts to meet-and-confer to resolve the dispute, Plaintiff has been unable to resolve this matter without court action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:  August 22, 2017.

/s/Steven L. Procaccini
Steven L. Procaccini

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      FACTUAL ALLEGATIONS**

Plaintiff is the incorporator, sole director and a fifty-percent (50%) shareholder of Valentine Life.  ECF No. 1, ¶ 8, Exhibit A.  Defendant RSD owns the remaining fifty-percent (50%) of the shares of Valentine Life.  *Id.*, ¶ 5.  Defendants Kho and Cook are co-owners and/or

McDONALD ⚕ CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1   principals of defendant RSD. *Id.*, ¶¶ 6-7.  Valentine Life is governed by an operating agreement

2   dated October 5, 2015 ("Operating Agreement").  *Id.*, ¶ 19, Exhibit B.

3          Valentine Life provides online and in-person classes and other instructional material to

4   men on how to attract and date women.  *Id.*, ¶ 10.  Valentine Life primarily operates, advertises

5   and provides services through various internet Websites and Social Media Accounts. *Id.*, ¶ 12.

6   The websites operated by Valentine Life include, without limitation: (1) 3GirlsADay.com; (2)

7   WomenByTodd.com;    (3)    TextAndDatesmachine.com;    (4)    DayGameByTodd.com;    (5)

8   ValentineUniversity.com;     (6)     ValentineLife.com;     (7)     AttractionUnlocked.com;     (8)

9   RSDImmersion.com; and (9) OpeningMastery.com (collectively, the "Websites").  *Id.*, ¶ 13.

10  The Social Media Accounts operated by Valentine Life include without limitation: (1)

11  youtube.com/user/RSDTodd;                (2)                youtube.com/user/toddfreetour;

12  youtube.com/1minuteattraction;      (3)      plus.google.com/u/0/10544201590615030298;      (4)

13  plus.google.com/110840022199142432968;         (5)         twitter.com/rsdtodd;         (6)

14  instagram.com/toddvalentineofficial/; (7) facebook.com/rsdtodd; and (8) facebook.com/toddrsd

15  (collectively, the "Social Media Accounts").  *Id.*, ¶ 14.

16         Valentine Life also communicates with its customers via the online email marketing

17  automation and reporting platform provided through the third-party Ontraport.  *Id.*, ¶ 15. In

18  addition, Valentine Life processes and receives payments through the online merchant services

19  systems provided by the third-party InChek.  *Id.*, ¶ 16.

20         As part of the ongoing business of Valentine Life, RSD contributed certain infrastructure

21  and resources to the entity and Plaintiff was responsible for running the day-to-day business of

22  the company. *Id.*, ¶ 17. As part of that infrastructure, Valentine Life also utilized RSD email

23  accounts, Valentine Life email accounts and Valentine Life ZenDesk and Clickbank accounts to

24  facilitate customer service (Ontraport, InChek, the RSD email domains, the Valentine Life email

25  domains, ZenDesk and Clickbank are collectively referred to as the "Business Accounts"). *Id.*, ¶

26  18.

27         On or about August 11, 2017, Defendants unilaterally and without authorization began to

28  restrict Plaintiff's access to, and use of, the Websites, Social Media Accounts and Business

Accounts. *Id.*, ¶ 49.  Between on or about August 11, 2017 and on or about August 16, 2017, Defendants engaged in the systematic disruption and destruction of Valentine Life's business by restricting Plaintiff's access to the Websites and Social Media Accounts; removing content and products from the Websites and Social Media Accounts; and preventing the use of the Business Accounts by Plaintiff and Valentine Life.  *Id.*, ¶ 50.  In doing so, Defendants have altered the Websites, Social Media Accounts and Business Accounts to the detriment of Valentine Life and materially and substantially impaired Valentine Life's operation as an ongoing business.  *Id.*, ¶¶ 51-52.

In addition, Defendants absconded with, and converted, funds from Valentine Life's Bank of America bank account, depleting the account. Once Plaintiff contacted Bank of America and had the funds restored, Defendants unilaterally restricted Plaintiff's access to the account.  *Id.*, ¶¶ 98-102. Without the funds that were held in its Bank of America bank account, Valentine Life will be unable to meet its future and ongoing compensation obligations or pay its debts.  *Id.*, ¶¶ 103-104.

