George F. Ogilvie III (NSBN #3552)
Amanda C. Yen (NSBN #9726)
McDONALD CARANO LLP
2300 W. Sahara Ave, Suite 1200
Las Vegas, NV 89102
Telephone:  702.873.4100
Fax:  702.873.9966
gogilvie@mcdonaldcarano.com
ayen@mcdonaldcarano.com

Steven L. Procaccini (*Pro Hac Vice*)
Chris Ellis Jr. (*Pro Hac Vice*)
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, Suite 301
Union, NJ 07083
Telephone: 908-686-8000
Fax: 908-686-8550
sp@gdnlaw.com
ce@gdnlaw.com

*Attorneys for plaintiff Todd VanDeHey*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD VANDEHEY, an individual, | CASE NO: 2:17-cv-02230-JAD-NJK |
| Plaintiff, | **AMENDED COMPLAINT** |
| v. | |
| REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual; John Does 1 through 10, all whose true names are unknown; ABC Companies 1 through 10, all whose true names are unknown. | |
| Defendants. | |

Plaintiff Todd VanDeHey ("Plaintiff"), by and through counsel, complaining of

defendants Real Social Dynamics, Inc. ("RSD"), Nicholas Kho, Owen Cook (collectively, RSD,

Kho and Cook are hereinafter referred to as the "Defendants"), John Does 1 through 10 and

ABC Companies 1 through 10 (collectively, John Does 1 through 10 and ABC Companies 1

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1 through 10 are hereinafter referred to as the "Unknown Defendants") hereby states and alleges

2 as follows:

3 **JURISDICTION**

4     1.    This Court has jurisdiction of this action under 28 U.S.C. §1332. There is a

5 complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in

6 controversy is more than $75,000.00.

7 **VENUE**

8     2.    Venue is proper based upon the parties' stipulation pursuant to the "Governing

9 Law" section of the independent contractor agreement ("Contractor Agreement") dated October

10 1, 2004 that was executed on July 27, 2004 between Plaintiff and RSD.

11     3.    Venue is also proper based upon the parties' stipulation pursuant to Section 11.9

12 of an operating agreement dated October 5, 2015 ("Operating Agreement") between Plaintiff

13 and RSD.

14 **PARTIES**

15     4.    Todd VanDeHey is a citizen of the State of New York with an address of 10

16 Hanover Square, Apartment 18N, New York, New York 10005.

17     5.    Upon information and belief, Real Social Dynamics, Inc. is a Nevada corporation

18 with an address of 1930 Village Center Circle, #3-965, Las Vegas, Nevada 89134.

19     6.    Plaintiff and defendant RSD are each fifty percent (50%) shareholders of

20 Valentine Life, Inc., a Nevada corporation ("Valentine Life").

21     7.    Upon information and belief, defendant Nicholas Kho is a citizen of the State of

22 Nevada with an address of 8121 Gothic Avenue, Las Vegas, Nevada 89117 and co-owner of

23 defendant RSD.

24     8.    Upon information and belief, defendant Owen Cook, is a citizen of Canada

25 residing in the State of California with an address of 1865 Fuller Avenue, Los Angeles,

26 California 90046 and co-owner and/or principal of Defendant RSD.

27     9.    Upon information and belief, defendants John Does 1 through 10 are individuals

28 whose names and addresses of residence are unknown, and either directly or indirectly

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

wrongfully accessed, or facilitated the wrongful access of, Plaintiff's personal Gmail account and/or other private digital accounts without permission.

10.     Upon information and belief, defendants ABC Companies 1 through 10 are legal entities, the names and addresses of which are unknown, and either directly or indirectly wrongfully accessed, or facilitated the wrongful access of, Plaintiff's personal Gmail account and/or other private digital accounts without permission.

## GENERAL ALLEGATIONS

### The Contractor Agreement

11.     On or about July 27, 2004, Plaintiff and RSD executed the Contractor Agreement, whereby RSD employed Plaintiff as an "Executive Coach to be an Instructor for Real Social Dynamics Live Programs and complete Administrative Work". A true and accurate copy of the Contractor Agreement is attached hereto as **Exhibit A**.

12.     The Contractor Agreement contains a Non-Competition clause that states:

> Other than through Contract with a bona-fide independent party, or with the express written consent of the Principal, which will not be unreasonably withheld, the Contractor will not, during the continuance of the Agreement or within five (5) years after the termination or expiration, as the case may be, of this Agreement, be directly or indirectly involved with a business which is in direct competition with the Principal in the business line of how to be successful with women and dating.

> For a period of five (5) years from the date of termination or expiration, as the case may be, of the Contractor's Contract with the Principal, the Contractor will not divert or attempt to diver from the Principal any business the Principal had enjoyed, solicited, or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of the Contractor's Contract with the Principal.

> The Contractor will not own, operate or work for a company or internet website that teaches men how to be successful with women and dating, for five (5) years from the date of termination or expiration, in Los Angeles, New York, San Francisco, Sydney, Melbourne, Toronto, Montreal, and London, and the Contractor will forfeit to Real Social Dynamics any revenue and income earned from operating or working for a company or internet website that teaches men how to be successful with women and dating during the 5 year period, and the Contractor is still obligated to keep all trade secrets confidential.

*See* **Exhibit A**.

