George F. Ogilvie III (NSBN #3552)
Amanda C. Yen (NSBN #9726)
McDONALD CARANO LLP
2300 W. Sahara Ave, Suite 1200
Las Vegas, NV 89102
Telephone:  702.873.4100
Fax:  702.873.9966
gogilvie@mcdonaldcarano.com
ayen@mcdonaldcarano.com

Steven L. Procaccini (*Pro Hac Vice*)
Chris Ellis Jr. (*Pro Hac Vice*)
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, Suite 301
Union, NJ 07083
Telephone: 908-686-8000
Fax: 908-686-8550
sp@gdnlaw.com
ce@gdnlaw.com

*Attorneys for plaintiff Todd VanDeHey*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD VANDEHEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual; John Does 1 through 10, all whose true names are unknown; ABC Companies 1 through 10, all whose true names are unknown.<br><br>Defendants. | CASE NO.: 2:17-cv-02230-JAD-NJK<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT ONE OF THE AMENDED COMPLAINT** |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AS TO COUNT ONE OF THE AMENDED COMPLAINT
### ORAL ARGUMENT REQUESTED

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Todd VanDeHey ("Plaintiff") brings this Motion for Summary Judgement as to Count One of the Amended Complaint for a Declaratory Judgement Pursuant to 28 U.S.C. 2201 and FRCP 57 determining

that the Non-Competition and Non-Solicitation Clauses of the July 27, 2004 independent contractor agreement ("Contractor Agreement") between Plaintiff and defendant Real Social Dynamics, Inc. ("Defendant RSD") are Void and Unenforceable ("Motion"). A proposed order granting Plaintiff's Motion is attached hereto as **Exhibit 1**.

**STATEMENT OF UNDISPUTED FACTS**

1.      Defendant RSD is a company that provides coaching services on dating to men.

2.      On or about July 27, 2004, Plaintiff and Defendant RSD entered into the Contractor Agreement. ECF No. 41, Exhibit A.

3.      Plaintiff executed the Contractor Agreement in his individual capacity. *Id.*

4.      Defendant Nicholas Kho ("Defendant Kho") executed the Contractor Agreement on behalf of Defendant RSD, as the President of Defendant RSD. *Id.*

5.      Plaintiff and Defendant Kho initialed each page of the Contractor Agreement. *Id.*

6.      The Contractor Agreement is a valid agreement between Plaintiff and Defendant RSD.

7.      The Contractor Agreement defined Defendant RSD as the "Principal". *Id.*

8.      The Contractor Agreement defined Plaintiff as the "Contractor". *Id.*

9.      The Contractor Agreement listed a commencement date of October 1, 2004. *Id.* at ¶ 1.

10.      Pursuant to the Contractor Agreement, Defendant RSD agreed to "employ the Contractor as an Executive Coach to be an Instructor for Real Social Dynamics Live Programs and complete Administrative Work". *Id.* at ¶ 3.

11.      The Contractor Agreement contains a noncompetition clause that states:

> Other than through Contract with a bona-fide independent party, or with the express written consent of the Principal, which will not be unreasonably withheld, the Contractor will not, during the continuance of the Agreement or within five (5) years after the termination or expiration, as the case may be, of this Agreement, be directly or indirectly involved with a business which is in direct competition with the Principal in the business line of how to be successful with women and dating.

For a period of five (5) years from the date of termination or expiration, as the case may be, of the Contractor's Contract with the Principal, the Contractor will not divert or attempt to divert from the Principal any business the Principal had enjoyed, solicited, or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of the Contractor's Contract with the Principal.

The Contractor will not own, operate or work for a company or internet website that teaches men how to be successful with women and dating, for five (5) years from the date of termination or expiration, in Los Angeles, New York, San Francisco, Sydney, Melbourne, Toronto, Montreal, and London, and the Contractor will forfeit to Real Social Dynamics any revenue and income earned from operating or working for a company or internet website that teaches men how to be successful with women and dating during the 5 year period, and the Contractor is still obligated to keep all trade secrets confidential.

