# EXHIBIT A

Declaration of Counsel in Support of Defendants'
Opposition to Plaintiff's Second Emergency Motion for a
Temporary Restraining Order and Preliminary Injunction

JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
STEVEN G. KNAUSS, ESQ.
Nevada Bar No. 12242
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 629-7900
Facsimile: (702) 629-7925
E-mail:       jag@mgalaw.com
              sgk@mgalaw.com

*Attorneys for Defendants Real Social Dynamics, Inc.,*
*Nicholas Kho, and Owen Cook*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD VANDEHEY, an individual,<br><br>            Plaintiff,<br><br>vs.<br><br>REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual; John Does 1 through 10, all whose true names are unknown; ABC Companies 1 through 10, all whose true names are unknown,<br><br>            Defendants. | Case No.: 2:17-cv-02230-JAD-NJK<br><br>**DECLARATION OF COUNSEL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

I, JOSEPH A. GUTIERREZ, ESQ., hereby declare as follows:

1.    I am an attorney licensed to practice law in the State of Nevada and a partner with the law office of MAIER GUTIERREZ & ASSOCIATES, counsel for Defendants.

2.    I am over the age of eighteen (18) and I have personal knowledge of all matters set forth herein.  If called to do so, I would competently and truthfully testify to all matters set forth herein, except for those matters stated to be based upon information and belief.

3.    I make this declaration in support of Defendants' Opposition to Plaintiff's Second Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("Plaintiff's

1   Motion").

2       4.      Plaintiff has failed to send any written discovery to my office for the information

3   requested in the instant Motion for injunctive relief.

4       5.      Plaintiff created his own "emergency" by rushing to this Court to seek injunctive relief

5   that could have been solved by conducting formal discovery.

6       6.      At no point has Plaintiff sent Defendants any form of written discovery in this case.

7       7.      When Plaintiff's counsel attempted to unilaterally schedule the depositions of

8   Defendants on merely six (6) business days' notice and over the Thanksgiving Holiday break, I

9   immediately contacted Plaintiff's counsel and attempted to schedule a conference call pursuant to

10   LR 26-7 to coordinate the mutual setting of the parties' depositions. *See* a true and correct copy of

11   emails between counsel for the defendants and myself attached to Defendants' opposition.

12       8.      Instead of coordinating available deposition dates, Plaintiff's counsel sought a

13   representation from me that my law firm is not in possession of any "stolen and attorney/client privileged

14   materials" in an effort to establish a "greater level of trust and congeniality between [counsel]". *See* November

15   17, 2017 email from Mr. Procaccini to Mr. Gutierrez and resulting email thread attached to

16   Defendants' opposition.

17       9.      I informed Plaintiff's counsel that any request for information needs to be directed to

18   my clients through the proper discovery rules and procedures and not through a confirmation of

19   counsel on information requested from clients in exchange for a postponement of unilaterally

20   scheduled depositions.

21       10.    I invited Plaintiff's counsel to participate in a LR 26-7 conference call to discuss these

22   issues before resulting to unnecessary motion practice.

23       11.    Unfortunately, Plaintiff's counsel never participated in a LR 26-7 conference call and

24   never sent any written discovery to Defendants for the information requested in this injunctive relief

25   Motion.

26       12.    Furthermore, I have not viewed any emails between Vandehey and his attorneys and

27   my law firm is not and has never been in possession of any such attorney/client email communication.

28       13.    I declare under the penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED this 6th day of December, 2017.


/s/ Joseph A. Gutierrez, Esq.
JOSEPH A. GUTIERREZ, ESQ.
.

# EXHIBIT B

Affidavit of Nicholas Kho

**AFFIDAVIT OF NICHOLAS KHO**

STATE OF NEVADA
                        ss:
COUNTY OF CLARK

I, NICHOLAS KHO, being duly sworn, deposed and say that:

1.      I am over the age of 18 and am a resident of the State of Nevada.  I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2.      I suffer no legal disabilities that would prevent me from testifying.

3.      I have personal knowledge of the facts set forth below.

4.      Todd Vandehey used the email address of tvandehey@gmail.com as his primary RSD business email account and contact point throughout his career with RSD.   Accordingly, it is considered Real Social Dynamics (RSD) Business Email Account.

5.      Vandehey has used the email account of tvandehey@gmail.com for every aspect of communication with RSD Staff and RSD Clients, including travel, sales, marketing, management, negotiation, rent, banking, finance, accounting, customer service, and public relations.

6.      Vandehey used tvandehey@gmail.com to create login credentials and accounts not only for internal RSD business, but for RSD order processing and technology support, including:
  (i)      the merchant account with Humboldt Bank for Valentine Life,
  (ii)     the merchant account with Inchek for Valentine Life,
  (iii)    the merchant account with Inchek for Immersion VIP LLC,
  (iv)     the Valentine Life Bank of America account,
  (v)      the Valentine Life Paypal account,
  (vi)     the "RSD Todd" Skype Account,
  (vii)    the RSD Vimeo Account for RSD Copyrighted videos,
  (viii)   RSD Inner Circle Meetup.com Groups,
  (ix)     RSD Social Media accounts, and
  (x)      RSD Webinars via WebEx Conference for RSD Client and RSD Management.

7.      Vandehey's usage of a third party email account of tvandehey@gmail.com was authorized by RSD because it is a free email account and not subject to the technological limitations of the @realsocialdynamics.com domain or RSD's online infrastructure.

1

8.      RSD Instructors and RSD Staff use third party business email accounts before being given @realsocialdynamics.com email accounts because RSD does not want to incur the additional costs incurred with a high volume of accounts; however, all such RSD Contractors are explicitly informed that these are RSD Business Email accounts.

9.      All RSD Contractors are told verbally and in writing upon hiring that RSD Business Email Accounts (even third party email accounts) are the exclusive property of Real Social Dynamics, including all business correspondence and business email accounts are RSD Business assets. Section 16 of Vandehey's RSD Contractor Agreement states:

> a. The Contractor acknowledges in any position the Contractor may hold, in and as a result of the Contractor's contract by the Principal, the Contractor will, or may, be making use of, acquiring or adding to information about certain matters and things which are confidential to the Principal and which information is the exclusive property of the Principal, including, without limitation: a. 'Confidential Information' means all data and information relating to the business and management of the Principal, including proprietary and trade secret technology and accounting records to which access is obtained by the Contractor, including Work Product, Computer Software, Other Proprietary Date, Business Operations, Marketing and Development Operations, and Customers. Confidential Information will also include any information that has been disclosed by a third party to the Principal and governed by a non-disclosure agreement entered into between the third party and the Principal.

10.     All members of the RSD's executive team have signed affidavits, including the RSD Chief Financial Officer, RSD Chief Marketing Officer, RSD Chief Operations Officer, and RSD Sales Manger stating that all RSD Staff are told in writing and verbally about the RSD company policy regarding all third party email accounts (e.g. gmail.com, yahoo.com, outlook.com) being RSD assets so that RSD Contractors clearly know that such an email account belongs to RSD and that it will be used for all RSD-related business.

11.     Vandehey openly supported the idea of using third-party email servers such as gmail.com for RSD-related business.  He likewise advocated for other RSD Contractors working directly with him to create similar accounts, such as the RSD business email account of Kaitlin Severin, who used rsdkaitlin@gmail.com for all of her RSD business from 2015-2017.

12.     Vandehey setup his RSD email address (todd@realsocialdynamics.com) to forward all incoming messages to tvandehey@gmail.com.  Furthermore, Vandehey setup his Gmail address (tvandehey@gmail.com) with the recovery email set to his RSD email address so RSD Staff could access critical emails when needed.

2

13.     Vandehey, as well as all other staff who use third party email accounts, share the login credentials of those accounts with RSD Staff, Managers, and C-team members.

14.     There have been years when tvandehey@gmail.com was the only email account Vandehey used for RSD business because there were no other RSD business email accounts in existence.

15.     An inability to access the tvandehey@gmail.com account is causing irreparable harm to RSD because there is no way for RSD to service customers who purchased Vandehey-related products and services.

16.     Vandehey's current claim that tvandehey@gmail.com is a personal account has no basis in fact.  It was created with the specific purpose of facilitating RSD Business and to be the primary point of contact for Vandehey.

17.     On September 11, 2017, I accessed tvandehey@gmail.com from my smart phone with the same credentials Vandehey voluntarily disclosed to RSD prior to the start of its use.  I did so with the intention of (1) obtaining RSD customer support emails, (2) RSD customer payment receipts, and (3) to disassociate Vandehey's email from any RSD social media accounts or merchant accounts. Furthermore, after his termination, analysis of RSD financial records indicated Vandehey embezzled over $800,000.00 from RSD, and tvandehey@gmail.com was used to facilitate Vandehey's actions.

18.     I do not recall seeing, reading, or otherwise viewing any emails between Vandehey and his attorney(s), nor have I knowingly used, or otherwise shared, any privileged communication between Vandehey and non-RSD persons/entities.

19.     The Valentine Life LLC entity is inexorably linked to tvandehey@gmail.com because it was used as the primary contact account for (1) Valentine Life merchant accounts and (2) Valentine Life products, including textanddatesmachine.com, womenbytodd.com, daygameaccelerator.com. The Facebook and Vimeo accounts linked to these products, which provide customer and sales support, are solely accessed by tvandehey@gmail.com, and at present, are inaccessible to RSD.

///

///

///

///

21. I am signing this affidavit freely and voluntarily. If called to do so, I would competently and truthfully testify to all matters set forth herein.


FURTHER YOUR AFFIANT SAYETH NAUGHT.



_Nicholas Kho_
_____
NICHOLAS KHO


SUBSCRIBED and SWORN to before me
this _____ day of _____, 2017.

_____
NOTARY PUBLIC
In and for the State of Nevada, County of Clark

JULIA CHUMBLER
Notary Public State of Nevada
No. 15-1957-1
My Appt. Exp. June 10, 2019

4

# EXHIBIT C

Affidavit of Stuart Lewis

# Affidavit of Stuart Lewis

STATE OF TEXAS
COUNTY OF HARRIS

The undersigned, Stuart Lewis, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of Texas. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities that would prevent me from testifying.

3. I have personal knowledge of the facts set forth below.

4. I am the Chief Operations Officer of Real Social Dynamics.

5. Real Social Dynamics has a company policy that states that all email accounts used for business purposes to communicate with other RSD Contractors, customer service, and product/service fulfillment belong to Real Social Dynamics, and such policy is stated clearly in the RSD Contractor Agreement, which is reiterated verbally in addition to being placed in writing in the Confidential Information clauses of the RSD Contractor Agreement.

6. There are many RSD Contractors that utilize email accounts external to @realsocialdynamics.com, @valentinelife.com, and @vegasimmersion.com on third party email accounts, such as @hotmail.com, @gmail.com, and @yahoo.com; however, every RSD Contractor is told that such email accounts belong to RSD and are property of RSD in writing in the RSD Contractor Agreement and also verbally by RSD Management so that RSD Contractors know clearly that all email accounts used for business belong to RSD.

7. Todd VanDehey used tvandehey@gmail.com for RSD business, communication with RSD staff, RSD client fulfillment, and was notified by RSD Management that if he continued to use that email account, then it would be deemed as a RSD business asset and should not be treated as a RSD personal email account. In fact, that email account was utilized by Nicholas Kho for several years to create RSD Inner Circle social media, setup meetings, and to facilitate RSD Inner Circle communication since 2010; in addition, the email account was associated with todd@realsocialdynamics.com, so that the account would remain within RSD possession and control since it was a business account, and this was agreed to by Todd, who updated the settings to ensure that todd@realsocialdynamics.com was the control email account so that RSD Management could remove Todd from the email account at anytime.

