JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
STEVEN G. KNAUSS, ESQ.
Nevada Bar No. 12242
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 629-7900
Facsimile: (702) 629-7925
E-mail: jag@mgalaw.com
sgk@mgalaw.com

*Attorneys for Defendants Real Social Dynamics, Inc.,
Nicholas Kho, and Owen Cook*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TODD VANDEHEY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual; John Does 1 through 10, all whose true names are unknown; ABC Companies 1 through 10, all whose true names are unknown,<br><br>Defendants. | Case No.: 2:17-cv-02230-JAD-NJK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Hearing Date: December 8, 2017<br>Hearing Time: 10:00am |

Defendants REAL SOCIAL DYNAMICS, INC. ("RSD"), NICHOLAS KHO ("Kho"), and OWEN COOK ("Cook") (collectively "Defendants"), by and through their attorneys, the law firm of MAIER GUTIERREZ & ASSOCIATES, hereby file this opposition ("Opposition") to Plaintiff TODD VANDEHEY'S ("Vandehey") second emergency motion for a temporary restraining order ("TRO") and preliminary injunction ("Injunction") (collectively "Plaintiff's Motions") [ECF Nos. 52-53] on the grounds that it neither demonstrates a threat of irreparable harm, nor does it establish that Plaintiff is likely to succeed on the merits of any of his claims.

/ / /

1

This Opposition is made and based upon the following memorandum of points and authorities, the exhibits attached hereto, the papers and pleadings on file in this matter, and any argument of counsel to be made at the time of the hearing.

DATED this 6th day of December, 2017.

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

/s/ *Steven Knauss*
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
STEVEN G. KNAUSS, ESQ.
Nevada Bar No. 12242
*Attorneys for Defendants Real Social Dynamics, Inc., Nicholas Kho, and Owen Cook*

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   INTRODUCTION

In his second emergency motion before this Court, Vandehey is seeking to prevent the destruction of emails in Defendants' "possession, custody, or control". *See* ECF No. 52 at 3:13-15. In support, Plaintiff has fabricated an amusing narrative that Defendants first 'hacked' his personal email, then stole the contents therein, and will now destroy said emails in furtherance of an unknown motive or purpose. However, Vandehey again recklessly misleads this Court, not only in fact, but in substantive law regarding the Gmail account used by Vandehey (tvandehey@gmail.com).

Going a step further, Vandehey creates his own "emergency" in refusing to follow the normal channels of discovery by simply sending request for Defendants' testimony and document production through letters from his counsel. Now Plaintiff is attempting to use Defendants' lack of response to these letters and his own failure to send any formal written discovery to Defendants for this information as the basis to run to this Court and seek emergency injunctive relief. Plaintiff's conduct in this case is not only procedurally improper, but is clearly motivated by an ulterior motive to gain improper access to Defendants' confidential and proprietary information under the guise of a "forensic analysis" of Defendants' hard drive, cell phone, and computers.

Despite this Court granting expedited discovery in this case, Plaintiff's counsel has failed to serve any written discovery requests on Defendants and he has ignored invitations from Defendant's counsel to meet and confer pursuant to Local Rule 26-7 to schedule Defendants' depositions. *See* Declaration of Joseph A. Gutierrez, Esq. attached as **Exhibit "A"**. Plaintiff, through his counsel, argues Defendant's lack of response to his email requests and letter requests is indistinguishable from an admission to formal written discovery, and from there he concocts an elaborate plot to obtain attorney-client privileged communication and/or obtain overly broad discovery relief to Defendants' confidential information.

Simply stated, Vandehey cannot be trusted with this type of access and information. Vandehey is already being sued by Defendants in binding arbitration for embezzling over $800,000 of Defendants' money when he was entrusted with access to Defendants' confidential information. There is a reason why Vandehey has rushed to Court with this "emergency relief" and <u>refused</u> to simply (1)

send Defendants a preservation of evidence letter; (2) send Defendants a formal written discovery through interrogatories, request for admissions, and request for production of documents; and (3) coordinate the scheduling of Defendants' depositions.

As with Plaintiff's prior emergency motion for an injunction and a restraining order, Vandehey has put forward no evidence showing he is incurring irreparable harm, or that his case will succeed on its merits, aside from imprudent allegations and conjecture.

