George F. Ogilvie III (NSBN #3552)
Amanda C. Yen (NSBN #9726)
McDONALD CARANO LLP
2300 W. Sahara Ave, Suite 1200
Las Vegas, NV 89102
Telephone:  702.873.4100
Fax:  702.873.9966
gogilvie@mcdonaldcarano.com
ayen@mcdonaldcarano.com

Steven L. Procaccini (*Pro Hac Vice*)
Chris Ellis Jr. (*Pro Hac Vice*)
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, Suite 301
Union, NJ 07083
Telephone: 908-686-8000
Fax: 908-686-8550
sp@gdnlaw.com
ce@gdnlaw.com

*Attorneys for plaintiff Todd VanDeHey*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TODD VANDEHEY, an individual,

Plaintiff,

v.

REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual; AMBER KHO, an individual, John Does 2 through 10, all whose true names are unknown; ABC Companies 1 through 10, all whose true names are unknown.

Defendants.

CASE NO: 2:17-cv-02230-JAD-NJK

**SECOND AMENDED COMPLAINT**

**JURY DEMAND**

Plaintiff  Todd  VanDeHey  ("Plaintiff"),  by  and  through  counsel,  complaining  of defendants  Real  Social  Dynamics,  Inc.  ("RSD"),  Nicholas  Kho  ("N. Kho"),  Owen  Cook ("Cook")  (RSD,  N. Kho  and  Cook  are  collectively  hereinafter  referred  to  as  the  "RSD Defendants"),  Amber Kho  ("A. Kho"),  John Does 2 through 10 and ABC Companies 1 through 10 (collectively the "Defendants") hereby states and alleges as follows:

• • •

**JURISDICTION**

1.      This Court has jurisdiction of this action under 28 U.S.C. § 1332. There is a complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy is more than $75,000.00.

**VENUE**

2.      Venue is proper based upon the parties' stipulation pursuant to the "Governing Law" section of the independent contractor agreement ("Contractor Agreement") dated October 1, 2004 that was executed on July 27, 2004 between Plaintiff and RSD.

3.      Venue is also proper under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims occurred within the District of Nevada.

**PARTIES**

4.      Todd VanDeHey is a citizen of the State of New York with an address of 10 Hanover Square, Apartment 18N, New York, New York 10005.

5.      Upon information and belief, Real Social Dynamics, Inc. is a Nevada corporation with an address of 1930 Village Center Circle, #3-965, Las Vegas, Nevada 89134.

6.      Plaintiff and defendant RSD were each fifty percent (50%) shareholders of Valentine Life, Inc., a Nevada corporation ("Valentine Life").

7.      Upon information and belief, defendant Nicholas Kho is a citizen of the State of Nevada with an address of 8121 Gothic Avenue, Las Vegas, Nevada 89117 and co-owner of defendant RSD.

8.      Upon information and belief, defendant Owen Cook is a citizen of Canada residing in the State of California with an address of 1865 Fuller Avenue, Los Angeles, California 90046 and co-owner and/or principal of Defendant RSD.

9.      Upon information and belief, defendant Amber Kho is a citizen of the State of Nevada with an address of 8121 Gothic Avenue, Las Vegas, Nevada 89117.

10.     Upon information and belief, defendants John Does 2 through 10 are individuals whose names and addresses of residence are unknown, and either directly or indirectly wrongfully accessed, or facilitated the wrongful access of, Plaintiff's personal Gmail account

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1   and/or other private digital accounts without permission.

2       11.     Upon information and belief, defendants ABC Companies 1 through 10 are legal

3   entities, the names and addresses of which are unknown, and either directly or indirectly

4   wrongfully accessed, or facilitated the wrongful access of, Plaintiff's personal Gmail account

5   and/or other private digital accounts without permission.

6                                    **GENERAL ALLEGATIONS**

7       **The Contractor Agreement**

8       12.     On or about July 27, 2004, Plaintiff and RSD executed the Contractor

9   Agreement, whereby RSD employed Plaintiff as an "Executive Coach to be an Instructor for

10  Real Social Dynamics Live Programs and complete Administrative Work". A true and accurate

11  copy of the Contractor Agreement is attached hereto as **Exhibit A**.

