—2:17-cv-2230-JAD-NJK - December 8, 2017—

1        IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEVADA

3

4   TODD VANDEHEY,              )   Case No.
                                )   2:17-cv-2230-JAD-NJK
5            Plaintiff,         )
                                )   Las Vegas, Nevada
6        vs.                    )   Friday, December 8, 2017
                                )   9:57 A.M.
7   REAL SOCIAL DYNAMICS, INC., )   Courtroom 6D
    et al.,                     )
8                               )   MOTION HEARING
             Defendants.        )
9   _____)   *CERTIFIED COPY*

10

11

12            REPORTER'S TRANSCRIPT OF PROCEEDINGS

13        BEFORE THE HONORABLE JENNIFER A. DORSEY,
              UNITED STATES DISTRICT JUDGE

14

15

16  APPEARANCES:

17  For Todd VanDeHey:

18        GEORGE F. OGILVIE III, ESQ.
          McDonald Carano LLP
19        2300 West Sahara Avenue, Suite 1200
          Las Vegas, Nevada 89102
20        (702) 873-4100
    (continued next page.)
21

22  Court Reporter:     Felicia Rene Zabin, FCRR, RPR, CCR 478
                        United States District Court
23                      (702) 676-1087   FZ@nvd.uscourts.gov

24

    Proceedings reported by machine shorthand.  Transcript produced
25  by computer-aided transcription.

2:17-cv-2230-JAD-NJK - December 8, 2017

1   APPEARANCES CONTINUED:

2   For Todd VanDeHey:

3            STEVEN L. PROCACCINI, ESQ.
             Nissenbaum Law Group, LLC
4            2400 Morris Avenue, Suite 301
             Union, New Jersey 07083
5            (908) 686-8000

6   For Real Social Dynamics, Inc.; Owen Cook; Nicholas Kho:

7            JOSEPH A. GUTIERREZ, ESQ.
             STEVEN G. KNAUSS, ESQ.
8            Maier Gutierrez & Associates
             8816 Spanish Ridge Avenue
9            Las Vegas, Nevada 89149
             (702) 629-7900
10

11  Also Present:

12           Todd VanDeHey
             Nicholas Kho
13

14

15

16

17

18

19

20

21

22

23

24

25

—2:17-cv-2230-JAD-NJK - December 8, 2017—

1        LAS VEGAS, NEVADA; FRIDAY, DECEMBER 8, 2017; 9:57 A.M.

2                      --oOo--

3                P R O C E E D I N G S

4       COURTROOM ADMINISTRATOR:  All rise.

5       THE COURT:  Good morning.  Please have a seat.

6       COURTROOM ADMINISTRATOR:  Now is the time set for a

7 motion hearing in Case No. 2:17-cv-2230-JAD-NJK, Todd VanDeHey

8 versus Real Social Dynamics, Inc., et al.

9       Counsel, please state your appearances.

10       MR. PROCACCINI:  Good morning, Your Honor.  Steven

11 Procaccini with the Nissenbaum Law Group on behalf of

12 plaintiff, Mr. VanDeHey.

13       MR. OGILVIE:  George Ogilvie as cocounsel, Your Honor.

14       THE COURT:  Good morning.

15       MR. GUTIERREZ:  Good morning, Your Honor.  Joseph

16 Gutierrez and Steven Knauss on behalf of the defendants.  With

17 me today is Nicholas Kho.

18       THE COURT:  All right.  Good morning, everybody.

19       So we are here on Plaintiff's Emergency Motion for

20 Temporary Restraining Order and Preliminary Injunction.  These

21 requests are found at numbers 52 and 53 in the docket.

22       I have reviewed all of the parties' submissions

23 including the defendant's response at numbers 62 and 63 and

24 then the reply at 64 and 65.

25       Just to put on the record, I recognize there are other

──────2:17-cv-2230-JAD-NJK - December 8, 2017──────

1   motions pending in this case, dispositive motions pending in

2   this case, so -- including a Motion for Summary Judgment, a

3   Motion to Compel Arbitration or Dismiss, and a Motion to Amend

4   the Complaint.  Those are not noticed for this hearing today.

5   This is just this Emergency Motion on the TRO and the

6   Preliminary Injunction.  Those other motions will be decided in

7   the ordinary course.  And, unfortunately, they are in a line of

8   dispositive motions that's about 250 motions long.

9           So, with the understanding that I have read everything,

10  who will be arguing for the plaintiff?

11          MR. PROCACCINI:  I will, Your Honor.

12          THE COURT:  Okay.  The podium is yours, sir.

13          MR. PROCACCINI:  Thank you.

14          THE COURT:  And in your argument -- pronounce your last

15  name for me, again.

16          MR. PROCACCINI:  Procaccini, Your Honor.

17          THE COURT:  Procaccini.

18          -- if you could address for me why we haven't had a

19  Rule 26 conference or a discovery plan and order entered yet in

20  this case and why these issues can't be handled in the ordinary

21  course of discovery.

22          MR. PROCACCINI:  Sure, Your Honor.

23          So you may recall that we made a Motion to Amend the

24  Complaint against previously then unknown defendants.

25          THE COURT:  Right.

2:17-cv-2230-JAD-NJK - December 8, 2017

1          MR. PROCACCINI:  And, you know, those issues that

2   related to the Computer Storage Act as well as the Computer

3   Fraud and Abuse Act were germane to any of the rights that were

4   being infringed by our client.  They were not contemplated by

5   any independent contractor agreement or LLC operating agreement

6   that was formed between the parties which went to the

7   defendant's argument that everything should be -- every dispute

8   between the parties should be subject to arbitration.

9          So Your Honor may recall that with the amending of the

10  Complaint we were permitted to take what I would say is akin to

11  pre-action discovery, which is to learn the identity of these

12  unknown defendants.  And so there we are left with basically a

13  Complaint that had to be -- had yet to be joined.  So that

14  would be a rationale for not having the discovery -- necessary

15  Rule 16 conference before the defendants who were then unknown

16  would be brought into the case.  We probably would have to do

17  the discovery plan over again, at least given the opportunity

18  of these unknown defendants to be joined.

