JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
STEVEN G. KNAUSS, ESQ.
Nevada Bar No. 12242
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: (702) 629-7900
Facsimile:  (702) 629-7925
E-mail:      jag@mgalaw.com
              sgk@mgalaw.com

*Attorneys for Defendants/Counterclaimants Real Social*
*Dynamics, Inc., Nicholas Kho, Owen Cook, and Amber Kho*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD VANDEHEY, an individual,<br><br>                      Plaintiff,<br><br>vs.<br><br>REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual; AMBER KHO, an individual, John Does 2 through 10, all whose true names are unknown; ABC Companies 1 through 10, all whose true names are unknown,<br><br>                      Defendants. | Case No.: 2:17-cv-02230-JAD-NJK<br><br>**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIM** |
| REAL SOCIAL DYNAMICS, INC., a Nevada corporation; NICHOLAS KHO, an individual; OWEN COOK, an individual; AMBER KHO, an individual,<br><br>                      Counterclaimants,<br><br>and<br><br>VALENTINE LIFE, a Nevada corporation,<br><br>                      Nominal Counterclaimant,<br><br>vs.<br><br>TODD VANDEHEY, an individual,<br><br>                      Counter-defendant. | |

Defendants Real Social Dynamics, Inc. ("RSD"), Nicholas Kho ("Mr. Kho"), Owen Cook ("Cook"), and Amber Kho ("Mrs. Kho") (collectively "Defendants"), by and through their attorneys of record, the law firm MAIER GUTIERREZ & ASSOCIATES, hereby answers the Second Amended Complaint [ECF No. 69] by Plaintiff Todd Vandehey ("Vandehey") as follows:

Defendants deny each and every allegation contained in the Second Amended Complaint except those allegations which are hereinafter admitted, qualified, or otherwise answered.

## JURISDICTION

1.      Answering paragraph 1 of the second amended complaint, to the extent the allegation describe statutory provisions or are Vandehey's legal conclusions, no response is required.  To the extent a response is required, Defendants admit the allegations contained therein.

## VENUE

2.      Answering paragraph 2 of the second amended complaint, to the extent the allegation describe statutory provisions or are Vandehey's legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations contained therein.

3.      Answering paragraph 3 of the second amended complaint, to the extent the allegation describe statutory provisions or are Vandehey's legal conclusions, no response is required.  To the extent a response is required, Defendants deny the allegations contained therein.

## PARTIES

4.      Answering paragraph 4 of the second amended complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore generally and specifically denies the same

5.      Answering paragraph 5 of the second amended complaint, Defendants admit the allegations contained in said paragraph.

6.      Answering paragraph 6 of the second amended complaint, Defendants admit the allegations contained in said paragraph, but qualifies that ownership percentages were not static while Valentine Life, a Nevada corporation and a nominal counterclaimant in this case, was in existence.

7.      Answering paragraph 7 of the second amended complaint, Defendants admit that currently, and at all times relevant, Defendant Mr. Kho is a citizen of the State of Nevada, residing

in Clark County, Nevada.  However, to the extent the allegations describe Mr. Kho as a "co-owner of Defendant RSD", Defendants generally and specifically deny said allegations.

8.      Answering paragraph 8 of the second amended complaint, Defendants admit that currently, and at all times relevant, Defendant Cook is a citizen of Canada, residing in the State of California.  However, to the extent the allegations describe Cook as a "co-owner and/or principal of Defendant RSD", Defendants generally and specifically deny said allegations.

9.      Answering paragraph 9 of the second amended complaint, Defendants admit the allegations contained in said paragraph.

10.     Answering paragraph 10 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

11.     Answering paragraph 11 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

## GENERAL ALLEGATIONS

12.     Answering paragraph 12 of the second amended complaint, Defendants admit the allegations contained in said paragraph.

13.     Answering paragraph 13 of the second amended complaint, to the extent the allegations describe a written document which speaks for itself, no response is required and Defendants deny any allegation inconsistent therewith.  To the extent a response is required, Defendants admit the allegations contained in said paragraph.

14.     Answering paragraph 14 of the second amended complaint, to the extent the allegations describe a written document which speaks for itself, no response is required and Defendants deny any allegation inconsistent therewith.  To the extent a response is required, Defendants admit the allegations contained in said paragraph.

15.     Answering paragraph 15 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

16.     Answering paragraph 16 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

17.     Answering paragraph 17 of the second amended complaint, Defendants admit the

allegations contained in said paragraph, but qualifies that "ownership" in the context of this allegations shall refer only to shareholder percentage interest.

18. Answering paragraph 18 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

19. Answering paragraph 19 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

20. Answering paragraph 20 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

21. Answering paragraph 21 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

22. Answering paragraph 22 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

23. Answering paragraph 23 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

24. Answering paragraph 24 of the second amended complaint, Defendants admit the allegations contained in said paragraph, but qualifies this admission insomuch as processed and received payments were not, and currently are not, the property or earned revenue of Valentine Life.

25. Answering paragraph 25 of the second amended complaint, Defendants admit RSD contributed infrastructure and resources to the Valentine Life entity, but qualifies that these "contributions" were neither gifts nor donations to be considered property or assets of Valentine Life or Plaintiff. Defendants deny the remaining allegations contained in this paragraph of the second amended complaint.

26. Answering paragraph 26 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

27. Answering paragraph 27 of the second amended complaint, Defendants admit the allegations contained in said paragraph.

28. Answering paragraph 28 of the second amended complaint, to the extent the allegations describe a written document which speaks for itself, no response is required and

4

Defendants deny any allegation inconsistent therewith.   To the extent a response is required, Defendants admit the allegations contained in said paragraph.

29.     Answering paragraph 29 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

30.     Answering paragraph 30 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

31.     Answering paragraph 31 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

32.     Answering paragraph 32 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

33.     Answering paragraph 33 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

34.     Answering paragraph 34 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

35.     Answering paragraph 35 of the second amended complaint, Defendants admit the allegations contained in said paragraph.

36.     Answering paragraph 36 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

37.     Answering paragraph 37 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

38.     Answering paragraph 38 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

39.     Answering paragraph 39 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

40.     Answering paragraph 40 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

41.     Answering paragraph 41 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

42.     Answering paragraph 42 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

43.     Answering paragraph 43 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

44.     Answering paragraph 44 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

45.     Answering paragraph 45 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

46.     Answering paragraph 46 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

47.     Answering paragraph 47 of the second amended complaint, Defendants admit the allegations contained in said paragraph.

48.     Answering paragraph 48 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

49.     Answering paragraph 49 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

50.     Answering paragraph 50 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

51.     Answering paragraph 51 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

52.     Answering paragraph 52 of the second amended complaint, Defendants admit the allegations contained in said paragraph.

53.     Answering paragraph 53 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

54.     Answering paragraph 54 of the second amended complaint, Defendants deny the

allegations contained in said paragraph.

55.     Answering paragraph 55 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

56.     Answering paragraph 56 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

57.     Answering paragraph 57 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

58.     Answering paragraph 58 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

59.     Answering paragraph 59 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

60.     Answering paragraph 60 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

61.     Answering paragraph 61 of the second amended complaint, the allegations contained in this paragraph attempt to characterize the nature of Defendants' access of tvandehey@gmail.com. Any allegation that access of tvandehey@gmail.com was undertaken by any Defendant other than Mr. Kho, Defendants specifically and generally deny.  Defendants specifically and generally deny that Defendants "began a process" to access and obtain information from tvandehey@gmail.com. Defendants also specifically and generally deny that tvandehey@gmail.com is "Plaintiff's personal Gmail account".

