# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Valentine Life, Inc., LLC, et al.,

      Plaintiffs

v.

Real Social Dynamics, Inc., et al.,

      Defendants

Case No.: 2:17-cv-02230-JAD-NJK

**Order Overruling Plaintiffs' Objections to the Magistrate Judge's Discovery Ruling, Granting in Part Defendants' Motions to Dismiss and for Summary Judgment, and Closing Case**

[ECF Nos. 140, 152, 153]

      This eight-year-old case arises from a business dispute between plaintiff Todd Vandehey and defendant Real Social Dynamics, Inc. (RSD) and its two owners, Nicholas Kho and Owen Cook. All of the players are in the business of "teach[ing] men how to be successful with women and dating."[1] Vandehey alleges that, after he and RSD created a companion business known as "Valentine Life," Kho, Cook, and Kho's wife Amber[2] hacked Vandehey's PayPal and email accounts and dissolved Valentine Life without Vandehey's written consent, despite a clause in the company's operating agreement that restricted their power to do so.[3] Vandehey sued over those actions, and the defendants asserted counterclaims lobbing similar allegations of misconduct at Vandehey.[4]

      This case was stayed while RSD and Vandehey arbitrated the claims between them and Vandehey now seeks to continue pursuing his claims against the individual defendants and wants

---

[1] ECF No. 136 at 3, ¶ 14.

[2] Because Nick and Amber Kho share a last name, I refer to Amber by her first name throughout this order. No disrespect is intended by doing so.

[3] ECF No. 136 at 7–11, ¶¶ 32–73.

[4] ECF No. 81.

to add new claims for misconduct that he alleges occurred throughout the arbitration.  He also joins Valentine Life as a plaintiff and asserts additional claims on the company's behalf.  The defendants move to dismiss all of the plaintiffs' claims, arguing that some are barred by preclusion principles, some fail to state a claim, and others are facially barred by applicable statutes of limitation.  They also move for summary judgment, contending that the plaintiffs have failed to produce any evidence to support their claims.  The plaintiffs respond with a request to conduct further discovery under Federal Rule of Civil Procedure (FRCP) 56(d), and they object to the magistrate judge's December 6, 2024, order denying their request to indefinitely extend the discovery deadlines.

I grant the defendants' motion to dismiss in part.  Vandehey's claims concerning the individual defendants' attempts to hack his email address and take money from his PayPal account were fully and finally adjudicated in arbitration, so they are barred by the doctrine of issue preclusion.  The plaintiffs' allegations in support of their malicious-prosecution and fraud claims are woefully deficient and do not warrant further leave to amend.  And Valentine Life's unjust-enrichment and breach-of-fiduciary duty claims are time-barred.  So I dismiss each of those claims.

Because the plaintiffs fail to present any evidence to support their remaining claims, the defendants are entitled to summary judgment on Valentine Life's conversion claim and the plaintiffs' abuse-of-process claims.  Plaintiffs were not diligent in pursuing discovery in this case, so their objection to the magistrate judge's order fails, and their request for further discovery under FRCP 56(d) does too.  And because the defendants have evinced an unequivocal intent to abandon their 2018 counterclaims, I dismiss them too.  With no claims remaining, I direct the Clerk of Court to close this case.

**Background**

**A.    In 2017, the business relationship between Vandehey and RSD falls apart and Vandehey files this action against RSD and its owners.**

Vandehey and RSD began their business relationship in 2004 when they entered into a contractor agreement identifying Vandehey as an "executive coach" for RSD.[5]  That agreement contains non-solicitation and non-competition clauses that prohibit Vandehey from poaching RSD's employees or being involved "with a business [that] is direct competition with" RSD for five years after the agreement's termination.[6]  It was still intact when RSD and Vandehey co-founded Valentine Life, a company that provided "a complementary selection of products and services geared toward" the same market that RSD targeted.[7]  RSD and Vandehey each owned 50% of Valentine Life.[8]

In 2017, the relationship between RSD and Vandehey soured and Vandehey filed this action alleging that RSD, Kho, and Cook had locked him out of Valentine Life's website and social-media and financial accounts.[9]  A few months later, Vandehey filed an amended complaint adding allegations that the defendants had hacked his personal email address and unilaterally dissolved Valentine Life in violation of the company's operating agreement.[10]  He also alleged that Kho and Amber converted money from the PayPal account that he used to hold

---

[5] ECF No. 136-1 (contractor agreement).

[6] *Id.* at 4–5.

[7] ECF No. 136 at 6, ¶ 27.

[8] *Id.* at 2, ¶ 7.

[9] *See* ECF No. 1.

[10] ECF No. 69.

some Valentine Life funds.[11]  And he sought a declaratory judgment that the non-solicitation and non-competition clauses in his contractor agreement are unenforceable.[12]  In their answer to Vandehey's amended complaint, the defendants asserted counterclaims alleging that Vandehey breached Valentine Life's operating agreement and his contractor agreement, breached his fiduciary duty to Valentine Life, converted funds belonging to Valentine Life, and illegally accessed his personal email account that the defendants argued actually belonged to RSD.[13]  The parties exchanged initial disclosures but, before the case could go much further, the defendants moved to compel arbitration based on an arbitration clause in Valentine Life's operating agreement.[14]

**B.    RSD and Vandehey arbitrate many of their claims, and the arbitrator sides with Vandehey on the issues relevant to this lawsuit.**

        In 2018, I sent the claims between Vandehey and RSD to arbitration, finding that the arbitration clause applied only to those parties, and I stayed the remainder of the litigation against Cook, Kho, and Amber.[15]  I left it to the arbitrator to decide which of the parties' many claims were within the scope of the arbitration clause.[16]  He determined that Vandehey's and RSD's claims relating to Vandehey's email address and PayPal account, as well as all claims arising out of or relating to Valentine Life's operating agreement, were arbitrable.[17]  But he

---

[11] *Id.*

[12] *Id.*

[13] ECF No. 81.

[14] ECF No. 77.

[15] ECF No. 91.

[16] *Id.* at 6.

[17] ECF No. 140-3.

excluded from that scope RSD's claim against Vandehey for breaching the 2004 contractor agreement because that agreement didn't contain an arbitration provision.[18]

In late 2022, the arbitrator issued a final award, finding that RSD breached Valentine Life's operating agreement when it dissolved the company, violated the Stored Communications Act (SCA) when it hacked Vandehey's email, and illegally converted half of the funds obtained from Vandehey's PayPal account.[19]  He concluded that Vandehey did not establish damages for RSD's contract breach but awarded Vandehey $3,897.04 for his conversion claim and $66,800.00 in attorneys' fees and costs under the SCA's damages provision.[20]  About a year ago, I confirmed the arbitrator's award under 9 U.S.C. § 9 and entered partial final judgment on the relevant claims.[21]

**C.    Following arbitration, Vandehey and Valentine Life file a third-amended complaint and seek an extended discovery period.**

With the arbitration against RSD settled, I held a status conference with the parties on April 16, 2024, to determine what, if anything, remained of this case.[22]  At that hearing, Vandehey (through counsel) represented that he would be moving to amend his complaint to join Valentine Life as a plaintiff.[23]  I reminded the parties that they needed to "get together to figure

---

[18] *Id.* at 4.

[19] *See* ECF No. 140-4 (final arbitration award).

[20] *Id.* at 28–30, 44, 50–52.

[21] ECF No. 120.

[22] *Id.* at 4.

[23] ECF No. 130 at 4:24–5:17 (transcript of April 16, 2024, status conference).