Defendants have unilaterally impaired Valentine Life's ability to operate in contravention of the Operating Agreement. Defendants' actions are preventing Valentine Life from (a) advertising or promoting its business; (b) bringing in revenue; (c) meeting its ongoing financial obligations; (d) paying innocent third-party creditors; and/or (e) providing services to innocent third-parties who have already provided payment to Valentine Life for products and services.  Defendants' actions are not authorized by the Operating Agreement and constitute *ultra vires* acts.

Under Section 11.9 of the Operating Agreement, the parties are required to submit [a]ny controversy or claim arising out of or relating to [the Operating] Agreement" to mediation and if mediation fails, to submit to arbitration. Pursuant to Section 11.9 of the Operating Agreement, Plaintiff and Defendants have agreed to do so. *Id.,* ¶ 115.

Plaintiff has demanded that Defendants restore the Social Media Accounts, Websites, Business Accounts, email accounts and funds along with Plaintiff's access to those items on

1    numerous occasions.  *See* Procaccini Decl., ¶ 5.  Defendants have refused Plaintiff's demands.

2    *Id.*, ¶ 6.

3          Accordingly, Plaintiff has filed the Emergency Motion to compel Defendants to

4    immediately restore Valentine Life's Social Media Accounts, Websites, Business Accounts,

5    email accounts and funds as well as Plaintiff's access to, and use of, those items and all

6    underlying content, databases, customer lists, contact information and other data of them, and to

7    preliminarily enjoin Defendants from interfering with the business of Valentine Life pending

8    alternative dispute resolution.

9          In sum, this Emergency Motion seeks to compel Defendants to return the operation of

10   Valentine Life to the *status quo* prior to Defendants' *ultra vires* acts.

11   **II.     LEGAL ARGUMENT**

12        **A.     The Court is Authorized to Provide a Provisional Remedy in the Form of A
                   Temporary Restraining Order and Preliminary Injunction to Protect the
13                 Effectiveness of the Arbitral Proceeding.**

14         Pursuant to NRS 38.222, "[b]efore an arbitrator is appointed and is authorized and able

15   to act, the court, upon motion of a party to an arbitral proceeding and for good cause shown,

16   may enter an order for provisional remedies to protect the effectiveness of the arbitral

17   proceeding to the same extent and under the same conditions as if the controversy were the

18   subject of a civil action."

19         An application for injunctive relief is an appropriate vehicle to trigger the provisions of

20   NRS 38.222. *See City of Reno v. IAFF, Local 731*, 130 Nev. Adv. Op. 100 (2014). Indeed, as set

21   forth below, many states that have adopted the Uniform Arbitration Act ("**Act**"), upon which the

22   Nevada Uniform Arbitration Act of 2000 is based, have found that the issuance of a temporary

23   restraining order and/or preliminary injunction is an appropriate remedy under the Act.

24         In *Salvucci v. Sheehan*, 212 N.E.2d 243 (Mass. 1965), the court allowed the issuance of a

25   temporary restraining order to prevent the defendant from conveying or encumbering property

26   that was the subject of a <u>pending arbitration</u>. *See also Merrill Lynch, Pierce, Fenner & Smith,*

27   *Inc. v. District Court*, 672 P.2d 1015 (Colo. 1983) (holding that the district court had authority to

28   grant preliminary injunctive relief to preserve *status quo* pending outcome of arbitration). In

MCDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

addition, federal courts have also allowed temporary restraining orders under the Act. *See Merrill Lynch v. Salvano*, 999 F.2d 211 (7th Cir. 1993) (allowing temporary restraining order to prevent employees from soliciting clients or disclosing client information in anticipation of securities arbitration.)

Therefore, the Court is authorized under the Act to enter a temporary restraining order and preliminary injunction pursuant to NRS 38.222 "to protect the effectiveness of the arbitral proceeding." A temporary restraining order and preliminary injunction are necessary to protect the assets and business of Valentine Life—the very entity subject to the agreed-upon alternative dispute resolution proceeding(s)—which Defendants have systematically disrupted, hindered and destroyed.