13.     The Contractor Agreement also contains a Non-Solicitation clause that states:

Any attempt on the part of the Contractor [Plaintiff] to induce others to leave the Principal's [RSD's] employ, or any effort by the Contractor to interfere with the Principal's relationship with its other Contractors and contractors would be harmful and damaging to the Principal. The Contractor agrees that during the term of his Contract with the Principal and for a period of five (5) years after the end of the terms, the Contractor will not in any way, directly or indirectly:

a.   Induce or attempt to induce any Contractor or contractor of the Principal to quit Contract or retained with the Principal;

b.   Otherwise interfere with or disrupt the Principal's relationship with its Contractors and Employees;

c.   Discuss Contract opportunities or provide information about competitive Contract to any of the Principal's Contractors or Employees; or

d.   Solicit, entice, or hire away any Contractor or contractor of the Principal.

This obligation will be limited to those that were Contractors or contractors of the Principal when the Contractor was contracted by the Principal.

*See* **Exhibit A**.

14.     Thereafter, the parties decided to create Valentine Life, whereby Plaintiff would run the day-to-day operations of Valentine Life and defendant RSD would provide "back-office" support for Valentine Life.

**<u>Valentine Life</u>**

15.     Plaintiff is the incorporator, sole director and a fifty-percent (50%) shareholder of Valentine Life. A true and accurate copy of Valentine Life's Articles of Incorporation are attached hereto as **Exhibit B**.

16.     Valentine Life is jointly owned by Plaintiff and defendant RSD.

17.     Valentine Life provides online and in-person classes and other instructional material to men on how to attract and date women.

18.     Plaintiff is the public face and main instructor of Valentine Life under the aliases "Todd Valentine" and "RSDTodd".

19.     Valentine Life primarily operates, advertises and provides services through various internet websites and social media accounts.

20.     The websites operated by Valentine Life include without limitation: 3GirlsADay.com; WomenbyTodd.com; TextAndDatesmachine.com; DayGameByTodd.com; ValentineUniversity.com; ValentineLife.com; AttractionUnlocked.com; RSDImmersion.com and OpeningMastery.com (collectively, the "Websites").

21.     The social media accounts operated by Valentine Life include without limitation: youtube.com/user/RSDTodd; youtube.com/user/toddfreetour; youtube.com/1minuteattraction; plus.google.com/u/0/105442015906150302898; plus.google.com/110840022199142432968; twitter.com/rsdtodd; instagram.com/toddvalentineofficial/; facebook.com/rsdtodd; and facebook.com/toddrsd (collectively, the "Social Media Accounts").

22.     Valentine Life also communicates with its customers via the online email marketing automation and reporting platform provided through third-party vendor Ontraport, which contains Valentine Life's customer list.

23.     In addition, Valentine Life processes and receives payments through the online merchant services systems provided by the third-party vendor InChek.

24.     As part of the ongoing business of Valentine Life, RSD contributed certain infrastructure and resources to the entity while Plaintiff was responsible for running the day-to-day business of the company.

25.     For example, Valentine Life and its employees/contractors conducted business utilizing RSD email domains and the individual accounts thereunder, Valentine Life email domains and the individual accounts thereunder, Valentine Life ZenDesk and Clickbank accounts to facilitate customer service (collectively, Ontraport, InChek, the RSD email domains and the individual accounts thereunder, the Valentine Life email domains and the individual accounts thereunder, ZenDesk, Clickbank, and all underlying databases, customer lists, contact information and other data are hereinafter referred to as the "Business Accounts").

**Valentine Life Operating Agreement**

26.     Valentine Life is governed by an Operating Agreement. A true and accurate copy of the Operating Agreement is attached hereto as **Exhibit C**.

27.     The Operating Agreement provides in relevant part:

Section 5.1 <u>Cash Flow</u>. Cash Flow, if any, shall be distributed at such dates as determined by unanimous written consent of the Shareholders to the Shareholders in proportion to their respective Percentage Interest. RSD and VanDeHey shall be sole signatories on the Company Bank Account.

\*\*\*

Section 6.1 <u>Manager</u>. The company shall be managed by RSD and VanDeHey. Meetings of the Manager shall be required annually.

Section 6.2 <u>Manager of Operational and Day-to-Day Business and Affairs</u>. The operational and day-to-day business and affairs of the Company shall be operated and managed jointly by RSD and Todd VanDeHey. RSD and VanDeHey are authorized to take any actions, to make any determinations and to provide any consents permitted to be taken, made or provided by the Company under this Agreement; provided, however, that RSD and VanDeHey shall not take any action, make any determination or provide any consent expressly reserved by Section 6.4 of this Agreement to the Shareholders. No Shareholder, other than RSD or VanDeHey (subject to the terms of this Agreement), shall, acting individually, have the power to sign or bind the Company unless duly authorized to do so by unanimous written consent of the Shareholders. Notwithstanding the foregoing, RSD and VanDeHey shall have no liability to the Shareholders or the Company for exceeding the authority granted to him in the event a decision made or an action taken by him was made or taken with a reasonable good faith belief that such decision or action was (i) within the scope of the operational and day-to-day business and affairs of the Company and (ii) not prohibited by the terms of this Agreement.

\*\*\*

Section 6.4 <u>Actions Expressly Reserved to the Shareholders</u>. Notwithstanding the authority granted to RSD in Section 6.2 above, RSD may not do or permit to be done any of the following without the unanimous written consent of the Shareholders:

(a) Any act or thing which the Act or this Agreement requires to be approved, consented to or authorized by all the Shareholders;

(b) Voluntarily cause the dissolution of the Company;

(c) Sell all or a significant part of the Company assets, or engage in any material recapitalization or merger;

(d) Incur any liabilities in excess of $50,000; or

(e) File any lawsuit or proceedings.

\*\*\*

Article 10 <u>WAIVERS</u>: Notwithstanding any provision of the Act, each Shareholder hereby waives any right to seek or assert: (a) judicial dissolution of the Company; (b) dissenters' rights; or (c) derivative actions on behalf of the Company.