(the "Non-Competition Clause")

*Id.* at ¶¶ 25-27.

12.    The Contractor Agreement also contains a non-solicitation clause that states:

Any attempt on the part of the Contractor to induce others to leave the Principal's employ, or any effort by the Contractor to interfere with the Principal's relationship with its other Contractors and contractors would be harmful and damaging to the Principal. The Contractor agrees that during the term of his Contract with the Principal and for a period of five (5) years after the end of the term, the Contractor will not in any way, directly or indirectly:

a.   Induce or attempt to induce any Contractor or contractor of the Principal to quit Contract or retained with the Principal;

b.   Otherwise interfere with or disrupt the Principal's relationship with its Contractors and Employees;

c.   Discuss Contract opportunities or provide information about competitive Contract to any of the Principal's Contractors or Employees; or

d.   Solicit, entice, or hire away any Contractor or contractor of the Principal.

> This obligation will be limited to those that were Contractors or contractors of the Principal when the Contractor was contracted by the Principal.

(the "Non-Solicitation Clause")

*Id.* at ¶ 24.

13.     The Contractor Agreement contains a "Governing Law" provision that states:

> It is the intention of the parties to this Agreement that this Agreement and the performance under this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the State of Nevada, without regard to the jurisdiction in which any action or special proceeding may be instituted.

*Id.* at ¶ 43.

14.     Defendants RSD, Nicholas Kho and Owen Cook (collectively, "Defendants") terminated Plaintiff as an independent contractor of Defendant RSD.

15.     The Contractor Agreement does <u>not</u> contain a provision for mediation, arbitration, nor any other form of alternative dispute resolution. *Id.*

16.     On or about October 5, 2015, Plaintiff and Defendant RSD entered into an operating agreement regarding the governance of Valentine Life, Inc. (the "Operating Agreement"). ECF No. 41, Exhibit C.

17.     The Operating Agreement contains a "Mediation/Arbitration – Dispute Resolution" clause.

18.     The Operating Agreement is separate and distinct from the Contractor Agreement, and the subject matter of the two do not overlap.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

## PRELIMINARY STATEMENT

Our society supports competition and abhors restraints on trade. If restraints on trade are allowed, they must be sufficiently narrow so as not to impose undue hardship on the party being restrained, while protecting the party seeking to impose the restraint. That is not the case in the instant matter; Defendants are not simply trying to protect their business interest, but are trying to "snuff out" Plaintiff as a competitor through the archaic, overly broad and completely unreasonable Non-Competition and Non-Solicitation Clauses.

Defendants have forced Plaintiff into a position in which his livelihood is threatened:

- Defendants terminated Plaintiff as an independent contractor with Defendant RSD;

- Defendants unilaterally and without authorization dissolved the corporation in which Plaintiff and Defendant RSD were each fifty-percent (50%) shareholders; and

- Based upon the terms of the void and unenforceable Non-Competition and Non-Solicitation Clauses, Defendants want to preclude Plaintiff (a) from any involvement in professional endeavors that compete with Defendant RSD's business for five (5) years, throughout the entire world, and (b) from hiring employees of Defendant RSD, even if the employee contacts Plaintiff first.

Clearly, under Nevada law such a restraint on trade is unreasonable, and therefore void and unenforceable.

To ensure Plaintiff will have the means to generate income, he must know what professional pursuits he can undertake without risk of Defendant RSD taking the position that he violated a contractual undertaking. Plaintiff has already suffered greatly due to the actions of the Defendants and should be able to work and hire free from their control. The Non-Competition and Non-Solicitation Clauses in the Contractor Agreement are plainly unreasonable—therefore a

declaratory judgment determining that those provisions are void and unenforceable should be entered.