8. Todd associated tvandehey@gmail.com with RSD social media and RSD digital accounts for RSD management.

9. I am signing this affidavit freely and voluntarily.  If called to do so, I would competently and truthfully testify to all matters set forth herein

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Executed this  11/30/2017
              Date

Stuart Lewis

1

# EXHIBIT D

Email – Communicate Product Launch Plans

---------- Forwarded message ----------
From: **Nicholas Kho** <papa@realsocialdynamics.com>
Date: Thu, Aug 2, 2012 at 4:27 PM
Subject: Re: Evernote:Regional events inner circle
To: Todd Vandehey <tvandehey@gmail.com>


September – Los Angeles (Jeffy, Papa, Todd, Tyler): Papa Bachelor Bash Seminar – Sunday September 16
October – October 27 at LA Halloween at Universal Studios
November – November 17 – Full Moon Party in Thailand
December – Holiday Event – NYC – December 1
January – January 26 – Australia Day
February – Rio de Janeiro – Carnivale – February 9
March – Model Season Miami – March 2
April – Amsterdam – Queen's Day – Amsterdam 27th of April
May – May 25 – Game / May 6 Seminar – Soccer – London Champions Leagues Finals
June – Czech Beer Festival – June 15 – Budapest
July – Jazz Festival Montreal – July 6
August – Chicago Air and Water Festival August 24-25

REGIONS

1. Australia

2. Mid Amserica

3. West USA

4. East USA

5. USA Special

6. Canada

7. Eastern EU

8. London

9. South USA

10. West EU

11. Africa/Asia/Middle East

12. Latin America

# EXHIBIT E

Email – Schedule WebEX Conferences with RSD Customers

---------- Forwarded message ----------
From: **Todd Vandehey** <messenger@webex.com>
Date: Sat, May 26, 2012 at 7:53 PM
Subject: Please join now, meeting in progress: Todd's meeting
To: papa@realsocialdynamics.com


Hello ,

Please join my meeting that is currently in progress.

Topic: Todd's meeting
Date: Saturday, May 26, 2012
Time: 7:48 pm, Pacific Daylight Time (San Francisco, GMT-07:00)
Meeting Number: 738 891 003
Meeting Password: Pa33word!


-------------------------------------------------------
To join the online meeting (Now from mobile devices!)
-------------------------------------------------------
1. Go
to https://freetrial.webex.com/freetrial/e.php?AT=WMI&EventID=190422592&PW=NMj
AwMWRiOWFh&RT=MiM0
2. If requested, enter your name and email address.
3. If a password is required, enter the meeting password: Pa33word!
4. Click "Join".
5. Follow the instructions that appear on your screen.

To view in other time zones or languages, please click the link:
https://freetrial.webex.com/freetrial/e.php?AT=WMI&EventID=190422592&PW=NMjAw
MWRiOWFh&ORT=MiM0


-------------------------------------------------------
To join the audio conference only
-------------------------------------------------------
Call-in toll number (US/Canada): 1-650-429-3300

Access code:738 891 003


-------------------------------------------------------
For assistance
-------------------------------------------------------
1. Go to https://freetrial.webex.com/freetrial/mc
2. On the left navigation bar, click "Support".

You can contact me at:
tvandehey@gmail.com


Sign up for a free trial of WebEx
http://www.webex.com/go/mcemfreetrial

http://www.webex.com

CCP:+16504293300x738891003#

IMPORTANT NOTICE: This WebEx service includes a feature that allows audio and any documents and other materials exchanged or viewed during the session to be recorded. By joining this session, you automatically consent to such recordings. If you do not consent to the recording, discuss your concerns with the meeting host prior to the start of the recording or do not join the session. Please note that any such recordings may be subject to discovery in the event of litigation.

# EXHIBIT F

Email – Discuss RSD Marketing Strategies

---------- Forwarded message ----------
From: **Lisa Zotti** <lisa@realsocialdynamics.com>
Date: Thu, Oct 23, 2014 at 4:06 PM
Subject: Re: Free tour leads LA
To: Mario Tomic <mario@realsocialdynamics.com>
Cc: Todd Valentine <todd@realsocialdynamics.com>, Nicholas Kho <papa@realsocialdynamics.com>


The first two pages are too blurry to read and the first page is creased so you can't read the full number to copy over. When does this need to be done by?

**Nick** - Who should I reach out to for this? We don't really have a random intern with free time right now. Thoughts?

On Thu, Oct 23, 2014 at 4:01 PM, Mario Tomic <mario@realsocialdynamics.com> wrote:
Lisa, we need an intern for Todd to do this.

---------- Forwarded message ----------
From: **Todd VanDeHey** <tvandehey@gmail.com>
Date: Thu, Oct 23, 2014 at 2:05 PM
Subject: Free tour leads LA
To: Mario RSD <mario@realsocialdynamics.com>


I know it's tough with the handwriting, but if we could get a free intern to copy these down and get them sent to 3GAD squeeze page and added to rsd list, that would be good

# EXHIBIT G

Email – Challenge RSD Executive Decisions

---------- Forwarded message ----------
From: **Todd VanDeHey** <tvandehey@gmail.com>
Date: Mon, Aug 24, 2015 at 4:01 PM
Subject: Re: Instructors and inner circle groups
To: tyler@realsocialdynamics.com, Nicholas Kho
<papa@realsocialdynamics.com>


BTW, I don't care what they do on their own pages etc, it's just the inner circle groups in referring to.

On Aug 24, 2015 3:56 PM, "Todd VanDeHey" <tvandehey@gmail.com> wrote:

My launch strategy is very much focused on Facebook groups YouTube.  As such I would greatly appreciate if people aren't spamming the Facebook groups during my launch period.  Do I have your permission to request this?

If people are seeing posts from 7 different people, it dilutes their viewership of launch videos.

# EXHIBIT H

Email – Serve as the Contact Email for the Merchant
Account for Valentine Life

**From:** lsilva@hbms.com [mailto:lsilva@hbms.com] **On Behalf Of** Collection HBMS
**Sent:** Monday, September 25, 2017 10:41 AM
**To:** tvandehey@gmail.com
**Cc:** Stacey Bates <Stacey@cambridgecommerce.com>
**Subject:** Re: Humboldt Merchant Services - VAL*VALENTINE 897206780883

Hello,

I am following up on the below email, please advise.


Risk Collections
Humboldt Merchant Services
PO BOX 176
Cutten, California 95534
Telephone: 877-387-5642 option 1, then option 3


On Mon, Sep 18, 2017 at 12:32 PM, Collection HBMS <hbmscollections@hbms.com> wrote:
Hello,

I hope you had a fantastic weekend!

We received a reject notice from your bank regarding the August monthly fees. It looks like they rejected the debit for $339.90 due to bank account closed.

Can you please advise when you will be in a position for us to re-debit? If we do not receive a response by 09/30/17, the account may be reviewed for closure as it has not processed in 18 months.


Risk Collections
Humboldt Merchant Services
PO BOX 176
Cutten, California 95534
Telephone: 877-387-5642 option 1, then option 3

# EXHIBIT I

Email – Requesting Letters on RSD Letterhead
Confirming Income

On Sat, Feb 6, 2016 at 11:12 AM, Todd VanDeHey <tvandehey@gmail.com> wrote:
Thanks, Mike!

On Sat, Feb 6, 2016 at 10:46 AM, Michael
Ampikapon <michael@realsocialdynamics.com> wrote:
How do these look?  Let me know if you need anything changed.


On 2/6/16 6:37 AM, "Todd VanDeHey" <tvandehey@gmail.com> wrote:

Mike, please create these on in any form you are able, but please do it ASAP. Thank you.

On Fri, Feb 5, 2016 at 6:30 PM, Michael Ampikapon <michael@realsocialdynamics.com> wrote:
I don't have any template for the RSD letterhead.  Nick?



On 2/5/16 7:31 AM, "Todd VanDeHey" <tvandehey@gmail.com <http://tvandehey@gmail.com> >
wrote:

They want these on company letterhead, so they might have to be done by Nick, unless you are able to
do that, Mike.

Thanks guys.

---------- Forwarded message ----------
From: "Todd VanDeHey" <tvandehey@gmail.com <http://tvandehey@gmail.com> >
Date: Feb 5, 2016 10:05 AM
Subject: Employment letters.
To:  <michael@realsocialdynamics.com <http://michael@realsocialdynamics.com> >
Cc:


Can you create employment letters for me and Yuriy please. Mine should state an income of just over
320,000 annually.  Yuri's base pay is $4150 or month.

Basically the letters need to state those numbers and that we work for RSD.

Thanks

# EXHIBIT J

Email – Reserve Business Travel/AirBnB using RSD
Corporate Travel Team

---------- Forwarded message ----------
From: **Airbnb** <invitation@airbnb.com>
Date: Thu, Jul 9, 2015 at 9:46 PM
Subject: Reservation Itinerary from Todd Vandehey
To: hugh@realsocialdynamics.com

Todd Vandehey has shared some upcoming travel plans with you, which you'll find below. If you

to tvandehey@gmail.com.

Todd confirmed this reservation on Airbnb, which helps travelers find unique accommodations all

**Accept Todd's Trip Invitation**

Thanks,

The Airbnb Team

# Itinerary

**Confirmation Code: 2DWEPP**

**1225 North Poinsettia Place, West Hollywood, CA 90046, United States**

**NEW! Stylish in Heart of LA**

Apartment · Entire home/apt · 4 Guests

| Arrive | Depart |
|---|---|
| **Sun, July 26, 2015** | **Sun, August 02, 2015** |

**Change or Cancel**

# Your Host

**Mirjam Wertheim**

+1 323 899 2155

mirjam-opyj9zevuhgl3stm@host.airbnb.com

By emailing the host at their @host.airbnb.com address, you agree to our Terms of Service and Privacy Policy.

## House Manual

Door code is 0483

## House Rules

SMOKING POLICY - Please only smoke outdoors

Pet Policy - If you have a pet there will be an additional cleaning charge of $150

Quiet hours - this is a residential neighborhood. Please no loud parties. If you have guests please be respectful towards the neighbors.

## Payment

We've billed the payment method you supplied for $2090, the full amount of the reservation. The host will receive the payment from Airbnb 24 hours after you check in. View billing receipt.

## Cancellation Policy

Moderate: Full refund 5 days prior to arrival, except fees. Learn more.

## Security Deposit

Airbnb will only charge the security deposit amount if an issue is reported by the host.

## Customer Support

If you need assistance with your reservation or for urgent situations, such as check-in trouble or arriving to something unexpected, we're here to help!

Visit the Help Center

Contact Us

+1-415-800-5959

+1-855-424-7262 (toll-free)

# Frequently Asked Questions

How can I be a considerate guest?

How do I make changes to a confirmed reservation as a guest?

How does check-in work?

How do I report something's wrong when I check in?

Find more answers in our Help Center.

| | |
|---|---|
| $265 x 7 Nights | $1855 |
| Cleaning Fees | $100 |
| Airbnb Service Fee | $135 |
| Total | $2090 |

Sent with  from Airbnb HQ

P.O. Box 410807, San Francisco, CA 94121

Unsubscribe

On Fri, Jan 31, 2014 at 11:51 AM, Travel <travel@realsocialdynamics.com> wrote:

I confirmed with them that you can checkin early since your flight lands at 6am.

This itinerary has been shared with you by Todd Vandehey (tvandehey@gmail.com), who made a reservation using Airbnb.com. To activate your account on Airbnb, you can sign in using Facebook or by requesting a new password.

Thanks,
Customer Support: +1 (800) 615-3017

# Itinerary

CONFIRMATION CODE: CZBNRF

Fri, February 07, 2014
Flexible check in time
Check In

Mon, February 10, 2014
Flexible check out time
Check Out

3
Nights

Todd Vandehey
Name

## Live Royally in Heart of Midtown

250 10th Street Northeast APT 1203
Atlanta, GA 30309
United States

## Esha And Gregory

+1 734 262 0526
esha@epkpllc.com

## Payment

The billing information you supplied has been billed for the full amount. The host will receive full payment from Airbnb 24 hours after you check in.

## Cancellation Policy

Moderate: Full refund 5 days prior to arrival, except fees.

## House Rules

I have some Indian furniture pieces that are family heirlooms and irreplaceable. Just be careful with these, please.

## Customer Support

# EXHIBIT K

VanDeHey RSD Contractor Agreement

## REAL SOCIAL DYNAMICS
### Contractor Agreement

**THIS CONTRACTOR AGREEMENT dated this 1st day of October, 2004**

**BETWEEN:**

Real Social Dynamics of 8312 Carlin Avenue, Sacramento, CA 95823
(the "Principal")

- AND –

Todd VanDeHey of 2305 Smith Court, Longmont, Colorado, 80501
(the "Contractor")

**BACKGROUND:**

A. The Principal is duly incorporated, organized and existing under the laws of the State of Nevada.

B. The Principal is of the opinion that the Contractor has the necessary qualifications, experience and abilities to assist and benefit the Principal in its business.