## II. STATEMENT OF FACTS

Defendant Nicholas Kho openly admits to accessing the Gmail account tvandehey@gmail.com from his smart phone on September 11, 2017. *See* Affidavit of Nicholas Kho attached as **Exhibit "B"**. However, as the evidence herein will overwhelming show, ***this Gmail account was not a personal account***. It was used almost exclusively by Vandehey for the past five (5) years as his primary RSD and Valentine Life LLC contact point. *Id*. at ¶ 5. Vandehey used the tvandehey@gmail.com for every aspect of communication with RSD staff and RSD customers, including travel, sales, marketing, management, negotiation, rent, banking, finance, accounting, customer service, and public relations. *Id*. Even the email address created for him using RSD's domain (todd@realsocialdynamics.com) was setup to forward all emails to tvandehey@gmail.com.

Furthermore, Vandehey was not unique in this regard. Most RSD contractors used email accounts hosted by third party providers, like Gmail, Yahoo, and Hotmail, to be the hub of their RSD-related communications. *See* Affidavit of Stuart Lewis attached at **Exhibit "C"**. When contractors are retained by RSD, they are told verbally, as well as directed to Section 16 within the RSD Contractor Agreement, that a Gmail account used for RSD-related business is 'confidential information' under the definition in the contract, and as such, the communications therein are RSD property. *Id*.

In addition, access credentials to tvandehey@gmail.com were openly shared with Mr. Kho allowing him to setup merchant processor accounts and social media platforms. *See* **Ex. "B"** at ¶ 17. Therefore, there was no 'hacking' of the tvandehey@gmail.com account. In other words, on September 11, 2017, Mr. Kho freely accessed an RSD asset, tvandehey@gmail.com, used by a former contractor to:

(1) Communicate product launch plans. *See* **Exhibit "D"**.

1     (2) Schedule WebEX conferences with RSD customers. *See* **Exhibit "E"**.

2     (3) Discuss RSD marketing strategies. *See* **Exhibit "F"**.

3     (4) Challenge RSD executive decisions. *See* **Exhibit "G"**.

4     (5) Serve as the contact email for the merchant account for Valentine Life. *See* **Exhibit "H"**.

5     (6) Requesting letters on RSD letterhead confirming his income. *See* **Exhibit "I"**.

6     (7) Reserve business travel/AirBnB using RSD Corporate Travel Team. *See* **Exhibit "J"**.

This is by no means an exhaustive list, because Vandehey used the tvandehey@gmail.com address for years as his primary communication account.

To be clear, Mr. Kho did not **delete** any of the emails within the tvandehey@gmail.com account. Instead, Mr. Kho attempted to download all RSD communications from the date of Vandehey's termination until September 11, 2017. However, after several attempts, a bulk download of emails was ultimately unsuccessful. Thereafter, Mr. Kho began forwarding individual RSD customer support emails. But, at no time did Mr. Kho see, read, or otherwise view any emails between Vandehey and his attorney(s). *See* **Ex. "B"** at ¶ 18.

### III. ARGUMENT

#### A. PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF IS OVERBROAD AND MOOT

Plaintiffs' request for injunctive relief is overbroad and not the proper remedy for the type of relief that Plaintiff is requesting.

Plaintiff is seeking an order for the following "injunctive" relief:

(1) to prevent Defendants from deleting, destroying or otherwise manipulating any information in their possession that relates to the Gmail account;

(2) requiring Defendants to produce their laptops, mobile phones, hard drives other hardware that was used to access the Gmail account for inspection and imaging at the office of Plaintiff's counsel and produce any passwords necessary for this forensic review;

(3) compelling the expedited depositions of Defendants within five (5) days' notice.

There is absolutely no irreparable harm in the relief that Plaintiff is seeking. Mr. Kho has admitted to accessing the Gmail account and has agreed to preserve the information and produce a copy of the communications for inspection. No other named Defendant or person accessed the

1  tvandehey@gmail.com account. To that end, Mr. Kho has agreed to appear for his deposition between
2  the dates of December 18th through 22nd, 2017, to discuss the limited issues raised in Plaintiff's
3  Motion.[1]

4  Plaintiff is currently seeking an emergency injunction on issues that could have been addressed
5  through a discovery 'meet and confer' or even a motion to compel had Plaintiff actually tried to comply
6  with normal discovery rules. Therefore, the relief sought in Plaintiff's Motion is moot and would have
7  been agreed to by Mr. Kho under a more narrowly tailored order with mutual obligations between
8  Plaintiff and Defendants.