12      13.     The Contractor Agreement contains a Non-Competition clause that states:

13          Other than through Contract with a bona-fide independent party, or with the
            express written consent of the Principal, which will not be unreasonably
14          withheld, the Contractor will not, during the continuance of the Agreement or
            within five (5) years after the termination or expiration, as the case may be, of
15          this Agreement, be directly or indirectly involved with a business which is in
            direct competition with the Principal in the business line of how to be successful
16          with women and dating.

17          For a period of five (5) years from the date of termination or expiration, as the
            case may be, of the Contractor's Contract with the Principal, the Contractor will
18          not divert or attempt to diver from the Principal any business the Principal had
            enjoyed, solicited, or attempted to solicit, from its customers, prior to termination
19          or expiration, as the case may be, of the Contractor's Contract with the Principal.

20          The Contractor will not own, operate or work for a company or internet website
            that teaches men how to be successful with women and dating, for five (5) years
21          from the date of termination or expiration, in Los Angeles, New York, San
            Francisco, Sydney, Melbourne, Toronto, Montreal, and London, and the
22          Contractor will forfeit to Real Social Dynamics any revenue and income earned
            from operating or working for a company or internet website that teaches men
23          how to be successful with women and dating during the 5 year period, and the
            Contractor is still obligated to keep all trade secrets confidential.

24

25  *See* **Exhibit A**.

26      14.     The Contractor Agreement also contains a Non-Solicitation clause that states:

27          Any attempt on the part of the Contractor [Plaintiff] to induce others to leave the
            Principal's [RSD's] employ, or any effort by the Contractor to interfere with the
28          Principal's relationship with its other Contractors and contractors would be

McDONALD ⬩ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 ⬩ LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 ⬩ FAX 702.873.9966

harmful and damaging to the Principal. The Contractor agrees that during the term of his Contract with the Principal and for a period of five (5) years after the end of the terms, the Contractor will not in any way, directly or indirectly:

a.  Induce or attempt to induce any Contractor or contractor of the Principal to quit Contract or retained with the Principal;

b.  Otherwise interfere with or disrupt the Principal's relationship with its Contractors and Employees;

c.  Discuss Contract opportunities or provide information about competitive Contract to any of the Principal's Contractors or Employees; or

d.  Solicit, entice, or hire away any Contractor or contractor of the Principal.

This obligation will be limited to those that were Contractors or contractors of the Principal when the Contractor was contracted by the Principal.

*See* **Exhibit A**.

15.     Thereafter, the parties decided to create Valentine Life, whereby Plaintiff would run the day-to-day operations of Valentine Life and RSD would provide "back-office" support for Valentine Life.

**Valentine Life**

16.     Plaintiff was the incorporator, sole director and a fifty-percent (50%) shareholder of Valentine Life. A true and accurate copy of Valentine Life's Articles of Incorporation are attached hereto as **Exhibit B**.

17.     Valentine Life was jointly owned by Plaintiff and RSD.

18.     Valentine Life provided online and in-person classes and other instructional material to men on how to attract and date women.

19.     Plaintiff was the public face and main instructor of Valentine Life under the aliases "Todd Valentine" and "RSDTodd".

20.     Valentine Life primarily operated, advertised and provided services through various internet websites and social media accounts.

21.     The websites operated by Valentine Life include without limitation: 3GirlsADay.com; WomenbyTodd.com; TextAndDatesmachine.com; DayGameByTodd.com; ValentineUniversity.com; ValentineLife.com; AttractionUnlocked.com; RSDImmersion.com

and OpeningMastery.com (collectively, the "Websites").

22.     The social media accounts operated by Valentine Life include without limitation: youtube.com/user/RSDTodd;   youtube.com/user/toddfreetour;   youtube.com/1minuteattraction; plus.google.com/u/0/10544201590615030298;         plus.google.com/110840022199142432968; twitter.com/rsdtodd;         instagram.com/toddvalentineofficial/;         facebook.com/rsdtodd;         and facebook.com/toddrsd (collectively, the "Social Media Accounts").

23.     Valentine Life also communicated with its customers via the online email marketing automation and reporting platform provided through third-party vendor Ontraport, which contains Valentine Life's customer list.

24.     In addition, Valentine Life processed and received payments through the online merchant services systems provided by the third-party vendor InChek.

25.     As part of the ongoing business of Valentine Life, RSD contributed certain infrastructure and resources to the entity while Plaintiff was responsible for running the day-to-day business of the company.