19         And, Your Honor, the delay would -- after, you know,

20  the papers that we received two days ago, finally three months

21  after our initial concern that some unknown party was hacking

22  into my client's email forwarding our attorney-client

23  communications about this litigation to some unknown party, it

24  was basically -- you know, we were told that we're just being

25  present -- we're presenting the Court with nothing more than

1 suspicions; you're asking for discovery; give us written

2 requests; and then we would ask for information and they would

3 say you're asking us to turn over privileged communications as

4 if -- as though somehow stealing my client's attorney-client

5 communications, giving it to an attorney somehow vests a

6 privilege in the defendants.

7          So, basically, Your Honor, we tried every way that we

8 could to have our client's attorney-client communications that

9 were stolen from him three days after we were here on the last

10 emergency motion returned back to us.  And this simply was not

11 something where we could just serve our interrogatories and

12 motions to compel, requests for admissions.  Six months down

13 the line we're facing a motion for default in an arbitration.

14 All of our arbitration strategies are in that Gmail account.

15 Everything is in there.  If there's a potential conflict, which

16 I believe exists, counsel for the defendant shouldn't even be a

17 part of this case.  So this -- first and foremost, we know

18 damage has been done; the question is how much.  We know

19 information has to be protected; the question is to what

20 lengths do we have to go to protect it.

21          We have no idea how long this defendant was poking

22 around in this Gmail account.  We do know -- we have not yet

23 received third-party subpoena responses from Microsoft -- or

24 from Hotmail -- I'm sorry -- which would go to this t -- Todd

25 Valen- -- Valentine Hotmail account where the attorney-client

———2:17-cv-2230-JAD-NJK - December 8, 2017———

1  privileged communications was forwarded to.

2          So, you know, unfortunately, within three months, Your

3  Honor, we've been able -- we've been forced solely by

4  defendants' discretion to jump through hoops:  hire a forensic

5  examiner, serve third-party discovery, get everything.  And

6  then, two days before this hearing, they say, oh, yeah, it was

7  me; but we were well within our rights to do so.  We go back to

8  the attorney letters two months ago and they say, well, based

9  on all your suspicions, we're just gonna give our clients the

10  obvious instruction:  Don't access their personal Gmail

11  account.  Right?  Their argument's saying defendants are in --

12  well within their rights to possess this Gmail account; it's a

13  work-related account.  No evidence to support that Mr. VanDeHey

14  had used this account regularly.  Could there -- was there an

15  email from 2012?  Probably.  You know, this does not make this

16  Gmail account a work-related account.

17          Now, we have this position that somehow defendants are

18  gonna be caused irreparable harm if he doesn't turn over his

19  personal Gmail account to them.  I remind you, Your Honor,

20  three days before they confiscated this 29 platform G --

21  Google -- 19 gigabytes of material.  We didn't hear the word

22  "Gmail" once in oral argument as to what assets needed to be

23  transferred in order for the operation of Valentine Life to

24  continue because the truth is -- and defendant knows it -- this

25  Gmail account was never contemplated; this Gmail account was

——2:17-cv-2230-JAD-NJK - December 8, 2017——

1   never used in the operation of the business.

2           Mr. VanDeHey -- we suspect that the only way that

3   defendants gained access to this account was he used the same

4   password for his Gmail account as he did with this RSD account.

5   That in no way conveys any expectation or any authorization

6   that somehow RSD can now use that same password and invade his

7   account that includes -- that was our primary means of

8   communication with him.  So, on September 11th, we find out

9   that it's hacked.  That day we sent a letter to plaintiffs'

10  coun- -- to defendant's counsel.  And basically we're met with:

11  Go the ordinary course.  Serve us with -- serve us with your

12  discovery.  We're gonna give an instruction not to access this

13  personal Gmail account.  And then we're met with this argument

14  that somehow there's this implied authority that this was a

15  used and necessary component to operate Valentine Life.  And,

16  frankly, it's absurd.  I can't envision a scenario where either

17  the Computer Storage Act or the Computer Fraud and Abuse Act

18  would be constructed other than to prevent exactly this type of

19  a scenario.

20          And, Your Honor, what we're being met with here is we

21  are being -- the approach is clear, to just outlast the

22  plaintiff.  The obvious frauds that have been committed are

23  just bold-faced attempts -- and, actually, not even afraid of

24  culpability.  We've already pointed out to Your Honor about the

25  fraudulent documents presented to the Secretary of State.  The

2:17-cv-2230-JAD-NJK - December 8, 2017

1  PayPal account was fraudulently taken over in a similar way as

2  the Gmail account.  The Gmail account was just completely

3  hacked and denied.  And now, when they have their hand caught

4  in the cookie jar, they say, oh, yeah, it was me; but I was

5  justified to do so.  The obvious attempt here is to raid the

6  LLC of all of its assess, strap it with all of its liability,

7  and just dare Mr. VanDeHey to sustain the litigation costs and

8  maybe last long enough in order for a final adjudication on the

9  merits which will obviously and ultimately be in the

10 plaintiff's favor.

11         And I know, Your Honor, that defendants keep trying to

12 bring us back to somehow there was an admission of $800,000 of

13 embezzlement.  The fact is we haven't answered the arbitration

14 demand for the reasons that I expressed here, Your Honor.

15 Until we can get an understanding of who has seen our

16 litigation strategies for the arbitration, we simply are too

17 prejudiced to respond to the arbitration demand.  And I find it

18 curious, Your Honor, that defendants' counsel, taking the

19 position that the defendants are in the rightful possession of

20 this account, at paragraph 18 of their Certification, say I

21 haven't seen any emails between Mr. VanDeHey and its counsel.

22 Well, that means that you haven't looked at the Gmail account

23 because it's littered with it.  So why haven't you looked at

24 the Gmail account?  If your client's in the rightful

25 possession -- you're making a legal argument as to why your

2:17-cv-2230-JAD-NJK - December 8, 2017

1  client's in rightful possession of it.  You haven't reviewed

2  it?

3           So what are we supposed to do?  What a mess the

4  defendants have created.  If they wanted a document, they could

5  have requested it.  We could have sought a protective order.

6  We could have provided a privilege log.  To take it and say I

7  needed to get in it because I think that there was some RSD

8  stuff in there and now I have it and now I need it and now I

9  deserve it and then to criticize me for not going through the

10  rightful procedures under the federal rules of discovery . . .