62.     Answering paragraph 62 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

63.     Answering paragraph 63 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

64.     Answering paragraph 64 of the second amended complaint, Defendants deny the

allegations contained in said paragraph.

65.     Answering paragraph 65 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

66.     Answering paragraph 66 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

67.     Answering paragraph 67 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

68.     Answering paragraph 68 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

69.     Answering paragraph 69 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

70.     Answering paragraph 70 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

71.     Answering paragraph 71 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

72.     Answering paragraph 72 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

73.     Answering paragraph 73 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

74.     Answering paragraph 74 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

75.     Answering paragraph 75 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in this paragraph, and therefore specifically and generally deny the same.

76.     Answering paragraph 76 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

77.     Answering paragraph 77 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

78.     Answering paragraph 78 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

79.     Answering paragraph 79 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

80.     a.     Answering paragraph 80(a) of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

b.     Answering paragraph 80(b) of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

c.     Answering paragraph 80(c) of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

d.     Answering paragraph 80(d) of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

e.     Answering paragraph 80(e) of the second amended complaint, Defendants lack

the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

81.     Answering paragraph 81 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

82.     Answering paragraph 82 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

83.     Answering paragraph 83 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

## COUNT ONE

**(Declaratory Judgment Pursuant to 28 U.S.C. 2201 and F.R.C.P. 57 as to the Enforceability of the Non-Competition and Non-Solicitation Clauses of the Contractor Agreement)**

84.     Answering paragraph 84 of the second amended complaint, Defendants repeat and reallege its answers to paragraphs 1 through 83 above, and incorporate the same herein by reference as though fully set forth herein.

85.     Answering paragraph 85 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

86.     Answering paragraph 86 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

87.     Answering paragraph 87 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

88.     Answering paragraph 88 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

1   contained in this paragraph, and therefore specifically and generally deny the same.

2   89.   Answering paragraph 89 of the second amended complaint, Defendants lack the

3   knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

4   contained in this paragraph, and therefore specifically and generally deny the same.

5   90.   Answering paragraph 90 of the second amended complaint, Defendants lack the

6   knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

7   contained in this paragraph, and therefore specifically and generally deny the same.

8   91.   Answering paragraph 91 of the second amended complaint, the allegations contained

9   therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent

10  a response is required, Defendants deny the allegations contained in said paragraph.

11  92.   Answering paragraph 92 of the second amended complaint, to the extent the allegations

12  describe a written document which speaks for itself, no response is required and Defendants deny any

13  allegation inconsistent therewith.   To the extent a response is required, Defendants deny the

14  allegations contained in said paragraph.

15  93.   Answering paragraph 93 of the second amended complaint, Defendants lack the

16  knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

17  contained in this paragraph, and therefore specifically and generally deny the same.

18  94.   Answering paragraph 94 of the second amended complaint, Defendants deny the

19  allegations contained in said paragraph.

20  95.   Answering paragraph 95 of the second amended complaint, the allegations contained

21  therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent

22  a response is required, Defendants deny the allegations contained in said paragraph.

23  96.   Answering paragraph 96 of the second amended complaint, to the extent the allegations

24  describe a written document which speaks for itself, no response is required and Defendants deny any

25  allegation inconsistent therewith.   To the extent a response is required, Defendants deny the

26  allegations contained in said paragraph.

27  97.   Answering paragraph 97 of the second amended complaint, the allegations contained

28  therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent

a response is required, Defendants deny the allegations contained in said paragraph.

98.     Answering paragraph 98 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

99.     Answering paragraph 99 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

100.     Answering paragraph 100 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

101.     Answering paragraph 101 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

## COUNT TWO

### (Violation of the Stored Communications Act, 18 U.S.C. 2701)

102.     Answering paragraph 102 of the second amended complaint, Defendants repeat and reallege its answers to paragraphs 1 through 101 above, and incorporate the same herein by reference as though fully set forth herein.

103.     Answering paragraph 103 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

104.     Answering paragraph 104 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

105.     Answering paragraph 105 of the second amended complaint, to the extent the allegations describe statutory provisions or are Plaintiff's legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations contained in said paragraph.

106.     Answering paragraph 106 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

107.     Answering paragraph 107 of the second amended complaint, to the extent the allegations describe statutory provisions or are Plaintiff's legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations contained in said paragraph.

108.     Answering paragraph 108 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

**COUNT THREE**

**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030)**

109.     Answering paragraph 109 of the second amended complaint, Defendants repeat and reallege its answers to paragraphs 1 through 108 above, and incorporate the same herein by reference as though fully set forth herein.

110.     Answering paragraph 110 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

111.     Answering paragraph 111 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

112.     Answering paragraph 112 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

113.     Answering paragraph 113 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

114.     Answering paragraph 114 of the second amended complaint, to the extent the allegations describe statutory provisions or are Plaintiff's legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations contained in said paragraph.

///

///

///

## COUNT FOUR

### (Violation of N.R.S. 205.4765)

115.    Answering paragraph 115 of the second amended complaint, Defendants repeat and reallege its answers to paragraphs 1 through 114 above, and incorporate the same herein by reference as though fully set forth herein.

116.    Answering paragraph 116 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

117.    Answering paragraph 117 of the second amended complaint, Defendants deny the allegations contained in said paragraph.

118.    Answering paragraph 118 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

119.    Answering paragraph 119 of the second amended complaint, Defendants lack the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph, and therefore specifically and generally deny the same.

120.    Answering paragraph 120 of the second amended complaint, to the extent the allegations describe statutory provisions or are Plaintiff's legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations contained in said paragraph.

## COUNT FIVE

### (Conversion)

121.    Answering paragraph 121 of the second amended complaint, Defendants repeat and reallege its answers to paragraphs 1 through 120 above, and incorporate the same herein by reference as though fully set forth herein.

122.    Answering paragraph 122 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in said paragraph.

123.    Answering paragraph 123 of the second amended complaint, the allegations contained therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent

1    a response is required, Defendants deny the allegations contained in said paragraph.

2        124.    Answering paragraph 124 of the second amended complaint, the allegations contained

3    therein consist solely of Plaintiff's legal conclusions, to which no response is required.  To the extent

4    a response is required, Defendants deny the allegations contained in said paragraph.

5                    **ANSWER TO PLAINTIFF'S PRAYER FOR RELIEF**

6        Answering the allegations contained in the entirety of Plaintiff's prayer for relief, Defendants

7    deny that Plaintiff is entitled to the relief being sought therein or to any relief in this matter.

8                            **AFFIRMATIVE DEFENSES**

9        Defendants, without altering the burdens of proof the parties must bear, assert the following

10   affirmative defenses to the complaint, and the claims asserted therein, and Defendants specifically

11   incorporate into these affirmative defenses their answers to the preceding paragraphs of the complaint

12   as if fully set forth herein.

13                        **FIRST AFFIRMATIVE DEFENSE**

14       The second amended complaint, and all the claims for relief alleged therein, fail to state a

15   claim against Defendants upon which relief can be granted.

16                       **SECOND AFFIRMATIVE DEFENSE**

17       Plaintiff has not been damaged directly, indirectly, proximately or in any manner whatsoever

18   by any conduct of Defendants.

19                        **THIRD AFFIRMATIVE DEFENSE**

20       The occurrences referred to in the second amended complaint and all alleged damages, if any,

21   resulting therefrom, were caused by Plaintiff's own acts, deeds, negligence, conduct, and/or failure

22   or omission to act under the circumstances.