1  out what type of a discovery scheduling order is necessary under the rules and what the timeline

2  is to get that accomplished."[24]

3          More than a month later, the parties filed a stipulation explaining their disagreements

4  about what discovery was necessary to further this litigation.[25]  Vandehey sought a roughly 15-

5  month discovery period, asserting that he intended to amend his pleadings to add Valentine Life

6  as a plaintiff, as well as several new claims, and needed to conduct extensive discovery into the

7  actions of the individual defendants.[26]  The defendants maintained "that the claims in this case

8  were resolved through arbitration" and that substantial discovery was already conducted through

9  arbitration, but in the event that discovery needed to go forward, they proposed a six-month

10 discovery period.[27]  The magistrate judge rejected the plaintiffs' proposal, reasoning that a 15-

11 month discovery period was not warranted "given the staleness of this case."[28]  She set the

12 discovery cut-off for November 15, 2024, with dispositive motions due on December 16, 2024.[29]

13         On July 30, 2024, Vandehey filed a third-amended complaint against RSD, Kho, Amber,

14 and Cook and added Valentine Life as a plaintiff.[30]  It raises several issues that were the subject

15

16 _____

[24] *Id.* at 5:21–24.

[25] ECF No. 128.  Despite my direction at the status conference to get this case back on track, it took further prodding from the magistrate judge before the parties filed any discovery-related stipulations in this case.  *See* ECF No. 123 (the magistrate judge's May 3, 2024, order noting that a stipulated discovery order had not yet been filed and ordering the parties to file one within seven days); ECF No. 125 (the magistrate judge's May 7, 2024, order denying the parties' stipulation to extend time to file a discovery stipulation because it didn't "comply with the basic requirement of providing the reason why more time is needed").

[26] ECF No. 128 at 5–8.

[27] *Id.* at 5, 8.

[28] ECF No. 129 at 1.

[29] *Id.* at 2.

[30] ECF No. 136.

of arbitration, as well as several claims that the plaintiffs allege arose from the arbitration proceedings:

- Count 1: Vandehey seeks declaratory relief against RSD to invalidate the non-solicitation and non-competition clauses in the contractor agreement that defined a portion of the parties' business relationship from 2004 to 2017;

- Counts 2–4: Vandehey alleges that Kho, Amber, and Cook violated the SCA, the Computer Fraud and Abuse Act (CFAA), and Nevada Revised Statute (NRS) 205.4765 (the computer-crimes claims) for hacking his personal email account;

- Count 5: Vandehey brings a conversion claim against Kho and Amber for removing funds from his PayPal account;

- Count 6: Valentine Life brings a conversion claim against RSD and Kho for "willfully depriving" it of "the right to possession of its financial accounts and property";

- Counts 7 & 8: Vandehey alleges that RSD and Kho abused the legal process by "filing knowingly false affidavits, certifications, and/or declarations claiming ownership" of Vandehey's personal email account and claiming "to be a controlling member of Valentine Life";

- Counts 9 & 10: Vandehey alleges that RSD and Kho's initiation of arbitration proceedings against him constitutes malicious prosecution;

- Counts 11 & 12: Vandehey and Valentine Life allege that Kho and Cook committed fraud;

- Count 13: Valentine Life alleges that RSD, Kho, and Cook "have been unjustly enriched at the expense of Valentine Life"; and

- Count 14: Valentine Life alleges that RSD, Kho, and Cook breached their fiduciary duties "by misappropriating funds and resources rightfully owned" by the company, "failing to disclos[e] material information, and acting in their own interests ahead of" the company's interests.[31]

---

[31] *Id.* at 16–26, ¶¶ 127–208.

**D.    The magistrate judge denies the plaintiffs' request for an indefinite extension of the discovery period, finding that they were not diligent in pursuing discovery.**

On November 15, 2024—the day that the discovery period was set to close—the plaintiffs filed a motion to indefinitely extend all discovery deadlines in this case, noting that "discovery has yet to begin while the motion to dismiss remains unadjudicated."[32] The magistrate judge denied that motion.[33] She concluded that the plaintiffs could neither show excusable neglect to warrant the reopening of already expired deadlines, nor good cause to extend the deadlines that hadn't yet expired.[34] She found that the plaintiffs were not diligent in pursuing discovery given that "they conducted <u>no discovery of any kind</u> during" the 6-month discovery period that had already elapsed.[35] And she rejected the plaintiffs' excuse that they couldn't engage in discovery while an unresolved motion to dismiss remained on the docket, noting that "[t]he Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending."[36]

**E.    The defendants move to dismiss and for summary judgment, and the plaintiffs object to the magistrate judge's discovery order.**

On September 18, 2024, the defendants filed a motion to dismiss the plaintiffs' third-amended complaint.[37] They argue that counts 1–6 are barred by preclusion principles because the issues they raise are identical to the issues decided by the arbitrator. They contend that the

---

[32] ECF No. 148 at 5 (cleaned up).

[33] ECF No. 151.

[34] *Id.* at 4.

[35] *Id.*

[36] *Id.* at 5 (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601–02 (D. Nev. 2011)).

[37] ECF No. 140.

remaining claims lack sufficient detail to state any claim, and that Valentine Life's unjust-enrichment and fiduciary-breach claims are additionally time-barred.

On the dispositive-motion deadline and with the motion to dismiss still pending, the defendants filed a motion for summary judgment on all the plaintiffs' claims.[38] They contend that, because the plaintiffs "failed to produce any evidence to support the essential elements of their claims" or the existence of damages, the "record demonstrates an insurmountable evidentiary deficiency" in this case.[39] The plaintiffs respond with a declaration from Vandehey that essentially repeats the threadbare allegations in his complaint[40] and a request to conduct further discovery under FRCP 56(d).[41] And as part of their quest to get another chance at discovery, the plaintiffs also object to the magistrate judge's order denying their request for an indefinite extension of the discovery period.[42]

## Discussion

### A.    Preclusion principles bar Vandehey's computer-crimes and conversion claims (counts 2–5).

The defendants argue that preclusion principles bar the plaintiffs' declaratory-judgment, computer-crimes, and conversion claims against the individual defendants (counts 1–6) because those claims were finally decided by the arbitrator.[43] The doctrines of claim and issue preclusion are "intended to promote judicial efficiency and the finality of judgments by requiring that all

---

[38] ECF No. 152.

[39] *Id.* at 2.

[40] ECF No. 157.

[41] ECF No. 155 at 17.

[42] ECF No. 153.

[43] ECF No. 140 at 10–14.

related claims be brought together or forfeited" or "by prohibiting any party from litigating an issue that has been fully litigated previously."[44]  Issue preclusion forecloses a party from litigating the same factual and legal issues that had been fully litigated and decided in an earlier lawsuit.[45]  Claim preclusion, on the other hand, provides that "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."[46]  By precluding "parties from contesting matters that they have had a full and fair opportunity to litigate," these doctrines "protect their adversaries from the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions."[47]  Because the parties' arbitration took place in Nevada and this court, sitting in diversity, affirmed the award, Nevada law "governs its preclusive effect."[48]

### 1. *Claim preclusion isn't the proper fit for these circumstances.*

The defendants contend that both preclusive doctrines bar the plaintiffs' claims in this action, but they focus primarily on claim preclusion.[49]  For claim preclusion to apply in Nevada, (1) the parties or their privies must be the same, (2) the final judgment must be valid, and (3) the new action must be based on the same claims or any part of them that were or could have been brought in the first case.[50]  "This test maintains the well-established principle that claim

---

[44] *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1160 (9th Cir. 2002).

[45] *See LaForge v. Univ. & Cmty. Coll. Sys. of Nev.*, 997 P.2d 130, 133 (Nev. 2000).

[46] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

[47] *Montana v. United States*, 440 U.S. 147, 153–54 (1979) (cleaned up).

[48] *See NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1181 (9th Cir. 2019).

[49] ECF No. 140 at 11 (arguing that claim and issue preclusion "may be equally applicable under the circumstances").