**B.     The Standard to Enter a Temporary Restraining Order and Preliminary Injunction.**

The standard for issuing a temporary restraining order and preliminary injunction are the same. *See New Motor Vehicle Bd. Of Cal. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). "To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.'" *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1049 (9th Cir. 2015) (quoting *Pom Wonderful LLC v. Hubbard,* 775 F.3d 1118, 1124 (9th Cir. 2014)).

It is critical to note that the injunctive relief sought by Plaintiff is not just to maintain the *status quo*, it is to return to the *status quo* as of August 10, 2017; in other words, to the *status quo ante litem*. This is completely appropriate relief for a situation such as this: one in which the parties need the business to continue while a dispute over it is pending. *See Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963) ("[T]he usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.").

When a party seeks injunctive relief requiring affirmative action by the party enjoined, it is a mandatory injunction. *See Dahl v. HEM Pharmaceuticals Corp.,* 7 F.3d 1399, 1403 (9th Cir.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1993). The Court should grant a mandatory injunction when the facts and law clearly favor the moving party. *Id.* Based on the above, it is clear that the law and facts favor Plaintiff and thus the granting of the relief sought in the Emergency Motion for a temporary restraining order and preliminary injunction.

As outlined above, Defendants have unilaterally engaged in the systematic disruption and destruction of Valentine Life and have impeded Plaintiff's ability to operate Valentine Life. Defendants' actions are not only to the detriment of Valentine Life's shareholders, but also to Valentine Life's customers and creditors. Those customers and creditors are innocent third parties who will suffer if Valentine Life is unable to operate its business.

Accordingly, Plaintiff merely seeks to restore the *status quo ante* pending mediation and arbitration. Such relief is minimal and clearly within the bounds of law and power of the Court.

Moreover, Plaintiff will suffer irreparable harm to the brand, reputation and goodwill he has created in Valentine Life—the business of which he is the public face, sole director, manager and fifty percent (50%) shareowner—if Valentine Life is unable to operate.

In addition, the balance of the equities of imposing the injunction clearly weigh in favor of Plaintiff. Should the Court grant the Emergency Motion and the relief sought in the Verified Complaint, the Defendants will only be required to return Valentine Life to its prior operational status. Simply put, Defendants will be in the same place they were before they unilaterally engaged in *ultra vires* acts which have desecrated Valentine Life's business.

Finally, the injunction is in the public interest because if Valentine Life is able to continue to operate as a business, it will be able to serve innocent third parties who have been damaged by Defendants' *ultra vires* acts. Those third-parties include Valentine Life's customers who have already purchased products and services and who are currently unable to benefit from their purchases, as well as Valentine Life's creditors who are currently unable to be paid because of Defendants' continual absconding with, and conversion of, Valentine Life's funds.

For the foregoing reasons, Plaintiff requests the Court grant the relief sought in the Emergency Motion.

. . .

**C.      Plaintiff Has a Likelihood of Succeeding on the Merits of the Emergency Motion and Verified Complaint.**

As stated above, the purpose of an injunction is to preserve the *status quo ante litem*. *Tanner Motor Livery, Ltd., supra,* at 808. This is exactly the relief Plaintiff is seeking in the Emergency Motion. Plaintiff merely requests that Defendants return the Websites, Social Media Accounts, Business Accounts and Valentine Life's funds to the status they were at prior to Defendants' *ultra vires* acts. It would not impose a burden for Defendants to restore content to the Websites and Social Media Accounts and Plaintiff's access to, and use of, those accounts along with the Business Accounts.

Moreover, Plaintiff has a likelihood of success in obtaining the relief it seeks in the Verified Complaint for a provisional remedy pursuant to NRS 38.222.

Plaintiff has attempted to resolve this matter without judicial intervention, but Defendants have refused to restore the Social Media Accounts, Websites, Business accounts or funds, along with Plaintiff's access thereto. *See* Procaccini Decl., ¶¶ 5-6.  Thus, Plaintiff is left with little choice but to petition the Court for a provisional remedy in the form of a temporary restraining order and preliminary injunction in order to "protect the effectiveness of the arbitral proceeding." NRS 38.222.

As demonstrated above, jurisdictions throughout the country that have adopted the Act have found a temporary restraining order and/or preliminary injunction to be appropriate relief under the "Provisional Remedies" section of the Act. Therefore, Plaintiff has a high likelihood of success on the merits of receiving a provisional remedy.