\*\*\*

Section 11.9 <u>Mediation/Arbitration – Dispute Resolution</u>. Any controversy or claim arising out of or relating to this Agreement or breach thereof shall first be submitted to mediation with a retired judge. If either party fails engage [sic] in mediation, that party shall lose his right to collect attorneys fees and costs as the prevailing party in any subsequent mediation. In the event that the mediation does not resolve the dispute, the Shareholders are to submit the dispute to binding, non-appealable arbitration administered by the Judicial Arbitration Mediation Services (JAMS) at one of its offices in Clark County. [T]he parties hereby consent to the jurisdiction of the Superior Court for Clark County, Nevada, and of the United States District Court for the Central District of Nevada, for injunctive relief, specific performance or other relief in aid of any proceedings hereunder, but not otherwise.…

*See* **Exhibit C**.

### **Plaintiff and Defendants' Course of Dealing in the Operation of Valentine Life.**

28. While Valentine Life was incorporated in Nevada, its principal place of business is located in New York.

29. Valentine Life has a total of seven employees/contractors, the majority of whom primarily work in New York.

30. In addition, Valentine Life has a New York office space.

31. It was the parties' agreement and course of dealing for Plaintiff to run the day-to-day operations of Valentine Life from New York, as the only shareholder living in New York.

32. The other shareholder of Valentine Life, defendant RSD, has a principal place of business located in Nevada.

33. The parties agreed that part of Plaintiff's obligations in the day-to-day operation of Valentine life would be to, without limitation, supervise payroll; approve expenses; handle funds and bank accounts; oversee the creation of content for the company; oversee the answering of email inquiries related to the company's products and services; and present workshops, seminars and classes.

34. In essence, Plaintiff ran the company.

35. This included creating content for the Social Media Accounts that would drive consumers to the Websites to purchase products and services.

36. Customers' online purchases of products and services from the Websites are a major source of revenue for Valentine Life.

37.     Without content being generated on the Social Media Accounts to drive customers to the Websites, Valentine Life's ability to generate revenue would be hindered.

38.     Moreover, without the Websites, Valentine Life would be unable to sell its products and services.

39.     Simply put, without Plaintiff running the day-to-day operations of Valentine Life the company would not be profitable and would be greatly and irreparably devalued.

40.     In addition, through the parties' course of dealing, Plaintiff had sole signatory authority of Valentine Life's bank accounts and managed the day-to-day operation of the company.

41.     Upon the parties' agreement and course of dealing, Defendants solely had view-only access to Valentine Life's bank account.

42.     Defendants were not added as a signatory on Valentine Life's bank account.

43.     As of August 10, 2017, Defendants did not have authority to withdraw funds from Valentine Life's bank account.

44.     Defendants did not otherwise have authority to make changes to Valentine Life's bank account.

45.     Likewise, Defendants allowed Plaintiff to manage and operate the day-to-day business of Valentine Life.

46.     Indeed, Defendant RSD received its proportion of any profit distributions.

**Defendants have Undertaken Activities That are Inimical to the Continued Existence of Valentine Life.**

47.     Defendant RSD employs/engages a number of professionals who, utilizing RSD's and their own websites and social media accounts, provide services similar to Valentine Life (classes, workshops, seminars, products and services teaching men who want to learn techniques for successfully navigating the dating world).

48.     Indeed, defendant Kho and defendant Cook both individually work as RSD coaches in competition with Plaintiff.

49. As part of Defendants' business, defendant Kho uses the alias "Papa" and defendant Cook uses the alias "Tyler".

50. Defendants' products and services are separate from Valentine Life.

51. Prior to August 10, 2017, Plaintiff and Valentine Life worked in conjunction with Defendants to provide a complementary selection of products and services geared toward the same market.

52. Thus, defendant RSD is not only a partial owner of Valentine Life but also a competitor of Valentine Life.

53. Defendants abused defendant RSD's role as a shareholder to access Valentine Life's assets in order to eliminate Plaintiff and Valentine Life as competitors.

54. Defendants' actions demonstrate an intent to wrongfully undermine the viability of their competitor Valentine Life.

55. Moreover, Defendants' actions are in degradation of public policy which promotes a free market and fair play among competitors on an even playing field.

**Defendants Engaged in Unauthorized and *Ultra Vires* Act That Disrupted Valentine Life's Ability to Operate.**

56. On or about August 11, 2017, Defendants unilaterally and without authorization began to restrict Plaintiff's access to the Websites, Social Media Accounts, Business Accounts and Valentine Life's finances.

57. As will be detailed below, between on or about August 11, 2017 and on or about August 16, 2017, Defendants engaged in the systematic disruption and destruction of Valentine Life's business by, *inter alia*, restricting Plaintiff's access to the Websites and Social Media Accounts; removing content and products from the Websites and Social Media Accounts; and preventing the use of the Business Accounts by Plaintiff and Valentine Life.

58. In doing so, Defendants altered the Websites, Social Media Accounts, Business Accounts and financial accounts to the detriment of Valentine Life.

59. This has materially impaired Valentine Life's operations.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

60.     In addition, this was in contravention of the parties' agreement and course of dealing that Plaintiff would exclusively undertake the day-to-day operation of Valentine life including, without limitation, supervising payroll; approving expenses; handling funds and bank accounts; overseeing the creation of content for the company; overseeing the response to customer inquiries related to the company's products and services; and presenting workshops, seminars and classes.

**Defendants Restricted Plaintiff's Access to the Websites and Proceeded to Take the Websites Down.**

61.     On or about August 11, 2017, Defendants restricted and removed Plaintiff's access to a number of the Websites.

62.     Thereafter, Defendants began taking down the Websites.

63.     This prevented Valentine Life from selling or promoting its products on the Websites or accepting sales transactions.