## **LEGAL ARGUMENT**

Rule 56 of the Federal Rules of Civil Procedure provides summary judgement is appropriate when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin,* 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Once the movant meets its initial burden on summary judgment, the non-moving party must show a genuine issue of material fact to prevail. Fed. R. Civ. Pro. 56(e); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). Accordingly, the court shall construe the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

However, the mere allegations or denials in a pleading will not defeat a well-founded motion. Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (*quoting* Fed. R. Civ. Pro. 56(e)).

Here, there is no material fact in dispute relating to the execution, validity and contents of the Contractor Agreement. Thus, the only remaining issues to be determined are matters of law related to the enforceability of the Non-Competition and Non-Solicitation Clauses. Moreover, there is no mediation or arbitration clause in the Contractor Agreement. Therefore, the Court is not divested of jurisdiction and is empowered to enter summary judgment in this matter. As detailed below, summary judgment in the form of a declaratory judgment determining that the Non-Competition and Non-Solicitation Clauses are void and unenforceable is appropriate.

**POINT ONE**

**A DECLARATORY JUDGMENT ADJUDICATING THE VALIDITY AND ENFORCEABILITY OF THE NON-COMPETITION AND NON-SOLICITATION CLAUSES OF THE CONTRACTOR AGREEMENT IS APPROPRIATE IN THE INSTANT MATTER.**

The Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction...any court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Declaratory judgment is proper if the district court determines that there is an actual case or controversy within its jurisdiction. *American States Ins. Co. v. Kearns,* 15 F.3d 142, 143 (9th Cir. 1994). The appropriate standard for determining ripeness of private party contract disputes is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Here, the Defendants have terminated Plaintiff's services as an independent contractor for Defendant RSD under the Contractor Agreement. Defendants' termination of Plaintiff as an independent contractor raises the specter that the overly-broad provisions of the Non-Competition and Non-Solicitation Clauses of the Contractor Agreement might be enforced against the Plaintiff.

Accordingly, the instant motion has been filed because Plaintiff is entitled to a declaratory judgment adjudicating that the Non-Competition and Non-Solicitation Clauses of the Contractor Agreement are void and unenforceable. The enforceability of the Non-Competition and Non-Solicitation Clauses is an actual controversy between Plaintiff and Defendants, each of whom have adverse legal interests.

The reason is straightforward: Plaintiff should have the right to continue operating in the industry he has been a part of for over a decade. Defendants should not be allowed to enforce the overly-broad and improper Non-Competition and Non-Solicitation clause which prohibit Plaintiff

from <u>any involvement in the date coaching industry not just within a reasonable distance from his</u> <u>prior employer, but worldwide</u>.

So as to avoid a violation of the Non-Competition and Non-Solicitation clauses, Plaintiff would be precluded from pursuing potential business opportunities he would have otherwise considered. Indeed, Defendants have indicated they view the terms of the Non-Competition and Non-Solicitation Clauses as valid and seek to enforce them. *See* ECF No. 37, Exhibit B (Demand for Arbitration), ¶¶ 46-53. Thus, the controversy between the parties is sufficiently immediate and real to warrant declaratory relief; it is <u>actually</u> affecting the parties.

It should be noted that the mere fact that Plaintiff has included causes of actions against fictitious defendants for unauthorized access into his personal Internet accounts does not preclude the court from entering a partial declaratory judgment on counts of the Amended Complaint that are unrelated to those causes of action. The Ninth Circuit has held that "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001). Therefore, the Court is empowered to rule on Plaintiff's request for a declaratory judgment without regard to the fact that there exist unrelated counts against fictitious parties in the Amended Complaint.

**POINT TWO**

**THE NON-COMPETITION CLAUSE OF THE<br>CONTRACTOR AGREEMENT IS VOID AND<br><u>UNENFORCEABLE.</u>**

"Under Nevada law, '[a] restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted.'" *Golden Rd. Motor Inn, Inc. v. Islam*, 132 Nev. Adv. Op. 49, 376 P.3d 151, 155 (2016) (*quoting Hansen v. Edwards*, 83 Nev. 189, 191–92 (1967)). "The public has an interest in seeing that competition is not unreasonably limited or restricted, but it also has an

interest in protecting the freedom of persons to contract, and in enforcing contractual rights and obligations." *Hansen v. Edwards*, 83 Nev. 189, 192 (1967).