C. The Principal desires to employ the Contractor and the Contractor has agree to accept and enter such Contract upon the terms and conditions set out in this Agreement.

**IN CONSIDERATION OF** the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

**Commencement Date and Term**

1. The Contractor will commence Contract with the Principal on October 1, 2004 (the 'Commencement Date').

2. Subject to termination as provided in this Agreement, the Contractor is contracted for an indefinite term. The parties acknowledge that various provisions of this Agreement survive past termination of Contract.

**Position and Duties**

3. The Principal agrees to employ the Contractor as an Executive Coach to be an Instructor for Real Social Dynamics Live Programs and complete Administrative Work, and the Contractor agrees to be contracted on the terms and conditions set out in this Agreement. The Contractor agrees to be subject to the general supervision of and act pursuant to the orders, advice and direction of the Principal.

4. The Contractor will perform any and all duties now and later assigned to the Contractor by the Principal. The Contractor will also perform such other duties as are customarily performed by one holding such a position in other, same or similar business or enterprises as that engaged in by the Principal.

5. The Contractor agrees to abide by the Principal's rules, regulations, and practices, including those concerning work schedules, vacation and sick leave, as they may from time to time be adopted or modified.

**Contractor Compensation**

6. For the services rendered by the Contractor as required by this Agreement, the Principal will pay to the Contractor a salary set in accordance with the Principal's policy stated in the Contractor's Manual while this Agreement is in force. The Principal is entitled to deduct from the Contractor's compensation any applicable deductions and remittance as required by law.

7. The Contractor understands that the Contractor's compensation as provided in this Agreement will constitute the full and exclusive monetary consideration and compensation for all services performed by the Contractor and for the performance of all the Contractor's promises and obligations in this Agreement.

8. The Contractor understands and agrees that any additional compensation to the Contractor (whether a bonus or other form of additional compensation) will rest in the sole discretion of the Principal and that the Contractor will not earn or accrue any right to additional compensation by reason of the Contractor's Contract.

9. The Principal will reimburse the Contractor for all necessary expenses incurred by the Contractor while traveling pursuant to the Principal's directions.

10. The Principal agrees to permit a reasonable degree of flexibility in work hours. In cases where extra time is worked in a day or week, the Contractor agrees to take equivalent time off in place of overtime pay within three months, unless there is an express agreement to pay at overtime rates.

Contractor's Initials 
Principal's Initials

## Contractor Benefits

11. The Contractor will be entitled to only those additional benefits that are currently in place for the Principal's Contractors as set out in the Principal's booklets and manuals.

12. The Contractor will be entitled in each year to such vacations as are stipulated by the Principal's policies.

## Avoiding Conflict of Opportunities

13. It is understood and agreed that any business opportunity relating to or similar to the Principal's current or anticipated business opportunities (with the exception of personal investments in less than 5% of the equity of a business, investments in established family businesses, real estate, or investments in stocks and bonds traded on public stock exchanges) coming to the attention of the Contractor during the Contractor's Contract is an opportunity belonging to the Principal. Therefore, the Contractor will advise the Principal of the opportunity and cannot pursue the opportunity, directly or indirectly, without the written consent of the Principal.

14. Without the written consent of the Principal, the Contractor further agrees not to:
    a. solely or jointly with others undertake or join any planning for or organization of any business activity competitive with the current or anticipated business activities of the Principal, and
    b. directly or indirectly, engage or participate in any other business activities that the Principal, in its reasonable discretion, determines to be in conflict with the best interests of the Principal.

## Inability to Contract for Principal

15. In spite of anything contained in this Agreement to the contrary, the Contractor will not have the right to make any contracts or commitments for or on the behalf of the Principal without first obtaining the express written consent of the Principal.

## Confidential Information and Assignment of Inventions

16. The Contractor acknowledges in any position the Contractor may hold, in and as a result of the Contractor's Contract by the Principal, the Contractor will, or may, be making use of, acquiring or adding to information about certain matters and things which are confidential to the Principal and which information is the exclusive property of the Principal, including, without limitation:

    a. 'Confidential Information' means all data and information relating to the business and management of the Principal, including proprietary and trade secret technology and accounting records to which access is obtained by the Contractor, including Work Product, Computer Software, Other Proprietary Date, Business Operations, Marketing and Development Operations, and Customers. Confidential Information will also include any information that has been disclosed by a third party to the Principal and governed by a non-disclosure agreement entered into between the third party and the Principal. Confidential Information will not include information that:

        i. is generally known in the industry of the Principal;

        ii. is now or subsequently becomes generally available to the public through no wrongful act of the Contractor;

        iii. the Contractor rightfully had in its possession prior to the disclosure to Contractor by the Principal;

        iv. is independently created by the Contractor without direct or indirect use of the Confidential Information; or

        v. the Contractor rightfully obtains from a third party who has the right to transfer or disclose it.

    b. 'Work Product' means work product resulting from or related to work or projects performed or to be performed for the Principal or for clients of the Principal, of any type or form in any state of actual or anticipated research and development;

    c. 'Computer Software' which means computer software resulting from or related to work or projects performed or to be performed for the Principal or for clients of the Principal, of any type or form in any state of actual or anticipated research and development, including but not limited to programs and program modules, routines and subroutines, processes, algorithms, design concepts, design specifications, (design notes, annotations, documentation, flowcharts, coding sheets, and the like), source code, object code and load modules, programming, program patches and system designs;

    d. 'Other Proprietary Data' means information relating to the Principal's proprietary rights prior to any public disclosure of such information, including but not limited to the nature of the proprietary rights, production data, technical and engineering data, test data and test results, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including patents, copyrights and trade secrets);

    e. 'Business Operations' means internal personnel and financial information, vendor names and other vendor information (including vendor characteristics, services and agreements), purchasing and internal cost information, internal services and operational manuals, and the manner and methods of conducting the Principal's business;

    f. 'Marketing and Development Operations' means marketing and development plans, price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of the Principal which have been or are being discussed; and

Contractor's Initials TV
Principal's Initials NJK

g.   'Customers' means names of customers and their representatives, contracts and their contents and parties, customer services, data provided by customers and the type, quantity and specifications of products and services purchased, leased, licensed or received by clients of the Principal.

## Confidential Obligations

17.   The Contractor agrees that a material term of the Contractor's contract with the Principal is to keep all Confidential Information absolutely confidential and protect its release from the public. The Contractor agrees not to divulge, reveal, report or use, for any purpose, any of the Confidential Information which the Contractor has obtained or which was disclosed to the Contractor by the Principal as a result of the Contractor's Contract by the Principal. The Contractor agrees that if there is any question as to such disclosure then the Contractor will seek out senior management of the Principal prior to making any disclosure of the Principal's information that may be covered by this Agreement.

18.   The obligations to ensure and protect the confidentiality of the Confidential Information imposed on the Contractor in this Agreement and any obligations to provide notice under this Agreement will survive the expiration or termination, as the case may be, of this Agreement.

19.   The Contractor may disclose any of the Confidential Information:

a.   To a third party where Principal has consented in writing to such disclosure; and

b.   To the extent required by law or by the request or requirement of any judicial, legislative, administrative or other governmental body, however, the Contractor will first have given prompt notice to the Principal of any possible or prospective order (or proceeding pursuant to which any order may result), and the Principal will have been afforded a reasonable opportunity to prevent or limit any disclosure.

## Ownership and Title

20.   The Contractor acknowledges and agrees that all rights, title and interest in any Confidential Information will remain the exclusive property of the Principal. Accordingly, the Contractor specifically agrees and acknowledges that he will have no interest in the Confidential Information, including, without limitation, no interest in know-how, copyright, trade-marks or trade names, notwithstanding the fact that he may have created or contributed to the creation of the same.

21.   The Contractor does hereby waive any moral rights that he may have with respect to the Confidential Information.

22.   The Contractor agrees to immediately disclose to the Principal all Confidential Information developed in whole or in part by the Contractor during the term of the Contractor's Contract with the Principal and to assign to the Principal any right, title or interest the Contractor may have in the Confidential Information. The Contractor agrees to execute any instruments and to do all other things reasonably requested by the Principal (both during and after the Contractor's Contract with the Principal) in order to vest more fully in the Principal all ownership rights in those items transferred by the Contractor to the Principal.

## Return of Confidential Information

23.   The Contractor agrees that, upon request of the Principal or upon termination or expiration, as the case may be, or Contract, the Contractor will turn over to the Principal all documents, disks or other computer media, or other material in the possession or control of the Contractor that:

a.   May contain or be derived from ideas, concepts, creations, or trade secrets and other proprietary and Confidential Information as defined in this Agreement; or

b.   Connected with or derived from the Contractor's services to the Principal.

## Non-Solicitation

24.   Any attempt on the part of the Contractor to induce others to leave the Principal's employ, or any effort by the Contractor to interfere with the Principal's relationship with its other Contractors and contractors would be harmful and damaging to the Principal. The Contractor agrees that during the term of his Contract with the Principal and for a period of five (5) years after the end of that term, the Contractor will not in any way, directly or indirectly:

a.   Induce or attempt to induce any Contractor or contractor of the Principal to quit Contract or retained with the Principal;

b.   Otherwise interfere with or disrupt the Principal's relationship with its Contractors and Employees;

c.   Discuss Contract opportunities or provide information about competitive Contract to any of the Principal's Contractors or Employees; or

d.   Solicit, entice, or hire away any Contractor or contractor of the Principal.

This obligation will be limited to those that were Contractors or contractors of the Principal when the Contractor was contracted by the Principal.

## Non-Competition

25.   Other than through Contract with a bona-fide independent party, or with the express written consent of the Principal, which will not be unreasonably withheld, the Contractor will not, during the continuance of the Agreement or within five (5) years after the termination or expiration, as the case may be, of this Agreement, be directly or indirectly involved with a business which is in direct competition with the Principal in the business line of how to be successful with women and dating.

Contractor's Initials _TV_
Principal's Initials _NJK_

26. For a period of five (5) years from the date of termination or expiration, as the case may be, of the Contractor's Contract with the Principal, the Contractor will not divert or attempt to divert from the Principal any business the Principal had enjoyed, solicited, or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of the Contractor's Contract with the Principal.

27. The Contractor will not own, operate or work for a company or internet website that teaches men how to be successful with women and dating, for five (5) years from the date of termination or expiration, in Los Angeles, New York, San Francisco, Sydney, Melbourne, Toronto, Montreal, and London, and the Contractor will forfeit to Real Social Dynamics any revenue and income earned from operating or working for a company or internet website that teaches men how to be successful with women and dating during the 5 year period, and the Contractor is still obligated to keep all trade secrets confidential.

**Termination Due to Discontinuance of Business**

28. In spite of anything contained in this Agreement to the contrary, in the event that the Principal will discontinue operating its business at the location where the Contractor is contracted, then, at the Principal's sole option, this Agreement will terminate as of the last day of the month in which the Principal ceases operations at such location with the same force and effect as if such last day of the month were originally set as the termination date of this Agreement.

**Termination For Disability**

29. In spite of anything contained in this Agreement to the contrary, in the event that the Principal will discontinue operating its business at the location where the Contractor is contracted, then, at the Principal's sole option, this Agreement will terminate as of the last day of the month in which the Principal ceases operations at such location with the same force and effect as if such last day of the month were originally set as the termination date of this Agreement.

**Termination of Contract**

30. Where the Contractor has breached any of the terms of this Agreement or where there is just cause for termination, the Principal may terminate the Contractor's Contract without notice.

31. The Contractor and the Principal agree that reasonable and sufficient notice of termination of Contract by the Principal is the greater of two weeks and any notice required under any relevant Contract legislation.

32. If the Contractor wishes to terminate his Contract with the Principal, the Contractor will provide the Principal with two weeks' notice. As an alternative, if the Contractor co-operates with the training and development of a replacement, then sufficient notice is given if it is sufficient notice to allow the Principal to find and train the replacement.

33. Should the Contractor terminate his Contract pursuant to this Agreement, and there is no constructive dismissal, the Contractor agrees to be reasonably available as a consultant for the purposes of maintaining any projects or developments created while contracted by the Principal. The Contractor agrees to negotiate the terms of the consulting work in good faith. In his capacity as a consultant for the Principal pursuant to this paragraph, the Contractor agrees to provide his present residential address and telephone number as well as his business address and telephone number.