9  However, the real reason why Plaintiff failed to follow the normal channels of discovery and
10 rushed to Court for this overbroad injunctive relief is so Plaintiff could harass Defendants by forcing
11 them to produce their cell phones, hard drives, and computers for blanket forensic inspection that
12 would be for an ulterior purpose. This type of request in the form of an injunction is completely
13 improper.

14 The Ninth Circuit addressed a similar request for relief in *Battelle Energy Alliance, LLC v.*
15 *Southfork Sec., Inc.*, where the plaintiff sought an injunction through an ex parte motion for a TRO in
16 a software copyright infringement case. No. 4:13-CV-00442-BLW, 2013 WL 5637747, at *6 (D.
17 Idaho Oct. 15, 2013). The court in *Battelle Energy* did order the defendant to turn over his hard drive
18 but stated that this type of relief is a "serious invasion of privacy and is certainly not a standard
19 remedy". *Id*.

20 The court in *Battelle Energy* only allowed this severe injunctive remedy because the defendants
21 were "admitted hackers" **and** required the plaintiff to post a $25,000 security bond. *Id*. The court
22 further stated that this type of relief was "very rare" and agreed to increase the $25,000 bond
23 requirement if the defendant filed the appropriate motion. Therefore, if Plaintiff's relief for turnover
24 of Mr. Kho's hard drive is granted, the order should be extremely narrowly tailored and the bond
25 should be substantial. This is especially true in a case where Vandehey has already stolen money,
26
27
28 [1] Defendants also request that Plaintiff appear for his deposition during this timeframe to testify about the whether the Gmail account was an RSD asset and the business use of the account.

client lists, and company assets.

Mr. Kho admits that he accessed the Gmail account, however, he vigorously disputes that it was a solely personal account for Plaintiff, therefore, Plaintiff's request for injunctive relief should be denied as moot at best, or narrowly tailored with a substantial bond at worst.

### B. PLAINTIFF CANNOT SATISFY THE REQUISITE ELEMENTS NECESSARY FOR EMERGENCY INJUNCTIVE RELIEF

#### 1. Legal Standard

Injunctive relief is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). Its purpose is to preserve the status quo ante litem (the status that existed before the lawsuit) pending a determination of the case on the merits. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009). However, to obtain relief, the plaintiff seeking a preliminary injunction carries the burden of showing: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of equities tips in its favor; and (4) that the injunction is in the public interest. *Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

#### 2. Vandehey Is Unlikely to Succeed on the Merits for Counts 2, 3, and 4 in His Amended Complaint

Vandehey's emergency motion rests entirely upon allegations Defendants' violated the Stored Communications Act, 18 U.S.C. 2701 (Count 2), the Computer Fraud and Abuse Act, 18 U.S.C. 1030 (Count 3), and the Nevada Computer Crime Law, NRS 205.4765 (Count 4). All three causes of action are based on ***authorized access to a personal account***. However, in this case, tvandehey@gmail.com is not a personal account, but rather a business account of RSD, and Mr. Kho was authorized to access all business email accounts used by RSD contractors/employees per the terms of the RSD Contractor Agreement.

The CFAA was enacted in 1984 to enhance the government's ability to prosecute computer crimes. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130–31 (9th Cir. 2009). The act was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to "access and control

high technology processes vital to our everyday lives...." *Id. See also* 18 U.S.C. § 1030(a)(1)-(7) (2004).

A "private plaintiff must prove that the defendant violated one of the provisions of § 1030(a)(1)-(7), and that the violation involved one of the factors listed in § 1030(a)(5)(B)" *See LVRC Holdings LLC* at 1131.

To bring an action successfully under 18 U.S.C. § 1030(g) based on a violation of 18 U.S.C. § 1030(a)(2), a plaintiff must show that the defendant:

> (1) intentionally accessed a computer, (2) ***without authorization or exceeding authorized access***, and that he (3) thereby obtained information (4) ***from any protected computer*** (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value.

*Id*. at 1132 (emphasis added).

To bring an action successfully under § 1030(g) based on a violation of § 1030(a)(4), a plaintiff must show that defendant:

> (1) accessed a "protected computer," (2) without authorization or exceeding such authorization that was granted, (3) "***knowingly*** *" and with "* ***intent to defraud,*** *" and thereby (4) "* ***further[ed] the intended fraud and obtain[ed] anything of value***," causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

*Id*. (emphasis added).