26.     For example, Valentine Life and its employees/contractors conducted business utilizing RSD email domains and the individual accounts thereunder, Valentine Life email domains and the individual accounts thereunder, Valentine Life ZenDesk and Clickbank accounts to facilitate customer service (collectively, Ontraport, InChek, the RSD email domains and the individual accounts thereunder, the Valentine Life email domains and the individual accounts thereunder, ZenDesk, Clickbank, and all underlying databases, customer lists, contact information and other data are hereinafter referred to as the "Business Accounts").

**Valentine Life Operating Agreement**

27.     Valentine Life is governed by an Operating Agreement. A true and accurate copy of the Operating Agreement is attached hereto as **Exhibit C**.

28.     The Operating Agreement provides in relevant part:

> Section 5.1 Cash Flow. Cash Flow, if any, shall be distributed at such dates as determined by unanimous written consent of the Shareholders to the Shareholders in proportion to their respective Percentage Interest. RSD and VanDeHey shall be sole signatories on the Company Bank Account.

***

Section 6.1 <u>Manager</u>. The company shall be managed by RSD and VanDeHey. Meetings of the Manager shall be required annually.

Section 6.2 <u>Manager of Operational and Day-to-Day Business and Affairs</u>. The operational and day-to-day business and affairs of the Company shall be operated and managed jointly by RSD and Todd VanDeHey. RSD and VanDeHey are authorized to take any actions, to make any determinations and to provide any consents permitted to be taken, made or provided by the Company under this Agreement; provided, however, that RSD and VanDeHey shall not take any action, make any determination or provide any consent expressly reserved by Section 6.4 of this Agreement to the Shareholders. No Shareholder, other than RSD or VanDeHey (subject to the terms of this Agreement), shall, acting individually, have the power to sign or bind the Company unless duly authorized to do so by unanimous written consent of the Shareholders. Notwithstanding the foregoing, RSD and VanDeHey shall have no liability to the Shareholders or the Company for exceeding the authority granted to him in the event a decision made or an action taken by him was made or taken with a reasonable good faith belief that such decision or action was (i) within the scope of the operational and day-to-day business and affairs of the Company and (ii) not prohibited by the terms of this Agreement.

***

Section 6.4 <u>Actions Expressly Reserved to the Shareholders</u>. Notwithstanding the authority granted to RSD in Section 6.2 above, RSD may not do or permit to be done any of the following without the unanimous written consent of the Shareholders:

(a) Any act or thing which the Act or this Agreement requires to be approved, consented to or authorized by all the Shareholders;

(b) Voluntarily cause the dissolution of the Company;

(c) Sell all or a significant part of the Company assets, or engage in any material recapitalization or merger;

(d) Incur any liabilities in excess of $50,000; or

(e) File any lawsuit or proceedings.

***

Article 10 <u>WAIVERS</u>: Notwithstanding any provision of the Act, each Shareholder hereby waives any right to seek or assert: (a) judicial dissolution of the Company; (b) dissenters' rights; or (c) derivative actions on behalf of the Company.

***

Section 11.9 <u>Mediation/Arbitration – Dispute Resolution</u>. Any controversy or claim arising out of or relating to this Agreement or breach thereof shall first be submitted to mediation with a retired judge. If either party fails engage [sic] in mediation, that party shall lose his right to collect attorneys fees and costs as the

prevailing party in any subsequent mediation. In the event that the mediation does not resolve the dispute, the Shareholders are to submit the dispute to binding, non-appealable arbitration administered by the Judicial Arbitration Mediation Services (JAMS) at one of its offices in Clark County. [T]he parties hereby consent to the jurisdiction of the Superior Court for Clark County, Nevada, and of the United States District Court for the Central District of Nevada, for injunctive relief, specific performance or other relief in aid of any proceedings hereunder, but not otherwise.…

*See* **Exhibit C**.

**Plaintiff and Defendants' Course of Dealing in the Operation of Valentine Life.**

29.     It was the parties' agreement and course of dealing for Plaintiff to run the day-to-day operations of Valentine Life from New York, as the only shareholder living in New York.

30.     The parties agreed that part of Plaintiff's obligations in the day-to-day operation of Valentine life would be to, without limitation, supervise payroll; approve expenses; handle funds and bank accounts; oversee the creation of content for the company; oversee the answering of email inquiries related to the company's products and services; and present workshops, seminars and classes.