11  They should have done what we did.  If they thought that there

12  was something in this Gmail account, they should have asked for

13  it.  We could have objected to it.  There could have been a

14  protective order; there could have been a production; there

15  could have been something.  To take his RSD password, enter it

16  into a Gmail account, download it, and then deny it -- Your

17  Honor, they say -- this is quite telling, Your Honor.  On

18  page . . .  At page 5, Your Honor, of the opposition, which is

19  Document 62 -- this is the defendant's opposition, first full

20  paragraph:

21           "To be clear, Mr. Kho did not **delete** any of the emails

22  within the tvandehey@gmail.com account.  Instead, Mr. Kho

23  attempted to download all RSD communications from the date of

24  Vandehey's termination until September 11, 2017."  No citation

25  to any evidentiary hearing support.

2:17-cv-2230-JAD-NJK - December 8, 2017

1          The next sentence:  "However, after several attempts, a

2  bulk download of emails was ultimately unsuccessful."  Right,

3  Your Honor?  No citation to any factual record.

4          However, we then see on page 8, bottom paragraph:

5          "Here, Mr. Kho has admitted to ... accessing the Gmail

6  account to preserve the interests of RSD, ... not sharing the

7  private email contents, and (3) keeping a copy of the hard

8  drive containing the emails in a locked facility."

9          So we're told:  Don't worry.  It was unsuccessful.

10 Despite your LIFARS forensic experts, that the plaintiff had to

11 spend thousands of dollars for the investigation, has proven

12 that the platform of 29 products spanning 19 gigabytes was

13 downloaded on September 11th, Mr. Kho was unsuccessful in the

14 download; but he's got a copy of it in a safe location.  And he

15 didn't see any attorney-client communications other than the

16 communication that was sent to Ms. Magedoff, my associate;

17 Ms. Nissenbaum, the head partner of my firm; and me.

18          And, then interesting, Your Honor, this one -- this I

19 would like to have some sort of an explanation that makes

20 sense.  It's a citation to Exhibit H of their opposition.  This

21 is to somehow show that Mr. VanDeHey was using his Gmail

22 account to service customers.  This is "From:  lsilva@hbms.com"

23 dated September 25th, 2017, "To:  tvandehey@gmail.com."  I have

24 no idea how they got that, Your Honor.  There are so many

25 unanswered questions.  This is two weeks after this supposed

——2:17-cv-2230-JAD-NJK - December 8, 2017——

1  download that was unsuccessful.  This is two weeks after we put

2  them on notice that someone was interfering with our client's

3  email address.  This is two weeks after I received a response

4  from Mr. Gutierrez, on September 12th, 2017, saying:  "There is

5  little instruction I can pass to my client beyond the very

6  obvious:  Do not access Mr. VanDeHey's personal Gmail account."

7       So, Your Honor, quite frankly, I'm here for more

8  answers than questions.  It's clear on its face that Mr. --

9  that the plaintiff here cannot be trusted.  We're told, Your

10 Honor --

11      COURT REPORTER:  Remove the items from the microphone.

12      MR. PROCACCINI:  I'm sorry.  Sorry about that.  Thank

13 you.

14      Your Honor, there was a passing remark made in this

15 opposition, if you call it that -- I call it an admission --

16 that what we should have done is we could have sent a

17 spoliation notice and we could have served discovery.  I have

18 for Your Honor our August 16, 2017, spoliation notice for your

19 consideration if I can pass it up.

20      THE COURT:  Is it not attached?

21      MR. PROCACCINI:  It's not attached, Your Honor.  I --

22 we could offer -- we could --

23      THE COURT:  You can just represent for me you sent --

24      MR. PROCACCINI:  Okay.

25      THE COURT:  -- August 16th you sent a spoliation

1  letter.

2        MR. PROCACCINI:  August 16th we sent a spoliation

3  letter to MGA Law, Mr. Knauss.  And it has your typical

4  spoliation language as if -- as though a spoliation letter is

5  necessary.  We believe the obligations are quite clear under

6  the rules.

7        THE COURT:  I agree.

8        MR. PROCACCINI:  So, Your Honor, we sent a spoliation

9  notice.  But where this is relevant is on August 16 we sent the

10  spoliation notice as if we're supposed to trust the plaintiff

11  to keep this database that wasn't downloaded but yet is kept in

12  a safe, locked location.  And his opposition to what was our

13  oral argument on September 8th clearly all the RSD emails and

14  assets are the subject of this dispute; right?  This is about

15  the operation of an LLC where Mr. VanDeHey had an RSD email

16  account and basically conducted all of his business through

17  that.

18        In a certification by Mr. Kho in support of that

19  opposition:

20        [Reading] Much of the social media was deleted

21  immediately upon the dissolution of Valentine Life and

22  termination of Todd Valentine -- Vandehey from RSD.  The

23  YouTube channel associated with RSD were deleted and much of

24  the social medial in the name of Todd -- of RSD Todd was

25  deleted as well.  There can be no return to the August 10

———2:17-cv-2230-JAD-NJK - December 8, 2017———

1  status as YouTube is permanently deleted, and same with RSD

2  email, making this request impossible.  There is no way to even

3  regain most of the assets that Todd lost access to because we

4  permanently deleted the email account

5  todd@realsocialdynamics.com.

6          Now that's important on a lot of levels.  First of all,

7  that violates the spoliation notice if that's where we choose

8  to place our focus.

9          The second part is it's telling that the means at which

10  to access the plaintiff's Gmail account was through the

11  recovery email address which was this email address that they

12  say they deleted.  They took his cell phone number, replaced it

13  with his.  They took his former RSD email address that they say

14  they deleted and created a Hotmail address.

15          So I don't know.  Did they -- is it a fraud that they

16  say they deleted the account?  They did?  They didn't?  They

17  used it.  They changed it.  They took it.  I don't know what

18  the rules are here, Your Honor.

19          But, clearly -- I think it's actually -- I think it's

20  beyond reasonable to say that somehow plaintiff is stepping

21  outside of the Rules of Federal Procedure by not serving a nice

22  little interrogatory or a document request when we're serving

23  letters putting them on notice the house is on fire -- we need

24  protection, you need to stop, you need to give us back our

25  attorney-client protected information -- and we were met with

1   you're asking us to disclose a privilege as if they enjoy a

2   privilege by maintaining our privilege information.