23                       **FOURTH AFFIRMATIVE DEFENSE**

24       Plaintiff has failed to mitigate its damages, if any, as required by law and is barred from

25   recovering by reason thereof.

26                        **FIFTH AFFIRMATIVE DEFENSE**

27       Any harm or claim of damage of Plaintiff or claim for relief of Plaintiff, as alleged or stated

28   in the second amended complaint, is barred by the running of the statute of limitations, doctrines of

                                          15

1  laches, estoppel, and/or waiver, as to all or part of the claims of Plaintiff.

2  **SIXTH AFFIRMATIVE DEFENSE**

3  Plaintiff's claims are barred, in whole or in part, by the doctrines of rescission, frustration of

4  purpose, and/or unclean hands.

5  **SEVENTH AFFIRMATIVE DEFENSE**

6  Plaintiff lacks standing to bring its claims against Plaintiff.

7  **EIGHTH AFFIRMATIVE DEFENSE**

8  Plaintiff is attempting to deprive Plaintiff of its property without due process of law.

9  **NINTH AFFIRMATIVE DEFENSE**

10  Defendants alleges that the occurrences referred to in the second amended complaint, and all

11  alleged damages, if any, resulting therefrom, were caused by the acts or omissions of a third party

12  over whom Defendants had no control.

13  **TENTH AFFIRMATIVE DEFENSE**

14  To the extent Plaintiff alleges Defendants had any obligation as to which full performance has

15  not been rendered or excused, that obligation did not exist or was based upon the acts or omissions

16  that were void or otherwise extinguished.

17  **ELEVENTH AFFIRMATIVE DEFENSE**

18  Plaintiff failed to allege sufficient facts and cannot carry the burden of proof imposed on it by

19  law to recover attorney's fees incurred to bring this action.

20  **TWELFTH AFFIRMATIVE DEFENSE**

21  Any amount sought to be recovered in this action is barred, in whole or in part, by a setoff

22  and/or offset of the amount already recovered by Plaintiff.

23  **THIRTEENTH AFFIRMATIVE DEFENSE**

24  Plaintiff's claims are barred, in whole or in part, by failure of contract or by Plaintiff's own

25  breach of contract.

26  **FOURTEENTH AFFIRMATIVE DEFENSE**

27  Plaintiff's claims are barred, in whole or in part, by its failure to perform or satisfy required

28  conditions precedent and by its own bad acts.

### FIFTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff's second amended complaint seeks punitive damages, such claims may violate the procedural and substantive due process rights guaranteed to Defendants under the United States Constitution and the Constitution of Nevada.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff is barred by law from accelerating damages, if any.

### SEVENTEENTH AFFIRMATIVE DEFENSE

The claims, and each of them, are barred by the failure of Plaintiff to plead those claims with particularity.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to allege sufficient facts and cannot carry the burden of proof imposed on it by law to recover attorney's fees incurred to bring this action.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff is seeking to recover lost profits or damages that are completely speculative in nature.

### TWENTIETH AFFIRMATIVE DEFENSE

The complaint contains allegations that are so confusing, vague, ambiguous, speculative, and incoherent that it fails to apprise Defendant of the exact misconduct she is alleged to have committed and therefore, fails to state a cause of action against Defendant upon which relief may be granted.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff reserves the right to assert additional affirmative defenses that are deemed appropriate by the discovery of new information.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**COUNTER-COMPLAINT**

Defendants/Counterclaimants Real Social Dynamics, Inc. ("RSD"), Nicholas Kho ("Mr. Kho"), Owen Cook ("Cook"), and Amber Kho ("Mrs. Kho") (collectively "Counterclaimants"), by and through their attorneys of record, the law firm MAIER GUTIERREZ & ASSOCIATES, complaint and allege against Plaintiff/Counter-defendant Todd Vandehey ("Plaintiff" or "Vandehey") as follows:

1.      Solely for the purposes of setting forth this counterclaim, Counterclaimants repeat and reallege each and every response of the preceding answer to the Second Amended Complaint as though fully set forth herein and incorporate the same herein by reference.

**PARTIES**

2.      Defendant/Counterclaimant REAL SOCIAL DYNAMICS INC. ("RSD") is a Nevada corporation that, at all times relevant hereto, was and is licensed to do business in Clark County, Nevada.

3.      Defendant/Counterclaimant NICHOLAS KHO ("Mr. Kho") is an individual who, at all times relevant hereto, resided in Clark County, Nevada.

4.      Defendant/Counterclaimant OWEN COOK ("Cook") is an individual who, at all times relevant hereto, resided in Los Angeles County, California.

5.      Defendant/Counterclaimant AMBER KHO ("Mrs. Kho") is an individual who, at all times relevant hereto, resided in Clark County, Nevada.

6.      Upon information and belief, Plaintiff/Counter-defendant TODD VANDEHEY ("Vandehey") is an individual who, at all times relevant hereto, resided in the State of New York.

7.      Nominal Plaintiff VALENTINE LIFE ("Valentine Life") was a Nevada corporation that, at all times relevant hereto, was licensed to do business in Clark County, Nevada.

8.      Valentine Life was dissolved on August 14, 2017, but it is included in this action due to its connection with the matters in dispute, and in order for the court to decide all issues and make a proper judgment, its inclusion is necessary.

**GENERAL ALLEGATIONS**

**BACKGROUND OF RSD (COUNTERCLAIMANT)**

9.      RSD was founded in 2002 to provide dating coaching as well as live dating instruction

tailored to each of its customer's unique dating profile.

10.     RSD was the first to market live instruction at public venues, such as bars, clubs, and parties, which gave it a competitive advantage over services offering only a traditional seminar forum.

11.     RSD's organizational structure includes a small team of approximately 10 to 15 lead instructors ("Instructors") each with their own style, demographic, and market, who manage and mentor subordinate coaches and staff.  When an Instructor resigns, a subordinate coach familiar with the resigning Instructor's strategies will be promoted.  This method of internal promotion allows for better team cohesion as well as allowing RSD to maintain a consistent size to the team of lead Instructors.

12.     RSD retains Instructors as independent contractors with both parties executing the Real Social Dynamics Contractor Agreement ("Contractor Agreement"), which defines the scope of work, compensation, benefits, confidentiality terms, protected work product, non-solicitation, non-competition, and termination clauses.  *See* Real Social Dynamics Contractor Agreement attached hereto as **Exhibit 1**.

13.     Instructor responsibilities have evolved over the years.  Between 2002 and 2010, Instructors were primarily responsible for leading weekend or 3-day overnight programs to immerse the customer into a social scene and offer live instruction (often called "boot camps").  However, starting in 2010, all Instructors were also supported with a complete social media platform which included creation of YouTube, Facebook, Google+, Instagram, and Twitter accounts, as well as unique websites for each RSD Instructor to promote their line of services.

14.     Instructors had no administrative obligations or supportive responsibilities with regard to the new, expanded digital infrastructure beyond creating the posts/videos/tweets, although the video equipment used to create the high definition media was provided to the Instructor by RSD.

15.     Since 2002 until the present day, RSD provides all Instructors with the necessary administrative support, human resources support, accounting services, customer care teams, technology infrastructure/support, video equipment, and online payment processing tools to complete their contractual responsibilities.

16.     RSD's technology and marketing teams implemented projects ensuring that

Instructor's websites conveyed consistent co-branding between the Instructor and RSD. Furthermore, these teams also created all the static website content, reserved domain names, and provided email boxes for all Instructors.

17.    RSD's technology team provides technical support for all Instructors to address any IT issue in real-time for either (1) payment processing or (2) social networking issues.