[50] *Five Star Cap. Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (citing *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1192 (Nev. 1994), *holding modified by Exec. Mgmt., Ltd. v. Ticor*

preclusion applies to all grounds of recovery that were or could have been brought in the first case."[51]

Claim preclusion doesn't apply here because the defendants have not shown that Vandehey could have arbitrated his claims against the individual defendants in the first case. The record reflects that this court compelled arbitration of the dispute between RSD and Vandehey only.[52]  And when Vandehey attempted to bring his claims against the individual defendants in that forum anyway, the arbitrator informed him that those claims were outside of the scope of arbitration agreement between RSD and Vandehey.[53]  So Vandehey ultimately dropped those claims and arbitrated only against RSD.[54]  Indeed, counsel for the defendants took the stance at arbitration that RSD alone was participating in those proceedings and the individual defendants were not.[55]  So I cannot conclude that the plaintiffs' claims could have been brought in the arbitral forum.

The defendants also have a privity problem.  They state, without any analysis or factual support, that the individual defendants are in privity with RSD because N. Kho and Cook are RSD's founders, and Amber is N. Kho's "former wife."[56]  But the party asserting claim

---

*Title Ins. Co.*, 963 P.2d 465 (Nev. 1998) ("[T]he modern view is that claim preclusion embraces all grounds of recovery that were asserted in a suit, as well as those that could have been asserted.").

[51] *Id.*

[52] *See* ECF No. 91.

[53] *See* ECF No. 146 at 4–5, ¶¶ 21–22 (counsel declaration explaining arbitrator's limitation).

[54] ECF No. 146-6 (Vandehey's amended arbitration counterclaims against RSD only).

[55] *See* ECF No. 146–3 (letter from defense counsel, confirming that it would be representing RSD in arbitration but it would represent the individual defendants in the federal-court proceeding only).

[56] ECF No. 140 at 15 n.3.

preclusion has the burden of proving that parties who were not involved in the initial case are in privity with a party who was.[57]  The defendants' threadbare assertions don't satisfy that burden.[58]  So because Vandehey could not have brought his claims against the individual defendants in the first action and the defendants haven't shown that they were parties or in privity with RSD, claim preclusion cannot bar Vandehey's claims against Cook and the Khos now.

### 2. Issue preclusion is a better fit, and it bars four of Vandehey's claims.

Though claim preclusion does not apply here, issue preclusion does.  "Unlike claim preclusion, issue preclusion does not apply to matters [that] could have been litigated but were not."[59]  Issue preclusion instead focuses on whether "the same fact issue is presented" in the earlier case.[60]  "In Nevada, issue preclusion requires that (1) an issue be identical, (2) the initial ruling was final and on the merits, (3) 'the party against whom the judgment is asserted' was a party or in privity with a party in the prior case, and (4) 'the issue was actually and necessarily litigated.'"[61]  "Nevada ensures due process by limiting the application of issue preclusion to

---

[57] See Bower v. Harrah's Laughlin, Inc., 215 P.3d 709, 717 (Nev. 2009) (noting that the party seeking preclusion must prove each element for preclusive effect to apply).

[58] A defendant may also meet this burden by demonstrating that "he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a 'good reason' for not having done so."  Weddell v. Sharp, 350 P.3d 80, 85 (Nev. 2015) (modifying Five Star's test for claim preclusion to permit preclusion if a defendant was not a party to the first case, but should have been).  But, for the same reasons that the defendants cannot show that the claims against them could have been arbitrated, they cannot show that the claims could have been brought against them.  It's clear that no one believed that the individual defendants were, or could have been, subject to those proceedings.

[59] Laforge, 997 P.2d at 133 (quoting Exec. Mgmt., Ltd. v. Ticor Title Ins. Co., 963 P.2d 465, 473 (Nev. 1998)).

[60] Id. at 133–34 (cleaned up); Kahn v. Morse & Mowbray, 117 P.3d 227, 474–75 (Nev. 2005) (holding that "issue preclusion may be appropriate . . . as long as the court in the prior action addressed and decided the same underlying factual issues" (citation omitted)).

[61] Bower, 215 P.3d at 718 (quoting Five Star Cap. Corp., 194 P.3d at 713).

12

those who were a party in the prior case or who were in privity with a party in the prior case."[62]
Mutually is not required; a party asserting issue preclusion need not have been a party or its
privy to prior litigation, only the party against whom issue preclusion is asserted must be.[63]  And
the Supreme Court of Nevada has held that the doctrine of issue preclusion applies to issues
decided through arbitration.[64]

> ### a.    Vandehey's declaratory-judgment claim arising from his contractor agreement with RSD (count 1) was outside of the scope of arbitration, so it is not precluded.

Vandehey's first claim for relief arises from the contractor agreement between him and
RSD.[65]  He seeks an order declaring unenforceable the agreement's non-competition and non-
solicitation clauses that prohibit Vandehey from working in the dating-advice space for five
years from the agreement's termination.[66]  The defendants contend that this claim is barred
because Vandehey raised it in a counterclaim before the arbitrator.[67]

The defendants again ignore the limited scope of the arbitration proceedings in this case.
In a 2019 order, the arbitrator specifically noted that one of RSD's claims for breach of the
contractor agreement "is not subject to arbitration" because that agreement did not contain a

---

[62] *Id.* at 717 (citing *Paradise Palms v. Paradise Homes*, 505 P.2d 596, 598–99 (Nev. 1973)).

[63] *Paradise Palms*, 505 P.2d at 599; *Bower*, 215 P.3d at 718 ("Issue preclusion can only be used against a party whose due process rights have been met by virtue of that party having been a party or in privity with a party in the prior litigation.").

[64] *See Int'l Ass'n of Firefighters, Loc. 1285 v. City of Las Vegas*, 823 P.2d 877, 880 (Nev. 1991) ("Policy considerations underlie our conclusion that the doctrine of issue preclusion should apply to arbitration." (cleaned up)); *McDowell v. Space Adventures, Inc.*, 521 P.3d 416, at *1 (Nev. 2022) (table disposition).

[65] ECF No. 136 at 3–4, ¶¶ 13–16; 16–18, §§ 127–44.

[66] *Id*.

[67] ECF No. 140 at 5, 15.

valid arbitration clause.[68]  Though he did not specifically find the same as to Vandehey's

declaratory-judgment claim (because the parties apparently agreed that all of Vandehey's claims

against RSD were subject to arbitration),[69] it's clear that the arbitrator would not—and did not—

decide any issues related to the contractor agreement.[70]  So, because any disputes over the

contractor agreement were not actually decided through the arbitration proceedings, those issues

are not precluded.

> ### b.    Vandehey's computer-crimes claims (counts 2–4) are barred by issue preclusion.

Vandehey alleges in his third-amended complaint that Kho, Amber, and Cook violated

the SCA, the CFAA, and NRS 205.4765 when they hacked into his personal email account, took

steps to lock him out of it, and downloaded his personal emails.[71]  The defendants contend that

these issues were decided by the arbitrator against RSD, so those issues are precluded from

further litigation.[72]

The factual issues presented in Vandehey's computer-crimes claims are identical to those

addressed through arbitration.  Vandehey's counterclaims at arbitration alleged violations of the

SCA, the CFAA, and NRS 205.4765 for RSD's hacking of his personal email address.[73]  Counts

---

[68] ECF No. 140-3 at 4.

[69] *Id.* at 3 (noting that "the parties agree that all six causes of action brought by [Vandehey] against [RSD and Valentine Life] as counterclaims are also subject to Arbitration").

[70] *See* ECF No. 140-4 (arbitrator's final award, discussing the contractor agreement only briefly as background and not deciding any issues related to that agreement).

[71] ECF No. 136 at 18–20, ¶¶ 145–63.

[72] ECF No. 140 at 11–13.

[73] ECF No. 146-6 at 45–48, ¶¶ 257–274.