**D.      Plaintiff, Valentine Life and Innocent Third-Parties are Likely to Suffer Irreparable Harm Without the Emergency Relief Sought.**

The Ninth Circuit has recognized that damage to reputation, advertising efforts and goodwill qualify as irreparable harm. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *see also American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009).  Here, Plaintiff will suffer irreparable harm if Defendants are not compelled to restore the Websites, Social Media Accounts and

Business Accounts. Without restoration of those accounts, Valentine Life cannot operate. In addition, if Plaintiff's access to the Websites, Social Media Accounts and Business Accounts are not restored, he cannot advertise or promote Valentine Life's products or services nor maintain the brand, reputation and goodwill of Valentine Life, or that he himself has built as the public face of Valentine Life. ECF 1 ¶ 12. Moreover, some of Valentine Life's products and services are accompanied by a guaranteed refund period, which Plaintiff has not been able to honor since Defendants' improper takeover of the company.

The Websites and Social Media Accounts are the essential assets of Valentine Life; they establish the brand in its primary marketplace. They constitute not only the goodwill of the company, but they are the *sine qua non* to the continued operation of the company at all. In essence, by removing the Websites and Social Media Accounts from the public domain, the Defendants' wrongful actions have essentially placed an "Out of Business" sign on Valentine Life's door.

In addition, Defendants' actions have substantially impaired the business operations of Valentine Life, causing irreparable harm to Plaintiff as the sole director, manager and fifty percent (50%) shareowner of Valentine Life. If Valentine Life is unable to continue to operate, it is more than likely that Defendants' actions will cause Valentine Life to go out of business, which would in turn cause Plaintiff to suffer irreparable harm in the loss of his business and injury to innocent third parties who have paid for its ongoing services.

For example, as stated in the Verified Complaint, "Defendants unilaterally announced the cancellation of the Valentine Life program 'Immersion' which was imminently scheduled to take place in Amsterdam. Plaintiff was at all times ready, willing and able to proceed with the 'Immersion' program and only learned that it was being cancelled by reading an online forum that referenced the fact that Defendants had done so. To say the least, the Defendants had no authority to cancel 'Immersion', and by doing so, they further degraded the value of Valentine Life's goodwill and brand." ECF No. 1, ¶¶ 63-64.

Another example is that "Defendants' actions prevented Plaintiff from providing scheduled updates to the Social Media Accounts in furtherance of Valentine Life's business. Without

regular updates to Valentine Life's Social Media Accounts, Valentine Life's Internet metrics will be lowered; therefore, devaluing Valentine Life's primary asset." *Id.,* ¶¶ 81-82.

Moreover, Defendants' actions in destroying Valentine Life's business operations are in direct contravention of Section 6.4(b) of the Operating Agreement which expressly prohibits RSD from "[v]oluntarily caus[ing] the dissolution of the Company [Valentine Life]." Indeed, Defendant Kho has admitted in an Internet posting that Valentine Life is being dissolved, stating "Todd's business with Real Social Dynamics <u>was dissolved</u> due to a difference in vision with how Todd wanted to do business with Real Social Dynamics." *Id.*, ¶ 96 (emphasis added).

Moreover, the uncertainty that Defendants have created respecting the continued availability of Valentine Life's products and services has led to consumers pirating Valentine Life's content. *Id.*, ¶¶ 72-73. Indeed, one Reddit user posted a thread entitled "Heads up, Real Social Dynamics has kicked out RSD Todd [Plaintiff]. If you own any RSD Todd product logins, <u>DOWNLOAD all the content as those sites may go down</u>." *Id.*, ¶ 73(a), Exhibit G (emphasis added). Thus, Defendants' actions are likely to reduce the demand for Valentine Life's paid content.

Plaintiff and Valentine Life will suffer irreparable harm if they are unable to continue to market and sell their products and services due to the market being saturated with pirated content. Clearly, the destruction and loss of Plaintiff's business constitutes irreparable harm. *See American Trucking Associations, Inc.*, 559 F.3d at 1058.