64.     The Websites that Defendants took down include, without limitation:

      a.      Openingmastery.com. A true and accurate copy of a screenshot showing OpeningMastery.com offline is attached hereto as **Exhibit D**.

      b.      RSDImmersion.com. A true and accurate copy of a screenshot showing RSDImmersion.com offline is attached hereto as **Exhibit E**.

      c.      ValentineLife.com. A true and accurate copy of a screenshot showing ValentineLife.com offline is attached hereto as **Exhibit F**.

65.     ValentineLife.com was temporarily reactivated; however, it was improperly restored to a version of the website from April 2016 and did not include the significant updates that had been made to the website since that time.

66.     Then, Defendants caused ValentineLife.com to be taken down a second time.

67.     Defendants' unilateral and unauthorized actions have prevented Plaintiff from providing scheduled updates to the Websites in furtherance of Valentine Life's business.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

68.     This is likely to result in the permanent loss of some potential and current customers, and is causing, and will continue to cause, irreparable harm to the goodwill of Valentine Life and Plaintiff.

69.     Defendants' actions have impaired Plaintiff's ability to have Valentine Life provide: (a) scheduled classes that customers have already purchased; and (b) customer service solutions to customers.

70.     For example, Defendants unilaterally announced the cancellation of the Valentine Life program "Immersion" which was imminently scheduled to take place in Amsterdam and New York City.

71.     Plaintiff was at all times ready, willing and able to proceed with the "Immersion" program and only learned that it was being cancelled by reading an online forum that referenced the fact that Defendants had done so. To say the least, the Defendants had no authority to cancel "Immersion", and by doing so, they further degraded the value of Valentine Life's goodwill and brand.

72.     This is yet another example of innocent third-parties being harmed by Defendants' actions.

73.     Indeed, a Valentine Life customer posted under the user name "noellohrey" on defendant Cook's Instagram Page (RSDTyler). The user apparently had purchased the Valentine Life Immersion program and inquired whether it would take place because customer service had not answered his inquiries for three days. A true and accurate copy of the Instagram posting is attached hereto as **Exhibit G**.

74.     Under the management of Plaintiff, it was Valentine Life's practice to respond to customer service requests within twenty-four hours.

75.     Defendants improperly took over the accounts and are not adequately servicing the business.

76.     Defendants' actions are tarnishing and damaging the brand, reputation and goodwill of Plaintiff and Valentine Life.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

77.     In addition, Defendants' actions have fostered uncertainty among consumers as to the continued availability of Valentine Life's business.

78.     Without limitation, consumers are questioning whether they will be able to continue to access the Valentine Life content for which they previously paid. *See* **Exhibit G**.

79.     This has led consumers to illegally pirate Valentine Life's content, further devaluing and causing damage to Valentine Life's business and assets.

80.     This action is evidenced by Internet postings on Reddit and in the private "Women by Todd" Facebook group.

a.     For example, one Reddit user started a thread titled "Heads up, Real Social Dynamics has kicked out RSD Todd [Plantiff]. If you own any RSD Todd product logins, DOWNLOAD all the content as those sites may go down." A true and accurate copy of the Reddit thread is attached hereto as **Exhibit H.**

b.     In addition, users in the private "Women by Todd" Facebook group have discussed and exchanged methods of downloading Valentine Life's content without authorization. A true and accurate copy of relevant postings from the private "Women by Todd" Facebook group is attached hereto as **Exhibit I**.

81.     The demand for Valentine Life's goods and services will be substantially and irreparably harmed if the market becomes saturated with unauthorized copies of Valentine Life's products.

**Defendants Restricted Plaintiff's Access to the Social Media Accounts.**

82.     On or about August 11, 2017, Defendants restricted and removed Plaintiff's access to a number of the Social Media Accounts.

83.     Thereafter, Defendants unilaterally and without authorization removed the content from a number of the Social Media Accounts.

84.     This precluded the primary means of promotion or advertisement of Valentine Life's business, services and products.

85.     The Social Media Accounts that Defendants took down include, without limitation:

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

a.      YouTube.com/1minuteattraction. A true and accurate copy of a screenshot of YouTube.com/1minuteattraction is attached hereto as **Exhibit J**.

b.      YouTube.com/RSDTodd. A true and accurate copy of a screenshot of YouTube.com/RSDTodd is attached hereto as **Exhibit K**.

c.      YouTube.com/toddfreetour. A true and accurate copy of a screenshot of YouTube.com/toddfreetour is attached hereto as **Exhibit L**.

d.      Todd Valentine Google+ Account. A true and accurate copy of a screenshot of the Todd Valentine Google+ Account is attached hereto as **Exhibit M**.

e.      Todd Valentine (RSD Todd) Google+ Account. A true and accurate copy of a screenshot of the Todd Valentine (RSD Todd) Google+ Account is attached hereto as **Exhibit N**.

86.     YouTube is the main Social Media Account Valentine Life uses to advertise and promote its products and services.

87.     The Google+ pages are linked to YouTube and are a means of distributing the Valentine Life content through social media.

88.     Defendants' actions prevented Plaintiff from providing scheduled updates to the Social Media Accounts in furtherance of Valentine Life's business.

89.     Without regular updates to Valentine Life's Social Media Accounts, Valentine Life's Internet metrics will be lowered; therefore, devaluing Valentine Life's primary asset.

90.     In essence, when Valentine Life generates content on its Social Media Accounts or Websites, search engine algorithms categorize the Social Media Account or Website as active.

91.     The search engine algorithms assume the more updated an Internet Page is, the more valuable the information the contents of that page likely is.