"Time and territory are important factors to consider when evaluating the reasonableness of a noncompete agreement." *Golden Rd.,* 376 P.3d at 155. "However, there is no inflexible formula for deciding the ubiquitous question or reasonableness." *Id.*

Chapter 613 of N.R.S. was recently amended to address the enforceability of noncompetition provisions in employment agreements:

> 1. A noncompetition covenant is void and unenforceable unless the noncompetition covenant:
>
> (a) Is supported by valuable consideration;
>
> (b) Does not impose any restraint that is greater than is required for the protection of the employer for whose benefit the restraint is imposed;
>
> (c) Does not impose any undue hardship on the employee; and
>
> (d) Imposes restrictions that are appropriate in relation to the valuable consideration supporting the noncompetition covenant.
>
> ***
>
> Any provision in a noncompetition covenant which violates the provisions of this subsection is void and unenforceable.

Assembly Bill 276, 79th Sess. (Nev. 2017) (*Note: this law has been enacted, but no citation for it has been codified*).

### A. The Non-Competition Provision is Unreasonable Because the Time Restriction it Imposes is Greater than Necessary to Protect Defendant RSD, Therefore the Non-Competition Provision is Void and Unenforceable.

A noncompetition clause that prohibits an employee from working in the same field for a period of five (5) years has been found to be too great a hardship for the employee and not necessary to protect the employer's interest. *Jones v. Deeter,* 112 Nev. 291, 296 (1996). Even noncompetition clauses of shorter duration have been found to be overly broad and unreasonable. *See Camco, Inc. v. Baker*, 113 Nev. 512 (1997) (finding a noncompete with term of two (2) years

was unreasonable because the covenant was overly broad as to future territory for possible expansion).

Moreover, a noncompetition clause that blindly prohibits all types of employment within the same industry is overly broad and unreasonable. *Golden Rd.*, 376 P.3d at 155. In *Golden Road*, the Nevada Supreme Court found that a noncompetition clause prohibiting an employee from being employed for one (1) year in <u>any capacity</u> at another casino within a 150-mile radius was unreasonable and ultimately unenforceable. *Id.*

Here, the Non-Competition Clause goes well beyond prohibiting Plaintiff from any type of employment with a similar business to Defendant RSD. Indeed, not only does the Non-Competition Clause prevent Plaintiff from working—in any capacity—with a similar business to Defendant RSD for five (5) years, but it also prevents Plaintiff from being "directly or indirectly involved with a business in direct competition with" Defendant RSD. Further, he is prohibited from owning or operating a company or Internet website whose business mirrors Defendant RSD's business. ECF No. 41, Exhibit A, ¶¶ 25-27

In essence, the Non-Competition Clause prevents Plaintiff from working at a company that competes with Defendant RSD, even if he is <u>not</u> acting in a dating instructor position, as he was for Defendant RSD. Thus, the Non-Competition Clause would prevent Plaintiff from being an IT professional, videographer or administrative assistant at a company that competes with Defendant RSD. Undoubtedly, precluding Plaintiff from working at a competitor of Defendant RSD in any capacity is a greater restraint than is required for the protection of Defendant RSD.

Indeed, that raises an even more profound flaw: since the Non-Competition Clause prevents Plaintiff from being "directly or indirectly involved" in any way with a competitor of Defendant RSD, the Non-Competition Clause is a *per se* blanket restriction on all competition between Plaintiff and Defendant RSD. Such a restriction cannot be enforceable because the purpose of a non-compete provision may not be to restrain competition.