34. The time specified in the notice by either the Contractor or the Principal may expire on any day of the month and upon the date of termination the Principal will forthwith pay to the Contractor any outstanding portion of the wage, accrued vacation and banked time, if any, calculated to the date of termination. Notwithstanding the date of termination, the Contractor acknowledges and agrees to diligently execute and complete his Contract responsibilities to the Principal at the reasonable direction of the Principal. Failure of the Contractor to reasonably execute his obligations to the Principal during the notice period will be considered to be an abandonment of his obligations and will be sufficient cause for immediate termination of the Contractor without compensation or notice.

**Remedies**

35. The Contractor agrees and acknowledges that the Confidential Information is of a proprietary and confidential nature and that any disclosure of the Confidential Information to a third party in breach of this Agreement cannot be reasonably or adequately compensated for in money damages, would cause irreparable injury to Principal, would gravely affect the effective and successful conduct of the Principal's business and goodwill, and would be a material breach of this Agreement.

36. In the event of a breach or threatened breach by the Contractor of any of the provisions of this Agreement, the Contractor agrees that the Principal is entitled to, in addition to and not in limitation of any other rights and remedies available to the Principal at law or in equity, to a permanent injunction in order to prevent or restrain any such breach by the Contractor or by the Contractor's partners, agents, representatives, servants, Contractors, and/or any and all persons directly or indirectly acting for or with the Contractor.

37. The Contractor agrees to co-operate with the Principal following termination by providing documentation and other information to permit the Principal to evaluate whether the Contractor is honoring his post-Contract obligations set out in this Agreement.

**Severability**

38. Principal and Contractor acknowledge that this Agreement is reasonable, valid and enforceable. However, if a court of competent jurisdiction finds any of the provisions of this Agreement to be too broad to be enforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable, bearing in mind that it is the Contractor's intention to give the Principal the broadest possible protection against the disclosure of the Confidential Information, against the Contractor soliciting the Principal's Contractors and contractors and against the Contractor using such Confidential Information in competing with the Principal.

39. In the event that any of the provisions of this Agreement will be held to be invalid or unenforceable in whole or in part, those provisions to the extent enforceable and all other provisions will nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Agreement and the remaining provisions had been executed by both parties subsequent to the expungement of the invalid provision.

Contractor's Initials 
Principal's Initials

**Notices**

40. If Contractor loses or makes unauthorized disclosure of any of the Confidential Information, the Contractor will immediately notify the Principal and take all reasonable steps necessary to retrieve the lost or improperly disclosed Confidential Information.

41. All notices, requests, demands or other communications required or permitted by the terms of this Agreement will be given in writing and either served personally or sent by facsimile or e-mail. The address for any notice to be delivered to an of the parties to this Agreement is as follows:

    a.  Real Social Dynamics: 8312 Carlin Avenue, Sacramento, CA 95823
        Email: papa@realsocialdynamics.com

    b.  Todd VanDeHey: 2305 Smith Court, Longmont, Colorado, 80501
        Email: mike@realsocialdynamics.com

**Modification of Agreement**

42. Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

**Governing Law**

43. It is the intention of the parties to this Agreement that this Agreement and the performance under this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the State of Nevada, without regard to the jurisdiction in which any action or special proceeding may be instituted.

**General Provisions**

44. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

45. The Contractor is liable for all costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Principal in enforcing this Agreement as a result of any default of this Agreement by the Contractor.

46. No failure or delay by the Principal in exercising any power, right or privilege provided in this Agreement will operate as a waiver, nor will any single or partial exercise of such rights, powers or privileges preclude any further exercise of them or the exercise of any other right, power or privilege provided in this Agreement.

47. This Agreement will inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Principal and the Contractor.

48. This Agreement may be executed in counterparts.

49. Time is of the essence in this Agreement.

50. If there is a previous Contract agreement between the parties to this Agreement, the parties agree that this Agreement will replace that previous Contract agreement and the Contractor acknowledges that this Agreement was entered into in consideration of a compensation increase commencing the start of this Agreement. The Contractor acknowledges that it was agreed at that time that a new Contract agreement would be entered into in consideration of the compensation increase.

51. This Agreement and the Contractor Manual constitutes the entire agreement between the parties and there are no further items or provisions, either oral or written. As of the effective date of this Agreement, this Agreement supersedes all other agreements between the parties. The parties to this Agreement stipulate that neither of them has made any representations with respect to the subject matter of this Agreement except such representations as are specifically set forth in this Agreement. Each of the parties acknowledges that it has relied on its own judgment in entering into this Agreement.

**IN WITNESS WHEREOF** Real Social Dynamics has duly affixed its signature by a duly authorized officer on this 1st day of October, 2004. By signing below, the Contractor acknowledges that he/she understands and accepts this obligation.

_____          _____          7/27/04
Nicholas Kho, President                    Todd VanDeHey                             Date
Real Social Dynamics, Inc.

Contractor's Initials  TV
Principal's Initials  NJK

# EXHIBIT L

Affidavit of RSD CFO Michael Ampikpon

# Affidavit of Michael Ampikapon

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

The undersigned, Michael Ampikapon, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of California. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities that would prevent me from testifying.

3. I have personal knowledge of the facts set forth below.

4. I am the Chief Financial Officer of Real Social Dynamics.

5. Real Social Dynamics has a company policy that states that all email accounts used for business purposes to communicate with other RSD Contractors, customer service, and product/service fulfillment belong to Real Social Dynamics, and such policy is stated clearly in the RSD Contractor Agreement, which is reiterated verbally in addition to being placed in writing in the Confidential Information clauses of the RSD Contractor Agreement.

6. There are many RSD Contractors that utilize email accounts external to @realsocialdynamics.com, @valentinelife.com, and @vegasimmersion.com on third party email accounts, such as @hotmail.com, @gmail.com, and @yahoo.com; however, every RSD Contractor is told that such email accounts belong to RSD and are property of RSD in writing in the RSD Contractor Agreement and also verbally by RSD Management so that RSD Contractors know clearly that all email accounts used for business belong to RSD.

7. Todd VanDehey used tvandehey@gmail.com for RSD business, communication with RSD staff, RSD client fulfillment, and was notified by RSD Management that if he continued to use that email account, then it would be deemed as a RSD business asset and should not be treated as a RSD personal email account. In fact, that email account was utilized by Nicholas Kho for several years to create RSD Inner Circle social media, setup meetings, and to facilitate RSD Inner Circle communication since 2010; in addition, the email account was associated with todd@realsocialdynamics.com, so that the account would remain within RSD possession and control since it was a business account, and this was agreed to by Todd, who updated the settings to ensure that todd@realsocialdynamics.com was the control email account so that RSD Management could remove Todd from the email account at anytime.

8. Todd associated tvandehey@gmail.com with RSD social media and RSD digital accounts for RSD management.

9. I am signing this affidavit freely and voluntarily. If called to do so, I would competently and truthfully testify to all matters set forth herein

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Executed this ___11/29/17___
           Date

_____
Michael Ampikapon

1

# EXHIBIT M

Affidavit of RSD CMO Mikhail Kuznetsov

# Affidavit of Mikhail Kuznetsov

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

The undersigned, Mikhail Kuznetsov, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of California. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities that would prevent me from testifying.

3. I have personal knowledge of the facts set forth below.

4. I am the Chief Marketing Officer of Real Social Dynamics.

5. Real Social Dynamics has a company policy that states that all email accounts used for business purposes to communicate with other RSD Contractors, customer service, and product/service fulfillment belong to Real Social Dynamics, and such policy is stated clearly in the RSD Contractor Agreement, which is reiterated verbally in addition to being placed in writing in the Confidential Information clauses of the RSD Contractor Agreement.

6. There are many RSD Contractors that utilize email accounts external to @realsocialdynamics.com, @valentinelife.com, and @vegasimmersion.com on third party email accounts, such as @hotmail.com, @gmail.com, and @yahoo.com; however, every RSD Contractor is told that such email accounts belong to RSD and are property of RSD in writing in the RSD Contractor Agreement and also verbally by RSD Management so that RSD Contractors know clearly that all email accounts used for business belong to RSD.

7. Todd VanDehey used tvandehey@gmail.com for RSD business, communication with RSD staff, RSD client fulfillment, and was notified by RSD Management that if he continued to use that email account, then it would be deemed as a RSD business asset and should not be treated as a RSD personal email account. In fact, that email account was utilized by Nicholas Kho for several years to create RSD Inner Circle social media, setup meetings, and to facilitate RSD Inner Circle communication since 2010; in addition, the email account was associated with todd@realsocialdynamics.com, so that the account would remain within RSD possession and control since it was a business account, and this was agreed to by Todd, who updated the settings to ensure that todd@realsocialdynamics.com was the control email account so that RSD Management could remove Todd from the email account at anytime.

8. Todd associated tvandehey@gmail.com with RSD social media and RSD digital accounts for RSD management.

9. I am signing this affidavit freely and voluntarily.  If called to do so, I would competently and truthfully testify to all matters set forth herein

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Executed this ___H_/_2a_/_17___
                     Date

_____
Mikhail Kuznetsov

1

# EXHIBIT N

Affidavit of RSD Sales Manager Phil Aggains

# Affidavit of Phil Agganis

STATE OF NEVADA

COUNTY OF CLARK

The undersigned, Phil Agganis, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of Nevada. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities that would prevent me from testifying.

3. I have personal knowledge of the facts set forth below.

4. I am the Sales Manager of Real Social Dynamics.

5. Real Social Dynamics has a company policy that states that all email accounts used for business purposes to communicate with other RSD Contractors, customer service, and product/service fulfillment belong to Real Social Dynamics, and such policy is stated clearly in the RSD Contractor Agreement, which is reiterated verbally in addition to being placed in writing in the Confidential Information clauses of the RSD Contractor Agreement.

6. There are many RSD Contractors that utilize email accounts external to @realsocialdynamics.com, @valentinelife.com, and @vegasimmersion.com on third party email accounts, such as @hotmail.com, @gmail.com, and @yahoo.com; however, every RSD Contractor is told that such email accounts belong to RSD and are property of RSD in writing in the RSD Contractor Agreement and also verbally by RSD Management so that RSD Contractors know clearly that all email accounts used for business belong to RSD.

7. Todd VanDehey used tvandehey@gmail.com for RSD business, communication with RSD staff, RSD client fulfillment, and was notified by RSD Management that if he continued to use that email account, then it would be deemed as a RSD business asset and should not be treated as a RSD personal email account. In fact, that email account was utilized by Nicholas Kho for several years to create RSD Inner Circle social media, setup meetings, and to facilitate RSD Inner Circle communication since 2010; in addition, the email account was associated with todd@realsocialdynamics.com, so that the account would remain within RSD possession and control since it was a business account, and this was agreed to by Todd, who updated the settings to ensure that todd@realsocialdynamics.com was the control email account so that RSD Management could remove Todd from the email account at anytime.

8. Todd associated tvandehey@gmail.com with RSD social media and RSD digital accounts for RSD management.

9. I am signing this affidavit freely and voluntarily.  If called to do so, I would competently and truthfully testify to all matters set forth herein

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Executed this ___11/29/2017___

Date

_____

Phil Agganis

1

# EXHIBIT O

November 17, 2017 Email from Plaintiff's Counsel to Chris Ellis to Defendants' Counsel Steven Knauss and Joseph Gutierrez

**Steven Knauss**

| | |
|---|---|
| **From:** | Chris Ellis Jr. <ce@gdnlaw.com> |
| **Sent:** | Friday, November 17, 2017 12:29 PM |
| **To:** | Steven Knauss |
| **Cc:** | Joseph Gutierrez; George F. Ogilvie III; Amanda Yen; Steven L. Procaccini; April Lanzet |
| **Subject:** | VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK |
| **Attachments:** | Notice of Deposition_Owen Cook.pdf; Notice of Deposition_Real Social Dynamics, Inc..pdf; Notice of Deposition_Nicholas Kho.pdf |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Completed |

Dear Steven:

Please see the attached notices.

**Chris Ellis Jr., Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 gdnlaw.com

140 Broadway, 46th Floor, New York, New York 10005  (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only.  Conditions regarding email communications and Internet usage are located at
http://www.gdnlaw.com/email_disclaimer.htm.