In *Hilderman v. Enea TekSci, Inc.*, the court granted defendant's motion for summary judgment on plaintiff's claims under the CFAA and found that the defendant "***did not look at the computer for the purpose of rooting out personal information about Baghai, but, rather, was <u>motivated by a desire to protect its confidential information and to ensure that Baghai was not engaged in unauthorized activity that would harm Enea</u>.***" 551 F. Supp. 2d 1183, 1204 (S.D. Cal. 2008) (emphasis added). The *Hilderman* court further found that the ***laptop was not passed around the company*, but, rather, was kept in Elliot's locked office until it was sent to the forensic computer specialist**. *Id*. (emphasis added).

Here, Mr. Kho has admitted to (1) accessing the Gmail account to preserve the interests of RSD, (2) not sharing the private email contents, and (3) keeping a copy of the hard drive containing the emails in a locked facility. Plaintiff cannot show that Mr. Kho ever had an intent to defraud him

by accessing the Gmail account and he definitely will not be able to show any resulting damage from accessing an email that he willing shared with Defendants.

In grating summary judgment in favor of defendant, the *Hilderman* court stated that "the facts of this case are distinguishable from cases where a ***defendant hacks into someone's home computer for purposes of finding out personal information***." *Id.* (emphasis added). The court also found that the "e-mail messages stored on the hard drive do not constitute 'electronic storage' within the meaning of the Stored Communications Act." *Id*. at 1205.

Vandehey's status as a contractor for RSD who willingly shared access to the Gmail account with the company for purposes of assisting with company business eliminates any expectation of privacy that he claims to have, especially when he regularly access the Gmail account on RSD owned computers. Courts generally refuse to find a reasonable expectation of privacy in an employee's use of an employer's computers. *See Bohach v. City of Reno,* 932 F.Supp. 1232, 1236 (D. Nev. 1996) (Employers providing computers and electronic communication service to their employees can "do as they wish when it comes to accessing communications in electronic storage."); *see also TBG Ins. Services Corp. v. Superior Court,* 96 Cal.App.4th 443, 452, (2002) ("... use of computers in the employment context carries with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to his use of his employer's computers.").

Further, Plaintiff has no reasonable expectation of privacy for attorney-client communications that he sent on an RSD email account. *See Holmes v. Petrovich Development Co., LLC*, 191 Cal.App.4th 1047, 1069 (2011) (concluding that ***an employee had no reasonable expectation of privacy* in her personal e-mail messages sent to her attorney using her employer's computer** and consequently could not prevail on an invasion of privacy claim).

Therefore, Vandehey cannot demonstrate a likelihood of success on the merits for the claims set forth in his Amended Complaint.

### *a. The Gmail Account Was a Business Asset of RSD*

In July 2004, Vandehey and RSD executed a contractor agreement binding the parties to terms that included ownership of email communications. *See* Vandehey RSD Contractor Agreement attached as **Exhibit "K"**. Section 16 states:

> The Contractor acknowledges in any position the Contractor may hold, in and as a result of the Contractor's contract by the Principal, the Contractor will, or may, be making use of, acquiring or adding to information about certain matters and things which are confidential to the Principal and ***which information is the exclusive property of the Principal***, including, without limitation:
> a. 'Confidential Information' means all data and information relating to the business and management of the Principal, including proprietary and trade secret technology and accounting records to which access is obtained by the Contractor, ***including Work Product, Computer Software, Other Proprietary Data, Business Operations, Marketing and Development Operations, and Customers***.

Id at ¶ 16(a) (emphasis added). Vandehey used the tvandehey@gmail account for every aspect of communication with RSD Staff and RSD Clients, including travel, sales, marketing, management, negotiation, rent, banking, finance, accounting, customer service, and public relations. See **Ex. B** at ¶ 5 (*see also* Affidavit of RSD Chief Financial Officer Michael Ampikapon attached as **Exhibit "L"**, Affidavit of RSD Chief Marketing Officer Mikhail Kuznetsov attached as **Exhibit "M"**, and Affidavit of RSD Sales Manager Phil Agganis attached as **Exhibit "N"**). By using the Gmail account to communicate about all aspects of RSD and Valentine Life operations, Vandehey effectively transmuted the Gmail address from a 3rd party account to an RSD business asset.