31.     In essence, Plaintiff ran the company.

32.     This included creating content for the Social Media Accounts that would drive consumers to the Websites to purchase products and services.

**Defendants have Undertaken Activities That are Inimical to the Continued Existence of Valentine Life.**

33.     RSD employs/engages a number of professionals who, utilizing RSD's and their own websites and social media accounts, provide services similar to Valentine Life (classes, workshops, seminars, products and services teaching men who want to learn techniques for successfully navigating the dating world).

34.     Indeed, N. Kho and Cook both individually work as RSD coaches in competition with Plaintiff.

35.     As part of RSD's business, N. Kho uses the alias "Papa" and Cook uses the alias "Tyler".

36.     RSD's products and services were separate from Valentine Life.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

37.     Prior to August 10, 2017, Plaintiff and Valentine Life worked in conjunction with RSD to provide a complementary selection of products and services geared toward the same market.

38.     Thus, RSD is not only a partial owner of Valentine Life but also a competitor of Valentine Life.

39.     The RSD Defendants abused RSD's role as a shareholder to access Valentine Life's assets in order to eliminate Plaintiff and Valentine Life as competitors.

40.     The RSD Defendants' actions demonstrate an intent to wrongfully undermine the viability of their competitor Valentine Life.

41.     Moreover, the RSD Defendants' actions are in degradation of public policy which promotes a free market and fair play among competitors on an even playing field.

**Defendants Engaged in Unauthorized and *Ultra Vires* Act That Disrupted Valentine Life's Ability to Operate.**

42.     On or about August 11, 2017, the RSD Defendants unilaterally and without authorization began to restrict Plaintiff's access to the Websites, Social Media Accounts, Business Accounts and Valentine Life's finances.

43.     Between on or about August 11, 2017 and on or about August 16, 2017, Defendants engaged in the systematic disruption and destruction of Valentine Life's business by, *inter alia*, restricting Plaintiff's access to the Websites and Social Media Accounts; removing content and products from the Websites and Social Media Accounts; and preventing the use of the Business Accounts by Plaintiff and Valentine Life.

44.     In doing so, Defendants altered the Websites, Social Media Accounts, Business Accounts and financial accounts to the detriment of Valentine Life.

45.     This materially impaired Valentine Life's operations.

46.     In addition, this was in contravention of the parties' agreement and course of dealing that Plaintiff would exclusively undertake the day-to-day operation of Valentine life including, without limitation, supervising payroll; approving expenses; handling funds and bank accounts; overseeing the creation of content for the company; overseeing the response to

customer inquiries related to the company's products and services; and presenting workshops, seminars and classes.

47.    On or about August 14, 2017, the RSD Defendants, or their agents, submitted a Certificate of Dissolution for Valentine Life to the Secretary of State. A true and accurate copy of the Certificate of Dissolution is attached hereto as **Exhibit D.**

### N. Kho and A. Kho Converted Funds From Plaintiff's PayPal Account

48.    On or about September 4, 2017, N. Kho intentionally accessed Plaintiff's PayPal account associated with the email address "todd@valentinelife.com" (the "PayPal Account") without authorization.

49.    In order to access the PayPal Account, N. Kho provided information to PayPal to cause PayPal to incorrectly believe N. Kho was Plaintiff or otherwise authorized to access the PayPal Account.

50.    After N. Kho accessed the PayPal Account, he caused a transfer of funds in the amount of $7,603.08 from the PayPal Account to a PayPal account associated with the email address "amber@kho.biz".

51.    A. Kho is the owner of the PayPal account associated with the email address "amber@kho.biz".

52.    A. Kho is the spouse of N. Kho.

53.    The kho.biz domain is owned and/or associated with N. Kho.

54.    The transfer of funds to A. Kho's PayPal left the PayPal Account with a balance of $0.

55.    On or about September 9, 2017, the PayPal Account received a payment in the amount of $190.99.

56.    The same day, N. Kho intentionally accessed the PayPal Account without authorization.

57.    N. Kho then transferred the $190.99 to A. Kho's PayPal account.

58.    Once again, this left the PayPal Account with a balance of $0.

. . .

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

59.     N. Kho was not authorized to access the PayPal account nor was he authorized to transfer funds from the PayPal Account to A. Kho.