3          So, Your Honor, we need some direction here because

4   we're facing an arbitration.  I have no idea what defendants'

5   counsel knows about our legal strategy.  He says he hasn't seen

6   the emails.  I guess maybe if he didn't access the Gmail

7   account in which case I don't know how he can opine as to

8   what's in it.  We need our information back.  We need them to

9   give it back to us.  We need an independent expert to help us

10  get it back, to know what damage has been done.

11         And the three-month stall, Your Honor, we want to get

12  this case back on track.  We want this case consolidated.  We

13  want to pursue the federal crimes that have been committed.

14  And we need to bring this case back on track.

15         Thank you, Your Honor.

16         THE COURT:  Thank you.

17         MR. GUTIERREZ:  Thank you, Your Honor.

18         THE COURT:  Give me just one second.

19      (Pause in the proceedings.)

20         THE COURT:  Mr. Gutierrez.

21         MR. GUTIERREZ:  Thank you, Your Honor.

22         Your Honor, just to start with your first question to

23  counsel which is why didn't he hold a discovery plan or a

24  Rule 26 conference dispute petitioning this Court for expedited

25  discovery.  And that's been my position all along, Your Honor.

———2:17-cv-2230-JAD-NJK - December 8, 2017———

1  The reason why -- he can send every letter in the world to me

2  asking me what my client knows or doesn't know -- and the

3  reason rules are set up -- like interrogatories that are

4  verified by the client, like RFAs that have sanctions for

5  failing to -- if you answer improperly, or requests for

6  production of documents that would be held to a motion to

7  compel -- is because those are discovery that's directed at the

8  client.  They are not directed to me to tell him what my client

9  said because how do you impeach my client through a letter

10 through me.

11        So I said send -- send this to my client.  Send him an

12 interrogatory.  Send him a request for admission.  Depose him.

13 These are all questions you ask my client; you don't ask me.

14 And that's why the rules are set up this way.  And, for counsel

15 to fail, admittedly fail, to not send a single request; not

16 send a single -- when he did try to schedule a deposition, he

17 did it on six days' notice.  And I said I'd be more than happy

18 to produce my client --

19        THE COURT:  Well --

20        MR. GUTIERREZ:  -- just give me some time.  And that's

21 really where --

22        THE COURT:  Well, why haven't we had a Rule 26

23 conference here?

24        MR. GUTIERREZ:  I have no idea, Your Honor.  It's --

25 they've asked for expedited discovery.  Um --

————2:17-cv-2230-JAD-NJK - December 8, 2017————

1        THE COURT:  Yeah.  But that was super narrow.

2        MR. GUTIERREZ:  Yeah.  The plaintiff should have

3    noticed a Rule 26 conference and we would have had a discovery

4    and scheduling order and we would have moved forward with it.

5    So it's something that should have been done.  I agree.

6    Um . . .

7        THE COURT:  Well, and I recognize it's the plaintiff's

8    burden to initiate that.  But you guys could have started it

9    too.  So I'm just trying to --

10        MR. GUTIERREZ:  And --

11        THE COURT:  -- understand why this is moving along like

12    it is, and it just seems to be a sandbox fight going on with

13    nobody caring about the rules of discovery or coming up with a

14    discovery plan --

15        MR. GUTIERREZ:  Maybe --

16        THE COURT:  -- which --

17        MR. GUTIERREZ:  -- to answer --

18        THE COURT:  -- really --

19        MR. GUTIERREZ:  -- your question --

20        THE COURT:  -- would --

21        MR. GUTIERREZ:  -- yeah.

22        THE COURT:  -- address most of this.

23        MR. GUTIERREZ:  Maybe, to answer your question, Your

24    Honor, it's because procedurally -- the way we viewed this case

25    was we never answered it.  We filed a motion to dismiss and

2:17-cv-2230-JAD-NJK - December 8, 2017

1  compel arbitration saying this is the wrong forum.  So if we

2  didn't answer --

3          THE COURT:  I know.

4          MR. GUTIERREZ:  -- that should --

5          THE COURT:  But you --

6          MR. GUTIERREZ:  -- have triggered.

7          THE COURT:  -- don't have to answer.

8          MR. GUTIERREZ:  Correct.  So, yeah, a Rule 20 --

9          THE COURT:  It's first appearance that triggers that --

10         MR. GUTIERREZ:  Correct.

11         THE COURT:  -- 30-day deadline.

12         MR. GUTIERREZ:  So you're right, Your Honor.  Both

13  sides admittedly missed that we should have done a Rule 26

14  conference.  And that would have -- that conference, Your

15  Honor -- and the purpose of that conference would have led to

16  these questions that would have led to the discovery that they

17  are ultimately seeking through a TRO.  And that's why we're

18  here on emergency injunctive relief that they are seeking

19  because they never sent discovery.

20          And we could do a Rule 26 conference today.  We can get

21  this case on track.  But the way the case gets on track is by

22  them sending discovery to my client.  My client setting forth

23  his position.  We do depositions of both sides.  We already

24  have an understanding of Nevada law that both sides have to

25  preserve emails.  But what they are really seeking through this

———2:17-cv-2230-JAD-NJK - December 8, 2017———

1  is a mandatory injunction on trying to force Mr. Kho to turn

2  over electronic media that they can just -- and all his

3  passwords -- so that they can wholly look through which is

4  absolutely improper under the means that they are doing it.

5         And we cited cases, Your Honor, including the *Patel*

6  *Energy* case, where the court struggled with granting that

7  relief and said the only reason we're granting the relief to

8  turn that hard drive over is because the defendants are

9  admitted hackers who were forced to post a $25,000 bond.

10         So what they are effectively looking for, Your Honor,

11  is not answers.  They're looking for -- they're looking for

12  RSD's hard drives, RSD's electronic information.  They are

13  looking to get what they've already stolen.  And we have a

14  arbitration demand out there alleging Mr. VanDeHey has stolen

15  over $800,000 -- that is documented -- that we'll prove up.

16         But what we have in this particular case is, you

17  know -- if counsel said they didn't answer that case because

18  he's seeking a confirmation from me, well, I gave it in my

19  declaration.  It's very clear.  I never looked at any emails,

20  never looked at attorney-client emails.  I don't have access to

21  that Gmail account.  I never looked at any Gmail's.  So, if

22  that's what he needs, it's in my declaration.  Now --

23         THE COURT:  I think his certain is your client looking

24  at, not you as much.