18.    All RSD/Instructor website terms of use and privacy policies were drafted with RSD listed as the entity owning and operating the website domain as well as the point of contact for questions or concerns.

19.    RSD staff reserves hotel suites and meeting rooms, and RSD staff rents homes or residences for both Instructors and customers during weekend programs and boot camps.

20.    RSD staff coordinates hotel and airline scheduling for the Instructors.

21.    RSD contracts with all 3rd party vendors to provide online payment processing through the Instructors' individual websites.

22.    RSD provides all accounting and payroll services for the Instructors and their staff.

23.    All customer data and contact lists are stored on RSD servers.

24.    All purchase order data and product information (programs and boot camps) are stored on RSD servers.

25.    Instructors are tasked with focusing solely on their ideas/strategies, their programs, and the customers, with RSD supporting every other aspect of the business.

**BACKGROUND OF VANDEHEY (RESPONDENT)**

26.    Vandehey's first contact with RSD was as a paying customer in early 2003.

27.    Vandehey quickly transitioned from customer to a subordinate coach under a top Instructor in mid-2003.

28.    After approximately 12 months as a subordinate coach, Vandehey was promoted to full Instructor in July 2004.

29.    Upon being promoted to full Instructor, Vandehey and RSD executed a Contractor Agreement on July 27, 2004.

30.    In exchange for his services as an Instructor, RSD generously compensated Vandehey.

In 2014 and 2015, Vandehey's annual income paid by RSD was over $150,000.00/yr.

31.    Until August 11, 2017, RSD provided Vandehey with, inter alia:

    a.  the use of social media accounts and access to RSD's technical support team to address any problems with those accounts;

    b.  co-branded websites, including *valentinelife.com*, *rsdimmersion.com*, *daygamebytodd.com*, *valentineuniversity.com*, and *3girlsaday.com*;

    c.  his RSD email addresses: tvandehey@gmail.com, todd@valentinelife.com, and todd@realsocialdynamics.com;

    d.  a small staff, each of whom were also independent contractors for RSD;

    e.  access to RSD's customer service tool (Ontraport);

    f.  video equipment to create media for uploading to social networks.

32.    From July 2004, until August 11, 2017, Vandehey and RSD remained bound by the terms of their valid Contractor Agreement.  No modification or alteration of the fundamental terms of the Contractor Agreement has taken place, neither has any rescission or reformation of the contract occurred.

33.    In May 2017, Vandehey solicited RSD customers to invest in a fund managed by Vandehey (1) without obtaining RSD's consent per Paragraph 13 of the Contractor Agreement, and (2) in violation of the Securities Exchange Act of 1934 as Vandehey neither possesses a license to manage such a fund nor has he successfully passed the Series 65 examination.

34.    Vandehey was successful in obtaining capital for his investment fund from RSD customers without RSD's knowledge or consent.

35.    Moreover, Vandehey recruited other RSD contractors and used RSD audio/visual equipment to promote this fund, all done without RSD management knowledge or consent.

### BACKGROUND OF VALENTINE LIFE (NOMINAL PLAINTIFF)

36.    Since it was founded, RSD has experienced difficulty with processing online payments via credit card.  The dating/pick-up industry often receives negative press, and as a result, major payment processors and 3rd party vendors often refuse to do business with RSD if they find their line of business to be morally objectionable.  As a result, when an active payment processor unexpectedly

refuses service, RSD must to quickly switch to a new processor/vendor or else risk declining payments from customers making an online purchase.

37.     RSD's solution to this unexpected termination of an online payment processor, was to create standalone limited liability companies (LLCs) which would incur lower processing fees/rates, and lack any negative press history.  Then connect the new standalone LLC with a payment processor as a replacement when an active payment processor refuses service.  For example, if a credit card company unilaterally decided it would no longer accept payments through the website of an Instructor, RSD would quickly replace the shopping cart API code with that of a different LLC, then update the website terms of use, and continue operations uninterrupted.

38.     Having a backup payment processor under a new standalone LLC was the primary intent behind the creation of Valentine Life.

39.     Because the payment processor must also link with a bank account under the standalone LLC, the ancillary benefit of processing payments under a new entity would be clear, simplistic accounting since only RSD and Vandehey would have legal authority to use the account.

40.     Initial discussions between RSD and Vandehey in early 2015 to create the entity that would become Valentine Life was limited to a simple business model allowing Vandehey to process payments for all of his RSD programs, through his RSD co-branded websites (e.g. *valentinelife.com*), using a payment processor tied to a new entity, and then deposit those payments into a single Bank of America checking account belonging to the new entity.

41.     The Bank of America checking account was intended to function as a transitory, or holding, account through which disbursements to both RSD and Vandehey could be easily tracked, but more importantly, it would function as a straightforward ledger of deposits from RSD customer purchases, and withdrawals made by Vandehey for operational expenses and payroll.

42.     Apart from easier financial reporting, and the gain of an additional RSD payment processor, Valentine Life would have no other purpose than to facilitate the financial transactions, disbursements, and withdrawals of revenue generated from customers purchasing Vandehey programs and boot camps.

43.     On October 5, 2015, prior to formation of the Valentine Life entity, RSD and Vandehey

executed an operating agreement for Valentine Life, LLC ("Operating Agreement"), which, among other terms, assigned RSD and Vandehey each a 50% ownership interest in the entity.

44.     On January 5, 2016, Valentine Life was incorporated in Nevada.

45.     Starting in March 2016, the payment processor for Valentine Life (InChek), began processing payments through the RSD/Vandehey co-branded websites and depositing those payments into the Bank of America checking account created under Valentine Life.

46.     The only asset owned by Valentine Life was the single Bank of America checking account where processed payments were deposited.  No other asset, tangible or intangible, was ever transferred or otherwise gifted to the Valentine Life entity.

**REAL SOCIAL DYNAMICS CONTRACTOR AGREEMENT**

47.     The Contractor Agreement executed by both RSD and Vandehey on July 27, 2004, unequivocally defines the terms, rights, and post-contractual obligations of each party, as well as clearly labeling RSD as the "principal" and Vandehey as the "contractor".

48.     Between 2004 and 2006, at least 23 other independent contractors executed the exact same version of the Contractor Agreement signed by Vandehey and RSD, and continue to be bound by the same contract terms.

49.     Per Paragraph 2 of the Contractor Agreement, the term of the agreement was indefinite and therefore valid until it was terminated by RSD on August 11, 2017:

> 2. Subject to termination as provided in this Agreement, the Contractor is contracted for an ***indefinite term***.  The parties acknowledge that various provisions of this Agreement survive past termination of Contract.

50.     Per Paragraph 13 of the Contractor Agreement, Vandehey was not permitted to derive revenue from other businesses (or business opportunities) similar to his work with RSD without its written consent:

> 13. It is understood and agreed that any business opportunity relating to or similar to the Principal's current or anticipated business opportunities (with the exception of personal investments in less than 5% of the equity of a business, investments in established family businesses, real estate, or investments in stocks and bonds traded on public stock exchanges) coming to the attention of the Contractor during the Contractor's Contract is an opportunity belonging to the Principal.  Therefor the Contractor will advise the Principal of the opportunity and cannot pursue the opportunity, directly or indirectly, without the written consent of the Principal.