2–4 of his third-amended complaint raise the exact same claims, concerning the exact same conduct.[74]  So I conclude that the issues presented in both actions are identical.

Those issues were also actually and necessarily litigated.  Vandehey's computer-crime allegations were a central part of his case in arbitration.  After hearing testimony from Kho, Cook, Vandehey, several other RSD employees, and Vandehey's forensic computer expert on this issue, the arbitrator concluded that Vandehey was the legal owner of his email address and that "Kho and/or other RSD personnel intentionally accessed, without authorization, Vandehey's Gmail [a]ccount and obtained access to electronic communications in electronic storage" in violation of the SCA.[75]  The arbitrator also determined that the SCA, the CFAA, and NRS 205.4765 each "describe the same prohibited conduct" and should be "interpreted *pari passu*," so he denied judgment to Vandehey on the other two repetitive causes of action.[76]  He awarded Vandehey $66,800.00 in attorneys' fees and costs under the SCA's damages provision.[77]  The arbitrator issued his final award on September 26, 2022, and this court affirmed that award and entered judgment on those claims.[78]  So I also conclude that final judgment was entered on all of Vandehey's computer-crimes claims.

Vandehey doesn't really dispute that this issue was finally decided as pled against RSD. He instead contends that, because the individual defendants weren't subject to the arbitration proceedings, he should be permitted to assert his computer-crimes claims against them in this

---

[74] ECF No. 136 at 18–20, ¶¶ 145–163.

[75] ECF No. 140-4 at 41.

[76] *Id.*

[77] *Id.* at 42 (citing 18 U.S.C. § 2707(b)(3)), 49–51.

[78] ECF No. 120.

forum.[79]  But as explained *supra*,[80] the Nevada courts have embraced the concept of nonmutual issue preclusion, which permits nonparties to the initial dispute to enforce its preclusive effect against a party who did litigate the first case.  Because Vandehey—the party against whom the individual defendants are asserting preclusion—was a party to the arbitration, the party-or-privy issue-preclusion factor is met, too.  I thus find that Vandehey's claims alleging that Kho, Cook, and Amber violated the SCA, the CFAA, and NRS 205.4765 for hacking his personal email account are barred by issue preclusion.

> ### c.    *Vandehey's conversion claim (count 5) is also precluded, but Valentine Life's conversion claim (count 6) isn't.*

Vandehey's conversion claim alleges that the Khos and Cook "willfully deprived . . . Vandehey of the right to possession of his property held in the PayPal [a]ccount through the execution of two unauthorized transfers . . . to [Amber's] PayPal [a]ccount."[81]  Vandehey raised an identical claim, based on the same facts, against RSD in the arbitration proceedings,[82] and the issue was actually and necessarily litigated.  Vandehey argued that the PayPal account contained Valentine Life funds and that he was thus entitled to half of the money in the account.[83]  Kho testified at the arbitration hearing that he transferred the money to another account associated with Amber, and RSD argued that Kho took that action to prevent "further embezzlement by Vandehey."[84]  The arbitrator sided with Vandehey and determined that RSD had converted half

---

[79] ECF No. 145 at 13 (arguing that the individual defendants didn't "avail[] themselves of the arbitration").

[80] *See supra* at 12–13; *Paradise Palms*, 505 P.2d at 599.

[81] ECF No. 136 at 21, ¶ 165.

[82] ECF No. 146-6 at 49, ¶¶ 283–286.

[83] *See* ECF No. 140-4 at 32.

[84] *Id.* (quoting RSD's rebuttal closing argument arbitration brief).

of the funds in that account, finding that because the account held Valentine Life proceeds, half

belonged to RSD and half belonged to Vandehey.[85]  The arbitrator awarded Vandehey $3,897.04

in compensatory damages for RSD's theft of his half of the funds in the PayPal account.[86]  That

judgment and award was affirmed by this court.[87]  So Vandehey's conversion claim is barred by

issue preclusion.[88]

The defendants attempt to sweep into the preclusion analysis a second conversion claim

that Valentine Life asserts against RSD and Kho (count 6).  But Valentine Life was not a party to

the arbitration in its current posture as aligned with Vandehey.  Throughout the arbitration

proceedings, RSD instead purported to represent Valentine Life's interests, and Valentine Life

was listed as a claimant aligned with RSD. [89]  Based on this record, it appears that only after

arbitration concluded was it determined that Vandehey was the rightful owner of the company,

and only now does Vandehey assert claims on Valentine Life's behalf.  Because I cannot

conclude that Valentine Life was in privity with Vandehey at the time of the arbitration or that

the interests Valentine Life now asserts were adequately represented at that time, Valentine

Life's conversion claim is not barred by issue preclusion.

---

[85] *Id.*

[86] *Id.*

[87] ECF No. 120.

[88] Vandehey doesn't argue or cite legal authority suggesting that applying issue preclusion in these circumstances would be unfair or that he was unable to recover the full extent of his damages through arbitration against RSD.  All he says is that this is the forum in which he may adjudicate his rights against the individual defendants.  ECF No. 145 at 3.  Without more, I conclude that applying issue preclusion to the claims thoroughly litigated in arbitration is the most just and legally appropriate outcome in this convoluted, long-running business dispute.

[89] ECF No. 140-4 at 2 (naming RSD and Valentine Life as claimants and Vandehey as the respondent).

**B.    The plaintiffs fail to adequately plead their malicious-prosecution and fraud claims.**

The defendants move to dismiss the plaintiffs' malicious-prosecution and fraud claims for failure to adequately plead facts to support them.[90]  The plaintiffs contend that their allegations are sufficient to give notice to the defendants of their alleged wrongdoings.[91]  Federal pleading standards require a complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[92]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation";[93] plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[94]  A complaint that fails to meet this standard must be dismissed.[95]

### 1.    Vandehey's malicious-prosecution claims (counts 9 & 10) fail because none of the defendants' alleged misdeeds arise from a criminal proceeding.

Vandehey brings two malicious-prosecution claims, alleging that RSD and Kho initiated the arbitration proceedings "without any probable cause to do so."[96]  To adequately plead a malicious-prosecution claim in Nevada, the plaintiff must allege "(1) want of probable cause to initiate [a] prior criminal proceeding; (2) malice; (3) termination of the prior criminal

---

[90] ECF No. 140 at 16–20.  The defendants move to dismiss the plaintiffs' abuse-of-process, unjust-enrichment, and fiduciary-breach claims for the same reason.  Because I conclude *infra* that those claims fail for other reasons, I don't address the defendants' Rule 12(b)(6) arguments against them.

[91] ECF No. 145 at 17–19.

[92] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[93] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[94] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[95] *Twombly*, 550 U.S. at 570.

[96] ECF No. 136 at 23–24, ¶¶ 180–89.

proceedings; and (4) damage."[97]  In *LaMantia v. Redisi*, the Supreme Court of Nevada emphasized that a malicious-prosecution claim cannot be brought in response to an allegedly wrongful *civil* proceeding—it must stem from a prior *criminal* proceeding.[98]  The defendants contend that, because Vandehey's malicious-prosecution claims take issue with the defendants' initiation of civil arbitration proceedings, the claims fail as a matter of law.[99]

Vandehey's response to this argument borders on sanctionable.[100]  He misrepresents the elements as articulated in *LaMantia*, conveniently omitting any reference to the criminal-proceeding requirement.[101]  He then argues that, because the arbitration was terminated in his favor, he adequately pled a malicious-prosecution claim.  Because these claims are clearly foreclosed by existing, unambiguous Nevada law limiting malicious-prosecution claims to criminal proceedings, I dismiss them as a matter of law.  And because there is no indication that Vandehey was subject to some other criminal proceeding that was terminated in his favor and that could form the basis of an adequately pled claim, leave to amend this claim isn't warranted.[102]

---

[97] *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).