Likewise, as stated above, innocent third parties will suffer if Plaintiff's relief is not granted. Without access to the Websites, Social Media Accounts, Business Accounts or Valentine Life's bank accounts, and the content, databases, contact information and data underlying those accounts, Plaintiff is unable to (a) process payments for products or move revenue from the purchase of products into its bank accounts; (b) contact customers about upcoming classes and seminars; (c) promote new content and products; (d) respond to customer's inquiries about products and services already purchased; (e) provide customers with products and services already purchased; (f) meet Valentine Life's ongoing financial obligations; and (g) pay Valentine Life's creditors.

For example, it is axiomatic that under the wage and hour laws, employees who work for a company must be paid; if they are not, both the company and the individual principals and shareholders can be the subject of administrative and legal remedies. New York Business Corporation Law § 630. Currently, Valentine Life has seven employees/contractors. Valentine Life cannot meet its compensation obligations in New York State when all the money in the company's accounts has been wrongfully restricted by a Nevada corporation, out of control of the individual owner and manager Plaintiff who handles payment remittance in New York.

Undoubtedly, Plaintiff, Valentine Life and innocent third parties will suffer irreparable harm if Defendants are not compelled to restore the *status quo*. Plaintiff's Emergency Motion should therefore be granted.

E.      **The Balance of the Equities Weighs Clearly in Favor of Plaintiff.**

"To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999).

If Plaintiff's requested emergency relief is not granted, Valentine Life will be unable to operate while the parties attempt to resolve their dispute. In such event, its value will be depleted, or destroyed, thus rendering the alternative dispute resolution the parties have agreed to regarding Valentine Life moot.

In addition, should the Emergency Motion be granted, Plaintiff and Valentine Life will be able to resume providing customer service to third-parties who have already purchased Valentine Life's products and services.

Moreover, if the Emergency Motion is granted and Defendants are required to restore the Social Media Accounts, Websites and Business Accounts along with Plaintiff's access to, and use of, same, they will not suffer. Indeed, they would benefit as Defendant RSD owns fifty-percent (50%) of the shares of Valentine Life. Thus, if Valentine Life again becomes profitable, it benefits not only Plaintiff but also Defendants. It would not require great effort for Defendants to restore access to the Social Media Accounts, Websites and Business Accounts and provide

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Plaintiff access to those items again. In essence, Defendants merely need to "flip a switch" and provide Plaintiff with, or restore his prior, login credentials. Then, Plaintiff could continue to operate Valentine Life to the benefit of all parties.

Without the granting of the Emergency Motion, any alternative dispute resolution process is pointless as Defendants have unilaterally impaired Valentine Life's ability to operate, substantially and irreparably devaluing the company. If Defendants' actions are allowed to continue, there will be nothing left for the parties to mediate/arbitrate. Clearly the balance of the equities weighs in favor of Plaintiff.

**F.    The Public Interest Will be Served by the Issuance of the Requested Relief.**

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (quoting *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931 (9th Cir. 2003)).

Here, the requested injunctive relief is limited to the parties and thus the public interest factor is neutral.

However, the injunction is in the public interest as entering the requested relief would allow the continued operation of Valentine Life, a corporation that employees individuals, provides services to consumers and generates tax revenue. Without the requested relief, Defendants' unilateral and *ultra vires* acts have caused Valentine Life from ceasing to contribute to the public.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO

III.     **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court grant the relief requested herein, together with such other, further and different relief as the Court deems just, equitable and proper under the circumstances.

RESPECTFULLY SUBMITTED this 22nd day of August, 2017

McDONALD CARANO LLP

By:   */s/George F. Ogilvie III*
George F. Ogilvie III (NSBN 3552)
Amanda C. Yen (NSBN 9726)
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102

NISSENBAUM LAW GROUP, LLC
Steven L. Procaccini (*Pro Hac Vice To Be Submitted*)
Chris Ellis Jr. (*Pro Hac Vice To Be Submitted*)
2400 Morris Avenue, Suite 301
Union, NJ 07083

*Attorneys for plaintiff Todd VanDeHey*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on or about the 22nd  day of August, 2017, a true and correct copy of the foregoing **EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ Jelena Jovanovic*
An employee of McDonald Carano LLP

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

## INDEX OF EXHIBITS

| Description | Exhibit No. |
|---|---|
| ([Proposed] Order Granting Plaintiff's Emergency Motion for Temporary Restraining Order) | 1 |
| | |