92.     Websites that are updated more often generally appear at the top of search engine results.

93.   If the Social Media Accounts and Websites are down, then the search engine algorithms de-list them.

94.   This will lead to the Social Media Accounts and Websites not having sufficient hierarchy in search engine results.

95.   If the Social Media Accounts and Websites do not populate in search engine results, then Valentine Life's ability to attract new viewers diminishes.

96.   A decrease in the number of viewers Valentine Life's Social Media Accounts receive means fewer potential new customers are directed to the Websites where they may purchase Valentine Life's products and services.

97.    Without generating new customers, Valentine Life's ability to generate revenue and continue to operate as a business is severely hampered.

**Defendants Restricted Plaintiff's Access to the Business Accounts.**

98.   Defendants unilaterally and without authorization removed Plaintiff's access to the Business Accounts.

99.   Without access to the Business Accounts, Valentine Life is unable to (a) process payments for products or move revenue from the purchase of products into its bank accounts; (b) contact customers about upcoming classes and seminars; (c) promote new content and products; (d) respond to customers' inquiries about products and services already purchased; and (e) process refunds to customers in the guaranteed refund period.

100.   Defendants have hindered Valentine Life's ability to collect revenue, market any new content, provide customer service and deliver on products and services for which customers previously paid and had contracted.

101.   In essence, Defendants' actions have impaired Valentine Life from operating; hence, harming not only the company but also Plaintiff who is a fifty-percent (50%) shareholder.

102.   As will be detailed below, Defendants' have effectively dissolved Valentine Life as a business.

103.   Indeed, defendant Kho has admitted to this fact on RSD Internet Forum postings, stating, "Todd's business with Real Social Dynamics <u>was dissolved</u> due to a difference in vision

McDONALD ⚜ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1     with how Todd wanted to do business with Real Social Dynamics". A true and accurate copy of

2     the Internet positing is attached hereto as **Exhibit O** (emphasis added).

3         104.   Pursuant to the Operating Agreement, Defendants were specifically prohibited

4     from unilaterally dissolving Valentine Life. *See* **Exhibit C** (Operating Agreement, Section

5     6.4(b)).

6         **Defendants Removed Funds from Valentine Life's Bank Account Without**

7     **Authorization.**

8         105.   On or about August 14, 2017, Defendants unilaterally, and without authorization

     or consent from Plaintiff, absconded with, and converted, the total amount held in Valentine

9     Life's Bank of America bank accounts, which was more than Sixty-Nine Thousand Dollars

10     ($69,000.00).

11         106.   On or about August 15, 2017, Plaintiff contacted Bank of America; filed fraud

12     claims; and was able to have the funds restored to Valentine Life's bank accounts.

13         107.   The same day, Defendants unilaterally, and without authorization or consent from

14     Plaintiff, improperly modified the Bank of America bank account, removing Plaintiff's access

15     from the bank account.

16         108.   On or about August 16, 2017, Plaintiff contacted Bank of America and was able

17     to restore his access.

18         109.   Unfortunately, the same day, Defendants, for a third time, unilaterally, and

19     without authorization or consent from Plaintiff, improperly modified the Bank of America bank

20     account and caused an "account takeover" preventing Plaintiff from accessing Valentine Life's

21     funds.

22         110.   Defendants' actions have hindered Valentine Life's ability to meet its ongoing

23     financial obligations or repay debts in violation of the Operating Agreement.

24         111.   In addition, Defendants' actions are in contravention of the parties' agreement

25     that Plaintiff would exclusively undertake the day-to-day operations of Valentine Life including,

26     without limitation, supervising payroll; approving expenses; handling funds and bank accounts;

27

28

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

overseeing the creation of content for the company; overseeing the answering of email inquiries related to the company's products and services; and presenting workshops, seminars and classes.

**Defendants Submitted Forged Corporate Documents to the Nevada Secretary of State.**

112.    On or about March 10, 2017, Defendants, or their agents, submitted a Statement of Change of Registered Agent form for Valentine Life to the Secretary of State. A true and accurate copy of the Statement of Change of Registered Agent is attached hereto as **Exhibit P**.

113.    The Statement of Change of Registered Agent contains a signature purported to be Plaintiffs.

114.    Plaintiff did not sign the document, nor authorize any person to execute the document on his behalf.

115.    The signature and date on the document is not Plaintiff's.

116.    As the sole authorized President, Treasurer, Secretary and Director of Valentine Life, no other person had authority to submit the document for filing other than Plaintiff.

117.    Further, no person had authority to sign Plaintiff's name to the document.

118.    Defendants knew or should have known that the document that was submitted contained a signature of the Plaintiff that was a forgery.

**Defendant Kho Improperly and Illegally Supplanted Plaintiff as the President, Treasurer, Secretary and Sole Director of Valentine Life.**

119.    On or about August 12, 2017, Defendants, or their agents, submitted an amendment to the Annual List of Officers, Directors for Valentine Life ("Amendment") that supplanted Plaintiff as the President, Treasurer, Secretary and Sole Director of Valentine Life for Defendant Kho. A true and accurate copy of the amendment to the Annual List of Officers, Directors for Valentine Life is attached hereto as **Exhibit Q**.

120.    Neither Defendants nor their agents were authorized to submit the Amendment.

McDONALD ⚖ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

121.     Indeed, pursuant to N.R.S. 78.335, a director may only "be removed from office by the vote of stockholders representing not less than two-thirds of the voting power of the issued and outstanding stock entitled to vote."

122.     The only stockholders of Valentine Life are Plaintiff and Defendant RSD, who each own fifty-percent (50%) of the outstanding stock entitled to vote.