Restrictive covenants are used to protect an employer's proprietary or important business interests. *See Golden Rd.*, 376 P.3d at 166 (Hardesty, J., dissenting) (*citing Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*, 120 Nev. 168, 172 (2004)). It has been recognized that:

[r]estrictive covenants strike a delicate balance between employers' interests—protecting confidential information and institutional knowledge, preserving hard-won customer and client relationships, and incentivizing key talent to remain loyal—and employees' interests in maintaining work mobility and the freedom to command competitive compensation for their skills.

*Golden Rd.*, 376 P.3d at 166 (Hardesty, J., dissenting) (*citing Employers May Face New Challenges in Drafting Noncompetes*, 19 No. 2 Nev. Emp. L. Letter 4 (2013)). Thus, a restrictive covenant that clearly is intended to stifle competition rather than simply protect an employer's proprietary and important business interest is overly broad and unreasonable. Said another way, Defendant RSD may not "impos[e] upon [Plaintiff] any greater restraint than is reasonably necessary to protect the business and good will of [Defendant RSD]." *Hansen*, 83 Nev. at 191.

How is it possible to interpret the Non-Competition Clause as anything other than an attempt to restrain competition? It literally states that it was put in place to do so. Specifically, it states that Plaintiff is precluded from being "directly or indirectly involved with a business which is in direct competition with [Defendant RSD] in the business line of how to be successful with women and dating." Emphasis added.

This provision not only violates the principle outlined in *Hansen* of not imposing a greater restriction than necessary on a former employee, but goes on to literally prohibit Plaintiff from competing with his former employer. That may not be the purpose of a restrictive covenant.

Moreover, how would an individual even know ahead of time whether or not they were competing with their former employer? A former employee would need to apply for a declaratory judgment on every new employment opportunity for a determination as to whether an individual's new employer was in competition with the former employer. After all, how else would an employee know whether they were in breach of the restrictive covenant or not?

That is the exact issue with the Non-Competition Clause. It is undoubtedly too broad; how could it be interpreted any other way? It limits all competition, stating that Plaintiff is restricted from working for a competitor of Defendant RSD that is "directly or indirectly involved" with a competing business.

What does "indirectly involved" even mean?

The overbreadth of that wording clearly could be interpreted as including a company that is involved in other activities beyond coaching men in how to find dates; it could mean anything. How does that in artful and overly-loose language protect Defendant RSD's proprietary or important business interests?

It does not. Such overly broad restrictions could be interpreted to prevent Plaintiff from any type of involvement with a company in the same industry of Defendant RSD. They are unreasonable and "impos[e] upon the employee [a] greater restraint than is reasonably necessary to protect the business and good will of the employer" in violation of the law. *Hansen*, 83 Nev. at 191*; Golden Rd.*, 376 P.3d at 155.

In sum, clearly the Non-Competition Clause is void and unenforceable. Accordingly, Plaintiff is entitled to a declaratory judgment adjudicating the clause so.

**B.     The Non-Competition Provision is Unreasonable Because the Territory Restriction it Imposes is Greater than Necessary to Protect Defendant RSD, Therefore the Non-Competition Provision is Void and Unenforceable.**

In addition to the overly-broad time period the Non-Competition Clause imposes, the territorial limitations of the clause are likewise overly broad and unreasonable. Specifically, the Non-Competition provision prevents Plaintiff from owning, operating or working "for a company or internet website that teaches men how to be successful with women and dating, for five (5) years from the date of termination or expiration, in Los Angeles, New York, San Francisco, Sydney, Melbourne, Toronto, Montreal, and London."

In essence, this is a restriction from Plaintiff owning, operating or working with a competitor for five (5) years underwide.

As indicated above, the Non-Competition clause is also overly-broad because it is not limited to the scope of the Plaintiff's duties. Thus, not only does the Non-Competition Clause prevent Plaintiff from working as a dating instructor for a competitor of Defendant RSD in eight major cities throughout the world—spanning four countries and three continents—but it also prevents Plaintiff from owing, operating or working in any capacity for such a competitor. That is true whether or not the company is physically located in one of the listed cities or has an Internet presence in that city.