# EXHIBIT P

Notices of Deposition

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF NEVADA

TODD VANDEHEY, an individual,

> *Plaintiff,*

v.

REAL SOCIAL DYNAMICS, INC., a Nevada
corporation; NICHOLAS KHO, an individual;
OWEN COOK, an individual; John Does 1
through 10, all whose true names are unknown;
ABC Companies 1 through 10, all whose true
names are unknown,

> *Defendants.*

Civil Action No.: 2:17-cv-02230-JAD-NJK

**NOTICE OF DEPOSITION**

**TO:**

> **NICHOLAS KHO**
> c/o Maier Gutierrez & Associates
> Attn: Steven Knauss, Esq.
> 8816 Spanish Ridge Avenue
> Las Vegas, Nevada 89148
> *Attorneys for Defendant*

**YOU ARE COMMANDED** to appear at 10:00 AM on Thursday, November 30, 2017 at the

offices of McDonald Carano, LLP, located at 2300 W. Sahara Avenue, Suite 1200, Las Vegas,

Nevada 89102, and continuing from day-to-day until such time the deposition is complete, to testify

at a deposition, recorded by stenographic means, to be taken in the above-captioned matter in

accordance with Rule 30 of the Federal Rules of Civil Procedure and pursuant to the Court's order

dated October 4, 2017 attached hereto as **Exhibit A**.

**PLEASE TAKE NOTICE** that this Notice of Deposition is solely related to the limited

discovery regarding the identities of the Doe Defendants and not for any other purpose. The topics

covered in the deposition shall include, without limitation:

1.    The owner(s) and user(s) of the telephone number 702-600-8317.

2.    The owner(s) and user(s) of the telephone number 702-600-8317 between September

11, 2017 and September 12, 2017.

3.     Defendants Nicholas Kho's and Real Social Dynamic, Inc.'s association with the telephone number 702-600-8317.

4.     The owner(s) of Verizon account number 673355888-1.

5.     The owner(s) of Verizon account number 442170134-1.

6.     Defendants Nicholas Kho's and Real Social Dynamic, Inc.'s association with the Verizon account numbers 673355888-1 and 442170134-1.

7.     Defendants Nicholas Kho's and Real Social Dynamic, Inc.'s Verizon account numbers.

8.     The activation and deactivation dates of Defendants Nicholas Kho's and Real Social Dynamic, Inc.'s Verizon account numbers.

9.     Defendant Nicholas Kho's relationship to Amber Kho, the owner of the PayPal account associated with the email address amber@kho.biz.

10.    The owner(s) of the domain name kho.biz.

11.    The user associated with the PayPal, Inc. alias "PAPAKHO07".

12.    Defendants Nicholas Kho's and Real Social Dynamic, Inc.'s attempts and successes in accessing Todd VanDeHey's Gmail account tvandehey@gmail.com without authorization.

13.    Defendants Nicholas Kho's and Real Social Dynamic, Inc.'s association with any individual or entity who attempted to, or in fact did, access Todd VanDeHey's Gmail account tvandehey@gmail.com without authorization.

14.    Any individual or entity instructed by Defendants Nicholas Kho and Real Social Dynamic, Inc. to attempt to access Todd VanDeHey's Gmail account tvandehey@gmail.com without authorization.

2

15.     Any individual or entity informed by Defendants Nicholas Kho and Real Social

Dynamic, Inc. of plans to attempt to access Todd VanDeHey's Gmail account tvandehey@gmail.com

without authorization.

Date:_____11/17/17_____                          _____
                                                          Steven L. Procaccini

The name, address, e-mail address, and telephone number of the attorneys representing

plaintiff Todd VanDeHey, who issues this notice, are:

George F. Ogilvie III (NSBN #3552)          Steven L. Procaccini (*Pro Hac Vice*)
Amanda C. Yen (NSBN #9726)                  Chris Ellis Jr. (*Pro Hac Vice*)
McDONALD CARANO LLP                         NISSENBAUM LAW GROUP, LLC
2300 W. Sahara Ave, Suite 1200              2400 Morris Avenue, Suite 301
Las Vegas, NV 89102                         Union, NJ 07083
Telephone:  702.873.4100                    Telephone: 908-686-8000
Fax:  702.873.9966                          Fax: 908-686-8550
gogilvie@mcdonaldcarano.com                 sp@gdnlaw.com
ayen@mcdonaldcarano.com                     ce@gdnlaw.com

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD VANDEHEY,        )<br>           Plaintiff(s),   )<br>                     )<br>v.                     )<br>                     )<br>REAL SOCIAL DYNAMICS, INC., et al., )<br>           Defendant(s).   )<br>                     ) | Case No. 2:17-cv-02230-JAD-NJK<br><br>ORDER<br><br>(Docket Nos. 28, 32) |

Pending before the Court are Plaintiff's motions to amend the complaint and to conduct discovery, filed on an emergency basis. Docket Nos. 28, 32. Defendants have filed a response in opposition. Docket No. 37. Plaintiff filed replies. Docket Nos. 38, 39. The motions are properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the motions to amend and conduct discovery are both **GRANTED**.

## I.   MOTION FOR LEAVE TO AMEND

Plaintiff seeks leave to file an amended complaint. Docket No. 32. In particular, Plaintiff seeks to file an amended complaint that includes: (1) a claim for declaratory relief regarding the enforceability of the non-competition and non-solicitation provisions of the Contractor Agreement, which is brought against Defendants Real Social Dynamics, Kho and Cook ("First Claim"); (2) a claim for unauthorized access and alteration of Plaintiff's personal email account in violation of the Stored Communications Act, which is brought against currently-unknown Doe Defendants ("Second Claim"); (3) a claim for unauthorized access to and obtaining of information from Plaintiff's personal email account in violation

1   of the Computer Fraud and Abuse Act, which is brought against currently-unknown Doe Defendants

2   ("Third Claim"); (4) a claim for improperly accessing, obtaining information from, and interfering with

3   Plaintiff's personal email account in violation of N.R.S. 205.4765, which is brought against currently-

4   unknown Doe Defendants ("Fourth Claim"); and (5) a claim for conversion of funds from a PayPal

5   account, which is brought against currently-unknown Doe Defendants ("Fifth Claim"). *See* Docket No.

6   32-2 (proposed amended complaint).

7        Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure,

8   which provides that "[t]he court should freely give leave [to amend] when justice so requires." There

9   is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th

10  Cir. 1999). As such, the Ninth Circuit has made clear that Rule 15(a) is to be applied with "extreme

11  liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (*per curiam*).

12  Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice

13  to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously

14  amended the complaint. *See id.* at 1052. The party opposing the amendment bears the burden of

15  showing why leave to amend should be denied. *See, e.g.*, *Desert Protective Council v. U.S. Dept. of the*

16  *Interior*, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013) (citing *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D.

17  529, 530-31 (N.D. Cal. 1989)).

18       Defendants oppose the motion for leave to amend based on the overarching argument that

19  amendment is forbidden given the existence of an arbitration provision covering "any claim or

20  controversy arising out of or relating to [the Operating] Agreement." *See, e.g.*, Docket No. 37 at 4. The

21  Court interprets Defendants' argument as an assertion that the proposed amendments would be futile.

22  As to the Second Claim, Third Claim, Fourth Claim, and Fifth Claim,[1] Defendants make no attempt to

23  explain how allegations that currently-unknown Doe Defendants accessing Plaintiff's PayPal account

24

25       [1] To the extent Defendants Real Social Dynamics, Kho and Cook are arguing that there is no factual

26  basis for the allegations being made with respect to these claims, *see* Docket No. 37 at 3 (contending the

27  allegations are frivolous), a responsive brief to a motion for leave to amend is not a proper avenue to attack
    the validity of factual allegations, *see, e.g.*, *Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116,

28  1123 (N.D. Cal. 2010) (courts take well-pleaded allegations as true).

1  and his personal email account are claims related to the Operating Agreement.  On their face, these

2  causes of action appear unrelated to the Operating Agreement.[2]  Similarly, with respect to the First

3  Claim, Plaintiff seeks declaratory relief as to the validity of provisions in the Contractor Agreement, not

4  as to any provision of the Operating Agreement.  *See* Docket No. 32-2 at ¶ 186.  Defendants have failed

5  to adequately explain why a claim regarding the validity of the Contractor Agreement is subject to an

6  arbitration provision related to claims arising out of the Operating Agreement.  Without any explanation

7  on these fronts, the Court is unpersuaded that the amendments would be futile such that leave to amend

8  should be denied.[3]  Accordingly, the motion for leave to amend will be **GRANTED**.[4]

9  **II.    MOTION FOR DISCOVERY**

10     Plaintiff seeks discovery from third-parties to identify the Doe Defendants who allegedly

11  accessed and converted funds from the PayPal account, and who allegedly accessed and interfered with

12  Plaintiff's personal email account.  Docket No. 28 at 8-10.  The Ninth Circuit has held that, where the

13  identity of defendants is unknown prior to the filing of a complaint, the plaintiff should be given an

14  opportunity through discovery to identify the unknown defendant, unless it is clear that discovery would

15  not uncover the identities of the defendants, or that the complaint would be dismissed on other grounds.

16  *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d

17

18  _____

19  [2] Defendants Real Social Dynamics, Kho and Cook do not explain how they have standing to argue that claims against Doe Defendants are improperly brought in this forum.

20

21  [3] The Court need not and does not definitively rule on whether the Operating Agreement's arbitration provision applies to any of the claims in the amended complaint.  "Denial of leave to amend on [futility]

22  ground[s] is rare.  Ordinarily, courts will defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleading is filed."  *See Branch Banking*

23  *& Trust Co. v. Pebble Creek Plaza, LLC*, 2013 U.S. Dist. Lexis 73723, *3 (D. Nev. May 22, 2013) (quoting *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003)).  The Court herein finds only that

24  Defendants have failed to show futility for purposes of amending the complaint, and nothing herein prevents Defendants from filing a motion to dismiss on this ground or any other ground.  *See, e.g., In re Dynamic*

25  *Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1135-36 (N.D. Cal. 2008).

26

27  [4] It is within a magistrate judge's authority to grant leave to amend the complaint.  *See, e.g., Morgal v. Maricopa County Bd. Of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (citing, *inter alia*, *U.S.*

28  *Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102 n.1 (9th Cir. 1985)).

3

1    637, 642 (9th Cir. 1980)).  Defendants do not provide meaningful discussion as to why this discovery

2    should not be allowed in this case.  To the extent Defendants are implying that the claims against the

3    Doe Defendants are subject to dismissal or that the discovery sought is otherwise improper based on the

4    existence of the cited arbitration provision, they have failed to show that the arbitration provision is

5    triggered by the claims presented.  Accordingly, the motion for discovery will be **GRANTED**.

6    **III.    CONCLUSION**

7             For the reasons discussed above, the Court hereby rules as follows:

8        •    Plaintiff's motion for leave to amend is **GRANTED**.  In compliance with Local Rule 15-

9             1(b), Plaintiff shall promptly file the proposed amended complaint on the docket, and

10            shall serve the known Defendants with the amended complaint.

11       •    Plaintiff's motion to conduct discovery to identify the Doe Defendants is **GRANTED**.

12            Plaintiff shall promptly seek discovery into the identities of the Doe Defendants, and

13            shall file a motion to substitute the Doe Defendants with their actual identities within 90

14            days of the issuance of this order.

15            IT IS SO ORDERED.

16            DATED: October 4, 2017

17                                                    _____

18                                                    NANCY J. KOPPE
                                                      United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

4

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF NEVADA

| | |
|---|---|
| TODD VANDEHEY, an individual, | |
| *Plaintiff,* | |
| v. | Civil Action No.: 2:17-cv-02230-JAD-NJK |
| REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual; John Does 1 through 10, all whose true names are unknown; ABC Companies 1 through 10, all whose true names are unknown, | **NOTICE OF DEPOSITION** |
| *Defendants.* | |

**TO:**

> **OWEN COOK**
> c/o Maier Gutierrez & Associates
> Attn: Steven Knauss, Esq.
> 8816 Spanish Ridge Avenue
> Las Vegas, Nevada 89148
> *Attorneys for Defendant*

**YOU ARE COMMANDED** to appear at 10:00 AM on Wednesday, November 29, 2017 at the offices of McDonald Carano, LLP, located at 2300 W. Sahara Avenue, Suite 1200, Las Vegas, Nevada 89102, and continuing from day-to-day until such time the deposition is complete, to testify at a deposition, recorded by stenographic means, to be taken in the above-captioned matter in accordance with Rule 30 of the Federal Rules of Civil Procedure and pursuant to the Court's order dated October 4, 2017 attached hereto as **Exhibit A.**

**PLEASE TAKE NOTICE** that this Notice of Deposition is solely related to the limited discovery regarding the identities of the Doe Defendants and not for any other purpose.