Furthermore, the contractor agreement explicitly places ownership of any RSD 'Confidential Information' squarely with RSD and ***not*** the contractor:

> The Contractor acknowledges and agrees that ***all rights, title and interest in any Confidential Information will remain the exclusive property of the Principal***. Accordingly, the Contractor specifically agrees and acknowledges that he will have no interest in the Confidential Information, including, without limitation, no interest in know-how, copyright, trade-marks or trade names, notwithstanding the fact that he may have created or contributed to the creation of the same.

Id at ¶ 20 (emphasis added). By using a Gmail account to communicate upon all issues of RSD and Valentine Life LLC operations, Vandehey's emails became 'confidential information' as articulated in the RSD Contractor Agreement. And, as such, they also because the property of RSD.

### b.  *Vandehey Had No Reasonable Expectation of Privacy in the Gmail Account*

Not only did Vandehey use the Gmail account for nearly all RSD and Valentine Life operations for the past five (5) years, but Vandehey freely consented to Mr. Kho retaining the Gmail account login credentials during this time. *See* **Ex. B** at ¶ 17. The reasoning was two-fold: (1) if there was an emergency or other practical impediment to Vandehey communicating with clients, Mr. Kho could still login and provide customer support, and (2) Mr. Kho would routinely login the Gmail account to

create, modify, or otherwise operate the RSD social media accounts (promoting RSD products and services) tied to the tvandehey@gmail.com account.  However, additional discovery is likely required on this issue to determine the degree to which Vandehey used the Gmail account for personal or other professional matters.

### 3. Vandehey Has Not Suffered Irreparable Harm

Plaintiff has created his own "emergency" by rushing to this Court to seek injunctive relief that could have been solved by conducting formal discovery.  At no point has Plaintiff sent Defendants any form of written discovery.  When Plaintiff attempted to unilaterally schedule the depositions of Defendants on merely six (6) business days' notice and over the Thanksgiving Holiday break, Defendants' counsel attempted to schedule a conference call pursuant to LR 26-7 to coordinate the mutual setting of the parties' depositions.  *See* November 17, 2017 email from plaintiff's counsel Chris Ellis to defendants' counsel Steven Knauss and Joseph Gutierrez attached as **Exhibit "O"**; *see also* notices of depositions attached as **Exhibit "P"**.

In response to Plaintiff's attempt to *unilaterally* schedule Defendants' depositions over the Thanksgiving Holiday break, Defendants' counsel immediately responded by stating:

> Chris – You've unilaterally set these depositions 6 business days from today. You neither sought our feedback nor proposed alternatives. Both myself and my clients are unavailable the week of Nov. 27.
>
> This kind of aggressive posturing is unnecessary outside the discussion of the merits of our cases.  This is simple calendaring. If you continue down this road, we will file a motion for a protective order and seek sanctions if you do not withdraw these notices.
>
> However, if you'd like to propose several dates in December, that would be a better approach to this issue.

*See* November 17, 2017 email from Mr. Knauss to Mr. Ellis attached as **Exhibit "Q".**

Instead of coordinating available deposition dates, Plaintiff's counsel sought a representation from Defendants' counsel that they were not in possession of any "stolen and attorney/client privileged materials" in an effort to establish a "greater level of trust and congeniality between [counsel]".  *See* November 17, 2017 email from Mr. Procaccini to Mr. Gutierrez and resulting email thread attached as **Exhibit "R".**

Defendants' counsel informed Plaintiff's counsel that any request for information needs to be

11

1  directed at Defendants through the proper discovery rules and procedures, not through a confirmation
2  by counsel regarding information requested from clients in exchange for a postponement of
3  unilaterally scheduled depositions. *Id*. Defendants' counsel invited Plaintiff's counsel to participate
4  in a LR 26-7 conference call to discuss these issues before resulting to unnecessary motion practice.
5  *Id*.

6  Unfortunately, Plaintiff's counsel never participated in a LR 26-7 conference call and never
7  sent any written discovery to Defendants for the information requested in this instant injunctive relief
8  Motion. This type of "emergency" was solely created by Plaintiff and his counsel and could have
9  easily been avoided if he followed the appropriate rules of discovery. Therefore, Plaintiff's request
10 for injunctive relief should be denied as he has not suffered any irreparable harm and his entire basis
11 for emergency relief could have been solved through the discovery process.