60.     Plaintiff was damaged as a result of the foregoing.

**RSD Defendants, or Their Agents, Illegally Accessed Plaintiff's Personal Emails.**

61.     On or about September 10, 2017, the RSD Defendants, or those acting at the direction of the RSD Defendants, began a process to access and obtain information from Plaintiff's personal Gmail account "tvandehey@gmail.com" (the "Personal Email") without authorization.

62.     Gmail is an email service provided by Google, Inc.

63.     The Personal Email contains, *inter alia*, confidential information belonging to Plaintiff, including without limitation privileged and confidential attorney-client and attorney work product materials.

64.     From on or about September 10, 2017 and on or about September 11, 2017, the RSD Defendants, or their agents, forwarded at least seven (7) emails from the Personal Email to the Personal Email.

65.     The RSD Defendants, or their agents, then proceeded to delete those seven (7) emails from the "Trash" folder of the Personal Email.

66.     Each of the seven (7) emails contained single attachments in the form of a PNG image file that consisted of excerpts of documents filed in the instant litigation.

67.     In addition, on or about September 11, 2017, the RSD Defendants, or their agents, forwarded two emails from the Personal Email to the email address "toddrsd@hotmail.com" (the "Wrongful Hotmail Address").

68.     Hotmail is an email service provided by Microsoft Corporation.

69.     Plaintiff neither created, nor authorized the creation of, the Wrongful Hotmail Address.

70.     Plaintiff does not use, nor have access to, the Wrongful Hotmail Address.

71.     The first email forwarded to the Wrongful Hotmail Address by the RSD Defendants, or their agents, had a subject of "Fwd: Madison video".

McDONALD ♦ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

72.     That email contained a privileged and confidential communication from Plaintiff to his attorneys.

73.     The second email forwarded to the Wrongful Hotmail Address by the RSD Defendants, or their agents, had a subject of "Fwd: Owen text 8/14".

74.     That email contained screenshots of a text message conversation between Plaintiff and Cook.

75.     Plaintiff did not forward either of the above-referenced emails to the Wrongful Hotmail Address.

76.     Moreover, the RSD Defendants, or their agents, created an archived copy of the entire Personal Email.

77.     Plaintiff did not authorize the RSD Defendants, or their agents, to access the Personal Email nor take any of the above-referenced actions regarding the Personal Email.

**The RSD Defendants, or Their Agents, Reset Plaintiff's Personal Email Recovery Email and Phone Number Without Authorization.**

78.     On or about September 11, 2017 at 2:17 PM EDT, Plaintiff, without knowledge of the unauthorized and illegal actions of the RSD Defendants, or their agents, accessed the Personal Email in order to change the recovery email address from "todd@realsocialdynamics.com" to "toddvhan@gmail.com".

79.     Plaintiff did so because the RSD Defendants, or their agents, as detailed above, had previously removed his access to the "todd@realsocialdynamics.com" email address.

80.     Also on or about September 11, 2017, the RSD Defendants, or their agents, took steps to ensure their continued unauthorized access to the Personal Email, *to wit*:

    a.  At 5:31 PM, the RSD Defendants, or their agents, reset the Personal Email recovery email address from "toddvhan@gmail.com" to "todd@realsocialdynamics.com".

    b.  At the same time, the RSD Defendants, or their agents, removed Plaintiff's recovery phone number ending 3559 from the Personal Email.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

c. At 5:36 PM, from a location in Las Vegas, Nevada, the RSD Defendants, or their agents, changed the password on the Personal Email. This prevented Plaintiff from accessing the Personal Email.

d. At 5:42 PM, from a location in Las Vegas, Nevada, the RSD Defendants, or their agents, added the recovery phone number 702-600-8317 to the Personal Email. That phone number is serviced by Verizon Wireless.

e. At 6:43 PM, from a location in Las Vegas, Nevada, the RSD Defendants, or their agents, removed the recovery phone number 702-600-8317 from the Personal Email.

81. The recovery phone number 702-600-8317 the RSD Defendants, or their agents, added to the Personal Email was registered to N. Kho and RSD at all relevant times.

82. It was only after the Personal Email recovery email was changed by the RSD Defendants, or their agents, back to "todd@realsocialdynamics.com" that Plaintiff learned the RSD Defendants, or their agents, had accessed the Personal Email.