25         MR. GUTIERREZ:  Correct.  But he said -- he mentioned I

FELICIA R. ZABIN, FCRR, RPR, CCR 478    (702) 676-1087

——2:17-cv-2230-JAD-NJK - December 8, 2017——

1  can't answer the arbitration because I can't tell if defense

2  counsel can go forward in that case because of a conflict which

3  I think is absurd.  If he has a certain against my client

4  that's one thing.  But against me and my firm's representation

5  I made that very clear that's a non-issue.

6          So despite the differences as to authorization, which

7  is a key issue, did RSD have authorization to review that

8  account, Your Honor, we've submitted declarations from the CFO,

9  the COO, everybody saying that that was Mr. VanDeHey's primary

10 business account.  In fact, Mr. VanDeHey gave Mr. Kho the

11 password and log in for that account so he can set up what's

12 called RSD Inner Circle and RSD Immersion Programs to help

13 Mr. VanDeHey back in 2010 start these programs through RSD as a

14 contractor.

15         So, Your Honor, I do agree with you.  This case does

16 need to be put back on track but not through the injunction.

17 The appropriate relief, Your Honor, is to, I believe, hold a

18 Rule 26 conference to set up an expedited discovery schedule

19 and order and move forward with depositions of both Mr. Kho;

20 Mr. VanDeHey; bring discovery; production of documents; both

21 sides can confirm that they won't destroy any evidence.  And we

22 just move --

23         THE COURT:  I don't --

24         MR. GUTIERREZ:  -- the case --

25         THE COURT:  -- think --

———2:17-cv-2230-JAD-NJK - December 8, 2017———

 1          MR. GUTIERREZ:  -- along.

 2          THE COURT:  -- both sides need to confirm that.

 3          MR. GUTIERREZ:  It's --

 4          THE COURT:  I think that there is an affirmative

 5     obligation and there are numerous sanctions available under

 6     Rule 37 if you violate that.  So I assume that you've advised

 7     your client of that.  And --

 8          MR. GUTIERREZ:  Absolutely.

 9          THE COURT:  -- there's a spoliation letter that was

10     sent.  And the way that gets handled is through Rule 37,

11     through the discovery process.

12          MR. GUTIERREZ:  And that's absolutely correct, Your

13     Honor.  That's why I'm so frustrated that we're even here today

14     because under an irreparable harm analysis there has to be no

15     adequate legal remedy.  They have an adequate legal remedy of

16     spoliation.  We completely understand.  I've had numerous

17     trials where there's been instructions on spoliation for

18     violation.  And that's --

19          THE COURT:  Adverse inferences.

20          MR. GUTIERREZ:  -- and that's -- and adverse inferences

21     and rebuttable presumptions but not TROs asking a court to hold

22     and order of what already is Nevada law.  So that's the

23     frustration I have with us being here on an emergency basis

24     when you're correct, Your Honor, just noticing a Rule 26

25     conference and saying discovery would have kicked this all off.

 1          So, Your Honor, it's our position that this TRO must be

 2  denied.  We're prepared to hold a Rule 26 conference today to

 3  set up a scheduling order.  It might have been my

 4  misimpression, Your Honor, that because Judge Koppe granted the

 5  expedited discovery that a, you know, scheduling order would

 6  follow with that Rule 26 conference.  But we -- it's still

 7  counsel and I's burden to hold that and to kick-start discovery

 8  which --

 9          THE COURT:  And to provide a joint discovery plan.

10          MR. GUTIERREZ:  Absolutely.

11          And the joint discovery plan will flush these issues

12  out.  Any claims of privilege or -- that'll all be flushed out

13  and -- you know, the true issue in this is whether or not RSD

14  had authorized access to those emails at least for this limited

15  case.  And down the line we'll get to the issue of whether or

16  not this case belongs here or in front of arbitration.

17          So at this stage, Your Honor, we request that the TRO

18  be denied.  I'm prepared to meet with counsel, go through

19  discovery plans, and then just move this case forward.

20          Do you have --

21          THE COURT:  Thank you.

22          MR. GUTIERREZ:  -- any questions, Your Honor, for

23  anything?

24          THE COURT:  I don't have any other questions.

25          MR. GUTIERREZ:  Okay.

─────2:17-cv-2230-JAD-NJK - December 8, 2017─────

1            MR. PROCACCINI:  Your Honor, may I?

2            THE COURT:  I'm sorry?

3            MR. PROCACCINI:  May I?

4            THE COURT:  Of course.

5            MR. PROCACCINI:  Thank you, Your Honor.

6            Your Honor, this sounds nice as if -- as though a

7   discovery conference would have somehow prevented the defendant

8   from reading all of my client's emails, Your Honor.  I don't

9   understand how we're shifting this into how come this case

10  isn't on its normal track.  It's very unusual, I believe, three

11  days after leaving federal court to hack into my communications

12  with the client.  It is an emergency, Your Honor.

13           Exhibit G to our papers, September 5th, 2017, email

14  from the plaintiff to me and my -- and my attorneys about

15  information that directly relates to the arbitration.

16           THE COURT:  So let me --

17           MR. PROCACCINI:  I don't understand what more of an

18  emergency there could be.

19           THE COURT:  All right.

20           MR. PROCACCINI:  I don't --

21           THE COURT:  Well, how --

22           MR. PROCACCINI:  -- understand how else to prevent

23  this.