51.     With regard to Vandehey's legal right to claim ownership of, or usage rights to, any of his videos, email accounts, or other RSD property, Paragraphs 16 and 20 of the Contractor Agreement controls:

> 16. The Contractor acknowledges in any position the Contractor may hold, in and as a result of the Contractor's Contract by the Principal, the Contractor will, or may, be making us of, acquiring or adding to information about certain matters and things which are confidential to the Principal and which information is the exclusive property of the Principal, including, without limitation:
>
> a. 'Confidential Information' means all data and information relating to the business and management of the Principal, including proprietary and trade secret technology and accounting records to which access is obtained by the Contractor, including Work Product, Computer Software, Other Proprietary Data, Business Operations, Marketing and Development Operations, and Customers.

and

> 20. The Contractor acknowledges and agrees that all rights, title and interest in any Confidential Information will remain the exclusive property of the Principal.  Accordingly, the Contractor agrees and acknowledges that he will have no interest in the Confidential Information, including, without limitation, no interest in know-how, copyright, trade-marks or trade names, notwithstanding the face that he may have created or contributed to the creation of the same.

52.     Paragraphs 24 and 27 define the obligations Vandehey has regarding non-solicitation and non-competition post-contract:

> 24. Any attempt on the part of the Contractor to induce others to leave the Principal's employ, or any effort by the Contractor to interfere with the Principal's relationship with its other Contractors and contractors [*sic*] would be harmful and damaging to the Principal.  The Contractor agrees that during the term of his Contract with the Principal and for a period of five (5) years after the end of that term, the Contractor will not in any way, directly or indirectly…[induce, interfere, solicit or entice, other RSD employees].

and

> 25. Other than through Contract with a bona-fide independent party, or with the express written consent of the Principal, which will not be unreasonably withheld, the Contractor will not, during the continuance of the Agreement or within five (5) years after the termination of expiration, as the case may be, of this agreement, be directly or indirectly involved with a business which is in direct competition with the Principal in the business line of how to be successful with women and dating.

53.     With regard to the RSD's authority to terminate Vandehey, Paragraph 30 of the

Contractor Agreement states:

> 30. Where the Contractor has breach any of the terms of this Agreement or where there is just cause for termination, the Principal may terminate the Contractor's Contract without notice.

54. Regarding the remedies available to RSD should it terminate its contract with Vandehey, Paragraph 36 of the Contractor Agreement states:

> 36. In the event of a breach or threatened breach by the Contractor of any of the provisions of this Agreement, the Contractor agrees that the Principal is entitled to, in addition to and not in limitation of any other rights and remedies available to the Principal at law or in equity, to a permanent injunction in order to prevent or restrain any such breach by the Contractor or by the Contractor's partners, agents, representatives, servants, Contractors, and/or any and all persons directly or indirectly acting for or with the Contractor.

## OPERATION OF VALENTINE LIFE

55. Per the Operating Agreement of Valentine Life:

> Section 6.1 Manager. The Company shall be managed by RSD and VanDeHey…

> Section 6.2 Manager of Operational and Day-to-Day Business Affairs. The operational and day-to-day business and affairs of the Company shall be operated and managed jointly by RSD and Todd VanDeHey.

56. Despite the Operating Agreement defining joint operational authority, Vandehey was given a small degree of autonomy. He was tasked with managing his own staff of RSD Contractors, and he could leverage marketing resources owned by RSD to further promote his programs and boot camps.

57. However, throughout 2016 and 2017, even while Valentine Life was processing payments, RSD still paid for the marketing support for Vandehey's programs; RSD still managed and maintained all the static content on the co-branded websites; RSD still provided all technical support for Vandehey and his staff; RSD still addressed all customer service complaints; and RSD still owned the servers storing all customer data and contact information captured via the online shopping cart.

58. The single asset of Valentine Life, the Bank of America checking account, was created with an initial deposit of $85,000.00, of which $15,000.00 was contributed by Vandehey, and $70,000.00 was contributed by RSD.

59. All disbursements were to be equally allocated (50/50) to both RSD and Vandehey,

and all RSD contractors working as Vandehey's staff were to be paid from the Valentine Life bank account.

60. All business expenses incurred by Vandehey were to be submitted along with receipts/invoices to RSD's accounting team for review and audit.

61. However, in February 2016, Vandehey removed RSD as signatory on the Valentine Life checking account which prevented RSD from viewing bank statements or managing any of the funds within the account.

62. Five (5) months later, in July 2016, Vandehey reinstated RSD's access to the bank account as "view only", which left RSD with no authority to remove or transfer funds.

63. Then, in April 2017, Vandehey again removed RSD's access to view the bank account and any activity occurring therein, but reinstated RSD's full access three (3) months later in July 2017.

64. Moreover, throughout the operation of Valentine Life, Vandehey provided little more to RSD with regard to accounting other than short emails citing figures/numbers with no supporting documents.

65. Concurrently, in April 2017, the parties sought to negotiate the terms under which Valentine Life, could be operated independently by Vandehey, with only a profit share distributed to RSD.

66. However, inspection of the Valentine Life bank statements and Vandehey's refusal to disclose invoices for his expenses along with his failure to provide any accounting at all for suspicious transactions led RSD to conclude Vandehey repeatedly, and surreptitiously, siphoned money out of the sole bank account, and one single asset, owned by Valentine Life Inc. over the past 20 months.

### MISAPPROPRIATION OF BANK ACCOUNT FUNDS BY VANDEHEY

67. As RSD sought a valuation of Valentine Life by assessing the profits, estimated overhead, and payroll, it became abundantly clear that over the past 20 months Vandehey intentionally misappropriated a significant amount of the funds deposited into the Valentine Life bank account.

68. Vandehey routinely transferred money to unknown bank accounts, made large payments to personal credit cards, and paid for his personal residences in New York City all from the Valentine Life bank account without authorization by, or disclosure to, RSD.

69.     Between January 2016 and August 2017, the total amount Vandehey (1) transferred directly to other bank accounts, plus (2) paid as rent for personal residences, plus (3) paid to attorneys representing him in a personal capacity, or otherwise misappropriated is approximately $812,665.00. *See* Affidavit of Nicholas Kho on February 28, 2018, attached as **Exhibit 2**.

70.     Between June 2016 and August 2017, the total amount Vandehey transferred to American Express credit accounts both in his name as well as an unknown 3rd party, is approximately $188,233.00

71.     To date, Vandehey refuses to disclose invoices or receipts for his expenses, or provide any accounting for his withdrawals.

72.     To date, Vandehey refuses to provide redacted billing for attorney's fees to Nissenbaum Law Group, LLC, who have disclosed they represent Vandehey in a personal capacity, but were paid over $74,000.00 directly from the Valentine Life bank account between January 2017 and August 2017.

73.     To date, Vandehey refuses to disclose the source of over $94,000.00 in deposits transferred from a PayPal account into the Valentine Life bank account.

74.     Repeatedly, and without authorization, Vandehey paid tens of thousands of dollars to unknown recipients (e.g. "Bond New York", "Cooper & Cooper", "XLRealProperty") for reasons not disclosed to RSD.

75.     In January 2017, Vandehey used the Valentine Life PayPal Account to purchase adult escort services on www.seekingarrangement.com without the knowledge or consent of RSD.  *See* SeekingArrangement.com Profile of MisterValentine, attached as **Exhibit 5**; *see also* SeekingArrangement.com Membership Enrollment Receipt for Todd Vandehey, attached as **Exhibit 6**.

76.     Vandehey's careless bookkeeping was in fact a prolonged and pernicious ruse to withdraw large sums of money from the Valentine Life bank account for his personal use and to repay his own personal credit debt.