[98] *Id.* at 880 (overruling prior caselaw suggesting that a malicious-prosecution claim may be brought with respect to any "prior action," and explaining that a plaintiff may not "claim malicious prosecution in the absence of a prior *criminal* proceeding" (cleaned up)).

[99] ECF No. 140 at 18.

[100] FRCP 11(b)(2) requires that attorneys filing papers with the court certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  It doesn't appear that plaintiffs' counsel took that requirement seriously when doubling down on the malicious-prosecution claims in the face of clear law rendering them inapplicable.

[101] ECF No. 145 at 17.  Despite being undoubtedly aware of this legal impediment to his malicious-prosecution claims, Vandehey raises the same frivolous argument in his response to the defendants' summary-judgment motion.  ECF No. 155 at 14–15.

[102] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (explaining that leave to amend may be denied if "the court determine[d] that the allegation of other facts consistent

### 2.    *The plaintiffs' factually unsupported fraud claims (counts 11 & 12) do not satisfy FRCP 9's heightened pleading requirements.*

Vandehey and Valentine Life both allege that N. Kho and Cook committed fraud by "knowingly ma[king] false representations to [them] with the intent to deceive and induce reliance" and that the plaintiffs "justifiably relied on [those] false representations."[103]  The defendants move to dismiss the fraud claims, arguing that the plaintiffs' conclusory allegations fall short of satisfying the heightened pleading requirements for fraud.[104]  Rule 9(b) of the Federal Rules of Civil Procedure requires that a party "alleging fraud [] must state with particularity the circumstances constituting fraud."[105]  This particularity requirement ensures that fraud claims are "specific enough to give defendants notice of the particular misconduct [that] is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[106]  "Mere conclusory allegations of fraud are insufficient."[107]

The plaintiffs discuss at length the Ninth Circuit's interpretation of Rule 9(b) and acknowledge that the rule "is about giving the defendant notice of the specific misconduct" alleged.[108]  But they then argue that the allegations in the third-amended complaint—which fail to identify any specific representations, statements, or omissions that any of the defendants

---

with the challenged pleading could not possibly cure the deficiency" (internal quotation omitted)).

[103] ECF No. 136 at 24–25, ¶¶ 191–192, 195–196.

[104] ECF No. 140 at 18–20.

[105] Fed. R. Civ. P. 9(b).

[106] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[107] *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

[108] ECF No. 145 at 19.

made—are sufficient because "Mr. Kho and Mr. Cook are very aware of their statements, actions[,] and omissions [that] were made with an intent to deceive Mr. Vandehey."[109]  They contend that, "balancing the relaxed notice pleading afforded by Rule 8, Mr. Vandehey is not required to lay out all of the factual support necessary for final adjudication on the merits."[110]

Again, the plaintiffs' arguments toe the line of frivolity.  While "Rule 9(b) may not require [them] to allege, in detail, all facts supporting each and every instance" of fraud that they believe the defendants committed,[111] they must provide at least some facts from which the court (and the defendants) may glean "'the who, what, when, where, and how' of the misconduct charged."[112]  The third-amended complaint is devoid of any such facts.  The fraud claims themselves consist merely of formulaic recitations of the elements of a fraud claim.[113]  The background information provided at the beginning of the complaint also fails to mention any specific statements, actions, or omissions that any defendant made, or any actions that the plaintiffs took in reliance on those representations.[114]  The claims in this lawsuit span at least six years[115] and accuse Kho and Cook of a wide range of wrongdoing.  It's anyone's guess what specific wrongdoing the plaintiffs believe constitutes fraud.  And the plaintiffs' contention that their conclusory allegations are sufficient because the defendants apparently "know what they

---

[109] *Id.*

[110] *Id.* (cleaned up).

[111] *See United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (citation omitted).

[112] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

[113] ECF No. 136 at 24–25, ¶¶ 190–97.

[114] *See generally id.* at 3–16, ¶¶ 13–126.

[115] The complaint includes claims alleging misconduct in 2017 (when this dispute began) through 2022 (when the arbitration ended).

did" is legally unsound.  These fraud claims don't even satisfy Rule 8's relaxed pleading standard, let alone Rule 9(b)'s heightened one.  So I dismiss the plaintiffs' fraud claims.

I also deny the plaintiffs leave to amend these claims.  A "district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."[116]  When evaluating undue delay, courts inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."[117]  Based on the plaintiffs' response, I conclude that granting amendment would be futile.  Plaintiffs fail to show that they can plead any additional, specific facts that would satisfy FRCP 9(b).  And any further amendment would cause undue delay; it's clear that the plaintiffs knew of whatever facts they believe could form the basis of their fraud claims prior to their filing of the third-amended complaint but chose not to plead them.  Plaintiffs will not be rewarded for their dilatory tactics.  Their fraud claims are thus dismissed without leave to amend.

## C.  Valentine Life's unjust-enrichment and fiduciary-breach claims (counts 13 & 14) are barred by the applicable statutes of limitation.

Valentine Life also asserts claims for unjust enrichment and breach of fiduciary duty against RSD, Kho, and Cook.[118]  The company provides no factual details in support of its unjust-enrichment claim.[119]  In support of its fiduciary-breach claim, it alleges vaguely that the defendants "misappropriat[ed] funds and resources rightfully owned by [] Valentine Life, fail[ed]

---

[116] *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted).

[117] *Id.* (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)).

[118] ECF No. 136 at 25–26, ¶¶ 198–208.

[119] *Id.* at 25, ¶¶ 198–201.

to disclos[e] material information, and act[ed] in their own interests ahead of [] Valentine Life's interests."[120]  The defendants move to dismiss for failure to state a claim and because the applicable statutes of limitation for these claims have long expired.[121]

In Nevada, the limitations period for an unjust-enrichment claim is four years.[122]  The limit for a fiduciary-breach claim is three years.[123]  "The statute of limitations for a claim for breach of fiduciary duty does not begin 'to run until the aggrieved party knew, or reasonably should have known, of the facts giving rise to the breach.'"[124]  And the limitations period for an unjust-enrichment claim begins to accrue when "the injured party discovers or reasonably should discover facts supporting a cause of action."[125]  Valentine Life responds that its ownership has just recently been settled—through, he contends, a bankruptcy court's recent order recognizing that Vandehey is Valentine Life's sole shareholder—so it should be able to bring time-barred claims.[126]

Valentine Life's argument to circumvent the applicable statutes of limitations for these claims fails.  Vandehey doesn't explain why he was prevented from bringing claims on

---

[120] *Id.* at 26, ¶ 205.

[121] ECF No. 140 at 20–22.

[122] *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (citing Nev. Rev. Stat. § 11.190(2)(c)).

[123] *Id.* (citing Nev. Rev. Stat. § 11.190(3)(d)).

[124] *Id.* (quoting *Nev. State Bank v. Jamison P'ship*, 801 P.2d 1377, 1382 (Nev. 1990)).

[125] *Adkins v. Union Pac. R.R. Co.*, 554 P.3d 212, 218 (Nev. 2024) (recognizing that the Supreme Court of Nevada has applied "the discovery rule" permitting accrual to begin when the plaintiff discovers a wrong (rather than requiring accrual to begin only when the wrong occurs) to most subsections of NRS 11.190, including NRS 11.190(2)(c)).

[126] ECF No. 145 at 20 (arguing that "the rights of Valentine Life were not protectable until Mr. Vandehey was reinstalled as its fiduciary earlier this year.  The [d]efendants should not be rewarded for intentionally interfering with Mr. Vandehey's ability to assert claims on behalf of his company over the past several years.").