123.     Plaintiff did not vote in favor of his removal as Director of Valentine Life.

124.     Indeed, there was not even a vote held with respect to Plaintiff's removal as Director of Valentine Life.

125.     Since Plaintiff controls fifty-percent (50%) of Valentine Life, it is impossible for Defendant RSD to remove Plaintiff as a director of Valentine Life without Plaintiff's consent.

126.     Therefore, Defendant Kho's actions of supplanting Plaintiff as a director or *ultra vires*.

127.     Defendant Kho made the misrepresentation that he was authorized to sign the Amendment, when he knew that he was not.

128.     The language on the Amendment just above the signature line reads, "the information contained [on the Amendment] is correct".

129.     Plaintiff was damaged as a result of the foregoing.

**Defendants have Wrongfully Dissolved Valentine Life.**

130.     Defendant Kho indicated that Defendants were dissolving Valentine Life, *to wit*: "Todd's business with Real Social Dynamics <u>was dissolved</u> due to a difference in vision with how Todd wanted to do business with Real Social Dynamics." *See* **Exhibit O** (emphasis added).

131.     Indeed, on or about August 14, 2017, Defendants, or their agents, submitted a Certificate of Dissolution for Valentine Life to the Secretary of State. A true and accurate copy of the Certificate of Dissolution is attached hereto as **Exhibit R.**

132. Such action is in contravention of Section 6.4 of the Operating Agreement which prohibits Defendant RSD from "[v]oluntarily caus[ing] the dissolution of the Company [Valentine Life]" without Plaintiff's consent. *See* **Exhibit C**.

133. Plaintiff did not provide consent to dissolve Valentine Life.

134. Neither was there a resolution approving the dissolution of Valentine Life.

135. Moreover, RSD may not seek judicial action to dissolve Valentine Life as the parties waived that right in Article 10 of the Operating Agreement. *Id.* In any event, no such judicial intervention was sought.

136. Therefore, Defendants' unilateral dissolution of Valentine Life was an *ultra vires* act to the detriment of Plaintiff and Valentine Life that was a breach of contract.

137. Moreover, it constituted a misrepresentation by Defendant Kho that he was authorized to dissolve the company when he was not.

138. Plaintiff was damaged as a result of the foregoing.

**Defendants' Actions are in Contravention of the Operating Agreement and Therefore Constitute *Ultra Vires* Acts.**

139. Plaintiff and Defendants agreed, and their course of dealing provided, that Plaintiff would manage the day-to-day operation of Valentine Life.

140. Defendants were not authorized to unilaterally disrupt Valentine Life's business operations nor take down its content on the Websites and Social Media Accounts.

141. Under Section 6.4 of the Operating Agreement, defendant RSD was prohibited from unilaterally restricting Plaintiff's access to, taking down and using the Websites, as well as the Social Media Accounts and Business Accounts, without Plaintiff's consent. *See* **Exhibit C**.

142. Moreover, Defendants were not authorized to dissolve the company without the consent of Plaintiff—which they did not have.

143. In spite of that, they improperly and unilaterally removed all the funds from Valentine Life's bank accounts; impaired the viability of the Social Media Accounts and Websites; and denied access to, and use of, the Business Accounts and email accounts.

144.    Defendants have engaged in *ultra vires* acts that have disrupted Valentine Life's business and its ability to continue operations.

145.    Plaintiff has been damaged as a result of the foregoing.

**Unknown Defendants Converted Funds From Plaintiff's PayPal Account**

146.    On or about September 4, 2017, Unknown Defendants intentionally accessed Plaintiff's PayPal account associated with the email address "todd@valentinelife.com" (the "PayPal Account") without authorization.

147.    In order to access the PayPal Account, Unknown Defendants provided information to PayPal to cause PayPal to incorrectly believe Unknown Defendants were Plaintiff or otherwise authorized to access the PayPal Account.

148.    After Unknown Defendants accessed the PayPal Account, they caused a transfer of funds in the amount of $7,603.08 from the PayPal Account to a PayPal account associated with the email address "amber@kho.biz".

149.    Amber Kho is the spouse of Defendant Kho.

150.    The kho.biz domain is owned and/or associated with Defendant Kho.

151.    The transfer to the PayPal account associated with the email address "amber@kho.biz left the PayPal Account with a balance of $0.

152.    On or about September 9, 2017, the PayPal Account received a payment in the amount of $190.99.

153.    The same day, Unknown Defendants intentionally accessed the PayPal Account without authorization.

154.    Unknown Defendants then transferred the $190.99 to the PayPal account associated with the email address "amber@kho.biz".

155.    Once again, this left the PayPal Account with a balance of $0.

156.    Unknown Defendants were not authorized to access the PayPal account nor were they authorized to transfer funds from the PayPal Account to any other financial account.

157.    Plaintiff was damaged as a result of the foregoing.

**Unknown Defendants Illegally Accessed Plaintiff's Personal Emails.**

158.    On or about September 10, 2017, Unknown Defendants began a process to access and obtain information from Plaintiff's personal Gmail account "tvandehey@gmail.com" (the "Personal Email") without authorization.

159.    Gmail is an email service provided by Google, Inc.

160.    The Personal Email contains, *inter alia*, confidential information belonging to Plaintiff, including without limitation privileged and confidential attorney-client and attorney work product materials.

161.    From on or about September 10, 2017 and on or about September 11, 2017, Unknown Defendants forwarded at least seven (7) emails from the Personal Email to the Personal Email.

162.    Unknown Defendants then proceeded to delete those seven (7) emails from the "Trash" folder of the Personal Email.

163.    Each of the seven (7) emails contained single attachments in the form of a PNG image file that consisted of excerpts of documents filed in the instant litigation.