As the Internet reaches nearly every corner of the earth—and surely the eight major cities identified in the Non-Competition Clause (on top of the fact that many companies operate websites)—where is it then that Plaintiff can own, operate or work with a company in the same business as Defendant RSD? The answer: nowhere. The Non-Competition Clause is in essence a global ban of Plaintiff from the date coaching industry.

An unlimited geographical scope must be "roughly consonant with the scope of the employee's duties." *Accelerated Care Plus Corp. v. Diversicare Mgmt. Servs. Co.*, No. 3:11-CV-00585-RCJ, 2011 WL 3678798, at *4 (D. Nev. Aug. 22, 2011). That is not the case in the instant matter because the Non-Competition Clause not only prevents Plaintiff from working as an instructor with companies in the same business as Defendant RSD, but prevents Plaintiff from working or being involved with a competitor of Defendant RSD in <u>any</u> capacity. If the Non-Competition Clause were enforced, it would prevent Plaintiff from procuring a livelihood in the industry in which he has been involved for over a decade in any way, shape or form throughout the world. Such a result is patently unreasonable and should not be allowed to occur.

Once again, clearly a declaratory judgment deeming the Non-Competition Clause void and unenforceable should be entered in Plaintiff's favor.

**C.     Plaintiff Will Suffer Undue Hardship Should the Non-Competition Clause Be Enforced.**

As indicated above, the Non-Competition Clause not only precludes Plaintiff from employment with a competitor of Defendant RSD as an instructor, it precludes Plaintiff from involvement in any capacity with a competitor of Defendant RSD. In essence, the enforcement of the Non-Competition Clause will totally push Plaintiff out of his chosen industry and <u>others</u> for five years throughout the world. Such an overly broad noncompetition clause poses an undue hardship and is void and unenforceable. *See Golden Rd. Motor Inn, Inc. v. Islam*, 132 Nev. Adv. Op. 49, 376 P.3d 151, 153 (2016). A forced change in Plaintiff's area of employment would surely cause undue hardship. "[T]he loss of a person's livelihood is a very serious matter, [therefore] post employment anti-competitive covenants are scrutinized with greater care than are similar covenants incident to the sale of a business." *Ellis v. McDaniel*, 95 Nev. 455, 459 (1979).

As the Non-Competition Clause totally prevents Plaintiff from working in his chosen industry, it clearly imposes an undue hardship. Therefore, the Non-Competition Clause is void and unenforceable and a declaratory judgment should be entered in favor of Plaintiff.

**POINT THREE**

### THE NON-SOLICITATION CLAUSE OF THE CONTRACTOR AGREEMENT IS VOID AND UNENFORCEABLE.

Similar to the Non-Competition Clause, the Non-Solicitation Clause is also overly broad and unreasonable, and likewise should be found void and unenforceable. The Non-Solicitation Clause spans a period of five (5) years, similar to the Non-Competition Clause, and prohibits, in part, Plaintiff "in any way, directly or indirectly" from

- discussing opportunities or providing information about competitors' opportunities to Defendant RSD's contractors or employees; and

- hiring any contractor of Defendant RSD.

Under Nevada law, such prohibitions on Plaintiff's conduct are overly broad and therefore void and unenforceable.

While a former employee may be restrained from soliciting employed individuals away from their former employer, a non-solicitation clause <u>cannot</u> prevent such communication when the former employee is not the initiator. *See Eastridge Pers. of Las Vegas, Inc. v. Kim Du-Orpilla*, 2008 WL 872905, at *3 (D. Nev. Mar. 27, 2008) (*citing Loral Corp. v. Moyes,* 219 Cal.Rptr. 836, 844 (Cal. Ct. App.1985) (in which a former employee was barred from soliciting employees of his former employer but was not barred from receiving and considering applications); *Cap Gemini Am., Inc. v. Judd*, 597 N.E.2d 1272, 1287 (Ind. Ct. App. 1992); *VL Systems, Inc. v. Unisen, Inc.,* 61 Cal.Rptr.3d. 818, 822–23 (Cal. Ct. App. 2007) (When a third party initiates the employment attempt, the interests of the third party in his own mobility are deemed paramount where no illegal act accompanies the employment change.)).