Date: 11/17/18

Steven L. Procaccini

The name, address, e-mail address, and telephone number of the attorneys representing plaintiff Todd VanDeHey, who issues this notice, are:

George F. Ogilvie III (NSBN #3552)
Amanda C. Yen (NSBN #9726)
McDONALD CARANO LLP
2300 W. Sahara Ave, Suite 1200
Las Vegas, NV 89102
Telephone:  702.873.4100
Fax:  702.873.9966
gogilvie@mcdonaldcarano.com
ayen@mcdonaldcarano.com

Steven L. Procaccini (*Pro Hac Vice*)
Chris Ellis Jr. (*Pro Hac Vice*)
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, Suite 301
Union, NJ 07083
Telephone: 908-686-8000
Fax: 908-686-8550
sp@gdnlaw.com
ce@gdnlaw.com

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

TODD VANDEHEY,                                          )
11                                                      )    Case No. 2:17-cv-02230-JAD-NJK
              Plaintiff(s),                )
12                                                      )    ORDER
      v.                                      )
13                                                      )    (Docket Nos. 28, 32)
REAL SOCIAL DYNAMICS, INC., et al.,                     )
14                                                      )
              Defendant(s).                )
15 _____ )

16        Pending before the Court are Plaintiff's motions to amend the complaint and to conduct

17 discovery, filed on an emergency basis. Docket Nos. 28, 32. Defendants have filed a response in

18 opposition. Docket No. 37. Plaintiff filed replies. Docket Nos. 38, 39. The motions are properly

19 resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the motions to

20 amend and conduct discovery are both **GRANTED**.

21 **I.     MOTION FOR LEAVE TO AMEND**

22        Plaintiff seeks leave to file an amended complaint. Docket No. 32. In particular, Plaintiff seeks

23 to file an amended complaint that includes: (1) a claim for declaratory relief regarding the enforceability

24 of the non-competition and non-solicitation provisions of the Contractor Agreement, which is brought

25 against Defendants Real Social Dynamics, Kho and Cook ("First Claim"); (2) a claim for unauthorized

26 access and alteration of Plaintiff's personal email account in violation of the Stored Communications

27 Act, which is brought against currently-unknown Doe Defendants ("Second Claim"); (3) a claim for

28 unauthorized access to and obtaining of information from Plaintiff's personal email account in violation

1    of the Computer Fraud and Abuse Act, which is brought against currently-unknown Doe Defendants

2    ("Third Claim"); (4) a claim for improperly accessing, obtaining information from, and interfering with

3    Plaintiff's personal email account in violation of N.R.S. 205.4765, which is brought against currently-

4    unknown Doe Defendants ("Fourth Claim"); and (5) a claim for conversion of funds from a PayPal

5    account, which is brought against currently-unknown Doe Defendants ("Fifth Claim"). *See* Docket No.

6    32-2 (proposed amended complaint).

7            Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure,

8    which provides that "[t]he court should freely give leave [to amend] when justice so requires." There

9    is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th

10   Cir. 1999). As such, the Ninth Circuit has made clear that Rule 15(a) is to be applied with "extreme

11   liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (*per curiam*).

12   Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice

13   to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously

14   amended the complaint. *See id.* at 1052. The party opposing the amendment bears the burden of

15   showing why leave to amend should be denied. *See, e.g.*, *Desert Protective Council v. U.S. Dept. of the

16   Interior*, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013) (citing *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D.

17   529, 530-31 (N.D. Cal. 1989)).

18           Defendants oppose the motion for leave to amend based on the overarching argument that

19   amendment is forbidden given the existence of an arbitration provision covering "any claim or

20   controversy arising out of or relating to [the Operating] Agreement." *See, e.g.*, Docket No. 37 at 4. The

21   Court interprets Defendants' argument as an assertion that the proposed amendments would be futile.

22   As to the Second Claim, Third Claim, Fourth Claim, and Fifth Claim,[1] Defendants make no attempt to

23   explain how allegations that currently-unknown Doe Defendants accessing Plaintiff's PayPal account

24

---

25           [1] To the extent Defendants Real Social Dynamics, Kho and Cook are arguing that there is no factual
26   basis for the allegations being made with respect to these claims, *see* Docket No. 37 at 3 (contending the
     allegations are frivolous), a responsive brief to a motion for leave to amend is not a proper avenue to attack
27   the validity of factual allegations, *see, e.g.*, *Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116,
28   1123 (N.D. Cal. 2010) (courts take well-pleaded allegations as true).

and his personal email account are claims related to the Operating Agreement.  On their face, these causes of action appear unrelated to the Operating Agreement.[2]  Similarly, with respect to the First Claim, Plaintiff seeks declaratory relief as to the validity of provisions in the Contractor Agreement, not as to any provision of the Operating Agreement. *See* Docket No. 32-2 at ¶ 186.  Defendants have failed to adequately explain why a claim regarding the validity of the Contractor Agreement is subject to an arbitration provision related to claims arising out of the Operating Agreement.  Without any explanation on these fronts, the Court is unpersuaded that the amendments would be futile such that leave to amend should be denied.[3]  Accordingly, the motion for leave to amend will be **GRANTED**.[4]

## II.     MOTION FOR DISCOVERY

Plaintiff seeks discovery from third-parties to identify the Doe Defendants who allegedly accessed and converted funds from the PayPal account, and who allegedly accessed and interfered with Plaintiff's personal email account. Docket No. 28 at 8-10. The Ninth Circuit has held that, where the identity of defendants is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendant, unless it is clear that discovery would not uncover the identities of the defendants, or that the complaint would be dismissed on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d

---

[2] Defendants Real Social Dynamics, Kho and Cook do not explain how they have standing to argue that claims against Doe Defendants are improperly brought in this forum.

[3] The Court need not and does not definitively rule on whether the Operating Agreement's arbitration provision applies to any of the claims in the amended complaint.  "Denial of leave to amend on [futility] ground[s] is rare.  Ordinarily, courts will defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleading is filed." *See Branch Banking & Trust Co. v. Pebble Creek Plaza, LLC*, 2013 U.S. Dist. Lexis 73723, *3 (D. Nev. May 22, 2013) (quoting *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003)). The Court herein finds only that Defendants have failed to show futility for purposes of amending the complaint, and nothing herein prevents Defendants from filing a motion to dismiss on this ground or any other ground. *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1135-36 (N.D. Cal. 2008).

[4] It is within a magistrate judge's authority to grant leave to amend the complaint. *See, e.g., Morgal v. Maricopa County Bd. Of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (citing, *inter alia*, *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102 n.1 (9th Cir. 1985)).

3

637, 642 (9th Cir. 1980)).  Defendants do not provide meaningful discussion as to why this discovery should not be allowed in this case.  To the extent Defendants are implying that the claims against the Doe Defendants are subject to dismissal or that the discovery sought is otherwise improper based on the existence of the cited arbitration provision, they have failed to show that the arbitration provision is triggered by the claims presented.  Accordingly, the motion for discovery will be **GRANTED**.

III.   **CONCLUSION**

For the reasons discussed above, the Court hereby rules as follows:

- Plaintiff's motion for leave to amend is **GRANTED**.  In compliance with Local Rule 15-1(b), Plaintiff shall promptly file the proposed amended complaint on the docket, and shall serve the known Defendants with the amended complaint.

- Plaintiff's motion to conduct discovery to identify the Doe Defendants is **GRANTED**.  Plaintiff shall promptly seek discovery into the identities of the Doe Defendants, and shall file a motion to substitute the Doe Defendants with their actual identities within 90 days of the issuance of this order.

IT IS SO ORDERED.

DATED: October 4, 2017

_____
NANCY J. KOPPE
United States Magistrate Judge

4

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF NEVADA

TODD VANDEHEY, an individual,

               *Plaintiff,*

v.

REAL SOCIAL DYNAMICS, INC., a Nevada
corporation; NICHOLAS KHO, an individual;
OWEN COOK, an individual; John Does 1
through 10, all whose true names are unknown;
ABC Companies 1 through 10, all whose true
names are unknown,

               *Defendants.*

Civil Action No.: 2:17-cv-02230-JAD-NJK

**NOTICE OF DEPOSITION**

**TO:**

    **REAL SOCIAL DYNAMICS, INC.**
       c/o Maier Gutierrez & Associates
         Attn: Steven Knauss, Esq.
       8816 Spanish Ridge Avenue
       Las Vegas, Nevada 89148
       *Attorneys for Defendant*

    **YOU ARE COMMANDED** to designate one or more officers, directors, managing agents, or

other persons who consent, to appear at 1:00 PM on Thursday, November 30, 2017 at the offices of

McDonald Carano, LLP, located at 2300 W. Sahara Avenue, Suite 1200, Las Vegas, Nevada 89102,

and continuing from day-to-day until such time the deposition is complete, to testify about

information known or reasonably available to the organization at a deposition, recorded by

stenographic means, to be taken in the above-captioned matter in accordance with Rule 30 of the

Federal Rules of Civil Procedure and pursuant to the Court's order dated October 4, 2017 attached

hereto as **Exhibit A**.

**PLEASE TAKE NOTICE** that this Notice of Deposition is solely related to the limited

discovery regarding the identities of the Doe Defendants and not for any other purpose.

Date: 11/17/17

Steven L. Procaccini

The name, address, e-mail address, and telephone number of the attorneys representing

plaintiff Todd VanDeHey, who issues this notice, are:

George F. Ogilvie III (NSBN #3552)
Amanda C. Yen (NSBN #9726)
McDONALD CARANO LLP
2300 W. Sahara Ave, Suite 1200
Las Vegas, NV 89102
Telephone:  702.873.4100
Fax:  702.873.9966
gogilvie@mcdonaldcarano.com
ayen@mcdonaldcarano.com

Steven L. Procaccini (*Pro Hac Vice*)
Chris Ellis Jr. (*Pro Hac Vice*)
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, Suite 301
Union, NJ 07083
Telephone: 908-686-8000
Fax: 908-686-8550
sp@gdnlaw.com
ce@gdnlaw.com

2

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

TODD VANDEHEY,                                )
                                             )
11              Plaintiff(s),                 )        Case No. 2:17-cv-02230-JAD-NJK
                                             )
12                                            )        ORDER
        v.                                    )
13                                            )        (Docket Nos. 28, 32)
        REAL SOCIAL DYNAMICS, INC., et al.,   )
14                                            )
                Defendant(s).                 )
15  _____)

16          Pending before the Court are Plaintiff's motions to amend the complaint and to conduct

17  discovery, filed on an emergency basis.  Docket Nos. 28, 32.  Defendants have filed a response in

18  opposition.  Docket No. 37.  Plaintiff filed replies.  Docket Nos. 38, 39.  The motions are properly

19  resolved without a hearing.  *See* Local Rule 78-1.  For the reasons discussed below, the motions to

20  amend and conduct discovery are both **GRANTED**.

21  **I.      MOTION FOR LEAVE TO AMEND**

22          Plaintiff seeks leave to file an amended complaint.  Docket No. 32.  In particular, Plaintiff seeks

23  to file an amended complaint that includes: (1) a claim for declaratory relief regarding the enforceability

24  of the non-competition and non-solicitation provisions of the Contractor Agreement, which is brought

25  against Defendants Real Social Dynamics, Kho and Cook ("First Claim"); (2) a claim for unauthorized

26  access and alteration of Plaintiff's personal email account in violation of the Stored Communications

27  Act, which is brought against currently-unknown Doe Defendants ("Second Claim"); (3) a claim for

28  unauthorized access to and obtaining of information from Plaintiff's personal email account in violation

1   of the Computer Fraud and Abuse Act, which is brought against currently-unknown Doe Defendants

2   ("Third Claim"); (4) a claim for improperly accessing, obtaining information from, and interfering with

3   Plaintiff's personal email account in violation of N.R.S. 205.4765, which is brought against currently-

4   unknown Doe Defendants ("Fourth Claim"); and (5) a claim for conversion of funds from a PayPal

5   account, which is brought against currently-unknown Doe Defendants ("Fifth Claim"). *See* Docket No.