12 Next, Plaintiff argues that irreparable harm is established because Mr. Kho had access to his
13 attorney-client communication through the Gmail account. However, Mr. Kho's testimony confirms
14 that he did not recall seeing, reading, or viewing any emails between Vandehey and non-RSD persons
15 or entities. *See* **Ex. "B"** at ¶ 18.

16 Furthermore, Defendants' own counsel has confirmed that neither he nor his law firm have
17 viewed any emails between Vandehey and his attorneys. *See* **Ex. "A"**. This is further confirmed by
18 Mr. Kho was stated that he did not send any of the Gmail account emails to his counsel or any third
19 parties. Mr. Kho testified that he solely reviewed the Gmail account for purposes of protecting RSD
20 from continual harm and embezzlement from Vandehey.

21 **4. <u>The Balance of Equities Favors Defendants</u>**

22 Vandehey's decision to ignore the discovery rules outlined in the Federal Rules of Civil
23 Procedure, and then burden this Court and Defendants with this "emergency" injunctive relief should
24 not be condoned. Plaintiff requested an expedited discovery period after the filing of the complaint
25 and ***<u>failed to use the expedited discovery he requested</u>*** to perform the basic task of sending written
26 discovery to Defendants, which would include requests for inspection of electronic information under
27 FRCP 34, or even sending a preservation of evidence letter. The balance of equities clearly favors
28 Defendants as Plaintiff's failure to follow the Federal Rules of Civil Procedure do not warrant an

12

1 injunction in his favor for such sensitive information.

2 As the court in *Battelle Energy Alliance, LLC* stated, the request for a turnover of a hard drive is a "serious invasion of privacy and is certainly not a standard remedy". *Battelle Energy Alliance* at *6. This extremely rare relief should not be the subject of an injunctive relief motion and the balance of hardships should accordingly weigh in Defendants' favor in denying this Motion.

### 5. The Public Interest Will Be Served by Denying Plaintiff's Emergency Motion

The public interest element for injunctive relief is not met because Plaintiff is the one who decided to ignore the normal channels of discovery and rushed to Court for overbroad and improper relief. Granting an injunction under these facts and for this discovery dispute would distort the legal rights of employer/employees in disputes and allow for the improper access to the confidential and proprietary information by simply proceeding under the guise of an injunction instead of formal discovery. Clearly, the public interest falls to Defendants position and Vandehey's Motion must fail.

### C. IN THE UNLIKELY EVEN A TRO DOES ISSUE, A SIGNIFICANT BOND MUST BE REQUIRED

Pursuant to FRCP 65(c), a bond is mandatory when a restraining order or injunction is issued. FED. R. CIV. PRO. 65 (c). Therefore, Plaintiff's current request lacking any bond or security is directly contrary with this Rule.

If this court does issue the requested restraining order, a significant bond is necessary. As discussed in detail above, the court in *Battelle Energy*, addressed a similar request for relief and ordered defendant to turn over his hard drive but ordered plaintiff to post a $25,000 security bond. The court in *Battelle Energy* only allowed this severe injunctive remedy because the defendants were "admitted hackers" and even invited the defendants to file a motion to increase the bond amount. *See Battelle Energy,* at *6 (D. Idaho Oct. 15, 2013).

Therefore, if Plaintiff's relief for turnover of Mr. Kho's hard drive is granted, the order should be extremely narrowly tailored and the bond should be substantial. Especially since Vandehey has already stolen money, client lists, and company assets. Accordingly, should this Court grant the TRO in any capacity, it should first require that Plaintiff post a bond for no less than $100,000.

### IV. CONCLUSION

Based on the foregoing, Defendants respectfully request this Court deny Plaintiff's emergency

motion for a temporary restraining order and a preliminary injunction in its entirety. Vandehey has incurred no irreparable harm and his case will not succeed on the merits. Furthermore, Vandehey filed his Motion in bad faith and failed to follow the procedural rules to readily obtain the requested relief.

DATED this 6th day of December, 2017.

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

/s/ *Steven Knauss*

JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
STEVEN G. KNAUSS, ESQ.
Nevada Bar No. 12242
*Attorneys for Defendants Real Social Dynamics, Inc., Nicholas Kho, and Owen Cook*

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Maier Gutierrez & Associates, and that on the 6th day of December, 2017, a true and correct copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** was electronically filed with the Clerk of the Court using the Court's CM/ECF system, and served to all parties and counsels of record registered to receive CM/ECF notifications.

/s/ *Charity Johnson*
An employee of MAIER GUTIERREZ & ASSOCIATES