83. Plaintiff did not change the Personal Email recovery email to "todd@realsocialdynamics.com".

## COUNT ONE

**(Declaratory Judgment Pursuant to 28 U.S.C. 2201 and F.R.C.P. 57 as to the Enforceability of the Non-Competition and Non-Solicitation Clauses of the Contractor Agreement)**

84. Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

85. Because of Defendants' unauthorized and *ultra vires* acts in dissolving Valentine Life, Plaintiff is now in a position in which he is compelled to expend time and resources to rebuild the brand and business of Valentine Life.

86. In doing so, Plaintiff is concerned that defendant RSD will assert that Plaintiff is in competition with RSD.

87. In addition, in rebuilding the business of Valentine Life, Plaintiff may hire former Valentine Life employees who may have contracted with defendant RSD.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

88.   In doing so, Plaintiff is concerned that defendant RSD will assert that Plaintiff is in improperly soliciting those individuals.

89.   In short, in order for Plaintiff to begin efforts to remediate the damage already caused by and through its improper acts, he will need to undertake acts that RSD may allege violate the Non-Competition and Non-Solicitation clauses of the Contractor Agreement.

90.   The very uncertainty of that creates an unfair impediment to Plaintiff's efforts to continue the business of Valentine Life in one form or another.

91.   This is especially prejudicial because both the Non-Competition and Non-Solicitation clauses are unenforceable.

92.   For example, the Non-Competition clause specifically restricts Plaintiff for a period of five (5) years from (a) involvement in a business that is in direct competition with defendant RSD; and (b) working with a company that operates in any of eight (8) metropolises throughout the world, spanning four (4) countries and three (3) continents, regardless of whether the company has a physical or Internet presence.

93.   Indeed, because this is an e-commerce business, this overly broad restriction prevents Plaintiff from continuing the work he performed for defendant RSD for five (5) years throughout the world.

94.   Thus, the Non-Competition clause improperly imposes a restraint that is greater than is required for the protection of defendant RSD; imposes an undue hardship on Plaintiff; and imposes restrictions that are inappropriate in relation to the consideration supporting the Non-Competition clause.

95.   Therefore, the Non-Competition clause is void and unenforceable.

96.   In addition, the Non-Solicitation clause prevents Plaintiff from hiring any former independent contractor or employee from defendant RSD for a period of five (5) years worldwide.

97.   Such restrictions are unreasonable as to time, geographical area and scope of activity restrained.

98.   Therefore, the Non-Solicitation clause likewise is void and unenforceable.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

99.     Since Plaintiff wants to rebuild the business of Valentine Life, the enforceability of the Non-Competition and Non-Solicitation clauses is definite and concrete, affecting— indeed, prejudicing—Plaintiff's and defendant RSD's adverse legal interest with sufficient immediacy as to justify relief.

100.    A declaratory judgment will resolve the uncertainty of Plaintiff's obligations under the Non-Competition and Non-Solicitation clauses.

101.    As such, Plaintiff is entitled to a declaratory judgment determining whether the Non-Competition and Non-Solicitation clauses are void and unenforceable.

## <u>COUNT TWO</u>

### (Violation of the Stored Communications Act, 18 U.S.C. 2701)

102.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

103.    The RSD Defendants, or their agents, accessed the Personal Email without authorization and thereby (1) obtained the electronic communication stored in the Personal Email and (2) altered the electronic communications in electronic storage in the Personal Email by forwarding and deleting individual emails.

104.    The RSD Defendants, or their agents, did so knowingly or with an intentional state of mind.

105.    Such actions are a violation of the Stored Communications Act, 18 U.S.C. 2701.

106.    Because of the RSD Defendants', or their agents', actions, Plaintiff has suffered damages.

107.    Pursuant to 18 U.S.C. 2707, Plaintiff may obtain a preliminary and other equitable or declaratory relief against the RSD Defendants.

108.    In addition, the RSD Defendants are liable to Plaintiff for (a) actual damages, not less than $1,000; (b) punitive damages; and (c) costs and reasonable attorney's fees.

. . .

. . .

. . .

1

## COUNT THREE

2

### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030)

3

4        109.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

5

6        110.    The RSD Defendants, or their agents, accessed the Personal Email account

without authorization and thereby obtained information from a "protected computer", as defined

7

in 18 U.S.C. 1030(e)(2)(B), to which the RSD Defendants, nor their agents, did not have

8

authorized access.