24           THE COURT:  Mr. Procaccini, how is it still an

25  emergency?  Either it's happened -- the cat's out of the bag --

2:17-cv-2230-JAD-NJK - December 8, 2017

```
1           MR. PROCACCINI:  Hmm?
2           THE COURT:  -- they've got the cat --
3           MR. PROCACCINI:  Pardon me?
4           THE COURT:  Either -- either -- if this happened --
5           MR. PROCACCINI:  Yes.
6           THE COURT:  -- if you're correct --
7           MR. PROCACCINI:  Yes.
8           THE COURT:  -- and he has read all of these emails --
9   let's --
10          MR. PROCACCINI:  Yes.
11          THE COURT:  -- assume the worse.
12          MR. PROCACCINI:  Sure.
13          THE COURT:  Okay?
14          MR. PROCACCINI:  Um-hum.
15          THE COURT:  Assume that Mr. Kho has read all of the
16  emails, okay --
17          MR. PROCACCINI:  Yes.
18          THE COURT:  -- cat is out of the bag --
19          MR. PROCACCINI:  Yes.
20          THE COURT:  -- so the standard for injunctive relief --
21  let's put aside completely the fact that there is, in my
22  opinion, discovery procedures that handle all of this.  But, if
23  the cat's out of the bag, he's read everything, what
24  irreparable harm will happen in the future absent the relief
25  you're asking --
```

2:17-cv-2230-JAD-NJK - December 8, 2017

1           MR. PROCACCINI:  Your --

2           THE COURT:  -- for?

3           MR. PROCACCINI:  -- Honor, what we'd like to know is --

4   I still haven't heard a satisfactory answer to my question --

5   is how an attorney can say there's nothing wrong with what they

6   did, but I refuse to look at it.  We are entitled to

7   investigate what happened to this, did it go to the --

8           THE COURT:  Right.

9           MR. PROCACCINI:  -- the law firm, Your Honor.

10          THE COURT:  Through discovery.

11          MR. PROCACCINI:  Through discovery?  I -- I --

12  honestly, Your Honor, I can't believe that.  The Computer Fraud

13  and Abuse Act is exactly meant to contemplate this.  I have a

14  proven --

15          THE COURT:  Then you have Computer Fraud and Abuse Act

16  claims.  That's --

17          MR. PROCACCINI:  That's six months --

18          THE COURT:  That's --

19          MR. PROCACCINI:  -- from now.

20          THE COURT:  -- the case.

21          MR. PROCACCINI:  So six months from -- Your Honor, six

22  months from now after we've lost in arbitration I can prove

23  then that the Gutierrez law firm had our entire litigation

24  practice.

25          THE COURT:  That's why you have claims.

———2:17-cv-2230-JAD-NJK - December 8, 2017———

1          MR. PROCACCINI:  Okay.  All right, Your Honor.

2          We have no alternative, Your Honor.  This was our last

3  resort to protect the plaintiff's interests and to protect our

4  communications, to send an interrogatory, tell me when you

5  received the September 5th strategy about our arbitration, and

6  then they have 60 days to answer, and then we're gonna move to

7  compel and deficiency notices, and then in -- in -- I don't

8  know --

9          THE COURT:  No.  We start --

10         MR. PROCACCINI:  -- maybe March --

11         THE COURT:  -- with a discovery plan and some protocols

12  for these things and a protective order and a confidentiality

13  order and a protocol for who handles what intellectual property

14  in the meantime.  And all of that got skipped here.

15         MR. PROCACCINI:  Okay.  Exactly, Your Honor.  It got

16  skipped.  They just said I'm takin' the information rather than

17  giving us a request where we have privilege logs.  They did

18  exactly the opposite of what you're suggesting and they are

19  being rewarded for it, Your Honor.

20         THE COURT:  How are they being rewarded for it?

21         MR. PROCACCINI:  Because they are allowed to keep it

22  and they are not being penalized for doing it.  They

23  committed --

24         THE COURT:  If they did what you say they did --

25         MR. PROCACCINI:  Yes.

2:17-cv-2230-JAD-NJK - December 8, 2017

1          THE COURT:  -- your remedy is through Rule 37

2   ultimately in this case.

3          MR. PROCACCINI:  And he'll --

4          THE COURT:  There are --

5          MR. PROCACCINI:  -- never get there because they've

6   confiscated all the money.  They've raided his PayPal account.

7   His credit's being destroyed.  His Social Security number is

8   attached to a PayPal account that they've confiscated.

9          This is all a battle of attrition.  They are steal

10  first, answer later.  And they are hopin' the answer never

11  comes.  And we are entitled to this emergent relief under the

12  statute where we can prove that they have it and we can prove

13  that our rights have been violated and we can prove their

14  negative intent in doing so.

15         THE COURT:  All right.  I appreciate your argument.

16         MR. PROCACCINI:  Thank you, Your Honor.

17         THE COURT:  Thank you.

18         All right.  So it's my intention to rule today.  I'm

19  not going to issue a separate written order, so I'm going to

20  put my findings and conclusions on the record here.  I'm gonna

21  start with the standard.

22         The legal standard for issuing a TRO, a temporary

23  restraining order, and the legal standard for injunctive relief

24  are "substantially identical."  "A party seeking a preliminary

25  injunction must meet one of the two variants of the same

FELICIA R. ZABIN, FCRR, RPR, CCR 478    (702) 676-1087

————2:17-cv-2230-JAD-NJK - December 8, 2017————

1  standard," that *Winter* standard.

2        "Under the original" standard from *Winter v. Nat. Res.*

3  *Def. Council, Inc.*, "a party must show 'that he is likely to

4  succeed on the merits, that he is likely to suffer irreparable

5  harm in the absence of preliminary relief, that the balance of

6  equities tips in his favor, and that an injunction is in the

7  public interest.'"

8        "Under the 'sliding scale' variant of the *Winter*

9  standard," established by the Ninth Circuit in *Shell Offshore,*

10 *Inc. v. Greenpeace*, "if a plaintiff can show only that there

11 are serious questions going to the merits—a lesser showing

12 than likelihood of success on the matters—then a preliminary

13 injunction may still issue if the balance of hardships tips

14 *sharply* in the plaintiff's favor, and the other two *Winter*

15 factors are satisfied."

16        In this case, I don't find that the plaintiff has

17 established that he is likely to succeed on the merits of his

18 claims such that he could prevail on any portion of his motion

19 original the original *Winter* standard.  There is evidence from

20 the defendants about how these accounts were set up, how they

21 were used, and how they were business accounts.  And I don't

22 have that similar evidence from the plaintiff.  But there has

23 been enough showing to award a portion of the requested relief

24 under the sliding scale variant of the *Winter* test.  At most, I

25 can say that the plaintiff has shown serious questions going to

2:17-cv-2230-JAD-NJK - December 8, 2017

1  the merits of his claim that this email account was his

2  personal account, not the company's account.  Because the

3  plaintiff has established that there may be attorney-client

4  communications in that account, there is a public interest in

5  protecting those communications, and there is a likelihood of

6  irreparable harm without some temporary relief.  And, finally,

7  due to the potential presence of attorney-client privileged

8  information in that account, I can also say that the balance of

9  hardships tips sharply in the plaintiff's favor for the moment,

10  because the parties have not sat down to work out a protocol

11  for dealing with that account in light of this litigation.