**RSD WITHDRAWS FROM VALENTINE LIFE AND PROTECTS ACCOUNT FUNDS**

77.     Upon seeing the totality of Vandehey's wrongful withdrawals from the Valentine Life

27

bank account, RSD gave verbal notice to Vandehey via recorded phone call on August 11, 2017, that their business relationships were terminated ("Due to the fact that as of this phone call as soon as we hang up, the relationship is dissolved. We are removing access to the RSD software that you presently have access to.")

78.   The effect of RSD's statement to Vandehey on August 11, 2017 was two-fold: (1) Vandehey was terminated as an independent contractor for RSD, and (2) RSD effectively withdrew as a shareholder from Valentine Life.

79.   Pursuant to the Real Social Dynamics Contractor Agreement:

**Termination of Contract**

30.  Where the Contractor has breached any of the terms of this Agreement or where there is just cause for termination, the Principal may terminate the Contractor's Contract without notice.

80.   Pursuant to the Valentine Life Operating Agreement:

Section 9.1   **Liquidating Events**.   [T]he Company shall be dissolved, liquidated and terminated upon the occurrence of any of the following events:...

(e) the withdrawal of a Shareholder;

81.   By the plain terms of both documents, RSD acted with full authority regarding both Vandehey's termination as an RSD Contractor, and its withdrawal from Valentine Life.

82.   Pursuant to a liquidating event, and in keeping with Section 9.2 of the Operating Agreement containing the wind up procedures of the corporation, RSD removed Vandehey as an officer of Valentine Life on August 11, 2017 and then filed a notice of dissolution with the Nevada Secretary of State on August 14, 2017.

83.   Furthermore, in consideration of Vandehey's aforementioned misappropriations, on August 15, 2017, RSD protected the remaining funds within the Valentine Life bank account by moving the entire remaining balance of $69,876.34 to a separate suspense account, where it would remain untouched until the resolution of the pending legal matter and final dissolution of Valentine Life.

84.   Pursuant to Section 9.2 of the Valentine Life Operating Agreement:

Dissolution, Liquidation and Termination of Company. Upon the occurrence of a Liquidating Event, the Company shall continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets, and satisfying

the claims of its creditors and Shareholders…The Shareholders shall be responsible for overseeing the winding up and dissolution of the Company, shall take full account of the Company's liabilities and the Company Property, shall cause the Company Property to be liquidated as promptly as is consistent with obtaining the fair market value thereof.

85.    RSD's action to protect the remaining funds in the Valentine Life bank account was consistent with the authority granted by Section 9.2 of the Operating Agreement.  By transferring the full account balance to a suspense account, RSD was winding up the affairs of the business and taking full account of Valentine Life's property.

86.    However, on August 16, 2017, Vandehey falsely notified Bank of America that RSD's transfer of the account balance to a suspense account was fraudulent.

87.    As a result of Vandehey's intentional misrepresentation, Bank of America returned the full balance of $69,876.34 to the Valentine Life bank account.

88.    Immediately after the funds were returned to the Valentine Life bank account, Vandehey made seven (7) withdrawals totaling over $61,000.00, some of which transferred money to multiple American Express credit accounts controlled exclusively by Vandehey.

**PUNITIVE DAMAGES**

89.    Vandehey will be liable for punitive damages to the extent the evidence shows that (1) Vandehey is guilty of "oppression, fraud or malice, express or implied," (2) Vandehey's actions constituted conduct intended to injure RSD, and/or (3) Vandehey's actions constitute "despicable conduct which is engaged in with a conscious disregard of the rights of others" under NRS 42.001(3).

90.    As set forth fully in the following claims for relief, RSD's allegations against Vandehey for embezzlement and tortious breach of fiduciary duty to the extent such actions demonstrate fraud, will give rise to a claim for punitive damages against Vandehey.

**TVANDEHEY@GMAIL.COM ACCOUNT**

91.    The tvandehey@gmail.com Gmail account was created in or around 2004 by the former Information Technology System Administrator of RSD, Michael Jahina. *See* Declaration of Michael Jahina, attached as **Exhibit 3**.

92.    The tvandehey@gmail.com Gmail account was created specifically for Vandehey by RSD, to be used for RSD business as well as facilitate his communication with RSD staff and clients

regarding travel, sales, marketing, management, income negotiation, rent, banking, finance, accounting, customer service, and public relations.  *Id.*; *see also* Affidavit of Nicholas Kho on December 5, 2017, attached as **Exhibit 4**.

93.     RSD company policy states that an RSD contractor who decides to use a third-party email account and who receives permission from RSD Management to do so, renders all such email accounts as RSD assets as per the Paragraph 16 (Confidential Information) of the RSD Contractor Agreement.  *See* **Exhibit 1**.

94.     The tvandehey@gmail.com Gmail account was openly and repeatedly used by Kho and RSD staff since 2011, with Vandehey's knowledge and consent, to create co-branded RSD/Vandehey social media accounts, setup meetings, and to facilitate RSD customer discussion groups.

95.     In or around 2009, Michael Jahina associated/linked the tvandehey@gmail.com Gmail account with the newly created todd@realsocialdynamics.com email account, with Vandehey's knowledge and consent, which would allow RSD to better oversee the incoming and outgoing communications Vandehey was having with RSD staff and clients.  *See* **Exhibit 3**.

96.     Furthermore, by linking the tvandehey.com Gmail account with the todd@realsocialdynamics.com email account, RSD staff could automatically log into each account easily to provide business support of clients reaching out to Vandehey with inquiries, regardless of the account used by the client.

97.     Over the course of its existence, Vandehey used the tvandehey@gmail.com Gmail account to create login credentials and accounts not only for internal RSD business, but for RSD order processing and technology support, including:

    a. A merchant account with Humboldt Bank for Valentine Life;

    b. A merchant account with Inchek for Valentine Life;

    c. A merchant account with Inchek for Immersion VIP, LLC;

    d. The Valentine Life Bank of America account;

    e. The Valentine Life PayPal account;

    f. The "RSD Todd" Skype account;

g.     The RSD Vimeo account for hosting RSD copyrighted videos;

h.     RSD Inner Circle Meetup.com groups;

i.     RSD social media accounts (e.g. Facebook, Instagram, etc.);

j.     RSD WebEx account for RSD client and management meetings.

98.    Throughout his tenure with RSD, Vandehey openly supported the idea of using third-party email providers, such as Gmail, for RSD-related business.  Vandehey similarly advocated for other RSD contractors working directly with him to create similar account, such as the RSD business email account for Kaitlin Severin, who used rsdkaitlin@gmail.com for all of RSD-related business from 2015 to 2017.

99.    Throughout RSD's existence, Vandehey as well as all other contractors who voluntarily chose to use third-party email accounts, also voluntarily shared the login credentials of those accounts with RSD managers, subordinate staff, and C-team members.

100.    On September 11, 2017, Kho accessed the tvandehey@gmail.com Gmail account using the same login credentials previously created for Vandehey by RSD.  *See* **Exhibit 4**.

101.    Kho accessed the tvandehey@gmail.com Gmail account to (1) obtain RSD customer support emails, (2) obtain RSD customer payment receipts, and (3) to disconnect/unlink the Gmail account from any RSD social media account or merchant account.

102.    In addition, after internal auditing of RSD subsequent to Vandehey's termination showed likely embezzlement of RSD funds by Vandehey, the extent and scope of which the Gmail account was used to facilitate those actions needed to be ascertained.

103.    Kho neither saw, read, or otherwise viewed any emails between Vandehey and his current or prior attorneys, nor did Kho knowingly use, or otherwise share, any privileged communication between Vandehey and non-RSD persons/entities.