1    Valentine Life's behalf earlier, either through a derivative-shareholder claim or on the

2    corporation's behalf as its "sole director."[127]  The fact that a bankruptcy court recently accepted

3    Vandehey's representation that he is the sole remaining shareholder for Valentine Life doesn't

4    have any obvious legal effect, nor does it imply that Vandehey didn't have the ability to sue on

5    Valentine Life's behalf before that date.  And the plaintiffs offer no legal authority for this our-

6    tardiness-is-excused position.  Without any argument or legal support for the notion that

7    Valentine Life's ownership status should prevent the application of the statutes of limitation, I

8    reject Vandehey's unreasoned statements.

9         It's also clear from the face of the complaint that both of Valentine Life's claims are

10    time-barred.[128]  The facts underlying Valentine Life's allegations of unjust enrichment and

11    fiduciary breach clearly arise from the series of events that began in 2017, when Kho, Cook, and

12    RSD took steps to dissolve the company and take over its assets.[129]  The complaint also alleges

13    that Vandehey knew about the defendants' conduct back then, as he alleges that, "[o]n August

14    22, 2017, Plaintiff Vandehey initiated the instant litigation on an emergent basis seeking to

15    preserve the *status quo ante* by reinstalling himself as the rightful controller of Valentine

16

17    _____

[127] *See* ECF No. 136 at 11, ¶ 81.

18    [128] A claim may be dismissed as untimely through an FRCP 12(b)(6) motion "only when the
      running of the statute of limitations is apparent on the face of the complaint."  *U.S. ex rel. Air*
19    *Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting *Von*
      *Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir. 2010) (cleaned
20    up)).

21    [129] ECF No. 136 at 12–13, ¶¶ 93–94 (alleging that, "in the summer of 2017," RSD dissolved
      Valentine Life and "took sole possession of all Valentine Life assets and intellectual property,
22    including the Valentine Life bank account"), 26, ¶ 205 (alleging that, "on or about and after
      August 2017, Defendants RSD, N. Kho, and Cook breached their fiduciary duties by
23    misappropriating funds and resources rightfully owned by Plaintiff Valentine Life, failing to
      disclose material information, and acting in their own interest ahead of Plaintiff Valentine Life's
      interests").

Life."[130]  So, because Vandehey knew about the defendants' alleged misconduct concerning Valentine Life in 2017 and has not provided any valid reason why he was unable to assert Valentine Life's rights within the limitations periods, I conclude that the company's unjust-enrichment and fiduciary-breach claims are facially barred by the applicable statutes of limitation.[131]  Those claims are thus dismissed without leave to amend.

**D.    Further discovery is not warranted before this court rules on the defendants' summary-judgment motion.**

*1.    The magistrate judge's order denying an indefinite extension of discovery was not clearly erroneous or contrary to law.*

The plaintiffs appeal the magistrate judge's order denying their request to extend the discovery period in this case, repeating their misguided belief that they could not engage in discovery while a motion to dismiss was pending because "the claims and parties upon which [the] plaintiffs may conduct discovery ha[d] not been determined."[132]  Citing no legal authority in support, the plaintiffs contend that the magistrate judge erroneously "disregarded the procedural realities of this case and the effect of [the] defendants' motion to dismiss filed in lieu of answering" the third-amended-complaint.[133]

A district judge may reconsider any non-dispositive matter that has been finally determined by a magistrate judge "when it has been shown that the magistrate judge's order is

---

[130] *Id.* at 13, ¶ 95.  Indeed, Vandehey's 2017 versions of his complaint include even more detail about the defendants' alleged misconduct concerning Valentine Life.  *See* ECF No. 1 at 6–14, ¶¶ 40–114; ECF No. 69 at 7–9, ¶¶ 33–47.

[131] Nor does Vandehey present any arguments suggesting that Valentine Life's claims relate back to earlier versions of his complaint or that any equitable tolling should apply here.

[132] ECF No. 153.

[133] *Id.* at 10.

clearly erroneous or contrary to law."[134]  This standard of review "is significantly deferential" to a magistrate judge's determination.[135]  A district court may overturn a magistrate judge's determination under this standard only if it has "a definite and firm conviction that a mistake [of fact] has been committed"[136] or a relevant statute, law, or rule has been omitted or misapplied.[137]

The plaintiffs' repeated arguments that they couldn't engage in discovery while a motion to dismiss was pending is patently at odds with the way cases proceed in federal court.  The courts in this district uniformly hold that "a pending motion to dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery."[138]  Under these circumstances, the plaintiffs may proceed as though the claims and parties in their complaint will go forward and serve discovery requests for those claims.  It's the defendants' burden to move for a stay of discovery if they believe that the complaint doesn't state a valid claim for relief and wish to suspend their obligation to respond to duly served discovery requests.  So the magistrate judge's rejection of this argument is not clearly erroneous.

But even if a pending motion to dismiss would have paused the plaintiffs' discovery obligations, the plaintiffs did not show that they were diligent before that motion was filed.  The discovery period was running for at least three months before the defendants moved to dismiss.

---

[134] L.R. IB 3-1(a).

[135] *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993).

[136] *Id.* (internal quotation marks omitted).

[137] *See Grimes v. City and Cnty. of S.F.*, 951 F.2d 236, 240–41 (9th Cir. 1991).

[138] *See, e.g.*, *Twin City Fire Ins. Co. v. Emp. Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989) (cleaned up); *Turn Broad. Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554 (D. Nev. 1997); *see also Wood v. McEwen*, 644 F.2d 797, 801–02 (9th Cir. 1981) (holding that a district court's decision to stay discovery when it was "convinced that the plaintiff will be unable to state a claim for relief" was not an abuse of discretion).

Plaintiffs didn't engage in any discovery during that time.  They imply that any discovery then would have been premature at that time because they hadn't yet filed their third-amended complaint alleging new claims and parties until July 2024.  But they didn't serve any discovery after they filed their amended complaint but before the defendants moved to dismiss, either.  And even if the plaintiffs needed to wait to pursue discovery on their new claims until they filed their third-amended complaint, half of their claims are identical to those filed in the 2018 complaint that was operative when the stay on this case was lifted.  Plaintiffs provide no explanation as to why they didn't expound discovery as to those claims when they had several months to do so.  On this record, I cannot conclude that the magistrate judge's finding that the plaintiffs were not diligent in pursuing discovery—and thus that they did not establish good cause or excusable neglect to extend the deadlines—was erroneous.  So I overrule the plaintiffs' objection and affirm the magistrate judge's order.

### 2.    An opportunity for further discovery under FRCP 56(d) is also not warranted.

In response to the defendants' summary-judgment motion, the plaintiffs seek relief under FRCP 56(d) to conduct further discovery.[139]  They argue that they can't "adequately respond to the summary-judgment motion while (1) the motion to dismiss and (2) the motion to extend discovery deadlines are pending and before the pleadings are finalized."[140]  Under Rule 56(d), "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of the summary-judgment motion, deny it, or "allow time to obtain affidavits or declarations or to take discovery."[141]  "The

---

[139] ECF No. 155 at 17.

[140] *Id.*

[141] Fed. R. Civ. P. 56(d).

burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment."[142]  District courts may consider whether the party diligently pursued discovery before summary judgment when determining if relief is appropriate under Rule 56(d).[143]

The plaintiffs have not met any of the requirements to obtain Rule 56(d) relief.  They do not attach an affidavit explaining why they could not present facts essential to justify their opposition.[144]  Nor do they proffer any facts to show that evidence that is not already in their possession exists that could prevent summary judgment.[145]  And, as discussed *supra*,[146] they have plainly not been diligent in pursuing discovery in this case.[147]  So I deny their request for further discovery under Rule 56(d) and consider the defendants' summary-judgment motion on the remaining claims.

---

[142] *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001) (citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 920 n.6 (9th Cir. 1996)).