164.    In addition, on or about September 11, 2017, Unknown Defendants forwarded two emails from the Personal Email to the email address "toddrsd@hotmail.com" (the "Wrongful Hotmail Address").

165.    Hotmail is an email service provided by Microsoft Corporation.

166.    Plaintiff neither created, nor authorized the creation of, the Wrongful Hotmail Address.

167.    Plaintiff does not use, nor have access to, the Wrongful Hotmail Address.

168.    The first email forwarded to the Wrongful Hotmail Address by the Unknown Defendants had a subject of "Fwd: Madison video".

169.    That email contained a privileged and confidential communication from Plaintiff to his attorneys.

170.    The second email forwarded to the Wrongful Hotmail Address by the Unknown Defendants had a subject of "Fwd: Owen text 8/14".

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

171.    That email contained screenshots of a text message conversation between Plaintiff and Defendant Cook.

172.    Plaintiff did not forward either of the above-referenced emails to the Wrongful Hotmail Address.

173.    Moreover, Unknown Defendants created an archived copy of the entire Personal Email.

174.    Plaintiff did not authorize the Unknown Defendants to access the Personal Email nor take any of the above-referenced actions regarding the Personal Email.

**Unknown Defendants Reset Plaintiff's Personal Email Recovery Email and Phone Number Without Authorization.**

175.    On or about September 11, 2017 at 2:17 PM EDT, Plaintiff, without knowledge of the unauthorized and illegal actions of Unknown Defendants, accessed the Personal Email in order to change the recovery email address from "todd@realsocialdynamics.com" to "toddvhan@gmail.com".

176.    Plaintiff did so because Defendants, as detailed above, had previously removed his access to the "todd@realsocialdynamics.com" email address.

177.    Also on or about September 11, 2017, Unknown Defendants took steps to ensure their continued unauthorized access to the Personal Email, *to wit*:

   a.  At 5:31 PM, Unknown Defendants reset the Personal Email recovery email address from "toddvhan@gmail.com" to "todd@realsocialdynamics.com".

   b.  At the same time, Unknown Defendants removed Plaintiff's recovery phone number ending 3559 from the Personal Email.

   c.  At 5:36 PM, from a location in Las Vegas, Nevada, Unknown Defendants changed the password on the Personal Email. This prevented Plaintiff from accessing the Personal Email.

   d.  At 5:42 PM, from a location in Las Vegas, Nevada, Unknown Defendants added the recovery phone number 702-600-8317 to the Personal Email. That phone number is serviced by Verizon Wireless.

e. At 6:43 PM, Unknown Defendants, from a location in Las Vegas, Nevada, Unknown Defendants removed the recovery phone number 702-600-8317 from the Personal Email.

178.    It was only after the Personal Email recovery email was changed by Unknown Defendants back to "todd@realsocialdynamics.com" that Plaintiff learned Unknown Defendants had accessed the Personal Email.

179.    Plaintiff did not change the Personal Email recovery email to "todd@realsocialdynamics.com".

180.    Likewise, Plaintiff does not have any connection to the 702-600-8317 phone number.

## COUNT ONE

**(Declaratory Judgment Pursuant to 28 U.S.C. 2201 and F.R.C.P. 57 as to the Enforceability of the Non-Competition and Non-Solicitation Clauses of the Contractor Agreement)**

181.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

182.    Because of Defendants' unauthorized and *ultra vires* acts in dissolving Valentine Life, Plaintiff is now in a position in which he is compelled to expend time and resources to rebuild the brand and business of Valentine Life.

183.    In doing so, Plaintiff is concerned that defendant RSD will assert that Plaintiff is in competition with RSD.

184.    In addition, in rebuilding the business of Valentine Life, Plaintiff may hire former Valentine Life employees who may have contracted with defendant RSD.

185.    In doing so, Plaintiff is concerned that defendant RSD will assert that Plaintiff is in improperly soliciting those individuals.

186.    In short, in order for Plaintiff to begin efforts to remediate the damage already caused by and through its improper acts, he will need to undertake acts that RSD may allege violate the Non-Competition and Non-Solicitation clauses of the Contractor Agreement.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

187.    The very uncertainty of that creates an unfair impediment to Plaintiff's efforts to continue the business of Valentine Life in one form or another.

188.    This is especially prejudicial because both the Non-Competition and Non-Solicitation clauses are unenforceable.

189.    For example, the Non-Competition clause specifically restricts Plaintiff for a period of five (5) years from (a) involvement in a business that is in direct competition with defendant RSD; and (b) working with a company that operates in any of eight (8) metropolises throughout the world, spanning four (4) countries and three (3) continents, regardless of whether the company has a physical or Internet presence.

190.    Indeed, because this is an e-commerce business, this overly broad restriction prevents Plaintiff from continuing the work he performed for defendant RSD for five (5) years throughout the world.

191.    Thus, the Non-Competition clause improperly imposes a restraint that is greater than is required for the protection of defendant RSD; imposes an undue hardship on Plaintiff; and imposes restrictions that are inappropriate in relation to the consideration supporting the Non-Competition clause.

192.    Therefore, the Non-Competition clause is void and unenforceable.

193.    In addition, the Non-Solicitation clause prevents Plaintiff from hiring any former independent contractor or employee from defendant RSD for a period of five (5) years worldwide.

194.    Such restrictions are unreasonable as to time, geographical area and scope of activity restrained.

195.    Therefore, the Non-Solicitation clause likewise is void and unenforceable.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

196.    Since Plaintiff wants to rebuild the business of Valentine Life, the enforceability of the Non-Competition and Non-Solicitation clauses is definite and concrete, affecting—indeed, prejudicing—Plaintiff's and defendant RSD's adverse legal interest with sufficient immediacy as to justify relief.