In *Eastridge*, the former employee signed an agreement whereby she agreed not to solicit or entice any employee to leave or compete against her former employer. *Eastridge Pers. of Las*

*Vegas, Inc. v. Kim Du-Orpilla*, 2008 WL 872905, at *1 (D. Nev. Mar. 27, 2008). The District Court found that the language of that agreement only prevented the former employee from making first contact with her former employer's current employees. The language of the Non-Solicitation Clause is similar to the language in *Eastridge*, whereby both prevent the former employee from inducing or hiring away current employees. Indeed, non-solicitation provisions that are so broad as to prohibit the solicitation of any employee from a company, as the Non-Solicitation Clause does, have likewise been found to be overly broad by other jurisdictions. *Cap Gemini Am., Inc. v. Judd*, 597 N.E.2d 1272, 1287 (Ind. Ct. App. 1992).

Since the Non-Solicitation Clause seeks to prevent all solicitation by Plaintiff of any of Defendant RSD's employees, whether or not the employee initiated the communication, the Non-Solicitation Clause is overly broad and unreasonable. Therefore, Plaintiff is entitled to a declaratory judgment determining the Non-Solicitation Clause of the Contractor Agreement is void and unenforceable.

## POINT FOUR

**THE ISSUE OF WHETHER A DECLARATORY JUDGMENT DETERMINING THAT THE NON-COMPETITION AND NON-SOLICITATION CLAUSES ARE VOID AND UNENFORCEABLE IS PROPERLY BEFORE THIS COURT BECAUSE THE CONTRACTOR AGREEMENT IS SEPARATE FROM THE OPERATING AGREEMENT AND DOES NOT CONTAIN AN ARBITRATION PROVISION.**

Apples and oranges may create a nice fruit salad, but comparing them inevitably results in a flawed legal argument. Defendants apparently are of the position that the enforceability of the Non-Competition and Non-Solicitation Clauses should be addressed by an arbitrator rather than this court. *See* ECF No. 37, Exhibit B (Demand for Arbitration), ¶¶ 46-53. However, simply because the Operating Agreement contains an arbitration clause does not mean a dispute over the Contractor Agreement is also subject to mandatory arbitration. The reason is simple: the Contractor Agreement does not contain an arbitration clause; therefore, a dispute over whether or not it was breached must be decided in a court of law.

This comports with the black letter law of Nevada. Indeed, the law does not allow the Defendants to create a tangled mess—a mash-up as it were—of two different contracts that were signed separately at completely different points in time and related to completely different subject matters, such that the arbitration clause of one would apply to the other. *See Whitemaine v. Aniskovich*, 124 Nev. 302 (2008) (an arbitration provision from one agreement should not govern the other, which does not contain an arbitration provision, unless the pair of agreements, when read together constitute the same agreement).

Hence, the Defendants' continual mantra that everything belongs in arbitration should be unavailing. In Nevada, the presumption is always that legal disputes belong in court—arbitration is the exception, not the rule. This exception absolutely does not apply here. In order to compel parties to arbitrate over an alleged breach of contract that contains no arbitration provision (and as to which no statute compels arbitration) simply because <u>another</u> contract does, the party seeking arbitration would have to demonstrate that:

(1) both contracts were executed contemporaneously;

(2) both contracts concern the same subject matter; and

(3) one of the contracts refers to the other.