6   32-2 (proposed amended complaint).

7          Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure,

8   which provides that "[t]he court should freely give leave [to amend] when justice so requires." There

9   is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th

10  Cir. 1999). As such, the Ninth Circuit has made clear that Rule 15(a) is to be applied with "extreme

11  liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (*per curiam*).

12  Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice

13  to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously

14  amended the complaint. *See id.* at 1052. The party opposing the amendment bears the burden of

15  showing why leave to amend should be denied. *See, e.g.*, *Desert Protective Council v. U.S. Dept. of the*

16  *Interior*, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013) (citing *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D.

17  529, 530-31 (N.D. Cal. 1989)).

18         Defendants oppose the motion for leave to amend based on the overarching argument that

19  amendment is forbidden given the existence of an arbitration provision covering "any claim or

20  controversy arising out of or relating to [the Operating] Agreement." *See, e.g.*, Docket No. 37 at 4. The

21  Court interprets Defendants' argument as an assertion that the proposed amendments would be futile.

22  As to the Second Claim, Third Claim, Fourth Claim, and Fifth Claim,[1] Defendants make no attempt to

23  explain how allegations that currently-unknown Doe Defendants accessing Plaintiff's PayPal account

24

25         [1] To the extent Defendants Real Social Dynamics, Kho and Cook are arguing that there is no factual
26  basis for the allegations being made with respect to these claims, *see* Docket No. 37 at 3 (contending the
    allegations are frivolous), a responsive brief to a motion for leave to amend is not a proper avenue to attack
27  the validity of factual allegations, *see, e.g.*, *Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116,
28  1123 (N.D. Cal. 2010) (courts take well-pleaded allegations as true).

2

1   and his personal email account are claims related to the Operating Agreement.  On their face, these

2   causes of action appear unrelated to the Operating Agreement.[2]  Similarly, with respect to the First

3   Claim, Plaintiff seeks declaratory relief as to the validity of provisions in the Contractor Agreement, not

4   as to any provision of the Operating Agreement.  *See* Docket No. 32-2 at ¶ 186.  Defendants have failed

5   to adequately explain why a claim regarding the validity of the Contractor Agreement is subject to an

6   arbitration provision related to claims arising out of the Operating Agreement.  Without any explanation

7   on these fronts, the Court is unpersuaded that the amendments would be futile such that leave to amend

8   should be denied.[3]  Accordingly, the motion for leave to amend will be **GRANTED**.[4]

9   **II.    MOTION FOR DISCOVERY**

10          Plaintiff seeks discovery from third-parties to identify the Doe Defendants who allegedly

11   accessed and converted funds from the PayPal account, and who allegedly accessed and interfered with

12   Plaintiff's personal email account.  Docket No. 28 at 8-10.  The Ninth Circuit has held that, where the

13   identity of defendants is unknown prior to the filing of a complaint, the plaintiff should be given an

14   opportunity through discovery to identify the unknown defendant, unless it is clear that discovery would

15   not uncover the identities of the defendants, or that the complaint would be dismissed on other grounds.

16   *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d

17

18   _____

19        [2] Defendants Real Social Dynamics, Kho and Cook do not explain how they have standing to argue that claims against Doe Defendants are improperly brought in this forum.

20

21        [3] The Court need not and does not definitively rule on whether the Operating Agreement's arbitration provision applies to any of the claims in the amended complaint.  "Denial of leave to amend on [futility] ground[s] is rare.  Ordinarily, courts will defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleading is filed."  *See Branch Banking & Trust Co. v. Pebble Creek Plaza, LLC*, 2013 U.S. Dist. Lexis 73723, *3 (D. Nev. May 22, 2013) (quoting *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003)).  The Court herein finds only that Defendants have failed to show futility for purposes of amending the complaint, and nothing herein prevents Defendants from filing a motion to dismiss on this ground or any other ground.  *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1135-36 (N.D. Cal. 2008).

22

23

24

25

26

27        [4] It is within a magistrate judge's authority to grant leave to amend the complaint.  *See, e.g., Morgal v. Maricopa County Bd. Of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (citing, *inter alia*, *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102 n.1 (9th Cir. 1985)).

28

3

1   637, 642 (9th Cir. 1980)).  Defendants do not provide meaningful discussion as to why this discovery

2   should not be allowed in this case.  To the extent Defendants are implying that the claims against the

3   Doe Defendants are subject to dismissal or that the discovery sought is otherwise improper based on the

4   existence of the cited arbitration provision, they have failed to show that the arbitration provision is

5   triggered by the claims presented.  Accordingly, the motion for discovery will be **GRANTED**.

6   **III.   CONCLUSION**

7        For the reasons discussed above, the Court hereby rules as follows:

8   •    Plaintiff's motion for leave to amend is **GRANTED**.  In compliance with Local Rule 15-

9        1(b), Plaintiff shall promptly file the proposed amended complaint on the docket, and

10       shall serve the known Defendants with the amended complaint.

11  •    Plaintiff's motion to conduct discovery to identify the Doe Defendants is **GRANTED**.

12       Plaintiff shall promptly seek discovery into the identities of the Doe Defendants, and

13       shall file a motion to substitute the Doe Defendants with their actual identities within 90

14       days of the issuance of this order.

15   IT IS SO ORDERED.

16   DATED: October 4, 2017

17                                                    _____

18                                                    NANCY J. KOPPE
                                                      United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

                                              4

# EXHIBIT Q

Email from Steven Knauss, Esq. to Chris Ellis, Esq.

# Steven Knauss

| | |
|---|---|
| **From:** | Steven Knauss |
| **Sent:** | Friday, November 17, 2017 2:00 PM |
| **To:** | Chris Ellis Jr. |
| **Cc:** | Joseph Gutierrez; George F. Ogilvie III; Amanda Yen; Steven L. Procaccini; April Lanzet; Natalie Vazquez |
| **Subject:** | RE: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Completed |

Chris – You've unilaterally set these depositions 6 business days from today. You neither sought our feedback nor proposed alternatives. Both myself and my clients are unavailable the week of Nov. 27.

This kind of aggressive posturing is unnecessary outside the discussion of the merits of our cases. This is simple calendaring. If you continue down this road, we will file a motion for a protective order and seek sanctions if you do not withdraw these notices.

However, if you'd like to propose several dates in December, that would be a better approach to this issue.

**Steven G. Knauss | Associate**
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Tel: 702.629.7900 | Fax: 702.629.7925
sgk@mgalaw.com | www.mgalaw.com

---

**From:** Chris Ellis Jr. [mailto:ce@gdnlaw.com]
**Sent:** Friday, November 17, 2017 12:29 PM
**To:** Steven Knauss <sgk@mgalaw.com>
**Cc:** Joseph Gutierrez <jag@mgalaw.com>; George F. Ogilvie III <gogilvie@Mcdonaldcarano.com>; Amanda Yen <ayen@mcdonaldcarano.com>; Steven L. Procaccini <sp@gdnlaw.com>; April Lanzet <al@gdnlaw.com>
**Subject:** VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Dear Steven:

Please see the attached notices.

**Chris Ellis Jr., Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 gdnlaw.com

140 Broadway, 46th Floor, New York, New York 10005  (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only.  Conditions regarding email communications and Internet usage are located at http://www.gdnlaw.com/email_disclaimer.htm.

# EXHIBIT R

Email Correspondence between Joseph Gutierrez, Esq.
and Steven L. Procaccini, Esq.

**Steven Knauss**

| | |
|---|---|
| **From:** | Joseph Gutierrez |
| **Sent:** | Tuesday, November 21, 2017 4:38 PM |
| **To:** | 'Steven L. Procaccini' |
| **Cc:** | Steven Knauss; Chris Ellis Jr.; George F. Ogilvie III; Amanda Yen; April Lanzet; Natalie Vazquez |
| **Subject:** | RE: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK |

Steven,

When did you think your client's response was due?

We believed that we gave you a ten day extension to the October 28th deadline that began on November 1st, which would put your client's response due as of November 11th.  It is now November 21st and nothing has been filed by your client in the arbitration and your client's portion of the arbitration fees have not been paid.

In an effort to save our client's time and money, I am agreeable to giving you until Monday November 27, 2017 to get your client's answer on file as well as his portion of the arbitration fees paid so we can move this case forward.  There is no requirement or need to meet and confer on this issue.

I am available most of the day tomorrow to meet and confer pursuant to LR 26-7 on the discovery related issue in the Federal Case.

Let me know what time works best for you.

Thanks,


**Joseph A. Gutierrez**
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Tel: 702.629.7900 | Fax: 702.629.7925
jag@mgalaw.com | www.mgalaw.com

---

**From:** Steven L. Procaccini [mailto:sp@gdnlaw.com]
**Sent:** Tuesday, November 21, 2017 4:16 PM
**To:** Joseph Gutierrez <jag@mgalaw.com>
**Cc:** Steven Knauss <sgk@mgalaw.com>; Chris Ellis Jr. <ce@gdnlaw.com>; George F. Ogilvie III
<gogilvie@Mcdonaldcarano.com>; Amanda Yen <ayen@mcdonaldcarano.com>; April Lanzet <al@gdnlaw.com>; Natalie
Vazquez <ndv@mgalaw.com>
**Subject:** Re: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Joseph,

There is an apparent disconnect between what your firm actually agreed to on November 1st as opposed to what you
would have preferred the agreement to have be.  Perhaps you did not pay attention to the exchanges as they
happened.  I am willing to work with you to get past this in any event.   However, I would be remiss if I did not remind

you that the genesis of this issue was your firm's original request for our consent to relax the deadlines set by the FRCP.  In exchange, we sought a relaxation of a deadline set by JAMS contingent upon that deadline being reset by the arbitrator, with a 10 day extension added on.    You were copied on the exchanges on November 1st that memorials the agreement.  I do not understand the confusion, and see no grounds for default.

From my point of view, and I am quite certain Judge Wall will concur, I did not contemplate an agreement on November 1st that would have put us in default on October 28th.  Such an idea would have seemed as absurd then as it does now.

In any event, I prefer exploring all options prior to seeking relief from any tribunal.  As confident as I am in Judge Wall denying any application for default under the circumstances, I would like to avoid having to waste my client's time and money altogether.  In that regard, to the extent you would like to revisit the agreed-upon schedule,  I will remain reasonable and open minded (as long as an offer is not predicated on a deadline having passed three days ago).  If you are so inclined, please provide your availability for a meet-and-confer and I will do my best to make myself available.  In fact, you and I were working on setting up a meet-and-confer to discuss deposition scheduling in the federal case.  I suggest that we consolidate both issues to be addressed at that time.

I look forward to working with you to hopefully resolve each of these issues.


Regards,
Steven




On Nov 21, 2017, at 4:23 PM, Joseph Gutierrez <jag@mgalaw.com> wrote:

I did consult with Steven and here is the timeline of events after the filing of the arbitration demand:

Oct. 4 – JAMS opened the arbitration case
Oct. 18 – Original due date of your client's response/answer to demand (per Rule 9(c) of Arb Rules)
Oct. 23 – Arbitrator assigned
Oct. 28 – Due date of response with 10-day extension (any additional extension for 10 days would flow from this date)

You seem to be under the misguided impression your client's response is a floating date "from whatever date is set by the arbitrator".  However, Rule 9(c) of the arbitration rules clearly puts firm dates on responses based on the **commencement date of the case** (**not** at the discretion of the arbitrator).

Therefore, we will be filing the 3 day notice of intent to take default today.

Also, JAMS has confirmed that your client has not paid his portion of the arbitration fee.