9

10        111.    The RSD Defendants, or their agents, accessed the Personal Email and obtained

information from a protected computer intentionally.

11

12        112.    Such actions are a violation of the Computer Fraud and Abuse Act, 18 U.S.C.

1030.

13

14        113.    Because of the RSD Defendants', or their agents' actions, Plaintiff has suffered

damages.

15

16        114.    Pursuant to 18 U.S.C. 1030(g), Plaintiff may recover damages from the RSD

Defendants.

17

## COUNT FOUR

18

### (Violation of N.R.S. 205.4765)

19

20        115.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

21

22        116.    The RSD Defendants, or their agents, did either modify, damage, destroy,

disclose, use, transfer, conceal, take, retain possession of, copy, obtain or attempted to obtain

23

24 access to, permitted access to or caused to be accessed, and/or entered a program or supporting

25 documents which existed inside or outside a computer, system or network when they (a)

26 accessed the Personal Email without authorization, (b) forwarded and deleted individual emails

27 from the Personal Email, (c) changed the password of the personal email, (d) changed the

28 recovery email of the Personal Email; and (e) changed the recovery phone number of the

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1  Personal Email.

2  117.    The RSD Defendants, or their agents, did so knowingly, willfully and without

3  authorization.

4  118.    Such actions are a violation of N.R.S. 205.4765.

5  119.    Because of the RSD Defendants', or their agents', actions Plaintiff has suffered

6  damages.

7  120.    Pursuant to N.R.S. 205.511, because of the RSD Defendants' violation of N.R.S.

8  205.4765, Defendants are liable to Plaintiff for (1) actual damages; (2) punitive damages; and

9  (3) costs and reasonable attorney's fees.

10  ## COUNT FIVE

11  ### (Conversion)

12  121.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

13  the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

14  122.    N. Kho and A. Kho have willfully deprived Plaintiff of the right to possession of

15  his property held in the PayPal Account through the execution of two unauthorized transfers

16  from the PayPal Account to A. Kho's PayPal account.

17  123.    Because of N. Kho's and A. Kho's willful deprivation of Plaintiff's right to his

18  property held in the PayPal Account, Plaintiff has been damaged.

19  124.    Therefore, N. Kho and A. Kho are liable to Plaintiff for the return of the property,

20  for the value of the property, and for damages, including punitive damages, proximately caused

21  by N. Kho's and A. Kho's wrongful conduct.

22  **WHEREFORE**, Plaintiff hereby demands judgment as follows:

23          a.  as to Count One, Plaintiff demands a declaratory judgment against the RSD

24              Defendants;

25          b.  as to Counts Two, Three, Four and Five actual damages against the

26              Defendants;

27          c.  as to Counts Two, Four and Five punitive damages against the Defendants;

28

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1        d.  as to Counts Two and Four costs and reasonable attorneys' fees against the

2            RSD Defendants; and

3        e.  as to Count Two equitable relief against the RSD Defendants.

4            **<u>DEMAND FOR JURY TRIAL</u>**

5        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Todd VanDeHey

6  hereby demands trial by jury in this action of all issue so triable.

7        RESPECTFULLY SUBMITTED this 19th day of December, 2017

8

9            NISSENBAUM LAW GROUP, LLC

10       By:  <u> /s/     Steven L. Procaccini    </u>

11            Steven L. Procaccini (*Pro Hac Vice*)
               Chris Ellis Jr. (*Pro Hac Vice*)

12            2400 Morris Avenue, Suite 301
               Union, NJ 07083

13

14           McDONALD CARANO LLP
               George F. Ogilvie III (NSBN 3552)

15           Amanda C. Yen (NSBN 9726)
               2300 West Sahara Avenue, Suite 1200

16           Las Vegas, NV  89102

17           *Attorneys for plaintiff Todd VanDeHey*

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on or about the 19th day of December, 2017, a true and correct copy of the foregoing **SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ Jelena Jovanovic*
An employee of McDonald Carano LLP

# INDEX OF EXHIBITS

| Description | Exhibit No. |
|---|---|
| Contractor Agreement | A |
| Valentine Life, Inc. Articles of Incorporation | B |
| Valentine Life, Inc. Operating Agreement | C |
| Valentine Life, Inc. Certificate of Dissolution | D |