12  But, once that opportunity has been taken, the balance, in my

13  mind, will no longer be sharply tipped in favor of the

14  plaintiff.

15          But the only irreparable harm that I think has been

16  demonstrated here is the potential disclosure of

17  attorney-client communications if the email account and its

18  contents are further accessed.  To the extent that any

19  privileged material has already been read, I think -- like I

20  was saying, I think that cat is out of the bag, and injunctive

21  relief won't put the cat back in the bag, and the plaintiff has

22  affirmative, legal claims to address that in this case.  And I

23  think that there are Rule 37 sanctions and remedies that are

24  fully available to address if we get to that point and if all

25  of that is true.

2:17-cv-2230-JAD-NJK - December 8, 2017

1          There has not been a showing that the defendants will
2   destroy evidence without injunctive relief.  If there were such
3   a likelihood, there are, again, multiple remedies for that type
4   of litigation abuse.  The defendants have an affirmative duty
5   to preserve evidence.  Let me say that again -- actually, both
6   sides have an affirmative duty to preserve evidence in Nevada.
7   I don't know where -- I mean, I assume in most states you do.
8   I think that is the federal rule for sure.  If that duty is
9   violated, again, a wide range of remedies available to the
10  party that is hurt by the violation of that duty—-most of those
11  are under the rules of discovery, particularly Rule 37—-and
12  they range from evidence exclusion, to adverse inferences, to
13  case-dispositive sanctions, to money sanctions.  Those are all
14  available under Rule 37.  But I think there are many, many
15  hoops that have to be jumped through before those sanctions can
16  be applied here.  And the plaintiff cannot do an end-run around
17  the discovery process and the magistrate judge and come to the
18  district court asking for injunctive relief instead of
19  following the discovery rules and protocols.  So I will not
20  grant injunctive relief to compel the defendants to hand over
21  their computers and electronic devices.  That's gonna have to
22  be accomplished through requests for production.  You'll also
23  need to go through the discovery process to try to obtain that.
24  And I won't grant injunctive relief to compel depositions on
25  five days' notice when the parties haven't even had their

1  Rule 26 conference or filed a discovery plan.  And the Order

2  that Judge Koppe entered for expedited discovery was incredibly

3  narrow -- I think that's Docket No. 40 -- and that only

4  involved a very limited area of discovery and this doesn't fall

5  into it.  So the only injunctive relief that I see warranted at

6  this time is to prevent either party from accessing this

7  disputed email account until they have developed a proper

8  protocol for dealing with that account and had that protocol

9  approved in the discovery plan.

10         So parties will need to work out and have the

11  magistrate judge approve a protocol for handling that email

12  account, and any other disputed property, and the contents of

13  that email account as part of your discovery plan, which I

14  assume will include some type of protective or confidentiality

15  order.  I can't imagine that it makes sense for anyone to

16  continue to use that email account going forward, so it

17  shouldn't continue to be an active email account for either

18  side in this case.  But, until you work out and have the

19  magistrate judge approve a protocol as part of your discovery

20  plan, which I assume, again, will include some type of

21  confidentiality order,

22         I am ordering the parties to hold the Rule 26

23  conference and then file a discovery plan and disclosures under

24  Rule 26 and Local Rule 26-1.  I'm gonna put this on short

25  order.  It is -- this must be done -- it must be filed, the

1    discovery plan, by December 21st.  It's already a few months

2    late.

3            And, until that discovery plan is approved, I am

4    entering a limited and temporary restraining order that

5    restrains either party from accessing the tvandehey@gmail

6    account -- I got that one right; right?  That's what it is, the

7    tvandehey@gmail -- that's the one?

8            MR. PROCACCINI:  Yes, Your Honor.

9            THE COURT:  -- account.  Or -- and this TRO will expire

10   upon the court's approval of the discovery plan.  If you cannot

11   reach an agreement on the protocol for this, your proposed

12   discovery plan should include, as Local Rule 26-1(a) requires,

13   "a statement of each party's position on each point in

14   dispute."  So you'll need to follow the rule.  And then, if you

15   can't agree on things, it's going to be up to the magistrate

16   judge to decide what the protocol's gonna be and how things are

17   gonna happen or she might pull ya in for a discovery

18   conference.  There are a number of ways this gets resolved

19   through the discovery process before it becomes an emergency

20   requiring injunctive relief.

21           And so that the parties can better assess what has been

22   disclosed from that account, I am also ordering the defendants

23   to provide an electronic copy of whatever was copied or

24   downloaded from that email account to plaintiff's counsel by

25   Tuesday, December 12th -- it's electronic.  It shouldn't be

1  difficult -- Tuesday, December 12th at 3:00 p.m.  So that needs

2  to be delivered to them by 3:00 p.m. on December 12th.

3          MR. GUTIERREZ:  (Nods head.)

4          THE COURT:  So I want to make it very clear the issues

5  raised in this motion, I think, are more properly discovery

6  issues and the discovery rules and procedures are set up to

7  handle these types of issues.  Asking the court to compel the

8  defendants to produce laptops, mobile phones, hard drives, or

9  any other hardware, or to compel depositions with five days'

10  notice when there hasn't been a Rule 26 conference, let alone

11  discovery requests or deposition notices served, is, in my

12  mind, asking to be excused from the discovery rules and

13  process, and this record does not support such unconventional

14  relief.  I know that the clients on both sides of this case

15  feel that all of these issues are urgent and important -- I

16  understand that -- but every litigant in this courthouse feels

17  that way.  And everyone will have to go through the discovery

18  process just like everybody else.