## FIRST CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

104.    Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

105.    By reason of his position as Manager and Shareholder with 50% ownership of

Valentine Life, Vandehey owed both RSD and Valentine Life fiduciary obligations of good faith, loyalty, fair dealing, and candor, and was required to use his utmost ability to control and manage Valentine Life in a fair, just, honest, and equitable manner.

106. Vandehey was required to act in furtherance of the best interests of RSD and Valentine Life, and not in furtherance of his own personal interests.

107. Confidential and fiduciary relations are synonymous, and may exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another.

108. Vandehey breached his fiduciary obligations of good faith, loyalty, fair dealing, and candor to RSD and Valentine Life by wrongfully taking funds from the Valentine Life bank account.

109. Vandehey further breached his fiduciary obligations of good faith, loyalty, fair dealing, and candor to RSD and Valentine Life by actively seeking to damage the business relationships RSD and Valentine Life have with customers, vendors, and Instructors.

110. Vandehey further breached his fiduciary obligations of good faith, loyalty, fair dealing, and candor to RSD and Valentine Life by using customer payments belonging to RSD and Valentine Life for their own financial benefit, and at the expense of RSD and Valentine Life.

111. RSD and Valentine Life sustained damages as a result of Vandehey's breaches of his fiduciary duties.

112. As a direct and proximate result of Vandehey's breaches, individually, RSD and Valentine Life have incurred damages in a sum excess of $75,000.00.

113. The actions of Vandehey were willful, wanton, and malicious, entitling RSD and Valentine Life to an award of punitive damages against Vandehey.

114. RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged. Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

## SECOND CLAIM FOR RELIEF

### BREACH OF CONTRACT (OPERATING AGREEMENT)

115. Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

116.    On or about October 5, 2015, RSD and Vandehey entered into the Valentine Life Operating Agreement.

117.    The Valentine Life Operating Agreement is a valid and binding contract.

118.    RSD performed its obligations under the contract by granting Vandehey a 50% Membership Interest in Valentine Life.

119.    Section 2.3 of the Valentine Life Operating Agreement sets forth the requirement that members of the Company engage in lawful activities.

120.    Vandehey was a Member of Valentine Life.

121.    Vandehey materially breached the Valentine Life Operating Agreement by withdrawing and transferring funds from the Valentine Life to his personal accounts in violation of Section 2.3 of the Valentine Life Operating Agreement.

122.    This material breach of contract by Vandehey has caused damages to RSD and Valentine Life in an amount in excess of $75,000, to be proven at trial.

123.    The actions of Vandehey were willful, wanton, and malicious, entitling RSD to an award of punitive damages against Vandehey.

124.    RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

### THIRD CLAIM FOR RELIEF

#### BREACH OF CONTRACT (RSD CONTRACTOR AGREEMENT)

125.    Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

126.    On or about July 27, 2004, Vandehey and RSD entered into the Real Social Dynamics Contractor Agreement.

127.    The Real Social Dynamics Contractor Agreement is a valid and binding contract.

128.    RSD performed its part of the contract by compensating Vandehey in exchange for his performance of Instructor responsibilities.

129.    Paragraph 30 of the Real Social Dynamics Contractor Agreement permits RSD to

terminate Vandehey without notice if he (1) breaches any terms of the Agreement or (2) when just cause exists for termination.

130.    Paragraph 37 of the Real Social Dynamics Contractor Agreement requires Vandehey to disclose financial records subsequent to his termination.

131.    Paragraph 45 of the Real Social Dynamics Contractor Agreement requires that Vandehey be liable for all legal costs incurred by him in the event he breaches the Agreement.

132.    Vandehey was properly terminated pursuant to Paragraph 30 of the Real Social Dynamics Contractor Agreement, and then materially breached Paragraphs 37 and 40 of said agreement by (1) refusing to disclose financial and accounting records after his termination on August 11, 2017, and by (2) transferring Valentine Life funds to his attorney to pay for services.

133.    Paragraph 23 of the Real Social Dynamics Contractor Agreement requires Vandehey to return RSD property currently in his possession, back to RSD upon his termination.

134.    Despite Vandehey's unequivocal termination on August 11, 2017, Vandehey has wrongfully retained possession of RSD computer hardware, RSD audio/video equipment, and RSD software/media, and is thus in breach of Paragraph 23 of the Contractor Agreement.

135.    In addition, subsequent to his termination, Vandehey intentionally removed RSD and client access to RSD-owned videos hosted on Vimeo.com, effectively denying products to paying RSD clients and wrongfully withholding RSD property, in breach of Paragraph 24 of the Contractor Agreement.

136.    Paragraph 24 of the Real Social Dynamics Contractor Agreement, the Non-Solicitation clause, prohibits Vandehey from inducing RSD contractors to terminate their agreements with RSD or otherwise interfere with or disrupt RSD's contractual relationship with its contractors.

137.    Subsequent to Vandehey's termination on August 11, 2017, Vandehey has induced Garrett Darling, David Zelman, Jon Piedra, Kevin Juica, and Kaitlin Severin to terminate their contracts with RSD, and is thus in breach of Paragraph 24 of the Contractor Agreement.

138.    Paragraph 25 of the Real Social Dynamics Contractor Agreement prohibits Vandehey from engaging in direct competition with RSD for a period of 5 years after the termination of the Contractor Agreement.

139.    As of February 2018, six months after his termination from RSD, Vandehey is operating/managing www.toddvdating.com, a commerce website selling Vandehey products and services focused on his dating techniques and instruction to clients, and is thus in breach of Paragraph 25 of the Contractor Agreement.

140.    These material breaches of the Contractor Agreement by Vandehey have caused damages to RSD in an amount in excess of $15,000, to be proven at trial.

141.    The actions of Vandehey were willful, wanton, and malicious, entitling RSD to an award of punitive damages against Vandehey.

142.    RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

## FOURTH CLAIM FOR RELIEF

### CONTRACTUAL AND TORTIOUS BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

143.    Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

144.    On or about October 5, 2015, RSD and Vandehey entered into the Valentine Life Operating Agreement.

145.    The Valentine Life Operating Agreement is a valid and binding contract.

146.    Every contract in Nevada has an implied covenant of good faith and fair dealing.

147.    Vandehey owed a duty of good faith to RSD and Valentine Life arising from the contract.

148.    A special element of reliance or fiduciary duty existed between RSD and Vandehey, because Vandehey was in an entrusted position to manage all the revenue generated from RSD customer purchases, and he had complete access to transfer or withdraw all funds from the Valentine Life bank account without restriction.

149.    Vandehey owed a duty of good faith to RSD that exists in every contract and forbids arbitrary, unfair acts by one party that disadvantage the other party.

150.    Vandehey breached the duty of good faith by: (1) taking funds from the Valentine Life

bank account for personal use; (2) failing to provide accurate accounting of orders and revenue; and (3) failing to provide invoices or receipts for alleged business expenses.

151.     RSD's justified expectations were thus denied.

152.     The breaches of implied covenant of good faith and fair dealing by Vandehey, has caused damages to RSD in an amount in excess of $75,000.00, to be proven at trial.

153.     The actions of Vandehey were willful, wanton, and malicious, entitling Counterclaimants to an award of punitive damages against Vandehey.

154.     RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

**FIFTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

155.     Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

156.     By withdrawing funds from the Valentine Life bank account for personal use without authorization or approval, Vandehey has unjustly retained RSD revenue against fundamental principles of justice or equity and good conscience.

157.     The actions of Vandehey have caused damages to RSD in an amount in excess of $75,000.00, to be proven at trial.

158.     The actions of Vandehey were willful, wanton, and malicious, entitling RSD to an award of punitive damages against Vandehey.