[143] *See Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989) ("A movant cannot complain if [he] fails diligently to pursue discovery before summary judgment." (citing *Brae Transp. Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)); *Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) (finding that a district court abuses its discretion by denying a discovery request under Rule 56(d) "only if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment" (cleaned up)).

[144] *See Mackey*, 867 F.2d at 523–24 (holding that Rule 56(d) "requires affidavits setting forth particular facts expected from the movant's discovery" (citing *Brae Transp. Inc.*, 790 F.2d at 1443)).

[145] The fact that the plaintiffs submitted zero evidence in opposition to the defendants' summary-judgment motion or an affidavit explaining what further discovery might unearth is particularly perplexing when its clear that discovery was completed in the arbitration, much of which would likely have been relevant to the plaintiffs' claims in this action.

[146] *Supra* at 26–27.

[147] *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) (declining to "limit the district court's ability to control its docket by enforcing a discovery termination date, even if the fact of requested supplemental discovery that might have revealed highly probative evidence, when the plaintiff's prior discovery efforts were not diligent").

**E.    The defendants are entitled to summary judgment on plaintiffs' remaining claims because the plaintiffs present no competent evidence to support them.**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[148]  If the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[149]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[150]  The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[151]

> *1.    Plaintiffs' argument that their allegations should be considered admitted because the defendants filed a motion to dismiss instead of an answer is frivolous.*

The plaintiffs contend that the defendants' summary-judgment motion must be denied because the defendants haven't filed an answer to the third-amended complaint, so all of the allegations in the complaint are "considered admitted."[152]  This assertion is legally unsustainable. It is well-established in the Ninth Circuit that the defendants "need not file an answer before moving for summary judgment."[153]  It would defeat the purpose of allowing summary judgment

---

[148] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[149] *Id.* at 323.

[150] *Id.* at 322.

[151] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[152] ECF No. 155 at 9.

[153] *Lindsey v. Leavy*, 149 F.2d 899, 902 (9th Cir. 1945).

before an answer if failure to file an answer would render all of the allegations in the complaint admitted. So I reject the plaintiffs' argument and decline to treat the allegations in the complaint as admitted.

The plaintiffs also contend that the motion should be denied because the defendants failed to offer a "statement of genuine issues [] in dispute" and failed "to provide precise citation to any admissible evidence."[154] The plaintiffs misunderstand the defendants' burden on summary judgment. To prevail at this stage, the party who does not bear the burden of proving a claim at trial may simply show that the plaintiff "cannot produce admissible evidence to support" a genuine dispute of fact.[155] I conclude that the defendants have met their burden to show that the plaintiffs have neither produced nor requested evidence that could support their claims.[156] The burden thus shifts to the plaintiffs to show, with "citations to particular parts of materials in the record"[157] that there are genuine disputes of fact that entitle them to a trial.[158]

---

[154] ECF No. 155 at 10.

[155] Fed. R. Civ. P. 56(c)(1)(B).

[156] *See* ECF No. 152.

[157] Fed. R. Civ. P. 56(c)(1)(A).

[158] The defendants argue that the plaintiffs' response violates this district's local rules. ECF No. 158 at 5–6. The plaintiffs filed a statement of facts separately from their response, bringing the total page count of their response above the 30-page limit established in Local Rule 7-3. Local Rule 56-1 specifically notes that "[t]he statement of facts will be counted toward the applicable page limit in LR 7-3." Though I find that the plaintiffs' response and separate statement of facts violate LR 7-3's page-limit requirements, I decline to strike the statement of facts because it is largely identical to Vandehey's declaration, which I do consider to the extent that it contains factual statements. *See* ECF No. 157. Striking the plaintiffs' statement of facts would thus have little consequence in my consideration of the pending motions. Plus, the defendants' strike request itself violates LR IC 2-2(b), which requires counsel to file a separate document for "each type of relief requested." The defendants' attempt to shoehorn a motion to strike into their reply is not permitted.

1
2

**2.  *Vandehey hasn't presented evidence to rebut the defendants' contention that his declaratory-judgment claim (count 1) lacks controversy, so the defendants are entitled to judgment on that claim.***

3    Vandehey's first claim for relief arises out of a contractor agreement that defined the

4  business relationship between him and RSD.  That agreement contains non-solicitation and non-

5  competition clauses that bar Vandehey from poaching RSD's employees and from directly

6  competing with RSD "in the business line of how to be successful with women and dating" for

7  five years following termination of the agreement.[159]  Vandehey seeks a judgment declaring

8  those clauses void and unenforceable.[160]  The defendants respond that even Vandehey

9  acknowledges that this agreement expired in 2017, so the non-competition and non-solicitation

10  clauses expired in 2022.[161]  So there remains no active controversy about the enforceability of

11  those clauses because they expired years ago.[162]

12    "The judicial power of federal courts is constitutionally restricted to 'cases' and

13  'controversies.'"[163]  "A case or controversy exists justifying declaratory relief only when the

14  challenged activity is not contingent, has not evaporated or disappeared, and, by its continuing

15  and brooding presence, casts what may well be a substantial adverse effect on the interests of the

16  parties."[164]  "[T]he test for mootness applied to a claim for declaratory relief 'is whether the facts

17  alleged, under all the circumstances, show that there is a substantial controversy, between parties

18
19
20

---

[159] ECF No. 136-1 at 4 (contractor agreement).

21  [160] ECF No. 136 at 16–18, ¶¶ 127–44.

[161] ECF No. 152 at 11.

22  [162] *Id.* at 11–12.

23  [163] *Flast v. Cohen*, 392 U.S. 83, 94 (1968).

[164] *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) (cleaned up).

1  having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of

2  declaratory judgment.'"[165]

3      Vandehey has not shown that any active controversy remains over the non-competition

4  and non-solicitation clauses in his contractor agreement with RSD.  The defendants assert that

5  the relationship between Vandehey and RSD ended in 2017, when RSD "expelled" Vandehey

6  from Valentine Life.[166]  Vandehey doesn't respond to this mootness argument at all or produce

7  any evidence disputing that he was terminated in 2017.[167]  He instead merely argues that this

8  claim was stayed "with the intention of reopening following . . . arbitration" and that it thus

9  remains sustainable.[168]  But declaratory relief requires more than just a sustainable claim; it

10 requires a live controversy.  And Vandehey has presented no evidence to suggest that ruling on

11 this claim would be anything but an advisory opinion interpreting contract clauses that no longer

12 have any force.[169]  So I grant the defendants summary judgment on this claim.

13      **3.   *Valentine Life's conversion claim (count 6) lacks supporting evidence.***

14      Valentine Life brings a conversion claim against RSD and N. Kho, alleging that they

15 "have willfully deprived . . . Valentine Life of the right to possession of its financial accounts

16

17

---

18 [165] *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

19 [166] *See* ECF No. 152 at 11 (citing ECF No. 136 at 12, ¶ 93 ("In the summer of 2017, RSD unilaterally expelled Plaintiff Vandehey from Valentine Life in violation of the Operating Agreement.")); *see also* ECF No. 81 at 23, ¶ 49 (RSD's answer and counterclaims, asserting that the contractor agreement was terminated on August 11, 2017).

20

21 [167] *See* ECF No. 157 (Vandehey's declaration, averring no facts concerning his business relationship with or termination from RSD).

22 [168] ECF No. 155 at 11.

23 [169] *See* Fed. R. Civ. P. 56(e) (permitting the court to grant summary judgment "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)").

and property," causing damage.[170]  The defendants assert that Valentine Life has produced no evidence to support this claim, nor have they even specified "the financial accounts and property at issue or identified any value associated with such items."[171]  In response, the plaintiffs provide no detail concerning what accounts and property the defendants allegedly took.  Nor do they present any evidence of any such conversion.  The only evidence that the plaintiffs include with their summary-judgment response is a declaration from Vandehey repeating the complaint's vague allegation that, in 2017, RSD and Kho took possession of Valentine Life's assets.[172]  Nowhere does he provide any insight—through competent evidence—into the factual contours of this claim.