197.    A declaratory judgment will resolve the uncertainty of Plaintiff's obligations under the Non-Competition and Non-Solicitation clauses.

198.    As such, Plaintiff is entitled to a declaratory judgment determining whether the Non-Competition and Non-Solicitation clauses are void and unenforceable.

## COUNT TWO

### (Violation of the Stored Communications Act, 18 U.S.C. 2701)

199.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

200.    Unknown Defendants accessed the Personal Email without authorization and thereby (1) obtained the electronic communication stored in the Personal Email and (2) altered the electronic communications in electronic storage in the Personal Email by forwarding and deleting individual emails.

201.    Unknown Defendants did so knowingly or with an intentional state of mind.

202.    Such actions are a violation of the Stored Communications Act, 18 U.S.C. 2701.

203.    Because of Unknown Defendants' actions, Plaintiff has suffered damages.

204.    Pursuant to 18 U.S.C. 2707, Plaintiff may obtain a preliminary and other equitable or declaratory relief against Unknown Defendants.

205.    In addition, Unknown Defendants are liable to Plaintiff for (a) actual damages, not less than $1,000; (b) punitive damages; and (c) costs and reasonable attorney's fees.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT THREE

### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030)

206.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

207.     Unknown Defendants accessed the Personal Email account without authorization and thereby obtained information from a "protected computer", as defined in 18 U.S.C. 1030(e)(2)(B), to which Unknown Defendants did not have authorized access.

208.     Unknown Defendants accessed the Personal Email and obtained information from a protected computer intentionally.

209.     Such actions are a violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030.

210.     Because of Unknown Defendants' actions, Plaintiff has suffered damages.

211.     Pursuant to 18 U.S.C. 1030(g), Plaintiff may recover damages from Unknown Defendants.

## COUNT FOUR

### (Violation of NRS 205.4765)

212.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

213.     Unknown Defendants did either modify, damage, destroy, disclose, use, transfer, conceal, take, retain possession of, copy, obtain or attempted to obtain access to, permitted access to or caused to be accessed, and/or entered a program or supporting documents which existed inside or outside a computer, system or network when they (a) accessed the Personal Email without authorization, (b) forwarded and deleted individual emails from the Personal Email, (c) changed the password of the personal email, (d) changed the recovery email of the Personal Email; and (e) changed the recovery phone number of the Personal Email.

214.     Unknown Defendants did so knowingly, willfully and without authorization.

215.     Such actions are a violation of NRS 205.4765.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

216. Because of Unknown Defendants' actions Plaintiff has suffered damages.

217. Pursuant to NRS 205.511, because of Unknown Defendants' violation of NRS 205.4765, Defendants are liable to Plaintiff for (1) actual damages; (2) punitive damages; and (3) costs and reasonable attorney's fees.

## COUNT FIVE

### (Conversion)

218. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

219. Unknown Defendants have willfully deprived Plaintiff of the right to possession of his property held in the PayPal Account through the execution of two unauthorized transfers from the PayPal Account to a PayPal account associated with "amber@kho.biz".

220. Because of Unknown Defendants' willful deprivation of Plaintiff's right to his property held in the PayPal Account, Plaintiff has been damaged.

221. Therefore, Unknown Defendants are liable to Plaintiff for the return of the property, for the value of the property, and for damages, including punitive damages, proximately caused by Unknown Defendants' wrongful conduct.

**WHEREFORE**, Plaintiff hereby demands judgment as follows:

    a. as to Count One, Plaintiff demands a declaratory judgment against Defendants;

    b. as to Counts Two, Three, Four and Five actual damages against the Unknown Defendants;

    c. as to Counts Two, Four and Five punitive damages against the Unknown Defendants;

    d. as to Counts Two and Four costs and reasonable attorneys' fees against the Unknown Defendants; and

    e. as to Count Two equitable relief against the Unknown Defendants.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

RESPECTFULLY SUBMITTED this 12th day of October, 2017

NISSENBAUM LAW GROUP, LLC

By:   _/s/ Steven L. Procaccini_
Steven L. Procaccini (*Pro Hac Vice*)
Chris Ellis Jr. (*Pro Hac Vice*)
2400 Morris Avenue, Suite 301
Union, NJ 07083

McDONALD CARANO LLP
George F. Ogilvie III (NSBN 3552)
Amanda C. Yen (NSBN 9726)
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV  89102

*Attorneys for plaintiff Todd VanDeHey*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on or about the 12th day of October, 2017, a true and correct copy of the foregoing **AMENDED COMPLAINT** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ Jelena Jovanovic*
An employee of McDonald Carano LLP

# INDEX OF EXHIBITS

| Description | Exhibit No. |
|---|:---:|
| Contractor Agreement | A |
| Valentine Life, Inc. Articles of Incorporation | B |
| Valentine Life, Inc. Operating Agreement | C |
| OpeningMastery.com Screenshot | D |
| RSDImmersion.com Screenshot | E |
| ValentineLife.com Screenshot | F |
| User "noellohrey" Instagram comment | G |
| Reddit Thread | H |
| Private "Todd Valentine" Facebook Group Screenshots | I |
| YouTube.com/1MinuteAttraction Screenshot | J |
| YouTube.com/RSDTodd Screenshot | K |
| YouTube.com/toddfreetour Screenshot | L |
| Todd Valentine Google+ Account Screenshot | M |
| Todd Valentine (RSD Todd) Google+ Account Screenshot | N |
| Defendant Kho Internet Forum Posting | O |
| Valentine Life, Inc. Statement of Change of Registered Agent | P |
| Valentine Life, Inc. Amended Officer and Director List | Q |
| Valentine Life, Inc. Certificate of Dissolution | R |