*Whitemaine*, 124 Nev. at 308; *see also Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 292 (1983) ("The general presumption is that where two or more written instruments are executed contemporaneously the documents evidence but a single contract if they relate to the same subject matter and one of the two refers to the other").

As will be set forth below, <u>none</u> of the elements of that three-part test are present in the instant matter.

### A.      The Two Agreements Were Not Contemporaneously Executed

The Operating Agreement and the Contractor Agreement were quite obviously not executed contemporaneously. In fact, they were executed in different <u>decades</u>; the Contractor

Agreement was executed on or about July 27, 2004; while the Operating Agreement was executed on or about October 5, 2015.

Hence, the first element that the agreements be executed contemporaneously is completely missing. In fact, the opposite is true; they were not executed any time near one another.

**B.      The Two Agreements Do Not Concern the Same Subject Matter**

The Contractor Agreement and the Operating Agreement are not in any way related to one another. They serve separate and distinct purposes which are <u>not</u> connected.

The Contractor Agreement:

- governs the position and duties of Plaintiff's work for RSD;
- outlines the compensation Plaintiff will receive;
- makes no mention of "Valentine Life, Inc," but rather is an agreement between Defendant RSD and Plaintiff, personally; and
- provides for confidentiality and termination rights.

ECF No. 41, Exhibit A, Contractor Agreement.

Conversely, the Operating Agreement sets forth the manner of:

- allocating Valentine Life, Inc.'s profits and losses;
- managing the day-to-day business affairs of Valentine Life, Inc.;
- providing for buy-out rights; and
- dissolving Valentine Life, Inc.

ECF No. 41, Exhibit C, Operating Agreement.

The two agreements simply do not overlap. Each agreement clearly governs a separate subject matter.

**C.      The Two Agreements Do Not Reference One Another**

The Contractor Agreement does not reference the Operating Agreement, and the Operating Agreement does not reference the Contractor Agreement. In fact, the Operating Agreement outright states that there are no outside provisions that apply to it.

1  The Operating Agreement's integration clause states that the agreement "contains the

2  entire understanding and agreement" between Defendant RSD and Plaintiff and that "[t]here are

3  no agreements, arrangements or understandings, oral or written, between or among" them

4  "relating to the subject matter of [the Operating] Agreement." *Id.* at Section 11.8. Simply put, the

5  parties agreed that they would not incorporate any prior agreements into the Operating

6  Agreement.

7  In sum, these are two unrelated agreements, and they contain <u>no</u> provisions which should

8  be read from one agreement into the other. They are completely distinct and govern two separate

9  subject matters. To interpret them as overlapping would not only be in derogation of Nevada

10  precedent, but also undermine the parties' express contractual intent.

11  <u>**CONCLUSION**</u>

12  For the foregoing reasons, it is respectfully requested that the Court grant the relief

13  requested herein, together with such other, further and different relief as the Court deems just,

14  equitable and proper under the circumstances.

15  RESPECTFULLY SUBMITTED this 12th day of October, 2017

16  NISSENBAUM LAW GROUP, LLC

17

18  By:  */s/ Steven L. Procaccini*
    Steven L. Procaccini (*Pro Hac Vice*)
19  Chris Ellis Jr. (*Pro Hac Vice*)
    2400 Morris Avenue, Suite 301
20  Union, NJ 07083

21
    McDONALD CARANO LLP
22  George F. Ogilvie III (NSBN 3552)
    Amanda C. Yen (NSBN 9726)
23  2300 West Sahara Avenue, Suite 1200
    Las Vegas, NV  89102
24

25  *Attorneys for plaintiff Todd VanDeHey*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on or about the 12th day of October, 2017, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT ONE OF THE AMENDED COMPLAINT** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ Jelena Jovanovic*
An employee of McDonald Carano LLP

**INDEX OF EXHIBITS**

| Description | Exhibit No. |
|---|---|
| [Proposed] Order Granting Plaintiff's Motion for Summary Judgment as to Count One of the Amended Complaint | 1 |
|  |  |