Joseph A. Gutierrez
MAIER GUTIERREZ & ASSOCIATES
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Tel: 702.629.7900 | Fax: 702.629.7925

jag@mgalaw.com | www.mgalaw.com

---

**From:** Steven L. Procaccini [mailto:sp@gdnlaw.com]
**Sent:** Tuesday, November 21, 2017 8:52 AM
**To:** Joseph Gutierrez <jag@mgalaw.com>
**Cc:** Steven Knauss <sgk@mgalaw.com>; Chris Ellis Jr. <ce@gdnlaw.com>; George F. Ogilvie III
<gogilvie@Mcdonaldcarano.com>; Amanda Yen <ayen@mcdonaldcarano.com>; April Lanzet <al@gdnlaw.com>; Natalie
Vazquez <ndv@mgalaw.com>
**Subject:** Re: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Before you do so, you should consult Steven about our agreement that our response to the demand is extended 10 days
from whatever date is set by the arbitrator.

**Steven L. Procaccini, Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 **gdnlaw.com**


140 Broadway, 46th Floor, New York, New York 10005 (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only. Please visit http://www.gdnlaw.com/email_disclaimer.htm for
conditions regarding email communications and Internet usage.


On Nov 21, 2017, at 11:50 AM, Joseph Gutierrez <jag@mgalaw.com> wrote:

We will file a 3 day notice of intent to take default.


Sent from my iPhone


**Steven L. Procaccini, Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 **gdnlaw.com**


140 Broadway, 46th Floor, New York, New York 10005 (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only. Please visit http://www.gdnlaw.com/email_disclaimer.htm for
conditions regarding email communications and Internet usage.


On Nov 21, 2017, at 8:32 AM, Steven L. Procaccini <sp@gdnlaw.com> wrote:

> Your request regarding the status of the arbitration demand is as related to discovery as the return of
> stolen attorney-client communications.  As such, I direct you to the rules of civil procedure in this
> regard.

3

**Steven L. Procaccini, Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 **gdnlaw.com**

140 Broadway, 46th Floor, New York, New York 10005  (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only. Please **click here** for conditions regarding email communications and
Internet usage.

---

**From:** Joseph Gutierrez [mailto:jag@mgalaw.com]
**Sent:** Tuesday, November 21, 2017 11:15 AM
**To:** Steven L. Procaccini <sp@gdnlaw.com>; Steven Knauss <sgk@mgalaw.com>
**Cc:** Chris Ellis Jr. <ce@gdnlaw.com>; George F. Ogilvie III <gogilvie@Mcdonaldcarano.com>; Amanda Yen
<ayen@mcdonaldcarano.com>; April Lanzet <al@gdnlaw.com>; Natalie Vazquez <ndv@mgalaw.com>
**Subject:** RE: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

I am not going to record our LR 26-7 phone call.

Any information you request from my client needs to be in the form of a discovery request.  You
cannot circumvent the Federal Rules of Civil Procedure by sending a letter to my firm entitled as
a "demand for information".  You requested "emergency relief" in your motion to amend the
complaint in order to conduct expedited discovery for this very reason.  Therefore, you need to
follow the rules in requesting information you believe to be relevant to your case.

What is the status of your client's responsive pleading to the arbitration complaint?

**Joseph A. Gutierrez**
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Tel: 702.629.7900 | Fax: 702.629.7925
jag@mgalaw.com | www.mgalaw.com

---

**From:** Steven L. Procaccini [mailto:sp@gdnlaw.com]
**Sent:** Tuesday, November 21, 2017 8:01 AM
**To:** Joseph Gutierrez <jag@mgalaw.com>; Steven Knauss <sgk@mgalaw.com>
**Cc:** Chris Ellis Jr. <ce@gdnlaw.com>; George F. Ogilvie III <gogilvie@Mcdonaldcarano.com>; Amanda Yen
<ayen@mcdonaldcarano.com>; April Lanzet <al@gdnlaw.com>; Natalie Vazquez <ndv@mgalaw.com>
**Subject:** RE: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Joseph,

I am happy to meet and confer pursuant to and LR 26-7.  Since we are citing authorities to each other,
we might remind ourselves of the prohibition against one-sided telephone conversations pursuant to
NRS 200.610 through NRS 200.690.  In this regard, and in advance of our telephonic meet-and-confer
pursuant to LR IA 1-3(f), we expressly object to any recording of that telephone conversation.  We would

4

have had the same objection over the summer had we been made aware of defendants' intention to record those telephone calls.  Please confirm that you agree to refrain from recording telephone conversation, otherwise, kindly so advise the Court of your denial of this reasonable request in your 26-7(c)(2) declaration.

Second, I need clarity as to what issues you consider to be "discovery related."  For example, I do not consider our demand for the immediate return of emails between me and my client to be a discovery issue.  Please advise.  Also, in advance of the telephone call, please advise whether you are claiming a privilege to cover your client giving your firm our stolen emails between me and my client.

Finally, please be prepared to discuss specific deposition dates of availability for each of your clients.

Regards,
Steven

**Steven L. Procaccini, Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 gdnlaw.com

140 Broadway, 46th Floor, New York, New York 10005  (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only. Please **click here** for conditions regarding email communications and Internet usage.

---

**From:** Joseph Gutierrez [mailto:jag@mgalaw.com]
**Sent:** Tuesday, November 21, 2017 10:11 AM
**To:** Steven L. Procaccini <sp@gdnlaw.com>; Steven Knauss <sgk@mgalaw.com>
**Cc:** Chris Ellis Jr. <ce@gdnlaw.com>; George F. Ogilvie III <gogilvie@Mcdonaldcarano.com>; Amanda Yen <ayen@mcdonaldcarano.com>; April Lanzet <al@gdnlaw.com>; Natalie Vazquez <ndv@mgalaw.com>
**Subject:** RE: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Like I said, I am happy to get on a call pursuant to LR 26-7 to discuss these discovery related issues before we have to resort to motion practice.

I am headed to Court now, so I can be free this afternoon or tomorrow afternoon.

Thanks,

**Joseph A. Gutierrez**
MAIER GUTIERREZ & ASSOCIATES
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Tel: 702.629.7900 | Fax: 702.629.7925
jag@mgalaw.com | www.mgalaw.com

---

**From:** Steven L. Procaccini [mailto:sp@gdnlaw.com]
**Sent:** Tuesday, November 21, 2017 7:05 AM

**To:** Joseph Gutierrez <jag@mgalaw.com>; Steven Knauss <sgk@mgalaw.com>
**Cc:** Chris Ellis Jr. <ce@gdnlaw.com>; George F. Ogilvie III <gogilvie@Mcdonaldcarano.com>; Amanda Yen <ayen@mcdonaldcarano.com>; April Lanzet <al@gdnlaw.com>; Natalie Vazquez <ndv@mgalaw.com>
**Subject:** RE: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Joseph/Steven,

It is unclear which of you are to respond with a reasonable offering of deposition dates.  But, I have not received anything from either of you.

In response to the email below, to be clear, we are not asking to "exchange" your side's attorney-client information for anything on our side.  We are simply requesting a return of my client's attorney-client privileged information that your clients are in the wrongful possession of.  In other words, the privilege is ours, not yours.   In addition, we will be taking your clients' deposition pursuant to the court order regarding the same.

Are you suggesting the Law Of Southern Nevada provides a unique privilege between you and your clients to protect against the return of stolen communications between an adversary and his attorney?  If so, kindly provide me with your authority.  In the meantime, I look forward to the return of my client's stolen information as well as deposition dates for each of your clients.

Regards,
Steven

**Steven L. Procaccini, Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 gdnlaw.com

140 Broadway, 46th Floor, New York, New York 10005  (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only. Please **click here** for conditions regarding email communications and Internet usage.

---

**From:** Joseph Gutierrez [mailto:jag@mgalaw.com]
**Sent:** Friday, November 17, 2017 5:54 PM
**To:** Steven L. Procaccini <sp@gdnlaw.com>; Steven Knauss <sgk@mgalaw.com>
**Cc:** Chris Ellis Jr. <ce@gdnlaw.com>; George F. Ogilvie III <gogilvie@Mcdonaldcarano.com>; Amanda Yen <ayen@mcdonaldcarano.com>; April Lanzet <al@gdnlaw.com>; Natalie Vazquez <ndv@mgalaw.com>
**Subject:** RE: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Steven,

What duty does my firm have to respond to your letters for attorney-client information?  Are you asking me to reveal attorney-client communications in exchange for you agreeing to move unilaterally noticed depositions of my clients during the Holidays and when I am set to start a Federal Court trial?

I understand that you are not familiar with the practice of law in Southern Nevada but your request is completely unreasonable.

There are discovery rules and procedures for obtaining information that you need to follow.

I am happy to get on a call pursuant to LR 26-7 to discuss.


**Joseph A. Gutierrez**
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Tel: 702.629.7900 | Fax: 702.629.7925
jag@mgalaw.com | www.mgalaw.com

---

**From:** Steven L. Procaccini [mailto:sp@gdnlaw.com]
**Sent:** Friday, November 17, 2017 2:41 PM
**To:** Steven Knauss <sgk@mgalaw.com>
**Cc:** Chris Ellis Jr. <ce@gdnlaw.com>; Joseph Gutierrez <jag@mgalaw.com>; George F. Ogilvie III
<gogilvie@Mcdonaldcarano.com>; Amanda Yen <ayen@mcdonaldcarano.com>; April Lanzet
<al@gdnlaw.com>; Natalie Vazquez <ndv@mgalaw.com>
**Subject:** Re: VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Steven,

We are more than willing to try to accommodate what appears to be a reasonable request embedded in
your third paragraph below.  Please provide various dates for our consideration, and we will try to work
with you.

It seems that the only things unnecessary, aggressive and posturing are found in the two paragraphs
below proceeding your request.

Forgive me, but you must admit that there is a history of your firm ignoring our previous attempts to
confer on issues more informally (e.g. our numerous requests for your clients to return our client's
hacked personal email database).   Perhaps a representation from you that your firm is not in possession
of any of those stolen and attorney/client privileged materials would go a long way in establishing a
greater level of trust and congeniality between us.  Absent that, unfortunately, you may find that certain
routine courtesies otherwise extended are the exception in this case rather than the rule.

I look forward to receiving various dates for deposition availability for our consideration.  The return of
any protected communications you may have between my firm and Mr. VanDeHey will be appreciated
as well.

Regards,
Steven

**Steven L. Procaccini, Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 **gdnlaw.com**


140 Broadway, 46th Floor, New York, New York 10005 (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only. Please visit http://www.gdnlaw.com/email_disclaimer.htm for conditions regarding email communications and Internet usage.


On Nov 17, 2017, at 5:00 PM, Steven Knauss <sgk@mgalaw.com> wrote:

Chris – You've unilaterally set these depositions 6 business days from today. You neither sought our feedback nor proposed alternatives. Both myself and my clients are unavailable the week of Nov. 27.

This kind of aggressive posturing is unnecessary outside the discussion of the merits of our cases. This is simple calendaring. If you continue down this road, we will file a motion for a protective order and seek sanctions if you do not withdraw these notices.

However, if you'd like to propose several dates in December, that would be a better approach to this issue.

**Steven G. Knauss | Associate**
**Maier Gutierrez & Associates**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Tel: 702.629.7900 | Fax: 702.629.7925
sgk@mgalaw.com | www.mgalaw.com

---

**From:** Chris Ellis Jr. [mailto:ce@gdnlaw.com]
**Sent:** Friday, November 17, 2017 12:29 PM
**To:** Steven Knauss <sgk@mgalaw.com>
**Cc:** Joseph Gutierrez <jag@mgalaw.com>; George F. Ogilvie III <gogilvie@Mcdonaldcarano.com>; Amanda Yen <ayen@mcdonaldcarano.com>; Steven L. Procaccini <sp@gdnlaw.com>; April Lanzet <al@gdnlaw.com>
**Subject:** VanDeHey v. Real Social Dynamics, Inc. et al - Case 2:17-cv-02230-JAD-NJK

Dear Steven:

Please see the attached notices.

**Chris Ellis Jr., Esq.**
Nissenbaum Law Group, LLC
2400 Morris Avenue, Suite 301, Union, New Jersey 07083
(P) 908.686.8000 (F) 908.686.8550 gdnlaw.com

140 Broadway, 46th Floor, New York, New York 10005  (P) 212.871.5711 (F) 212.871.5712

1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102  (P) 215.523.9350 (F) 215.523.9395

100 Crescent Court, 7th Floor, Dallas, Texas 75201  (P) 214.222.0020 (F) 214.222.0029

Meetings with Attorneys by Appointment Only.  Conditions regarding email communications and Internet usage are located at http://www.gdnlaw.com/email_disclaimer.htm.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.