19          So, in summary, the Motion for a Preliminary Injunction

20  is denied, but the request for a Temporary Restraining Order is

21  granted in part:

22          Again, the parties are ordered to hold their Rule 26

23  conference and then file a discovery plan and disclosures under

24  Rule 26 and Local Rule 26-1 by December 21st.

25          Until that discovery plan is approved, I am entering a

—2:17-cv-2230-JAD-NJK - December 8, 2017—

1   limited and temporary restraining order that restrains either

2   party from accessing the tvandehey@gmail account.  This TRO

3   will expire upon the court's approval of the discovery plan,

4   which should include the protocol for how to deal with that

5   account and its contents; so that will replace the need for

6   this.  If the parties cannot reach an agreement on this

7   protocol, their proposed discovery plan must include "a

8   statement of each party's position on each point in dispute" as

9   Local Rule 26-1(a) requires.  I do not find that any bond

10  should be required in light of the scope and type of injunctive

11  relief that I am granting and essentially the mutuality of it,

12  which is that neither side can access -- further access that

13  email account at this point.

14          So it's further ordered that the defendants must

15  deliver an electronic copy of everything that was copied or

16  downloaded from that tvandehey@gmail account to plaintiff's

17  counsel by Tuesday, December 12th, 2017, at 3:00 p.m.

18          Is that right?  Is that the date?  Yes, Tuesday.

19          In all other respects, the motions for a TRO and

20  preliminary injunction are denied.

21          Does anyone need any clarification?

22          MR. VANDEHEY:  (Hand raised.)

23          THE COURT:  Mr. VanDeHey, you'll have to speak to your

24  attorney and he'll communicate that to me.

25          MR. GUTIERREZ:  Nothing from the defendants, Your

———2:17-cv-2230-JAD-NJK - December 8, 2017———

1  Honor.

2          THE COURT:  Thank you.

3          MR. PROCACCINI:  Your Honor, could I just ask him?

4  Because I believe it has to do with the immediate operation of

5  this email address since --

6          THE COURT:  Of course you may.

7          MR. PROCACCINI:  May I just confirm?

8          THE COURT:  Absolutely.

9          MR. PROCACCINI:  Thank you, Your Honor.

10     (Attorney-client discussion.)

11          MR. PROCACCINI:  Your Honor, I mean, I don't -- I

12  don't, quite frankly, know how to deal with this issue.  It's

13  his personal email address.  All of his finances, his whole

14  entire life is there and now he's prevented from using it,

15  immediately prevented from using it.  I --

16          THE COURT:  Because --

17          MR. VANDEHEY:  Can I even back it up?  Can I take this

18  stuff and have them send it somewhere else?  Like, what can

19  I -- everybody's -- everybody in my life sends everything

20  there.  It is my personal account.

21          THE COURT:  And that is why you all are gonna have to

22  get together and figure out what to do with this.  I'm not

23  going to make that call today.

24          MR. PROCACCINI:  Okay.

25          THE COURT:  There are meet and confers.  You understand

————2:17-cv-2230-JAD-NJK - December 8, 2017————

1  all the details of it.  You said you understand all of the

2  details why you think it's yours.  You all have to get together

3  and try to work this out.  If you can't, the discovery

4  commissioner is going to find a way to come up with a protocol

5  for this.

6          I understand.  We all have email accounts, Gmail

7  accounts, that we've had for 20 years.  I get that.  But it's

8  locked down right now is what's happening because there is a

9  dispute; it is a dispute and --

10          MR. VANDEHEY:  (Hand raised.)

11          THE COURT:  -- Mr. VanDeHey, I understand.  Trust me.

12  I get it.  You're gonna have to find another way to communicate

13  for a while.

14          MR. VANDEHEY:  Can I --

15          THE COURT:  And I -- it puts the urgency on --

16          MR. VANDEHEY:  -- say one thing --

17          THE COURT:  -- both sides.

18          MR. VANDEHEY:  -- please?

19          THE COURT:  Again, I'm gonna ask you to speak through

20  your attorney because -- because -- I'm protecting you by doing

21  that, sir.  Really I am.  He gets, you know, the legalities of

22  this.  And I know this is very personal to you and emotional.

23  And it's important when you're represented that you get the

24  opportunity to talk to your lawyer and let him kind of screen

25  what you're thinking.  I promise you it's for your protection.

1        MR. VANDEHEY:  Okay.

2        THE COURT:  But I think that further emphasizes why

3  this is urgent, further emphasizes why I set this on a week's

4  notice because I get it.  I really do.  But I think that your

5  remedies are through the discovery process and through you guys

6  actually talking, besides talking, and finding a way to work

7  this out.

8        And, Mr. Kho, I realize that it's not your personal

9  email address that's in the middle of this.  But you also need

10  to find a way to work this out so that everybody's concerns can

11  get addressed.

12        MR. KHO:  (Nods head.)

13        THE COURT:  So it's just on Mr. VanDeHey at this point

14  to come up with a way; it's going to have to be mutual for you

15  guys.  So that's my ruling.

16        Any other clarification required?

17        MR. PROCACCINI:  No thank you.

18        MR. GUTIERREZ:  Nothing from us, Your Honor.  Thank

19  you.

20        THE COURT:  All right.  Thank you, everyone.  Have a

21  good day.  We're adjourned.

22     (Proceedings concluded at 10:41 a.m.)

23  ///

24  ///

25  ///

—2:17-cv-2230-JAD-NJK - December 8, 2017—

```
1                IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF NEVADA

3

4  TODD VANDEHEY,              )   Case No.
                               )   2:17-cv-2230-JAD-NJK
5              Plaintiff,      )
                               )   Las Vegas, Nevada
6         vs.                  )   Friday, December 8, 2017
                               )   9:57 A.M.
7  REAL SOCIAL DYNAMICS, INC., )   Courtroom 6D
   et al.,                     )
8                              )   MOTION HEARING
               Defendants.     )
9  _____)   C E R T I F I E D   C O P Y

10

11

12                   C E R T I F I C A T E

13

14        I, FELICIA RENE ZABIN, Official Court Reporter, United

15  States District Court, District of Nevada, Las Vegas, Nevada,

16  do hereby certify that pursuant to 28 U.S.C. § 753 the

17  foregoing is a true, complete, and correct transcript of the

18  proceedings had in connection with the above-entitled matter.

19

20       /s/ Felicia Rene Zabin
    FELICIA RENE ZABIN, CCR No. 478
21  OFFICIAL FEDERAL REPORTER

22

23  Dated:  December 25, 2017

24

25
```