159.     RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

**SIXTH CLAIM FOR RELIEF**

**CONVERSION**

160.     Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

161.    By taking funds out of the Valentine Life bank account for personal use, and in violation of the Real Social Dynamics Contractor Agreement and Valentine Life Operating Agreement, Vandehey has committed a distinct act of dominion wrongfully exerted over said funds that are rightfully owned by RSD and Valentine Life.

162.    The actions of Vandehey are inconsistent with RSD and Valentine Life's ownership of the revenue and/or funds deposited into the Valentine Life bank account.

163.    The actions of Vandehey are in derogation, exclusion, and/or defiance of RSD and Valentine Life's lawful ownership of the funds and RSD's rights therein.

164.    Furthermore, by inducing clients to pay for RSD products with cash, which was improperly retained by Vandehey and never reported to RSD, Vandehey wrongfully converted funds of RSD and Valentine Life.

165.    The actions of Vandehey have caused damages to RSD in an amount in excess of $75,000.00, to be proven at trial.

166.    The actions of Vandehey were willful, wanton, and malicious, entitling RSD to an award of punitive damages against Vandehey.

167.    RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

## SEVENTH CLAIM FOR RELIEF

### CONSTRUCTIVE FRAUD

168.    Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

169.    Vandehey was a trusted independent contractor of RSD, and as such, RSD instilled a special confidence in Vandehey so that he, both in equity and good conscience, was bound to act in good faith and with due regard to the interest of RSD.

170.    Accordingly, Vandehey's signatory authority for the revenue deposited into the Valentine Life bank account create a confidential and fiduciary relationship with RSD, and Vandehey was required to act in furtherance of the best interest of RSD, so as to benefit RSD and not his own

personal interests.

171.    Vandehey breached RSD's confidential and fiducial relationship by (1) transferring funds directly from the Valentine Life bank account to pay personal credit accounts, (2) transferring funds directly from the Valentine Life bank account to pay for an attorney representing him in a personal capacity; (3) paying for his personal residences with funds from the Valentine Life bank account; and (4) sending RSD inaccurate and misleading financial summaries of online purchases and deposits.

172.    Vandehey breached RSD's confidential and fiducial relationship on September 13, 2016, by sending an email to RSD with a summary of purchases made through Valentine Life's payment processor.  However, the sales totals sent to RSD did not reconcile with account statements for the Valentine Life bank account, and were missing approximately one-third (1/3) of the customer purchase deposits into the Valentine Life account.  As a result of Vandehey's representations in his email, RSD's accounting ledgers were inaccurate and detrimentally relied upon by RSD's financial and tax teams.

173.    RSD sustained damages as a result of each of Vandehey's breaches of his fiduciary duties.

174.    Vandehey's constructive fraud committed upon RSD over a period of approximately 20 months resulted in Vandehey failing to report approximately $499,000.00 of the deposits made to Valentine Life, which caused damages to RSD for the same amount

175.    The actions of Vandehey were malicious, oppressive and or fraudulent entitling plaintiff to award of punitive damages.

176.    RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

## EIGHTH CLAIM FOR RELIEF

### INJUNCTIVE RELIEF

177.    Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

178.    Vandehey's actions as set forth herein, give rise to multiple justiciable controversies, including breach of the Contractor Agreement, conversion, fraud, and unjust enrichment.

179.    Based on Vandehey's actions as set forth herein, RSD has a reasonable probability of success on the merits for its claims.

180.    As a result of Vandehey's actions as set forth herein, RSD has suffered, or is likely to suffer, irreparable harm including, but not limited to, loss of financial benefit as well as violations and infringements upon RSD's copyrighted intellectual property, which constitutes serious and permanent injury to RSD.

181.    RSD has a probable right to relief and will suffer immediate, severe, and irreparable injury unless Vandehey is immediately restrained and enjoined from: (1) using videos, products, programs, website content, or other property of RSD without permission or compensation, (2) selling or advertising for sale any Valentine Life or RSD branded product or service; (3) fraudulently altering any service, product, or program created with RSD equipment/hardware to omit reference to RSD as the creator of said service, product, or program.

182.    The actions of Vandehey described herein have resulted in immediate harm to, inter alia, RSD's business operation, reputation, and finances.

183.    RSD is entitled to injunctive relief to end such actions and prevent further harm.

184.    RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

## NINTH CLAIM FOR RELIEF

### VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. 2701

185.    Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

186.    Vandehey accessed the business Gmail account of RSD (tvandehey@gmail.com) without authorization and subsequent to his termination on August 11, 2017, by RSD, (1) to obtain electronic communications rightfully owned by RSD, and (2) alter, copy, or delete the electronic communications between RSD and its clients or vendors.

187.   Vandehey undertook said access of the RSD Gmail account knowingly or with an intentional state of mind.

188.   Such actions are a violation of the Stored Communications Act, 18 U.S.C. 2701.

189.   Because of Vandehey's actions, Defendants have suffered damages.

190.   Pursuant to 18 U.S.C. 2707, Defendants may obtain a preliminary or other equitable or declaratory relief against Vandehey.

191.   Accordingly, Vandehey is liable to Defendants for actual damages and punitive damages.

192.   RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

### TENTH CLAIM FOR RELIEF

#### VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. 1030

193.   Counterclaimants repeat and re-allege the allegations of the preceding paragraphs of the counterclaim as though fully set forth herein and incorporate the same herein by reference.

194.   Without authorization, and subsequent to his termination by RSD on August 11, 2017, Vandehey accessed the business Gmail account of RSD (tvandehey@gmail.com), the RSD Todd Skype account, the RSD Todd Facebook groups, the RSD Todd Telegram groups, and other RSD social media accounts, and knowingly caused the transmission of information that changed the passwords on these accounts thereby preventing access by RSD.

195.   Such actions are a violation of the Computer Fraud and Abuse Act, 18 U.S.C. 1030.

196.   Because of Vandehey's actions, Defendants have suffered damages.

197.   Pursuant to 18 U.S.C. 1030(g), Defendants may recover damages from Vandehey.

198.   RSD has been required to retain the services of an attorney to file and pursue this action and have thereby been damaged.  Accordingly, RSD seeks an award of reasonable attorneys' fees and costs incurred in this action.

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimants pray for judgment against Counter-defendant as follows:

1.   For an entry of judgment in favor of Counterclaimants and against Counter-defendant on the counterclaim and all claims for relief asserted therein;

2.   For an award of compensatory, consequential, statutory, and exemplary damages in an amount in excess of $75,000.00;

3.   For an award of punitive damages as a result of Counter-defendant's intentional actions against Counterclaimants;

4.   For an award of reasonable attorney's fees and costs incurred by Counterclaimants in this action;

5.   For an award of pre and post-judgment interest; and

6.   For such other and further relief as the Court may deem just and proper.

DATED this 27th day of February, 2018.

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

/s/ *Steven Knauss*

JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
STEVEN G. KNAUSS, ESQ.
Nevada Bar No. 12242
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Defendants/Counterclaimants Real Social Dynamics, Inc., Nicholas Kho, Owen Cook, and Amber Kho*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on the 27th day of February, 2018, a true and correct copy of the foregoing

3

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT AND**

4

**COUNTERCLAIM** was electronically filed with the Clerk of the Court using the Court's CM/ECF

5

system, and served to all parties and counsels of record registered to receive CM/ECF notifications.

6

7

_/s/ Deborah Sagert_

8

An employee of MAIER GUTIERREZ & ASSOCIATES

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

42