Valentine Life otherwise paraphrases findings from the arbitrator's final award summing up testimony in that forum concerning Kho's withdrawal of funds from Valentine Life's bank account.[173]  But even if I were to consider the arbitrator's final award as valid, authenticated evidence in this case,[174] Valentine Life omits the arbitrator's next sentence, in which he recounts that "Kho also testified that [the funds] were placed back into the Valentine Life account" the

---

[170] ECF No. 136 at 21, ¶¶ 169–70.

[171] ECF No. 152 at 15.

[172] ECF No. 157 at 10–11, ¶ 72.  It appears that Valentine Life's conversion claim is also plainly barred by the applicable three-year statute of limitations.  *See Bemis v. Est. of Bemis*, 967 P.2d 437, 440 (Nev. 1998) (citing Nev. Rev. Stat. § 11.190(3)(c)).

[173] ECF No. 156 at 8, ¶ 32.

[174] I don't consider the arbitrator's award as evidence.  Though I may take judicial notice of the existence of an arbitration order and its conclusions, I may not take judicial notice of the truth of the facts discussed in that order.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (holding that, "when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity" (citation omitted)), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Vandehey doesn't provide any legal argument permitting me to treat the arbitrator's summary of evidence as permissible evidence in this case.

1    day after Kho withdrew them.[175]  The arbitrator then concluded that Vandehey "has not

2    presented sufficient evidence to establish that these funds were in fact converted by RSD."[176]

3    Valentine Life presents no further evidence explaining what it believes RSD, Kho, or Cook stole

4    or the damages it suffered from their actions.  So, because the defendants have met their burden

5    to show that no evidence exists to create a genuine dispute of fact concerning this claim, and

6    Valentine Life doesn't meet its shifted burden to produce any such evidence, the defendants are

7    entitled to summary judgment on Valentine Life's conversion claim.

8         **4.    *Vandehey's abuse-of-process claims (counts 7 & 8) lack supporting evidence.***

9         "The elements of an abuse-of-process claim are: (1) an ulterior purpose by the defendants

10   other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper

11   in the regular conduct of the proceeding."[177]  Vandehey alleges that RSD and Kho abused the

12   legal process by "filing knowingly false affidavits, certifications, and/or declarations" claiming

13   that they owned Vandehey's personal Gmail account and that they were controlling members of

14   Valentine Life "solely for purposes other than resolving the legal claims asserted against each of

15   them for which the process was intended."[178]  He alleges that those actions constitute "an

16   improper use of the process outside of the regular conduct of the proceedings."[179]  The

17   defendants contend that Vandehey cannot present any evidence suggesting that the affidavits and

18

19   _____

     [175] ECF No. 140-4 at 33.

20   [176] *Id.*  The arbitrator also found that Vandehey could not support his claim that "RSD removed
     approximately $100,000.00 from the Valentine Life InCheck account, half of which . . . belongs
21   to Vandehey."  *Id.*  To the extent that Valentine Life intended to include this alleged conversion
     in this claim, it provides no evidence to show that RSD took that money, either.

22   [177] *LaMantia*, 38 P.3d at 879 (cleaned up).

23   [178] ECF No. 136 at 22, ¶¶ 173, 177.

     [179] *Id.* at 22, ¶¶ 174, 178.

34

1  declarations that he claims are false "were not used for their regular purpose during litigation or

2  that [the] defendants submitted them for any purpose other than resolving a legal dispute."[180]

3        Vandehey responds by insisting that the declarations and affidavits that the defendants

4  submitted to this court and in arbitration were false.[181]  He offers no evidence to support that

5  conclusion.  In his declaration, he merely repeats his complaint's conclusory statements that the

6  defendants maliciously filed false affidavits and adds that he has "a good-faith basis" to believe

7  that their actions abused the legal process.[182]  Vandehey's declaration doesn't provide any *facts*

8  to support that good-faith basis, so it does not create any genuine disputes concerning the

9  defendants' actions in this court or in the arbitration proceeding.[183]  But even if he had, he offers

10  no explanation, let alone evidence, showing that the defendants filed false affidavits for any

11  specific ulterior purpose.  His vague claim that "the specificity of the abuse of process claims [is]

12  littered throughout the Court's docket"[184] doesn't suffice to satisfy Vandehey's shifted burden to

13  refute the defendants' assertion that no evidence supports his abuse-of-process claims.  So I grant

14  summary judgment to the defendants on those claims, too.

15

---

16  [180] ECF No. 152 at 17.

17  [181] ECF No. 155 at 13–14.

   [182] ECF No. 157 at ¶¶ 98–103.

18  [183] *See* Fed. R. Civ. P. 56(c)(4) (requiring that affidavits or declarations "used to support or
   oppose a motion must be made on personal knowledge, set out facts that would be admissible in
19  evidence, and show that the affiant or declarant is competent to testify on the matters stated");
   *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989) (affirming summary
20  judgment against plaintiff for claim that was "based solely on" an affidavit, holding that,
   "because the affidavit contains only conclusory allegations, not backed up by statements of fact,
21  it cannot defeat a motion for summary judgment" (cleaned up)); *Thornhill Pub. Co., Inc. v. Gen.
   Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (disregarding affidavit containing
22  "conclusory and speculative facts," reasoning that, "if, indeed, evidence was available to
   underpin the conclusory statement, Rule 56 required the party opposing summary judgment to
23  come forward with it" (cleaned up)).

   [184] ECF No. 155 at 14.

**G.      The defendants' 2018 counterclaims have been abandoned.**

Before this case was stayed and many of the issues were arbitrated, the defendants pursued counterclaims against Vandehey for various instances of misconduct related to his employment at RSD and his operation of Valentine Life.[185]  In various pleadings with the court they have indicated that they believe "that the claims in this case were resolved through the arbitration . . . ."[186]  Indeed, when Vandehey argued in response to the defendants' motions that he should be able to proceed on his contractor-agreement claim because the defendants still maintained a breach-of-contract counterclaim related to that agreement, the defendants responded that such an argument "is based on the incorrect assumption that [they] intend to pursue their claims beyond arbitration."[187]  I find that the defendants have evinced their unequivocal intent to abandon their counterclaims and that no prejudice would result from that abandonment.  So I deem abandoned the defendants' pre-arbitration counterclaims and dismiss them without prejudice.  With no claims from either party surviving this order, I direct the Clerk of Court to close this case.

<strong>Conclusion</strong>

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 140] is GRANTED in part**.  The plaintiffs' counts 2–5 & 9–14 are DISMISSED without leave to amend.

---

[185] ECF No. 81.

[186] ECF No. 128 at 5 (opposing the plaintiffs' proposed 15-month discovery period based on their contention that this case was resolved in arbitration); ECF No. 152 at 7 (stating that the defendants believed that "any remaining claims" following arbitration "must be dismissed as moot and/or legal deficient").

[187] ECF No. 158 at 9 n.2.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **[ECF No. 152] is GRANTED in part.  The Clerk of Court is directed to ENTER JUDGMENT for the defendants and against the plaintiffs on plaintiffs' counts 1 & 6–8**.

IT IS FURTHER ORDERED that the plaintiffs' objection **[ECF No. 153]** to the magistrate judge's order denying an extension of time to complete discovery is **OVERRULED**, and the magistrate judge's order **[ECF No. 151] is AFFIRMED**.

IT IS FURTHER ORDERED that the defendants' counterclaims, filed in 2018, are deemed ABANDONED.  They are thus DISMISSED without prejudice.

IT IS FURTHER ORDERED that the **Clerk of Court is directed to CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
May 7, 2025